# EXHIBIT E

**Legal**

Hardware    Software    Sales & Support    Internet Services    Intellectual Property    More Resources

# A Statement on FRAND Licensing of SEPs

## Summary

*How standard essential patents are licensed affects competition, innovation, product compatibility, and consumer choice. When licensed on fair, reasonable, and non-discriminatory terms, everyone stands to benefit. On the other hand, when companies use the market power of a standard and standard essential patents to demand unfair, unreasonable, or discriminatory terms, consumers are harmed and fewer choices are available. Apple brings a balanced perspective to the promises and perils of standardization and outlines several core principles to promote fair, reasonable, and non-discriminatory licensing of standard essential patents, addressing transparency during negotiation, merits-based evaluation, portfolio licensing, use of a common royalty base and rate, and injunctive relief. Taken together, these principles provide a consistent framework for fair, reasonable, and non-discriminatory licensing of standard essential patents.*

## Introduction

Apple values invention, respects intellectual property, and recognizes the pertinent role of developing voluntary industry standards. Standardization is beneficial when it advances marketplace cooperation and interoperability, allowing consumers to have confidence that products reliably interact with other products. Yet it can also lead to problems when companies use the power conferred by standardization to eliminate competition through selective patent licensing or discriminatory and excessive royalties.

Despite over a decade of debate, the marketplace continues to suffer from a lack of consistent adherence to voluntarily accepted fair, reasonable, and non-discriminatory (FRAND) licensing principles for standard essential patents (SEPs), particularly in the cellular standards arena. In light of Apple's acquisition of the majority of Intel's smartphone modem business, including a significant number of cellular SEPs, the time is right to reiterate Apple's FRAND licensing principles on industry standards. Consistent with evolving case law, Apple is committed to these core principles to promote fair, reasonable, and non-discriminatory licensing of SEPs.

## Innovation and Industry Standards

Innovation is the cornerstone of Apple's business and the company prides itself on the commitment to "think different," inventing products and services unlike anything else on the market. With products such as the Mac, iPod, iPhone, iPad, and Apple Watch, Apple has revolutionized industries, and created entirely new industries by reimagining technology and focusing on delivering the best possible user experience.

Apple's differentiating features drive demand for all our products, while standards allow interoperability with other products around the world. Our engineers participate in over 100 diverse standard-setting

organizations, and Apple has contributed to the advancement of a wide range of standards, including, for example, cellular, Wi-Fi, and USB-C.

Apple has long sought to bring a balanced perspective to the promises and perils of standardization and is committed to licensing its cellular SEPs on FRAND terms. The company has entered into license agreements with dozens of SEP licensors. In each case, Apple has sought to apply a transparent and consistent FRAND methodology for valuing SEPs, which is applied equally to SEPs owned by others and SEPs owned by Apple, including those acquired from Intel. Apple is committed to the fair enforcement of the FRAND licensing promise throughout all industries, and in light of this acquisition, we reinforce this commitment.

The following core principles have guided and will continue to guide Apple's approach to FRAND licensing of standardized technologies as both a SEP licensor and licensee.

## Negotiations in FRAND Licensing

***Both SEP licensors and licensees should negotiate transparently and willingly based on an exchange of relevant information.***

- Owners of SEPs should make licenses available on FRAND terms to any and all interested parties that request a license.
- SEP owners should not discriminate in the licensing of those SEPs — including by category, industry, or location in the supply chain.
- SEP owners should include, with license offers to SEPs, an explanation with factual and legal support sufficient for potential SEP licensees to assess for each SEP whether (i) a license is needed, and (ii) the offer is FRAND.
- After a SEP owner satisfies its disclosure obligations, SEP licensees should provide substantive responses to any *bona fide* offer, including an explanation and factual and legal support as to why the licensee believes the offer does not comply with the owner's FRAND obligations, if applicable.
- Parties have a fundamental right of access to national courts and a willing licensee does not become unwilling if it refuses arbitration, challenges the merits, or resorts to litigation because the SEP owner does not offer FRAND terms.

## Merits-Based Evaluation of SEPs

***Traditional patent law and burdens of proof should be applied to test the merits of SEPs and owners' royalty demands, just as they are for all patents.***

- SEP owners should not avoid or shift traditional burdens of proof during a FRAND negotiation, alternative dispute resolution, or litigation.
- SEP owners should identify each SEP to be licensed, and should prove with specificity why each SEP is actually essential, infringed, and not otherwise invalid, exhausted, licensed, or unenforceable.
- SEP owners should prove the value of each alleged invention and establish that a licensing offer to each and all such patents complies with FRAND requirements.

## Portfolio Licensing & Bundling or Tying of SEPs

***No licensor of any type of patent, including SEPs, has a special legal right to collect royalties for***

*only a portfolio-wide license; SEP licensees should not be forced to take bundled or portfolio licenses.*

- SEP licensees should have the ability to choose whether to license individual, select groups of, or entire portfolios of SEPs.

- SEP licensors should not condition SEP licenses on the licensing of their non-standard-essential patents or on access to licensee's non-standard-essential patents.

- SEP licensors should not demand that a SEP licensee take a portfolio or bundled patent license — whether all included patents are declared SEPs, or are a combination of SEPs and non-standard-essential patents.

## FRAND Royalty Base

*There should be a common FRAND royalty base that applies equally to all SEP licensors and SEP licensees.*

- The common royalty base for SEPs should be no more than the smallest salable unit where all or substantially all of the inventive aspects of the SEP are practiced.

- This base should be further apportioned to isolate the SEP value, separate and apart from prior art, non-patented features, other patented technologies, standardization itself, and contributions and innovations of others (i.e., materials, manufacturing, marketing, etc.).

- For cellular standards, the smallest salable unit should be at most the baseband chip.

## FRAND Royalty Rate

*A FRAND royalty rate should be proportional among SEP licensors and comparable among SEP licensees.*

- A SEP licensor's *pro rata* share of declared SEPs is an objective reference point in a FRAND negotiation.

- An objective reasonable royalty rate protects against SEP licensors being unjustly enriched through excessive royalties (royalty stacking) to the detriment of both SEP licensees and other SEP licensors and contributors, as well as consumers.

- An objective reasonable royalty rate applied to a common royalty base protects SEP licensees from cumulative, excessive royalties.

- ASP or use-based methodologies for determining FRAND royalties are a back-door for SEP licensors to discriminate between licensees, to charge different royalties for the same SEPs, and to capture value attributable to licensee innovations.

## Injunctive Relief with Respect to SEPs

*SEP licensors should not seek injunctions to increase their negotiating leverage, except in very rare circumstances.*

- The threat of injunction on even a single SEP creates "hold-up" and distorts arms-length FRAND negotiations.

- Monetary damages provide a sufficient remedy for SEP infringement.

- Injunctions should be available only when a SEP licensee (i) fails to comply with a final judgement from a

court of competent jurisdiction, (ii) is bankrupt, or (iii) is beyond the jurisdiction of a court.

- Injunctions on non-standard-essential patents should be viewed with suspicion when circumstances suggest they are being sought to gain leverage in SEP negotiations.

## Conclusion

As both an innovator and an implementer of standardized technologies, Apple remains committed to these core FRAND principles, now and in the future.

## Additional Resources

- Apple Letter to ETSI re: FRAND (Nov. 11, 2011) (PDF)
- Apple's Remarks for ITU Patent Roundtable (Oct. 10, 2012) (PDF)
- Apple's Response to DG Enterprise and Industry Consultation on Patents and Standards (Feb. 14, 2015) (PDF)
- Apple's Response to DG Grow Consultation on Roadmap for Standard Essential Patents for European Digitalized Economy (May 8, 2017) (PDF)

Legal          Intellectual Property          FRAND

| Hardware and Software | Sales & Support | Internet Services | Intellectual Property |
|---|---|---|---|
| Hardware Warranties | Overview | Overview | Overview |
| Software License Agreements | AppleCare | Apple Media Services Terms and Conditions | Guidelines for Using Apple Trademarks and Copyrights |
| RF Exposure | Repair Terms and Conditions | Apple Gift Card Terms and Conditions | Trademarks |
| **More Resources** | Express Replacement Service | iCloud Terms of Service | Rights and Permissions |
| Overview | Remote Support Terms and Conditions (PDF) | TestFlight Terms and Conditions | Piracy Prevention |
| Government Information Requests | Sales Policies | Privacy Policy | Unsolicited Idea Submission Policy |
| Contact Apple Legal | Certification Agreements and Policies | Website Terms of Use | |
| Global Trade Compliance | Apple Gift Card Terms and Conditions | | **Platform Services** |
| Supplier Provisions | Training Service Terms and Conditions | | Apple Business Terms of Service |
| Filemaker Legal Information | Support Communities Terms of Use | | Apple School Manager |
| Apple Bag Check Class Action Settlement | | | Data Transfer Agreements |
| Foreman Class Action Settlement | | | |

More ways to shop: Find an Apple Store or other retailer near you. Or call 1-800-MY-APPLE (1-800-692-7753).

Copyright © 2026 Apple Inc. All rights reserved.          Privacy Policy     Terms of Use     Sales and Refunds     Legal     Site Map          United States