# Exhibit J

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| **RAVGEN, INC.,**<br><br>        **Plaintiff**,<br><br><br>      **v.**<br><br><br>**LABORATORY CORPORATION<br>OF AMERICA HOLDINGS,**<br><br>        **Defendant**. | **Case No. 6:20-cv-00969-ADA** |

**ORDER ON PLAINTIFF RAVGEN, INC.'S MOTION TO STRIKE AND EXCLUDE
DEFENDANT LABCORP'S FED. R. CIV. P. 26(A)(2)(C) DISCLOSURE [ECF NO. 122]**

Before the Court is Plaintiff Ravgen, Inc.'s ("Ravgen") Motion to Strike and Exclude
Defendant Labcorp's Fed. R. Civ. P. 26(A)(2)(C) Disclosure ("the Motion"). ECF No. 122.
Defendant Laboratory Corporation of America Holdings ("Labcorp") filed a Response. ECF No.
141. Ravgen then filed a Reply. ECF No. 158. The Court heard oral arguments on the Motion at the
Pre-Trial Conference on August 31, 2022. ECF No. 195. At the Pre-Trial Conference, the Court
granted the Motion. ECF No. 195; *see also* ECF No. 199 at 2. This opinion memorializes that
ruling.

## I.     BACKGROUND

Throughout discovery, Ravgen asserts that it sought discovery of any non-infringing
alternative ("NIA") theory Labcorp intends to rely on at trial. ECF No. 122 at 1. On October 8,
2021, Ravgen's Interrogatory No. 20 requested "all factual and legal bases" for any NIAs that
Labcorp contends are "commercially acceptable, and available" for each of the Accused
Products—including MaterniT21 PLUS, MaterniT Genome, and informaSeq tests (the "Accused

1

NIPT Products")—including "the itemized cost of implementing each NIA, including without limitation continuing operation costs, direct and indirect implementation costs, and opportunity costs." ECF No. 122-3 at 46. On March 23, 2022, Labcorp stated that "EDTA blood collection tubes were and are commercially available to be used with the Accused Products." *Id*. at 47. Labcorp did not provide any other information or facts to support this assertion, including how the alleged alternative could be implemented and any of the requested cost information.

On February 15, 2022, Ravgen sought 30(b)(6) testimony on Labcorp's "knowledge of any non-infringing alternatives," including "the technical capabilities of those alternatives," "whether those alternatives would be acceptable," and "any details of the commercial availability of those alternatives, including the cost and time involved in implementing those alternatives." ECF No. 122-4 at 80-81. Labcorp designated three witnesses to testify: (i) Dr. Boles, as to knowledge or use of EDTA Tubes or other tubes for the informaSeq test; (ii) Dr. Jensen, as to knowledge or use of EDTA Tubes or other tubes for MaterniT21 PLUS and MaterniT Genome ("MaterniT Tests"); and (iii) Dr. Tatman, as to the decision to use Streck blood collection tubes ("Streck Tubes") for the MaterniT Tests. *Id*. at 81-82. Labcorp did not provide a witness on commercial availability, nor the costs associated with implementing the NIA. Dr. Tatman stated he was not aware of "any analysis of whether EDTA would be commercially acceptable to Labcorp," nor did he provide any information about cost of switching to EDTA Tubes. ECF No. 122-5 at 174:2-21. Dr. Boles testified she was "not aware" of "any analysis of the cost to redesign the [informaSeq] test at any point over informaSeq's lifespan with a tube other than Streck." ECF No. 122-6 at 177:10-23.

In its September 21, 2021, Initial Disclosures, Labcorp identified Mr. Sapeta as likely to have discoverable information on "[t]echnical and scientific operations for the clinical laboratory that performs . . . Labcorp's accused tests." ECF No. 122-7 at 5. On April 7, 2022, Mr. Sapeta was

first deposed as a fact witness. *See* ECF No. 122-8.  Mr. Sapeta stated he was not aware of the results of past evaluations of EDTA Tubes for the MaterniT Tests. *Id*. at 84:18-24. Mr. Sapeta additionally stated he was not aware that blood in EDTA Tubes must be processed within six hours of collection. *Id*. at 80:16-19. Mr. Sapeta did not know what validation studies would be required to switch from Streck Tubes to different tubes for the Accused NIPT Products. *Id*. at 86:14-23. When Ravgen asked about cost of validation to switch from Streck Tubes to a different tube, Mr. Sapeta—without support—estimated the cost to be ▮▮▮ to ▮▮▮. *Id*. at 91:8-11. On May 19, 2022—after Ravgen served its opening expert reports and on the same day Ravgen served its rebuttal expert reports—Labcorp served the 26(a)(2)(C) Disclosure indicating that it intended to offer Mr. Sapeta at trial as an expert witness.

Labcorp's 26(a)(2)(C) Disclosure revealed, for the first time, that Mr. Sapeta intended to testify that: (i) "the costs for . . . Labcorp to continue to use the EDTA Tubes for the MaterniT Tests, instead of switching to the Streck Tubes, back in or around December 2011, would have been approximately ▮▮▮ to ▮▮▮ per patient for operational costs and ▮▮▮ in one-time equipment costs;" and (ii) "the costs for Labcorp to use the EDTA Tubes for the informaSeq Test, instead of using the Streck Tubes, back in or around August 2014 [until November 2019] would have been approximately ▮▮▮ to ▮▮▮ per patient in operational costs and ▮▮▮ in one-time costs for validation." ECF No. 122-2 at 2, 6.

Ravgen filed this Motion to Strike and Exclude Defendant Labcorp's Fed. R. Civ. P. 26(A)(2)(C) Disclosure based on three grounds. ECF No. 122 at 1. First, Ravgen alleges that the 26(a)(2)(C) Disclosure impermissibly introduces a non-infringing alternative ("NIA") theory that relies on underlying facts never disclosed by Labcorp during fact discovery despite specific discovery requests. *Id.* Second, Ravgen asserts that Mr. Sapeta does not qualify as a non-retained

3

expert, and the 26(a)(2)(C) Disclosure is improper. *Id.* Third, Ravgen claims that the expected opinions in the 26(a)(2)(C) Disclosure are unreliable because they are based on opinions and facts that were provided by other Labcorp employees and not verified by Mr. Sapeta; thus, they should be excluded under Fed. R. Evid. 702. *Id.*

## II.     LEGAL STANDARD

When a party fails to disclose relevant information during fact discovery, Rule 37(c)(1) authorizes the exclusion of evidence that was not timely disclosed from use "to supply evidence on a motion, at a hearing, or at a trial." FED. R. CIV. P. 37(c)(1). The presumptive sanction is that the party "is not allowed to use that information" unless the party can show that the failure "was substantially justified or is harmless." *Id*; *see also Flores v. AT&T Corp.*, No. EP-17-cv-00318-DB, 2019 WL 2746774, at *2 (W.D. Tex. Mar. 27, 2019) ("[T]he party facing sanctions under Rule 37(c) has the burden of demonstrating that a violation of Rule 26 was substantially justified or is harmless.").

Courts have confirmed that the untimely disclosure of NIAs despite discovery requests is prejudicial and should be stricken. *See, e.g., Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*, No. 2:15-cv-00037-RWS-RSP, 2017 WL 2651618, at *10-12 (E.D. Tex. Jun. 20, 2017); *Freshub, Inc. v. Amazon.com Inc.*, No. 6:21-cv-00511-ADA, Dkt. 222 (W.D. Tex. Jun. 13, 2021) (excluding evidence and argument regarding NIAs disclosed only in rebuttal expert reports).

Additionally, Rule 26(a)(2)(B) requires "retained or specially employed" experts to provide a written report containing, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them," "the facts or data considered by the witness in forming them," "any exhibits that will be used to summarize or support them," and "the witness's qualifications." FED. R. CIV. P. 26(a)(2)(B). Non-retained experts do not need a

written report, but the offering party must disclose "the subject matter on which the witness is expected to present evidence" and "a summary of the facts and opinions to which the witness is expected to testify." FED. R. CIV. P. 26(a)(2)(C).

In distinguishing a retained expert witness from a non-retained expert witness, "courts focus on the nature of opinions and testimony, rather than the relationship between the party and the expert." *Albritton v. Acclarent, Inc.*, No. 3:16-cv-03340-M, 2020 WL 11627275, at \*8 (N.D. Tex. Feb. 28, 2020). Specifically, courts in the Fifth Circuit require that a 26(a)(2)(C) expert witness opinion must derive from personal involvement in the events giving rise to the litigation. *See LaShip, LLC v. Hayward Baker, Inc.*, 296 F.R.D. 475, 483 (E.D. La. 2013) (holding a 26(a)(2)(C) opinion must be "developed during the sequence of events giving rise to litigation," not "solicited for litigation purposes"); *Diamond Consortium, Inc. v. Manookian*, No. 4:16-cv00094, 2017 WL 2936218, at \*3 (E.D. Tex. July 10, 2017)(holding that the expert was not properly disclosed as a non-retained expert because the expert did not have "ground-level involvement in the events giving rise to the litigation"); *United States v. Donovan*, No. 4:19- cv-000761, 2020 WL 5767996, at \*3 (E.D. Tex. Sept. 28, 2020) ("The Court's inquiry should focus on whether the witness has 'firsthand factual knowledge about the case.'").

FRE 702 requires expert witnesses to be "qualified as an expert by knowledge, skill, experience, training, or education." FED. R. EVID. 702. "[Fed. R. Evid.] 702 assigns to the district judge a gatekeeping role to ensure that scientific testimony is both reliable and relevant." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (internal citations omitted). "This gate-keeping obligation applies to all types of expert testimony, not just scientific testimony," and applies to both retained and non-retained expert witnesses. *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002); *Newton v. State Farm Lloyds*, 4:21-cv-00322-SDJ-CAN, 2022

5

WL 1217410, at *4-5 (E.D. Tex. Mar. 31, 2022) (applying FRE 702 to a properly disclosed witness under Rule 26(a)(2)(C)). The offering party bears the burden of proving by "a preponderance of the evidence that the testimony is reliable." *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). "Experts must undertake their own analyses and may not blindly rely on the opinions of others." *Genband US LLC v. Metaswitch Networks Corp.*, No. 2:14-cv-00033-JRG-RSP, 2015 WL 12911530, at *2 (E.D. Tex. Sept. 30, 2015).

## III.    ANALYSIS

### A. Labcorp Failed to Disclose Its Non-Infringing Alternative Theory and That Theory's Underlying Facts During Fact Discovery

Labcorp's 26(a)(2)(C) Disclosure identifies purported facts regarding how Labcorp would have implemented EDTA Tubes for the Accused NIPT Products and associated costs that were never disclosed during fact discovery. ECF No. 122-2 at 3-7. For example, Labcorp's response to Interrogatory No. 20 asserts that EDTA Tubes may be a NIA, *see* ECF No. 122-3 at 47, but it fails to disclose the following factual information Mr. Sapeta intends to rely upon at trial: (i) the number, capabilities, and capacity of Labcorp's PSCs and Branches; (ii) the estimated total operational cost per patient of switching to EDTA Tubes; (iii) the estimated number and cost of "refrigerated centrifuges" required to implement Labcorp's alleged alternative; and (iv) the estimated validation cost required for Labcorp's alleged alternative. *See* ECF No. 122-2 at 3-7.

Further, Ravgen asserts that it asked Labcorp's corporate representatives for this information during their depositions, and Labcorp's witnesses did not provide the information, or any purported underlying facts contained in the 26(a)(2)(C) Disclosure. ECF No. 122 at 7. Drs. Boles and Tatman could not provide an estimate of the cost of implementing this alternative or point to analysis done by others as to the cost of that change. ECF No. 122-6 at 177:10-23; ECF No. 122-5 at 174:6-21. Additionally, Dr. Tatman did not know what the processing requirements

for using EDTA Tubes with the MaterniT Tests would be or how Labcorp would engage its network of PSCs to meet those requirements. ECF No. 122-5 at 174:22-175:19.

Labcorp contends that Ravgen disclosed certain key damages contentions for the first time in its opening damages expert report by Paul Meyer, and that these new contentions prompted Labcorp to obtain Mr. Sapeta's opinions to rebut Mr. Meyer's opinions. ECF No. 141 at 2. Thus, according to Labcorp, without having such disclosure from Ravgen in fact discovery, Labcorp could not have known that the question of whether Labcorp could have hypothetically implemented the non-infringing EDTA tubes at the first hypothetical negotiation date of October 2011 would be relevant. *Id.* at 2–3.

However, Labcorp contended that EDTA Tubes were a "commercially available" NIA for damages in this case in an interrogatory response on March 23, 2022, during fact discovery and before receiving Mr. Meyer's specific damages figure. *See* ECF No. 158-3 at 47. The cases that Labcorp relies on to assert its position concerned a defendant's ability to identify a non-infringing alternative, not information about implementing a non-infringing alternative once it is identified. *See Trading Techs. Int'l, Inc. v. IBG, LLC*, No. 1-10-cv-00715, slip op. at 2 (N.D. Ill. June 1, 2020) (defendant "did not have all the information needed to determine [] possible non-infringing alternatives"); *Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13-CV-03999-BLF, 2015 WL 4129193, at *2-*3 (N.D. Cal. July 8, 2015) (discussing whether disclosure of infringement theories was detailed enough for defendant "to identify an applicable non-infringing alternative or design around").

Further, Labcorp claims that Ravgen was not prejudiced by its inability to take fact discovery or serve expert discovery related to Mr. Sapeta's anticipated testimony because Ravgen was able to depose Mr. Sapeta on those facts that were disclosed in his opinion. ECF No. 141 at

7

5. But Ravgen's deposition of Mr. Sapeta revealed that he did not know the facts underlying his anticipated opinion and that he relied on others—Mr. McLennan, Dr. Boles, and Mr. DeAngelo—for his anticipated testimony. *See, e.g.*, ECF No. 122-8 at 63:4-65:25, 66:5-18, 68:8-16, 77:19-78:2, 107:8-24, 143:16-144:10. Indeed, when asked during his second deposition, Mr. Sapeta did not know how Mr. McLennan, Dr. Boles, and Mr. DeAngelo arrived at the figures disclosed in Mr. Sapeta's anticipated testimony, or what their bases were for providing that information to Mr. Sapeta. *See, e.g.,* ECF No. 122-9 at 65:8-22, 67:7-68:7, 74:25-75:3, 84:16-18, 85:9-23, 114:20-115:10. Labcorp's failure to produce the facts and sources of those facts that Mr. Sapeta relayed precluded Ravgen from deposing those witnesses and from testing the veracity of those facts from their purported sources. Thus, deposing Mr. Sapeta did not provide Ravgen with the necessary underlying facts to respond to Mr. Sapeta's testimony or cure the prejudice caused by withholding facts during fact discovery that Labcorp intended to rely on at trial.

Accordingly, the 26(a)(2)(C) Disclosure indicates that Mr. Sapeta intends to rely on a NIA theory and facts improperly withheld from Ravgen in fact discovery; therefore, his opinion should be excluded.

### B. Labcorp Improperly Disclosed Mr. Sapeta Under Rule 26(a)(2)(C)

Ravgen asserts, and this Court agrees, that because Mr. Sapeta's expert testimony is based on information gathered from Labcorp employees after litigation began, Mr. Sapeta cannot be properly designated as a non-retained expert witness under Rule 26(a)(2)(C). ECF No. 122 at 10. Labcorp's improper designation of Mr. Sapeta and failure to timely provide an expert report as required under Rule 26(a)(2)(B) unjustifiably violate Rule 26 and are prejudicial to Ravgen.

Labcorp argues that as a non-retained expert, Mr. Sapeta provided his opinions based on his normal duties and capacity as Labcorp's Vice President of Operations, and he properly relied

on information from others within that scope. ECF No. 141 at 1. However, Mr. Sapeta cannot be a non-retained expert because his expected opinions were not based on personal involvement in the events giving rise to the litigation. *See LaShip*, 296 F.R.D. at 483. Mr. Sapeta's estimates for the operational costs, equipment, and validation of implementing EDTA Tubes were based entirely on information provided to him by Mr. McLennan, Dr. Boles, and Mr. DeAngelo. ECF No. 122-9 at 64:22-24, 65:23-25, 66:23-67:6, 79:16-23. Mr. Sapeta had no personal knowledge of these cost estimates and sought this information only after being asked to testify in this case. *Id*. at 62:9-22, 63:4-7, 91:14-18, 114:6-19. Mr. Sapeta confirmed he did not know any of these cost figures before the litigation arose. ECF No. 122-9 at 65:3-66:4, 68:8-21, 79:24-80:3.

Labcorp tries to argue that under Rule 26(a)(2)(C), a non-retained expert can provide opinions based on the expert's normal duties and capacity and rely on information from others within that scope. ECF No. 141 at 6 (citing *Hardwood Lumber, Inc. v. Brewco Inc.*, No. 3:18-05088-CV-RK, 2020 U.S. Dist. LEXIS 117835, at *4 (W.D. Mo. July 6, 2020)("*Hardwood Lumber*") ("Even though Ms. Vampola's particular opinions may have been outside of her normal services for Hardwood, her opinions are based on facts and data which were, or would have been, observed by Ms. Mapola in the course of her duties as Hardwood's CPA.); (citing *Tate & Lyle Arms, LLC v. Glatt Air Techniques, Inc.*, No. 13-2037, 2016 U.S. Dist. LEXIS 198973, at *6-9 (C.D. Ill. Apr. 11, 2016) ("*Tate & Lyle Arms*") (denying argument that a Rule 26(a)(2)(C) expert should be excluded because the expert "relied on data from other individuals, specifically sales employees, that he was not able to independently verify" because the expert, as an accountant, was doing what an accountant does). Indeed, Rule 26(a)(2)(C) "envisions that experts not providing a report can 'present evidence under Federal Rule of Evidence 702, 703, or 705.' *LaShip*, 296 F.R.D.

9

at 480. Rule 703, in turn, provides that "an expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." *Id.* (citing FED. R. EVID. 703).

However, as Ravgen correctly notes, "***when*** and ***why*** Mr. Sapeta became aware of his opinions and their underlying facts establishes that Mr. Sapeta was not properly disclosed as a Rule 26(a)(2)(C) witness." *See* ECF No. 158 at 7 (emphasis in original). The Court in *Hardwood Lumber* made clear that "the correct test is . . . whether the expert's testimony is based on observations made independent of the litigation." *See Hardwood Lumber* at \*2. Mr. Sapeta's anticipated testimony is not based on knowledge obtained from his involvement in the sequence of events giving rise to the litigation. Labcorp does not dispute that Mr. Sapeta's opinions were not formed, and facts underlying those opinions were not gathered, until the expert discovery phase of this case. *See* ECF No. 141 at 1 ("It was not until Ravgen disclosed for the first time, certain key damages contentions in its opening damages expert report that Labcorp could have provided appropriate rebuttal, including Mr. Sapeta's opinions.").

"[T]here are still limits to the scope of a 26(a)(2)(C) witness's testimony." *LaShip*, 296 F.R.D. at 480. A 26(a)(2)(C) witness's opinion must be based on facts or data obtained or observed in the course of the sequence of events giving rise to the litigation. *See id.* at 483. Otherwise, such an expert "should be deemed to be one 'retained or specially employed to provide expert testimony in the case.'" *See id.* Thus, because Mr. Sapeta's expert testimony is based on information gathered from Labcorp employees after litigation began. Mr. Sapeta cannot be properly designated as a non-retained expert witness under Rule 26(a)(2)(C).

### C. Mr. Sapeta's Testimony Should Be Excluded Under Fed. R. Evid. 702 Because He Is Not Qualified and the Testimony is Unreliable

Fed. R. Evid. 702 requires that an expert's opinion be based on a reliable "method or calculation." *See Spring St. Apts Waco, LLC v. Philadelphia Indem. Ins. Co.*, No. 6:16-cv-00315-

JCM, 2017 WL 2805014, at *6 (W.D. Tex. June 28, 2017). Ravgen contends that Mr. Sapeta's expected testimony is not based on his own expertise or a reliable methodology for determining technical feasibility, commercial availability, or calculating the costs of implementing the alleged NIA, and as such, should be excluded. ECF No. 122 at 2.

Labcorp asserts that Mr. Sapeta, as Vice President of Operations, is responsible for overseeing the operation of Labcorp's laboratory sites; therefore, it is his job to "figure out whether any changes in the implementation relating to laboratory operations would be feasible, and if so, how to implement them." ECF No. 158 at 7. However, Mr. Sapeta's based his estimates entirely on information provided to him by other Labcorp employees. ECF No. 122-9 at 64:22-67:6, 79:16-23. Mr. Sapeta did not know or ask how Mr. McLennan, Dr. Boles, or Mr. DeAngelo produced that information and estimates, nor did he independently verify this information. *Id*. at 65:8-22, 67:7-68:7, 74:25-75:3, 84:6-18, 85:9-23. Mr. Sapeta's "failure to assess the validity of the opinions of the [employees] he relied upon together with his unblinking reliance on those [employees'] opinions, demonstrates that the methodology he used to formulate his opinion . . . was not calculated to produce reliable results." *In re TMI Litig*., 193 F.3d 613, 716 (3d Cir. 1999).

Labcorp further contends that there is no such requirement for Mr. Sapeta to "independently verify" information from his colleagues. ECF No. 141 at 10 (citing *Tate & Lyle Arms* at *6-9 (no need to "independently verify" because the expert, as an accountant, was doing what an accountant does)). Notably, though, the expert in that case was "an accountant, doing accounting." *See id*. at *9.* Mr. Sapeta, on the other hand, is not "qualified as an expert by knowledge, skill, experience, training, or education" regarding Labcorp's processing of samples at PSCs and Branches, the costs and operations of Labcorp's network of PSCs and Branches, or Labcorp's validation processes. *See* Fed. R. Evid. 702. Thus, Labcorp's basis for identifying Mr.

11

Sapeta as a Rule 26(a)(2)(C) witness is that he may have gathered the information allegedly in the possession of Mr. McLennan, Dr. Boles, and Mr. DeAngelo if he was asked to do so prior to Ravgen's lawsuit. That is not a special skill warranting the designation of Mr. Sapeta as an expert.

Therefore, because the expected opinions in the 26(a)(2)(C) Disclosure are based on opinions and facts that were provided by other Labcorp employees and not verified by Mr. Sapeta, the opinions should be excluded under Fed. R. Evid. 702.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff Ravgen, Inc.'s Motion to Strike and Exclude Defendant Labcorp's Fed. R. Civ. P. 26(A)(2)(C) Disclosure. ECF No. 122. It is hereby **ORDERED** that Dr. Sapeta's testimony is excluded.

SIGNED on this 4th day of October, 2022.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE