## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## MIDLAND-ODESSA DIVISION

COBBLESTONE WIRELESS, LLC,

               Plaintiff,

        v.

APPLE INC.,

               Defendant.

Case No.  7:24-cv-00232-DC

**JURY TRIAL DEMANDED**

### DECLARATION OF PU (ALEXANDRA) YANG

I, Pu (Alexandra) Yang, declare:

I submit this declaration in support of Defendant Apple Inc ("Apple") providing my opinions on Chinese law.

I am being paid to prepare this declaration, and provide consulting services regarding Chinese law. My compensation does not depend on the outcome of this case.

### I. EXPERIENCE

My experience and background in intellectual property litigation are set forth below.

I am one of China's premier IP litigators.  As a recognized consulting expert to the Chinese Supreme Court's IP Research Center, I have extensive experience in every area of IP law, including patent, copyright, trademark, and trade secrets.

I represent many Fortune 500 companies and leading technology companies in their most important matters in China, such as Meta v. Wireless wonder, Nvidia v. Zhou, Microsoft v. Newman, Microsoft v. Able, Intel v. VSLI, TSMC v. 8DLab, TSMC v. Princo, Cisco v. Dunjun, Applied Materials v. Etown, Eli Lilly v. Watson, and many other high-stake cases.

Many of my cases have been groundbreaking in furthering the development of the intellectual property and competition laws in China. I have argued more than 50 cases before the Supreme Court, with five cases being recognized as "top cases" by the Supreme Court. And the Eli Lilly v. Watson case was the only invention patent case recognized as a "Guidance Case" by the Supreme Court from 2010 to 2020.

I have been consistently ranked as a leading lawyer in Chambers, IAM Patent 1000, Managing IP, and Benchmark litigation for my IP practice in China. The most recent awards include Band 1, Intellectual Property Litigation, Chambers and Partners (2025), Band 1 Patent Litigator, IAM Patent 1000 (2025), Band 1 trademark Litigator, WTR (2025), Patent Star, Managing IP (2025), litigation Star, Benchmark (2025), and others.

My full biography is provided in Ex. 1 to this declaration.

## II. BASICS OF THIS CASE AND THE SUMMARY OF MY OPINIONS

Counsel for Apple has provided me with U.S. Patent No. 8,891,347 ("the '347 patent") and various other materials related to the circumstances here.  I have reviewed this patent and the related recorded assignments of this patent in order to form my opinions on how Chinese law would apply to the ownership of the '347 patent.

After examining the basic information and assignment chain of the '347 patent, I acknowledge the following: Chinese individual Yin Xuefeng, then a Tongji University Professor majoring in wireless communications, filed the patent application on July 28, 2011; Yin Xuefeng assigned the patent to Shanghai Sage Company (hereinafter referred as "Sage") on July 16, 2012, which transferred it to U.S.-based Empire Inc. (hereinafter referred as "Empire") the same day, a technology export transaction;   Empire assigned the patent to Cobblestone Wireless LLC on October 14, 2022.

In my opinion, based on the foregoing known facts, **Cobblestone Wireless LLC is not a legitimate patentee and lacks standing to assert any rights in connection with the '347 patent**, for the reasons set out below:

(1) The '347 patent constitutes a service invention-creation. Yin Xuefeng, the original named applicant, was not the legitimate owner of the patent, and his assignment of the patent amounted to an unauthorized disposition. The assignees were not bona fide (they knew or ought to have known that the patent was a service invention), rendering such patent assignment null and void. By the same token, all subsequent assignments also constituted unauthorized dispositions entered into by non-bona fide assignees and are therefore void ab initio.
(2) The '347 patent relates to the field of wireless communications and was exported to the United States in 2012. Back in 2012, wireless communication technology fell within the scope of technologies restricted from export in China. Export of such technology required prior approval obtained from the competent administrative department under the State Council. Any export conducted without such approval is void; the assignment contracts are void.

Detailed reasoning is elaborated hereinafter.

## III. THE '347 PATENT IS A SERVICE INVENTION, AND YIN XUEFENG, THE ORIGINAL NAMED APPLICANT, IS NOT THE TRUE TITLEHOLDER; ALL

**ASSIGNMENTS OF THE '347 PATENT CONSTITUTED UNAUTHORIZED DISPOSITIONS WITH NON-BONA FIDE ASSIGNEES, AND ARE THEREFORE ALL VOID**

**3.1 The '347 Patent Is a Service Invention, and Yin Xuefeng, the Original Applicant, Is Not the True Titleholder**

I note that the filing date of the '347 patent is July 28, 2011, so the Patent Law of the People's Republic of China (2008 Revision)[1] (Ex. 2 (Chinese), 3 (English), hereinafter referred to as the "Patent Law") and Rules for the Implementation of the Patent Law of the People's Republic of China (2010 Revision)[2] (Ex. 4 (Chinese), 5 (English), hereinafter referred to as the "Patent Law Rules") shall apply.  It is hereby stated that I have reviewed the English translations of all laws, administrative regulations, provisions and cases cited in this Declaration and consider them accurate. I also confirm that such English translations accurately reflect the interpretation and application of these legal documents within the territory of China.

Article 2 of the Patent Law provides: "*For the purposes of this Law, invention-creations mean inventions, utility models and designs. Inventions mean new technical solutions proposed for a product, a process or the improvement thereof.*" I understand that the '347 patent is an invention patent and therefore qualifies as an invention-creation under the 2008 version of the Patent Law.

Article 6 of the Patent Law stipulates: "*An invention-creation that is accomplished in the course of performing the duties of an employee, or mainly by using the material and technical conditions of an employer shall be deemed an employment invention-creation. For an employment invention-creation, the employer has the right to apply for a patent. After such application is granted, the employer shall be the patentee.*" I am of the opinion that under Chinese law, Chinese courts will take all relevant circumstances into account when applying Article 6 of the China Patent Law to determine whether an invention constitutes a service invention-creation, including the period during which the employment relationship subsisted and the substantial connection between the invention and the inventor's regular job duties.

Rule 12 of the Patent Law Rules provides: "*Service invention-creation made by a person in execution of the tasks of the entity to which he belongs mentioned in Article 6 of the Patent Law means any invention-creation made: (1) in the course of performing his own duty...*"

In my opinion, under Chinese law, to determine whether an invention was an employment invention-creation under Article 6 of the Patent Law, a Chinese court would look at the circumstances surrounding the invention including the timing of the employment and the substance of the relation of the invention to type of work done by the employee in his employment duties. Based on my review of the '347 patent and publicly available information, I note that the inventor of record, Prof. Yin Xuefeng, held an academic position at Tongji University throughout the

---

[1] https://www.cnipa.gov.cn/art/2015/9/2/art_97_28193.html
[2] https://www.cnipa.gov.cn/art/2015/9/2/art_98_28203.html

relevant period. The subject matter of the '347 patent is consistent with the research activities Prof. Yin conducted in his capacity as a university faculty member, and the patent was filed and granted while his employment relationship with Tongji University was active. I further note that Prof. Yin's official faculty profile on the Tongji University website identifies the '347 patent as one of his scholarly achievements. Ex. 6. I also examined a certified English translation of the 'Compilation of Administrative Management Regulations Tongji University 2010', a document promulgated by Tongji University that was in force at the time the '347 patent was filed. Ex. 7. This document states that that "*All teaching, research, and other achievements obtained by engaged personnel during their engagement term, as well as within one year after termination of engagement while continuing work related to original post duties or assigned tasks, shall be deemed Service Inventions.*"

In my opinion, under Article 6 of China Patent Law, **the invention underlying the '347 patent qualifies as an employment invention-creation** because the invention was created in the course of performing the duties of an employee of the university and/or by using the material and technical conditions of the employer university.  Because this was an employment invention-creation Article 6 explains that the right to apply for a patent vests in the university, not the professor, and **that the university was the owner of the patent automatically upon its grant.**  I therefore conclude that Yin Xuefeng never had ownership or the right to transfer ownership of the patent.

**3.1 The successive assignments of the '347 Patent each constitute unauthorized dispositions with non-bona fide assignees, all such assignments are void, and the ultimate assignee Cobblestone Wireless LLC never lawfully acquired any rights thereto**

**3.1.1 The assignment of the '347 Patent from Yin Xuefeng to Sage constitutes an unauthorized disposition entered into by a non-bona fide assignee and is therefore void, such that Sage never acquired any rights in the patent; the subsequent assignment from Sage to Empire took place on the same date, and Empire acted in non-bona fide manner, so Empire likewise never obtained title to the patent**

I understand that both the assignment from Yin Xuefeng to Sage and the assignment from Sage to Empire occurred on July 16, 2012, such that the Property Law of the People's Republic of China (2007 Revision)[3] (Ex. 8 (Chinese), 9 (English), hereinafter the " Property Law") applies.

Article 106 of the Property Law provides: "*where a person unauthorized to dispose a real property or movable property transfers the real property or movable property to an assignee, the owner has the right to recover the real property or movable property. Except it is otherwise prescribed by law, once it is under any of the following circumstances, the assignee shall obtain the ownership of the real property or movable property:*
*(1) The assignee accepted the real property or movable property in good faith;*
*(2) The real property or movable property is transferred at a reasonable price; or*

---

[3] https://www.gov.cn/gongbao/content/2007/content_609906.htm

*(3) The transferred real property or movable property shall have been registered in case registration is required by law, and shall have been delivered to the assignee in case registration is not required.*

*Where an assignee obtains the ownership of a real property or movable property in accordance with the preceding paragraph, the original owner may ask the person untitled to dispose of the real property or movable property to make compensation for his losses.*

*Where a party concerned obtains any other real right in good faith, he shall be governed by the preceding two paragraphs by analogy."*

Based on my litigation experience, **Article 106 of the Property Law applies to the assignment of intellectual property rights**, including patent rights. By way of illustration, Case No. (2016) Min 02 Min Zhong No. 3857 (Ex. 10) holds: "*The bona fide acquisition system is set forth in Article 106 of the Property Law of the People's Republic of China, which governs transfers of real estate or movable property by persons lacking disposal authority... Trademark rights are a form of intellectual property with proprietary attributes and may be lawfully assigned. Trademark registration and assignment require approval and registration with the Trademark Office of the State Administration for Industry and Commerce. Given the public credibility of trademark registration, the principles and provisions of the bona fide acquisition system shall apply to the circulation of trademark rights to safeguard market stability and transaction security.*"

In my opinion, as discussed above, Yin Xuefeng, the assignor, was not the legitimate patentee and lacked authority to dispose of the '347 Patent, rendering **the assignment an unauthorized disposition.** A necessary precondition for an assignee to acquire title to patent rights from an unauthorized transferor is that the assignee acted in good faith.

I submit that **Sage cannot be deemed to have acted in good faith under Chinese judicial practice.** Yin Xuefeng's employment background and his publicly accessible faculty profile on the university's official website—on which the '347 patent is listed as his research achievement—were matters of public record. Accordingly, Sage knew or ought to have known that the ownership of the patent was disputed.

The foregoing conclusion is supported by the following analogous precedents:

Case No. (2015) Zhe Zhi Zhong No. 149 (Ex. 11), a judgment issued by a Chinese court, rules: "*In this case, the patent was developed by a research team consisting of Zhang Xueyang, Li Minghua and Huang Guogang, all of whom signed employment contracts and confidentiality agreements with Weifu Precision Co., Ltd. and were its employees... Accordingly, the patent shall be recognized as a service invention-creation belonging to Weifu Precision Co., Ltd.... As established above, Weifu Intelligent Co., Ltd. was an unauthorized transferor of the subject patent rights. For Lin and Furunde Company to lawfully acquire full title to the patent rights by asserting a bona fide acquisition defense, they must prove they acted in good faith at the time of assignment, paid a reasonable consideration, and completed formal patent ownership change registration... Regarding the defense of bona fide acquisition asserted by Furunde Company, the main dispute among the parties lies in whether Furunde Company was a bona fide transferee. The assessment*

5

*of its subjective state must be analyzed and determined based on objective conduct…Therefore, based on a comprehensive assessment, it should be held that Furunde Company's acquisition of the patent-in-suit from Lin also does not satisfy the constituent elements of bona fide acquisition."* The factual matrix of this precedent is highly analogous to the instant case: in both instances, a service invention was filed by an individual who was not the statutory patentee and subsequently assigned to third parties. **The court ruled the assignments constituted unauthorized dispositions, and the assignees failed to prove good faith, resulting in the assignments being held void.**

Case No. (2016) Yue Min Zhong No. 836 (Ex. 12)states: "*In this case, Gao held no ownership rights in the patent, and his assignment thereof constituted an unauthorized disposition... Meixi Daily Necessities Co., Ltd. adduces insufficient evidence to prove that it acquired the patent by bona fide acquisition...*"

I further cognizant that the Civil Code (Ex. 13), promulgated on May 28, 2020) was formulated on the basis of the Property Law of the People's Republic of China and other civil laws. The Civil Code imposes identical restrictions on unauthorized disposal and bona fide acquisition under Article 311. After the entry into force of the Civil Code, a large number of cases concerning patent assignment have applied the provisions on unauthorized disposal set forth therein.

I submit that since Sage never lawfully obtained title to the patent, its subsequent assignment to Empire also constitutes an unauthorized disposition. The assignment to Empire took place on the exact same day as Sage's own acquisition, meaning Empire manifestly knew or ought to have known the full background of the patent and likewise cannot claim to have acted in good faith.

In summary, I conclude that Sage, and subsequently Empire, never acquired any valid rights in the patent.

**3.1.2 From the perspective of China's legal system, the assignment of the '347 Patent by Empire to Cobblestone Wireless LLC constitutes an unauthorized disposition effected to a non-bona fide assignee, and Cobblestone Wireless LLC never lawfully acquired any rights thereto**

Based on the analysis above, I understand that Empire never obtained valid title to the patent. Under China's legal framework, its subsequent assignment of the patent still amounts to an unauthorized disposition. Cobblestone Wireless LLC had full visibility of the entire patent assignment chain and was reasonably capable of noticing the service invention issue concerning the original applicant of the patent; in other words, it knew or ought to have known that disputes existed over the patent's ownership, and thus cannot be deemed to have acted in good faith. I am of the opinion that Cobblestone Wireless LLC never lawfully acquired any rights in the patent.

**IV. THE '347 PATENT RELATES TO WIRELESS COMMUNICATIONS TECHNOLOGY AND WAS EXPORTED TO THE UNITED STATES IN 2012; WIRELESS COMMUNICATIONS TECHNOLOGY WAS SUBJECT TO EXPORT RESTRICTIONS IN CHINA IN 2012. ANY ASSIGNMENT CONSTITUTING AN UNAUTHORIZED**

**EXPORT OF RESTRICTED TECHNOLOGY IS VOID, AND THE CORRESPONDING ASSIGNMENT CONTRACTS ARE VOID**

I understand that the export of the subject patented technology from China to the United States (i.e., the assignment from Sage to Empire) took place on July 16, 2012. The laws, administrative regulations and rules in force at that time apply, including:

- *Regulations of the People's Republic of China on Administration of Technology Import and Export (Revised 2011[4] (Ex. 14 (Chinese), 15 (English), hereinafter the "**Technology Import and Export Regulations**")*
- *Catalogue of Technologies Prohibited and Restricted from Export of China (Revised 2008)(Ex. 16, hereinafter the "**Technology Catalogue**")*
- *Patent Law of the People's Republic of China (Revised 2008) (Ex. 2, 3)[5]*
- *Foreign Trade Law of the People's Republic of China (Revised 2004)[6](Ex. 17 (Chinese), 18 (English), hereinafter the " **Foreign Trade Law**")*
- *Measures for the Administration of Technologies Prohibited and Restricted from Export (Revised 2009)[7] (Ex. 19 (Chinese), Ex. 20 (English), hereinafter the " **Export Administration Measures**")*
- *General Principles of the Civil Law of the People's Republic of China (Revised 2009) [8](Ex. 21 (Chinese), 22 (English), hereinafter the "**General Principles of the Civil Law**")*
- *Contract Law of the People's Republic of China (1999 Version)[9](Ex. 23 (Chinese), 24 (English), hereinafter the "**Contract Law**")*

**4.1 The Wireless Communications Technology Covered by the '347 Patent Was Classified as Restricted Export Technology at the Time of Export**

Article 2 of the Technology Import and Export Regulations provides: "*Import and export of technologies in these Regulations refer to the transfer of technologies from outside of the People's Republic of China (hereinafter "P.R.C.") into P.R.C. or from inside of P.R.C. to outside of P.R.C. by way of foreign trade, investment, or economic or technological cooperation. Such transfer includes assignment of patent rights or rights to apply for patents, licensing of rights to implement patents, assignment of technical know-how, technical service and etc.*" Accordingly, I hold the view that the assignment of the subject patent from China to the United States is governed by the Technology Import and Export Regulations.

Article 31 of the Technology Import and Export Regulations stipulates: " *Export of technologies which fall within the scope of Article 16 of the Foreign Trade Law shall be prohibited or restricted.*

---

[4] https://www.gov.cn/gongbao/content/2011/content_1860867.htm

[5] https://www.cnipa.gov.cn/art/2015/9/2/art_97_28193.html

[6] https://www.gov.cn/gongbao/content/2004/content_62756.htm

[7] https://www.mofcom.gov.cn/zcfb/blgg/art/2009/art_f7cb44a0f21c48a78efe59d893b22974.html

[8] http://www.npc.gov.cn/zgrdw/npc/lfzt/rlys/2014-10/28/content_1883354.htm

[9] http://www.npc.gov.cn/zgrdw/npc/lfzt/rlyw/2016-07/01/content_1992739.htm

*The Director under the State Council shall, together with other relevant authorities under the State Council, formulate, readjust and publish the Catalogue of Prohibited or Restricted Export Technologies.*"

The **restricted export section** of the Technology Catalogue specifies:
*Serial No.: 054007X*
**Technology Name: Wireless Communications Technology**

After studying the '347 patent, I confirm that the '347 patent pertains to the field of wireless communications. Pursuant to the provisions of the Technology Catalogue and the Technology Import and Export Regulations, **the technology embodied in the '347 patent falls within the category of technologies restricted from export.**

**4.2 As a Restricted Export Technology, the '347 Patent Could Only Be Exported Upon Obtaining Approval from the Competent Foreign Trade Authority Under the State Council**

Article 10 of the Patent Law provides: "*The right to apply for a patent and patent rights may be assigned. Where a Chinese entity or individual assigns the right to apply for a patent or patent rights to a foreigner, foreign enterprise or other foreign organization, formalities shall be completed in accordance with the relevant laws and administrative regulations.*"

Article 33 of the Technology Import and Export Regulations stipulates: "*Export technologies which are subject to restriction can be exported only with a license and shall not be exported without a license.*"

Article 34 of the Technology Import and Export Regulations states: " *To export technologies which are restricted to be exported, an application shall be submitted to the Director under the State Council together with supportive documents.*"

Article 3 of the Export Administration Measures provides: "*The State implements license administration over restricted export technologies listed in the Catalogue of Technologies Prohibited and Restricted from Export of China. Any entity or individual exporting technologies restricted by the State shall complete export licensing formalities in accordance with these Measures.*"

Article 11 of the Export Administration Measures reads: " *In the absence of the Letter of Intent for Technology Export Licensing for a project on a technology restricted from export, no entity or individual shall conduct any substantive negotiation with the foreign party or make any commitment with legal binding force in respect of the export of the relevant technology.*"

I am aware of no evidence demonstrating that a license issued by the competent foreign trade authority under the State Council was obtained either prior to or during the export of the '347 patent. Accordingly, I opine that the export of the '347 patent **violated Article 33 of the Technology Import and Export Regulations and Article 10 of the Patent Law**.

8

**4.3 The Export of t**he '347 **Patent Violates Applicable Laws and Administrative Regulations, Rendering the Assignment and Assignment Contracts Void**

As set forth in Section 4.2, the export of the '347 patent (and the corresponding export assignment contracts) contravenes Article 33 of the Technology Import and Export Regulations (**an administrative regulation**) and Article 10 of the Patent Law (**a national law**).

I hold the view that **the export transaction is void** by reason of its violation of law. Specifically, Article 58 of the General Principles of the Civil Law provides: "*civil Acts in the following categories shall be null and void: ... (5) those that violate laws or public interest... Civil Acts that are null and void shall not be legally binding from the very beginning.*"

I further submit that the **export assignment contracts for the '347 patent are also void** for violating applicable laws and administrative regulations. Article 52 of the Contract Law of the People's Republic of China stipulates: "*A contract shall be null and void under any of the following circumstances… (5) violating the compulsory provisions of laws and administrative regulations.*"

I further emphasize that exporting restricted export technology without the statutorily required license does not merely render the assignment and underlying contracts void; such conduct carries severe legal consequences, including potential criminal liability. Relevant provisions are set forth below:

Article 46 of the Technology Import and Export Regulations provides: " Persons or organizations that import or export technologies which fall within the Catalogues of Prohibited Import and Export Technologies, or that import or export the technologies which are restricted from import or export without licenses shall face criminal charges of smuggling, illegal business activities, divulgence of State secrets or other crimes. In case the illegal conduct is not serious enough to constitute a crime, the person or organization shall be sanctioned according to the customs laws and regulations or receive a warning from the Director under the State Council and its illegal profits shall be confiscated and a fine of one to five times of the illegal profits be imposed. In addition, the Director under the State Council may revoke the right of the person or the organization to engage in activities of foreign trade."

In summary, I am of the opinion that the named original applicant of the '347 patent is not the legitimate patentee, and all successive assignments are void. Furthermore, the export of the patent violated Chinese laws and administrative regulations, rendering the export transaction and all patent assignment contracts void. Cobblestone Wireless LLC never lawfully acquired any patent rights and lacks standing to assert any rights in connection with the '347 patent.

I declare that the foregoing is true and correct to the best of my knowledge. I reserve the right to supplement the foregoing.

(NO TEXT ON THIS PAGE)

Dated: 2026 . July . 8

By: _____

    Pu (Alexndra) Yang