# YANG
# EXHIBIT 12

**MORNINGSIDE**
A Questel Company

morningtrans.com

# TRANSLATION CERTIFICATION

Date: 2026/07/08

To whom it may concern:

This is to certify that the attached translation is an accurate representation of the documents received by this office. The translation was completed from:

- Chinese (PRC)

To:

- English (USA)

The documents are designated as:

- '(2016) Yue Min Zhong No. 836.pdf'

Samuel Wu, Managing Director of this company, attests to the following:
"To the best of my knowledge, the aforementioned documents are a true, full and accurate translation of the specified documents."

Signature of **Samuel Wu**, Managing Director

Questel Confidential: Limited External Use

299 South Main Street, Suite 1300
Salt Lake City, UT 84111

# Civil Judgment of Second Instance Concerning Disputes over Patent Ownership between Guangzhou Meiji Sixth Sense Sanitary Products Co., Ltd. and Gao, Guangzhou Meixi Daily Necessities Co., Ltd.

**Court of Trial:**   Higher People's Court of Guangdong Province

**Case No.:**   (2016) Yue Min Zhong No. 836

**Judgment Date:**   07/06/2016

**Cause of Action:**   Civil Case / Intellectual Property and Competition Dispute / Dispute over Ownership and Infringement of Intellectual Property / Dispute over Ownership and Infringement of Invention Patent / Dispute over Invention Patent Ownership

-------------------------------------------------------------------------------------------------------------------------

Appellant (Original Defendant): Gao, Male, Han Ethnicity Residence: Baiyun District, Guangzhou City, Guangdong Province.

Authorized Litigation Representative: Wenhua He, Attorney at Guangdong Jinqiao Baixin Law Firm.

Appellee (Original Plaintiff): Guangzhou Meiji Sixth Sense Sanitary Products Co., Ltd. Registered Address: Tianhe District, Guangzhou City, Guangdong Province.

Legal Representative: Yong Jiang, Chairman

Authorized Litigation Representative: Langtao Jiang, In-house Staff of the Company.

Authorized Litigation Representative: Hongguo Lian, Patent Agent at Shenzhen Hedao Yinglian Patent Agency.

Original Defendant: Guangzhou Meixi Daily Necessities Co., Ltd. Registered Address: Baiyun District, Guangzhou City, Guangdong Province.

Legal Representative: Mingduan Fang, General Manager.

Authorized Litigation Representative: Wenhua He, Attorney at Guangdong Jinqiao Baixin Law Firm.

Gao, the Appellant, filed an appeal with this Court against Civil Judgment (2015) Yue Zhi Fa Zhuan Min Chu No. 519 rendered by Guangzhou Intellectual Property Court in the dispute over patent ownership between the Appellee Guangzhou Meiji Sixth Sense Sanitary Products Co., Ltd. (hereinafter referred to as Meiji Company) and the Original Defendant Guangzhou Meixi Daily Necessities Co., Ltd. (hereinafter referred to as Meixi Company). After accepting this case, this Court formed a collegial panel in accordance with the law to conduct the trial. This case has now concluded its hearing.

Claims and Facts of Meiji Company in the Original Trial Filed on February 15, 2015: Langtao Jiang and Gao executed a Cooperation Agreement on May 16, 2012, agreeing to establish Meiji Company with Gao serving as its legal representative. Meiji Company was officially incorporated on May 17, 2012, with business scope covering research, development and sales of sanitary products, cosmetics and daily necessities. To improve product quality and market competitiveness, Meiji Company entrusted Foshan Zhengdao Gongchen Advertising Co., Ltd. (hereinafter referred to as Zhengdao Gongchen Company) to carry out packaging design on May 2, 2012, and signed a commissioned design contract. As Gao was employed by Guangzhou Meixi Trading Co., Ltd. (hereinafter referred to as Meixi Trading Company), and the two companies maintained business relations, Zhengdao Gongchen Company mistakenly took Meixi Trading Company as Party A to the contract and faxed the contract marked "For Manager Gao" to Meiji Company. Upon receiving the faxed contract, Langtao Jiang altered the name of Party A to "Langtao Jiang" and signed in the column for Party A's Representative. Meiji Company faxed the revised contract back to Zhengdao Gongchen Company, which added "Guangzhou Meiji Sixth Sense Sanitary Products Co., Ltd." after "Langtao Jiang" and re-faxed the document to Meiji Company. Both parties explicitly agreed on intellectual property rights concerning the designed works under the Intellectual Property Clause of the contract. On May 3, 2012, Gao, acting on behalf of Meiji Company, paid the first installment design fee of RMB 12,000 to Zhengdao Gongchen Company. On June 20, 2012, the designer of Zhengdao Gongchen Company sent the initial draft to Langtao Jiang. After multiple rounds of revisions, both parties confirmed the final design draft on July 19, 2012. On September 27, 2012, Meiji Company paid the remaining design balance of RMB 11,200 to Zhengdao Gongchen Company, which issued a statement confirming ownership of all intellectual property rights in the designs. On June 29, 2012, Langtao Jiang sent the final design drafts to Gao. Without obtaining consent from Meiji Company, Gao filed an application with the National Intellectual Property Administration on September 21, 2012 for a design patent titled "Packaging Bag (Far-Infrared Night Sanitary Napkin)". The patent was granted on March 6, 2013,

Case 7:24-cv-00232-DC    Document 156-13    Filed 07/08/26    Page 4 of 24

Civil Judgment of Second Instance Concerning Disputes over Patent Ownership between Guangzhou Meiji Sixth Sense Sanitary Products Co., Ltd. and Gao, Guangzhou Meixi Daily Necessities Co., Ltd.

with Patent No. ZL20123045××××.3. Pursuant to Article 8 of the Patent Law of the People's Republic of China, Meiji Company, as the entrusting party under the commissioned design contract, shall be the lawful patentee of the disputed design patent. On February 2, 2015, upon learning that Meiji Company intended to initiate litigation, Gao filed an application with the National Intellectual Property Administration to change the patentee of the disputed patent to Meixi Daily Necessities Company. Since Gao once served as General Manager of Meixi Daily Necessities Company, the latter does not qualify as a bona fide third party. The illegal acts committed by Gao and Meixi Daily Necessities Company have caused substantial economic losses to Meiji Company. Based on the above grounds, Meiji Company requested the court to order: 1. Confirm that Meiji Company is the patentee of the design patent No. ZL20123045××××.3 titled "Packaging Bag (Far-Infrared Night Sanitary Napkin)"; 2. Order Gao to compensate Meiji Company for economic losses of RMB 50,000 arising from its inability to produce and sell patented products starting from January 1, 2013; 3. Order Gao and Meixi Daily Necessities Company to jointly bear all litigation costs of this case.

Defense of Gao: 1. Gao holds the copyright to the two-dimensional artwork of the "Sixth Sense" packaging bag. Gao served as General Manager of Meixi Trading Company from 2010 to August 2014, engaging in planning, design and sales of far-infrared sanitary napkins, and possessed full professional knowledge of this industry. Around March 2012, while planning far-infrared sanitary napkin products, Gao conceived the "Sixth Sense" branding concept for product sales and discussed the design outline with Langtao Jiang and staff of Zhengdao Gongchen Company, requesting prompt completion of the design work. Gao then contacted Zhengdao Gongchen Company to arrange the packaging design and trademark registration work for the "Sixth Sense" series. After receiving the commissioned design contract, Gao remitted the first design installment of RMB 12,000 to Zhengdao Gongchen Company on behalf of Meiji Company. As Gao was then employed by Meixi Trading Company, preliminary business communications were conducted under the company's name; although the contract nominally listed Meixi Trading Company as Party A, the company did not perform any contractual obligations. Subsequent design coordination was assisted by Langtao Jiang, who paid the remaining balance of RMB 6,000 on Gao's behalf. On May 16, 2012, Gao and Langtao Jiang executed a Cooperation Agreement to jointly contribute capital for the establishment of Meiji Company. On July 17, 2012, Gao withdrew from the company; he has never received the payment for his equity transfer nor been reimbursed for advance expenses incurred during the company's preparation stage. All design requirements, structural outlines and creative concepts for the packaging bag were proposed solely by Gao, and he funded the first design payment. Therefore, Gao is the actual contracting party to the commissioned design contract and holds full copyright to the "Sixth Sense" packaging artwork. 2. Neither Langtao Jiang nor Meiji Company owns the copyright to the two-dimensional "Sixth Sense" packaging design. First, neither Langtao Jiang nor Meiji Company signed the commissioned design contract. The faxed version bears the notation "For Manager Gao" and the fax number belongs to Meixi Trading Company, proving Zhengdao Gongchen Company contracted with Gao. The name of Meiji Company was only added to the contract for the purpose of this litigation. Second, all design proposals and communications with the designer were conducted by Gao via telephone, and the initial design fee was paid by Gao, making him the actual performing party under the contract. Third, although Zhengdao Gongchen Company issued a statement dated September 27, 2012 confirming that all intellectual property rights belonged to Langtao Jiang, such statement was not its genuine expression and was executed merely to collect the outstanding balance payment. 3. At the time of filing the disputed patent application, Gao had already ceased to serve as legal representative or employee of Meiji Company, so the patent filing act cannot be deemed a job-related performance of duty. The disputed patent was filed and granted based on artwork copyrighted by Gao, without infringing any third party's legitimate rights. 4. This case concerns a patent ownership dispute, while the commissioned design contract involves copyright issues. These two types of intellectual property rights are separate matters. Even if a dispute exists over the copyright ownership of the design drafts, it shall not affect the ownership of the disputed patent right. 5. Gao holds full right to dispose of the disputed patent, and Meiji Company's claim for compensation lacks legal basis. In summary, Gao requested the original court to dismiss all litigation claims filed by Meiji Company.

Defense of Meixi Daily Necessities Company: 1. Mingduan Fang, its legal representative, confirmed that Gao shared the concept of the disputed packaging design while employed at Meixi Trading Company, and Fang had full knowledge of the design negotiations between Gao and Zhengdao Gongchen Company as well as the disputes between Gao and Langtao Jiang. 2. Langtao Jiang previously filed an invalidation petition against the disputed patent, which was rejected and the patent maintained valid. Confirming Gao as the lawful patentee, Meixi Daily Necessities Company signed a Patent Transfer Agreement with Gao on August 15, 2014 to purchase three patents (including the disputed one) at a total consideration of RMB 15,000. The full transfer fee has been paid and formal

Case 7:24-cv-00232-DC    Document 156-13    Filed 07/08/26    Page 5 of 24

Civil Judgment of Second Instance Concerning Disputes over Patent Ownership between Guangzhou Meiji Sixth Sense Sanitary Products Co., Ltd. and Gao, Guangzhou Meixi Daily Necessities Co., Ltd.

ownership registration change completed. The transfer constitutes a bona fide transaction, and the court is requested to dismiss all claims of Meiji Company.

Facts Ascertained by the Court of First Instance:

I. About the Disputed Design Patent

1. Facts Relating to Filing, Grant and Transfer of the Disputed Patent

On September 21, 2012, Gao filed an application for a design patent titled "Packaging Bag (Far-Infrared Night Sanitary Napkin)", which was granted on March 6, 2013. Gao was listed as both designer and original patentee. Per the Certified Copy of Patent Registry issued by the National Intellectual Property Administration on February 25, 2015, the patentee of the disputed design patent was changed from Gao to Meixi Daily Necessities Company on February 2, 2015. Annual patent fees have been fully paid up to September 20, 2015, and the patent remains legally valid to date. The published drawings attached to the granted patent:

front view, rear view, left view

right view, top view, bottom view

On August 15, 2014, Gao and Meixi Daily Necessities Company executed a Patent Transfer Agreement with the following terms: 1. Gao agreed to assign three design patents to Meixi Daily Necessities Company for a total transfer fee of RMB 15,000, namely: Design Patent No. ZL20123045××××.7 titled "Packaging Bag (Far-Infrared Daily Sanitary Napkin)"; Design Patent No. ZL20123045××××.3 titled "Packaging Bag (Far-Infrared Night Sanitary Napkin)" (the disputed patent); Design Patent No. ZL20123045××××.6 titled "Packaging Bag (Far-Infrared Sanitary Pad)". Meixi Daily Necessities Company shall pay RMB 10,000 within three working days of the agreement's effective date, and the remaining RMB 5,000 within three working days upon receipt of the official Notification of Completion of Bibliographic Data Change. On September 3, 2014, Gao issued a receipt to Meixi Daily Necessities Company stating: I hereby confirm receipt of the total patent transfer fee of RMB 15,000 from Guangzhou Meixi Daily Necessities Co., Ltd. All wages, commissions and outstanding accounts payable between us have been fully settled.

2. Facts Relating to the Commissioned Packaging Design Contract

Meiji Company submitted two versions of the commissioned design contract for the "Sixth Sense" sanitary napkin packaging (hereinafter referred to as the Disputed Design Contract). The main clauses of both versions are identical, reading as follows: "1. Design Items and Fees: (1) Creative design for "Sixth Sense" sanitary napkin packaging: RMB 10,000 first style; additional serial derivative designs: RMB 300 per style... Total contract consideration: RMB 18,888. Note: Party A shall provide: product development concepts, corporate background, corporate culture, business philosophy, original product packaging, sales channels and target consumer groups, together with finished electronic logo artwork. Party B shall provide: packaging creative concepts and three-dimensional rendering drafts... 2. Payment Terms: (1) After signing this Contract, Party A shall pay 60% of the total design fee (RMB 11,332.8) as deposit, upon receipt of which Party B shall commence all design work... Payee Name: Yong Zhou Bank: Agricultural Bank of China Foshan Nanhai Donger Sub-branch Card No.: 62×××16... 3. Intellectual Property Provisions... (2) If the design requires human models or cartoon graphics, Party A shall supply exclusive proprietary images. If Party A fails to provide such materials and Party B sources public domain pictures, Party A shall review and bear all copyright liability for portrait and cartoon works. (3) Party A shall not acquire any rights to Party B's design drafts prior to full settlement of all contractual fees. If Party A uses or modifies the designs without full payment, Party B has the right to pursue legal liability against Party A in accordance with the Copyright Law of the People's Republic of China. After full payment of all contractual fees, all copyright and usage rights of the finished designs shall vest in Party A... 5 Effectiveness of Contract: This Contract shall take effect upon signature and seal of both parties... "Official Seal of Zhengdao Gongchen Company affixed at Party B Representative column.

Distinctions between the two contract versions lie in the Party A designation and fax timestamp at the top left corner: Version 1: Printed text "Guangzhou Meixi Trading Co., Ltd." struck through and hand-corrected to "Langtao Jiang"; top left fax header "To: 020-28077430" crossed out and revised to "Attn: Manager Gao, Tel: 82160333, MAR-26-2019 13:16". Version 2: Printed text "Guangzhou Meixi Trading Co." struck through and hand-corrected to "Langtao, Guangzhou Sixth Sense Sanitary Products Co., Ltd."; top left marked "Attn: Manager Gao, FEB-24-2020 15:10".

On May 3, 2012, Gao transferred the first design installment of RMB 12,000 to Zhengdao Gongchen Company via Agricultural Bank of China transfer.

On September 27, 2012, Zhengdao Gongchen Company issued a statement confirming three finished packaging drafts, reading: Our company has received full payment for the attached three design drafts. All intellectual property and usage rights shall vest in the contracting party Langtao Jiang (131××××7996). The statement is stamped with the official seal of Zhengdao Gongchen Company. On September 27, 2012, Zhengdao Gongchen Company issued another statement confirming three design drafts, reading: Our company has received full payment for the attached three design drafts. All intellectual property and usage rights shall vest in the contracting party Langtao Jiang (131××××7996).

During the design process, Hui Zhou, designer of Zhengdao Gongchen Company, exchanged design drafts with Langtao Jiang via email, and the final design draft was finalized after multiple revisions. Langtao Jiang sent the final design drafts to Gao via email. Meiji Company applied for notarization of all relevant email evidence. Haizhu District Notary Public Office of Guangzhou City issued Notarial Certificates Nos. (2015) Yue Guang Haizhu No. 878, 879, 880, 881, 882 and 883 on January 20, 2015. Both Meiji Company and Gao acknowledge that the two-dimensional packaging artwork of the disputed patent was created by Zhengdao Gongchen Company.

On November 6, 2013, Zhengdao Gongchen Company issued a supplementary statement: Our company, as Party B, executed the Disputed Design Contract with Langtao Jiang (Party A) on May 2, 2012. The original printed name of Party A was "Guangzhou Meixi Trading Co., Ltd.", which was manually struck through and revised to "Langtao Jiang" by Langtao Jiang himself on the same execution date of May 2, 2012.

## II. Facts Relating to Meiji Company

On May 16, 2012, Gao (Party A) and Langtao Jiang (Party B) executed a Cooperation Agreement, agreeing to jointly contribute capital to establish Meiji Company with independent legal person status. To clarify the rights and obligations of both parties, the following agreement is hereby entered into: "Both parties shall jointly invest and share risks, holding exclusive distribution and sales rights for sanitary napkins branded "Sixth Sense Far-Infrared" manufactured by Guangdong Mejie Sanitary Products Co., Ltd. within the jurisdiction of No. 68 Chebei Road, Tianhe District, Guangzhou City... After the company is established, both Parties agree that: Apart from the corporate official bank account, a personal bank account under Party A's name shall be opened for financial management and bookkeeping, subject to supervision by Party B. Party B shall administer daily accounting and documents, subject to supervision by Party A... During the cooperation term, neither party (including their relatives and associates) shall independently engage in business dealing with identical sanitary product lines by any direct, indirect or disguised means... "

Meiji Company was formally incorporated on May 17, 2012 with Gao as legal representative, business scope covering research, development and sales of sanitary products, cosmetics and daily necessities. On July 17, 2012, Meiji Company adopted a shareholders' resolution: 1. Appoint Dongdong Jiang as new legal representative and remove Gao from the legal representative position; 2. Gao shall transfer RMB 500,000 out of his total capital contribution of RMB 510,000 to Langtao Jiang at a transfer price of RMB 500,000, and transfer the remaining RMB 10,000 capital contribution to Dongdong Jiang at a transfer price of RMB 10,000. This resolution bears signatures of Gao, Langtao Jiang and Dongdong Jiang with Meiji Company's corporate seal affixed. The above corporate change was filed for record with Tianhe Branch of Guangzhou Administration for Industry and Commerce on July 26, 2012.

Case 7:24-cv-00232-DC    Document 156-13    Filed 07/08/26    Page 7 of 24

Civil Judgment of Second Instance Concerning Disputes over Patent Ownership between Guangzhou Meiji Sixth Sense Sanitary Products Co., Ltd. and Gao, Guangzhou Meixi Daily Necessities Co., Ltd.

### III. Facts Relating to Gao and Meixi Daily Necessities Company

Gao co-founded Meiji Company with Langtao Jiang on May 16, 2012 and served as its legal representative. On July 17, 2012, the shareholders' meeting of Meiji Company passed a resolution to remove Gao from his position as legal representative. Meanwhile, per a statement issued by Meixi Trading Company, Gao served as its legal representative starting in 2008. He was removed from shareholder status via shareholders' resolution dated June 28, 2012.

Meixi Daily Necessities Company is a limited liability company with registered capital of RMB 500,000, formerly operating under the name Meixi Trading Company. Meixi Trading Company was incorporated May 30, 2011 with Mingduan Fang as legal representative, business scope including wholesale and retail of daily necessities, hardware goods and personal care diapers. Shareholders' resolution of Meixi Daily Necessities Company dated June 28, 2012 revised its shareholder roster from Gao and Mingduan Fang to Mingduan Fang and Sijie Zeng. The industrial and commercial authorities approved the change on July 2, 2012. On November 21, 2012, Tianhe Branch of Guangzhou Administration for Industry and Commerce approved the corporate name change from Meixi Trading Company to Meixi Daily Necessities Company. On August 14, 2014, its business scope was amended to wholesale of daily containers and sundries, retail of general daily goods, wholesale of cosmetics and sanitary products.

### IV. Other Relevant Facts

On May 28, 2012, Meiji Company filed a trademark application for Class 5 goods reading "Sixth Sense", which was granted registration on April 14, 2015 with exclusive rights valid from April 14, 2015 to April 13, 2025. The trademark design bears strong visual similarity to the artwork of the disputed design patent.

The above facts are proven by patent grant publication, certified patent registry copy, Disputed Design Contract, bank transfer vouchers, receipts, notarial certificates, Cooperation Agreement, statement issued by Meixi Trading Company, statement issued by Zhengdao Gongchen Company, expense reimbursement slips, industrial and commercial registration files, trademark registration certificate, Patent Transfer Agreement submitted by Gao and Meixi Daily Necessities Company, and oral statements of all parties during court hearings. Other exhibits submitted by the parties bearing no relevance to the case were not admitted by the original court.

The court of first instance held: Both Meiji Company and Meixi Daily Necessities Company claim ownership of the disputed design patent. The core disputed issues of this case are twofold: 1. Whether Meiji Company possesses sufficient factual and legal grounds to claim ownership of the disputed patent right; 2. Whether Meixi Daily Necessities Company qualifies as a bona fide transferee entitled to ownership of the disputed patent.

Disputed Issue 1: Whether Meiji Company possesses sufficient factual and legal grounds to claim ownership of the disputed patent right

The Disputed Design Contract records the contractual arrangement between the entrusting party and Zhengdao Gongchen Company concerning packaging design and corresponding intellectual property rights. Although the printed name of Party A on the contract reads "Guangzhou Meixi Trading Co., Ltd.", Meixi Daily Necessities Company (successor to Meixi Trading Company) does not assert itself as the contracting party. Meiji Company and Gao both acknowledge the main body of the contract but dispute the identity of the actual contracting party. Accordingly, the core threshold to determine ownership of the disputed patent lies in confirming whether Meiji Company constitutes the legitimate contracting party under the Disputed Design Contract. Legal Analysis of the Court of First Instance:

Whether Meiji Company constitutes a party to the disputed design contract. First, judged by the purpose for concluding the Disputed Design Contract. The Disputed Design Contract was signed on May 2, 2012, while Gao and Langtao Jiang executed the Cooperation Agreement on May 16, 2012, and Meiji Company was incorporated the next day. Although the Disputed Design Contract was executed prior to Meiji Company's establishment, the negotiation process of the contract reflects the following facts: 1. Gao and Langtao Jiang jointly communicated all contractual terms including the creative concept of the disputed packaging and contract price with the counterparty Zhengdao Gongchen Company; Gao also admitted such communications were made jointly by him and Langtao Jiang for the purpose of jointly developing patented products and establishing a new company. 2. The Cooperation Agreement records that upon establishment, Meiji Company's shareholders were Gao and Langtao Jiang, with Gao serving as legal representative. The primary business purpose of Meiji Company was exclusive distribution and sales of a series of products including the patented goods. It is therefore evident that the purpose for establishing Meiji Company is consistent with the purpose of entering into the Disputed Design Contract. Second, judged by the

Case 7:24-cv-00232-DC    Document 156-13    Filed 07/08/26    Page 8 of 24

Civil Judgment of Second Instance Concerning Disputes over Patent Ownership between Guangzhou Meiji Sixth Sense Sanitary Products Co., Ltd. and Gao, Guangzhou Meixi Daily Necessities Co., Ltd.

design content of the disputed patent. The disputed patent contains graphic elements marked "Sixth Sense". After incorporation, Meiji Company filed a Class 5 trademark application for "Sixth Sense" with the State Administration for Industry and Commerce, which was granted registration. The graphic design of the trademark is identical to the "Sixth Sense" graphic featured in the disputed patent. It may be inferred that Meiji Company intended to use this "Sixth Sense" graphic simultaneously for both the disputed patent design and trademark branding. Third, judged by the performance process of the Disputed Design Contract: 1. Zhengdao Gongchen Company communicated design revisions for the disputed patent via email with Langtao Jiang, an employee of Meiji Company, and the final design draft was jointly confirmed by Zhengdao Gongchen Company and Langtao Jiang. Gao also acknowledged during the trial that Langtao Jiang followed up on subsequent design adjustments for the disputed patent. 2. The first installment of the design fee under the Disputed Design Contract was paid by Gao, and the outstanding balance was remitted by Langtao Jiang. While it remains unconfirmed whether such payments were subsequently reimbursed by Meiji Company, given that both Gao and Langtao Jiang were shareholders of Meiji Company, their payment acts shall be deemed performance of job duties on behalf of the company. Meiji Company is the actual performing party under the Disputed Design Contract. Synthesizing the purpose for concluding the Disputed Design Contract, its performance process, and the design content of the disputed patent, the evidence submitted by Meiji Company to prove it is the entrusting party to the Disputed Design Contract is sufficient and mutually corroborative, which the Court of First Instance hereby upholds.

Whether Meiji Company owns the right to the disputed patent. Article 8 of the Contract Law of the People's Republic of China stipulates that a lawfully formed contract shall be legally binding on its parties. The Disputed Design Contract represents the genuine mutual intent of Meiji Company and Zhengdao Gongchen Company, contains no provisions violating mandatory laws or administrative regulations, is legally valid and fully performed, and the rights and obligations of both parties shall be governed by its terms. Paragraph 1 of Article 339 of the Contract Law of the People's Republic of China provides that parties to a commissioned development contract may agree on ownership of technical achievements created through commissioned research and development. Clause 3 of the Disputed Design Contract stipulates that upon full payment of all contractual fees by Meiji Company, all copyright and usage rights of all finished designs created by Zhengdao Gongchen Company shall vest in Meiji Company. A written statement issued by Zhengdao Gongchen Company on September 27, 2012 records full receipt of design fees for the disputed packaging graphics and confirms that all intellectual property and usage rights shall belong to the contracting party Langtao Jiang. Based on the foregoing analysis confirming Meiji Company as the entrusting party under the Disputed Design Contract, the intellectual property ownership clause in the contract shall be construed as an agreement between Meiji Company and Zhengdao Gongchen Company, and the subsequent written statement shall constitute a supplementary agreement on intellectual property ownership binding on both parties. As the entrusting party under the Disputed Design Contract, Meiji Company lawfully holds all intellectual property rights to the disputed design pursuant to contractual terms. Gao's contention that Meiji Company only acquires copyright to the design graphics under the Disputed Design Contract lacks supporting evidence and is rejected by the Court of First Instance. In summary, Meiji Company's claim to ownership of the disputed patent is supported by sufficient factual and legal grounds, which the Court of First Instance affirms.

Disputed Issue 2: Whether Meixi Daily Necessities Company qualifies as a bona fide transferee entitled to ownership of the disputed patent.

Applicability of the Bona Fide Acquisition Doctrine to Patent Right Transfers: The bona fide acquisition system is designed to protect the public trust power of possession, safeguard transaction security, uphold the reliance interests of contracting parties, and maintain normal market transaction order. Patent rights qualify as property rights, which acquire public notice effect through grant and registration by the National Intellectual Property Administration, and are erga omnes in nature analogous to real rights. Absent exceptional statutory provisions, transfers of such rights may apply by reference the bona fide acquisition rules governing real rights under the Property Law.

Bona fide acquisition means that where a person in possession of property transfers such property without disposal authority to a transferee, the transferee who takes possession in good faith shall immediately acquire ownership or other real rights to the property by operation of law. Pursuant to Paragraph 1 of Article 106 of the Property Law of the People's Republic of China, a valid bona fide acquisition must satisfy all three of the following conditions: The transferee acted in good faith at the time of accepting the transfer; The transfer was effected at a reasonable price; Where registration is required by law for the transferred property, registration has been completed; where registration is not required, the property has been delivered to the transferee. In this case, Gao held no ownership of the disputed patent, and his act of transferring the patent right constituted unauthorized disposition. As the transferee, Meixi Daily Necessities Company bears the burden of proving its acquisition satisfied all statutory prerequisites for bona fide acquisition. Meixi Daily Necessities Company only submitted evidence proving it executed a patent transfer agreement with Gao, purchased three design patents (all subject to ownership disputes between Meiji Company and Gao) for total consideration of RMB 15,000, and completed bibliographic change

registration with the National Intellectual Property Administration. It submitted no further evidence or explanations to prove its good faith at the time of acquisition. Gao previously served as shareholder and general manager of Meixi Daily Necessities Company. Its current legal representative explicitly testified during the trial that he had full knowledge of the ownership dispute over the disputed patent between Gao and Meiji Company. Additionally, the transfer price was substantially lower than the market value of the disputed patent, for which Meixi Daily Necessities Company provided no reasonable explanation. Article 6 of the Contract Law of the People's Republic of China mandates that parties shall exercise rights and perform obligations in compliance with the principle of good faith. Synthesizing the patent transfer process, the prior affiliation between transferor Gao and transferee Meixi Daily Necessities Company, and the abnormally low transfer price, the execution of the patent transfer agreement by Meixi Daily Necessities Company and Gao clearly violates the principle of good faith, and it cannot be determined that Meixi Daily Necessities Company satisfied all statutory conditions for bona fide acquisition of the disputed patent. Accordingly, the Court of First Instance rejects Meixi Daily Necessities Company's defense of bona fide acquisition.

On Meiji Company's Claim for Compensation from Gao: Meiji Company failed to submit any evidentiary materials to substantiate its loss claim against Gao, and such claim is hereby dismissed by the Court of First Instance.

In view of the above, pursuant to Article 6, Article 8 and Paragraph 1 of Article 339 of the Contract Law of the People's Republic of China, and Paragraph 1 of Article 106 of the Property Law of the People's Republic of China, the Court of First Instance renders the following judgment: 1. Confirm that the design patent No. ZL20123045××××.3 titled "Packaging Bag (Far-Infrared Night Sanitary Napkin)" is owned by Guangzhou Meiji Sixth Sense Sanitary Products Co., Ltd.; 2. Dismiss all other litigation claims filed by Guangzhou Meiji Sixth Sense Sanitary Products Co., Ltd. Any party failing to perform monetary payment obligations within the time limit specified in this judgment shall pay double interest on the overdue debt pursuant to Article 253 of the Civil Procedure Law of the People's Republic of China. Case acceptance fee of RMB 1,050 shall be borne RMB 550 by Meiji Company, and jointly borne RMB 500 by Gao and Meixi Daily Necessities Company.

Gao appeals against the original judgment, stating: I. The Court of First Instance made erroneous factual findings. 1. The trial court's finding that "On May 3, 2012, Gao advanced the first design installment of RMB 12,000 to Zhengdao Gongchen Company via Agricultural Bank of China transfer" contains a material error in the term "advanced". As a contracting party to the design contract, Gao made direct payment rather than an advance reimbursement on behalf of the company. At no point during the first instance did Gao state that he remitted the RMB 12,000 initial fee on behalf of Meiji Company. 2. The first-instance judgment records that "Meanwhile, per a statement issued by Meixi Trading Company, Gao served as its legal representative starting in 2008." This finding is factually incorrect, as Gao never held the position of legal representative of Meixi Trading Company. II. The Court of First Instance erred in holding Meiji Company is a party to the Disputed Design Contract. The trial court erroneously concluded Meiji Company is the entrusting party based on a composite analysis of the contract's purpose, performance process and patent design content, for the following reasons: 1. The Disputed Design Contract was executed on May 2, 2012, prior to Meiji Company's incorporation. At that time Meiji Company lacked civil subject capacity, and it never ratified the contract after establishment. Therefore, it cannot be deemed a contracting party. 2. Meiji Company did not perform any obligations under the Disputed Design Contract. The initial payment was transferred by Gao, the balance paid by Langtao Jiang; Gao provided the creative design concepts while Langtao Jiang followed up design revisions. Gao and Langtao Jiang constituted the actual performing parties, which excludes Meiji Company from contractual party status judged by performance conduct. 3. Zhengdao Gongchen Company issued a written statement on September 27, 2012 confirming all intellectual property and usage rights of the design graphics vest in contracting party Langtao Jiang. This proves the counterparty to the design contract recognized Langtao Jiang rather than Meiji Company as the contracting party, so Meiji Company is not a party to the contract. III. The Court of First Instance erred in ruling Meiji Company owns the disputed patent. 1. Since Meiji Company is not a party to the design contract, it holds no intellectual property rights or ownership over the design graphics. 2. Even assuming arguendo Meiji Company held intellectual property rights to the graphics, such ownership does not automatically confer ownership of the disputed patent. The design graphics are two-dimensional works protected solely by copyright, while the disputed design patent covers three-dimensional packaging shapes. Mere possession of the two-dimensional graphics does not equate to ownership of the design patent; absent formal patent filing in accordance with the Patent Law, the flat graphics can never mature into a granted design patent. At the time of filing the patent application, Gao had long ceased to be an employee of Meiji Company, and his filing act constituted neither job-related performance nor agency conduct, so the resulting patent cannot vest in Meiji Company by virtue

of employment duties. Even if Gao's patent filing infringes copyright in the design graphics, such issue only gives rise to a patent invalidation proceeding, which is separate from the present patent ownership dispute. Such issue concerns patent invalidation, rather than the patent ownership dispute in this case. In summary, Meiji Company holds no ownership rights to the design graphics, much less to the distinct three-dimensional disputed patent. The trial court's ruling vesting patent ownership in Meiji Company is erroneous. IV. The Court of First Instance erred in finding Meixi Daily Necessities Company did not act in good faith when acquiring the disputed patent. 1. Meixi Daily Necessities Company purchased the disputed patent on August 15, 2014, at which time no ownership dispute had yet arisen between Gao and Meiji Company. Although Langtao Jiang filed an invalidation petition against the disputed patent in June 2013, the Patent Reexamination Board upheld the patent's validity. Meixi Daily Necessities Company only agreed to purchase the patent after confirming its stable valid status, and did not collude with Gao to transfer the patent with prior knowledge of the ownership dispute. Meixi Daily Necessities Company only obtained full knowledge of the dispute between Gao and Meiji Company in May 2015. 2. Regarding the transfer price of the disputed patents: In August 2015, Gao intended to resign from Meixi Daily Necessities Company and exit the sanitary napkin industry. He believed retention of the patents would bring no benefit and elected to transfer them to Meixi Daily Necessities Company for practical utilization. Gao never implemented production relying on the three patents, and the total design fee for all graphic drafts only amounted to slightly more than RMB 10,000. Therefore, a total transfer consideration of RMB 15,000 for three similar patents is commercially reasonable, and the price is not far below market value. In conclusion, the court of first instance failed to analyze the timing of the transfer and the actual circumstances of both parties, and arbitrarily concluded the transfer price was unreasonably low, then inferred lack of good faith merely based on the personal relationship between transferor and transferee. Such reasoning is erroneous. V. Gao holds full ownership of the disputed patent right As elaborated above, Meiji Company is not a party to the design contract and holds no ownership rights to the design drafts. Gao and Langtao Jiang, as the actual performing parties under the design contract, jointly own all intellectual property and ownership rights to the design drafts. Gao filed and obtained the disputed design patent based on graphic works of which he holds copyright, and therefore lawfully owns the disputed patent right. In summary, Gao requests the court of second instance to vacate Item 1 of the judgment of the court of first instance, dismiss all litigation claims filed by Meiji Company, and order Meiji Company to bear all litigation costs of the court of first instance and court of second instance.

Defense of Meiji Company: I. Gao's appeal ground alleging erroneous factual findings by the court of first instance is untenable: The court of first instance's finding that Gao advanced the initial design installment is supported by sufficient factual evidence: The Cooperation Agreement between Meiji Company and Gao and the commissioned design contract signed with third-party Zhengdao Gongchen Company prove the commissioned design was intended for the jointly established corporate entity. The expense reimbursement slip submitted by Meiji Company confirms Gao advanced the initial design installment as the company's representative, and Meiji Company fully reimbursed such expenditure, a fact which Gao acknowledged upon reviewing the exhibits. The finding recorded in the judgment that "On May 3, 2012, Gao advanced the initial design installment of RMB 12,000 to Zhengdao Gongchen Company via bank transfer through Agricultural Bank of China" complies with the evidentiary rules under the Civil Procedure Law and is sufficiently substantiated. In summary, the court of first instance's finding that Gao advanced the initial design installment is supported by factual evidence. II. Gao's appeal ground alleging the court of first instance erred in identifying Meiji Company as a party to the Disputed Design Contract is untenable: 1. Prior to formal execution of the Cooperation Agreement, Gao and Langtao Jiang jointly negotiated with Zhengdao Gongchen Company and executed the commissioned design contract on May 2, 2012. The two parties signed the Cooperation Agreement on May 16, 2012 and immediately commenced incorporation procedures for Meiji Company. It may be inferred that Gao's pre-incorporation civil acts were performed on behalf of the yet-to-be-established Meiji Company. After incorporation, Meiji Company reimbursed the advance expenses disbursed by Gao, which constitutes actual ratification of Gao's pre-incorporation acts and a clear expression of intent to ratify the Disputed Design Contract. 2. The initial installment was advanced by Gao via bank transfer, while the remaining balance was paid by Langtao Jiang. Meiji Company fully reimbursed the initial installment, and Langtao Jiang admitted the remaining balance was paid on Meiji Company's behalf. As a legal person, Meiji Company must entrust its staff to follow up contractual performance, so Meiji Company constitutes a party to the Disputed Design Contract based on performance facts. 3. Langtao Jiang negotiated the commissioned design contract on behalf of Meiji Company and commenced business communications with Zhengdao Gongchen Company prior to Meiji Company's incorporation. This explains why Zhengdao Gongchen Company listed Langtao Jiang as the contracting party in the intellectual property clause, which does not negate Meiji Company's status as the actual contracting party. Reimbursement slips and other supporting evidence sufficiently prove Meiji

Company is the genuine entrusting party under the commissioned design contract. In summary, the court of first instance's holding that Meiji Company is a party to the Disputed Design Contract is legally correct. III. Gao's appeal ground alleging the court of first instance erred in awarding patent ownership to Meiji Company is untenable: Meiji Company is the genuine entrusting party to the commissioned design contract, and the graphic drafts were created for packaging applications, which constitute two-dimensional products prior to physical packaging manufacture. Pursuant to Article 8 of the Patent Law, Meiji Company holds full intellectual property and ownership rights to the graphic drafts, and exclusively possesses the right to file patent applications based on such designs. Gao gained access to the design drafts by virtue of his former position, and after resignation filed a patent application for intellectual property rights belonging to Meiji Company, unlawfully depriving Meiji Company of its statutory right to file for patent protection. Accordingly, the judgment of the court of first instance awarding ownership of the disputed patent to Meiji Company is correct. Gao's argument that the patent application infringes his copyright and warrants patent invalidation is without merit. In conclusion, Meiji Company holds full intellectual property and ownership rights to the sanitary napkin packaging graphics, and the court of first instance's ruling confirming Meiji Company as the patent owner is legally sound. IV. Gao's appeal ground alleging the court of first instance erred in finding Meixi Daily Necessities Company lacked good faith when purchasing the patent is untenable: Starting from 2013, consumer sales of Meiji Company's products were suspended due to complaints filed by Gao, resulting in massive economic losses. Unfamiliar with intellectual property law and unable to distinguish ownership disputes from other patent proceedings, Langtao Jiang filed an invalidation petition against the disputed patent in June 2013, solely seeking to lift the sales suspension of Meiji Company's products. Certificates submitted by Meixi Daily Necessities Company confirm Gao had continuously served as its General Manager since 2008. Therefore, Meixi Daily Necessities Company had full knowledge that Gao's conduct caused the suspension of Meiji Company's products, and was fully aware of the patent ownership dispute between Gao and Meiji Company. In summary, the court of first instance's finding that Meixi Daily Necessities Company did not act in good faith when acquiring the disputed patent is correct. Overall, the judgment of the court of first instance clearly ascertained facts, submitted sufficient evidence and correctly applied law. This Court requests the court of second instance to dismiss all appeal grounds raised by Gao and uphold the judgment of the court of first instance.

The judgment of the court of first instance contained an erroneous factual record reading: "Meanwhile, per a certificate issued by Meixi Trading Company, Gao has served as its legal representative since 2008." The accurate record shall be revised to: "Meanwhile, per a certificate issued by Meixi Trading Company, Gao has served as its General Manager since 2008." This Court hereby corrects such error.

Based on exhibits submitted by both parties during the court of first instance, this Court supplements the following ascertained facts:

The Expense Reimbursement Slip submitted by Meiji Company in the court of first instance records: The primary page states the reimbursement purpose as "Company preparation expenses", total amount RMB 80,633; the remark column notes: "Expense Registration Form attached as annex"; the leadership approval column bears the notation: "Langtao Jiang approves reimbursement dated July 19, 2012"; the payee signature reads "Gao". The first annex page is the Investment Registration Form for each company preparation project. Item 2 records: "Payment to Yong Zhou for initial design installment, amount RMB 12,000", handler signature "Shengxi Gao", shareholder signature "Langtao Jiang". The final column states: "Total: Expenses advanced by Gao up to July 13, 2012 amount to RMB 80,633, signed by Langtao Jiang".

The Decision on Examination of Request for Invalidation No. 22863 issued by the National Intellectual Property Administration, submitted by Gao during the court of first instance, records: Langtao Jiang filed a request for patent invalidation with the Patent Reexamination Board on May 13, 2013. The Patent Transfer Agreement submitted by Gao during the court of first instance records: Gao and Meixi Daily Necessities Company executed the agreement on August 15, 2014, transferring three disputed design patents for total consideration of RMB 15,000.

All other facts ascertained by the court of first instance are confirmed as true and accurate by this Court.

This Court holds that: This case is a dispute over ownership of patent rights. Synthesizing the appeal submissions of Appellant Gao and defense statements of Appellee Meiji Company and Original Defendant Meixi Daily Necessities Company, the three core disputed issues for this trial are as follows: 1. Whether Meiji Company constitutes a party to the disputed design contract; 2. Whether Meiji Company owns the disputed patent right; 3. Whether Meixi Daily Necessities Company acquired the disputed patent through bona fide acquisition.

Disputed Issue 1: Whether Meiji Company constitutes a party to the disputed design contract

Paragraph 1 of Article 64 of the Civil Procedure Law of the People's Republic of China stipulates: "A party shall bear the burden of proof for the facts it asserts." Article 90 of the Judicial Interpretation of the Supreme People's Court on the Application of the Civil Procedure Law of the People's Republic of China further provides: "Unless otherwise prescribed by law, a party shall submit evidence to prove the facts supporting its claims or rebutting the opposing party's claims. If a party fails to submit sufficient evidence to prove its factual assertions prior to judgment, the party bearing the burden of proof shall bear adverse litigation consequences. " In the present case, Meiji Company asserts that Gao and Langtao Jiang jointly founded Meiji Company to market the "Sixth Sense Far-Infrared Sanitary Napkin" product line, commissioned Zhengdao Gongchen Company to design the disputed packaging, and that Meiji Company is the contracting party to the Disputed Design Contract. To substantiate its claims, Meiji Company submitted the Cooperation Agreement executed by Gao and Langtao Jiang dated May 16, 2012, the Commissioned Design Contract for the "Sixth Sense" sanitary napkin packaging, the written statement issued by Zhengdao Gongchen Company on September 27, 2012, notarized email evidence, and company preparation expense reimbursement slips, among other exhibits. The above exhibits prove that Langtao Jiang, shareholder of Meiji Company, executed the Commissioned Design Contract with Zhengdao Gongchen Company on May 2, 2012 to commission creation of the disputed packaging, with Langtao Jiang signing in the Party A Representative column. On May 3, 2012, Gao, the other shareholder of Meiji Company, remitted the initial design installment of RMB 12,000 to Zhengdao Gongchen Company. During the design process, Hui Zhou, designer of Zhengdao Gongchen Company, exchanged design drafts with Langtao Jiang via email, and the final design draft was finalized after multiple revisions. Langtao Jiang sent the final design drafts to Gao via email. On September 27, 2012, Langtao Jiang paid the remaining design balance to Zhengdao Gongchen Company, which issued a written statement confirming full receipt of packaging design fees and vesting all intellectual property and usage rights in the contracting party Langtao Jiang (131××××7996). On July 19, 2012, Gao signed as payee on the Expense Reimbursement Slip marked "Company preparation expenses", with the attached Investment Registration Form recording Item 2: "Payment to Yong Zhou for initial design installment, amount RMB 12,000". Gao does not dispute the facts of his cooperation with Langtao Jiang, the separate payment of initial and remaining installments by himself and Langtao Jiang, nor his signature on Meiji Company's reimbursement slip. Gao's appeal argument is that although he signed the reimbursement slip, he never actually received the reimbursed funds. The Disputed Design Contract was executed prior to Meiji Company's incorporation, all design coordination work was handled by Gao and Langtao Jiang, and Zhengdao Gongchen Company's written statement confirms all intellectual property rights vest in Langtao Jiang, therefore Meiji Company cannot be a contracting party. This Court holds that Meiji Company submitted prima facie evidence proving the joint establishment of the company by Gao and Langtao Jiang and the full reimbursement of the initial design installment advanced by Gao. All acts performed by Langtao Jiang and Gao shall be deemed acts performed on behalf of Meiji Company, and Meiji Company's reimbursement conduct constitutes ratification of the pre-incorporation Commissioned Design Contract. If Gao claims he never received the reimbursed funds, he bears the burden of submitting supporting evidence, which he failed to provide. Even assuming arguendo that Meiji Company never actually disbursed the reimbursed RMB 12,000 initial installment, such circumstance does not alter the legal nature of Gao's submission of the expense for reimbursement by Meiji Company. In conclusion, Gao's appeal submissions lack sufficient supporting evidence and are rejected by this Court. The judgment of the court of first instance's holding that Meiji Company constitutes a party to the Disputed Design Contract is correct and hereby affirmed.

Disputed Issue 2: Whether Meiji Company owns the disputed patent right

Pursuant to Paragraph 1 of Article 339 of the Contract Law of the People's Republic of China and Article 8 of the Patent Law of the People's Republic of China, ownership of an invention created through commissioned development shall be determined in accordance with contractual agreements between the contracting parties. Clause 3 of the Disputed Commissioned Design Contract explicitly governs intellectual property ownership of the design works, stating: "Upon full payment of all contractual fees by Party A, all copyright and usage rights of the designs created by Party B shall vest in Party A." The written statement issued by Zhengdao Gongchen Company on September 27, 2012 further confirms full receipt of all design fees and vesting of all intellectual property and usage rights in the contracting party Langtao Jiang. Langtao Jiang also confirmed that all above acts were performed on behalf of Meiji Company. Therefore, per the contractual agreement between the contracting parties, full ownership of the disputed design drafts and all intellectual property rights including copyright vest in Meiji Company as the entrusting party under the Disputed Commissioned Design Contract, and Meiji Company exclusively holds the statutory right to file patent applications based on the design drafts. After resigning from Meiji Company, Gao filed a design patent application relying on the proprietary design drafts, which unlawfully deprived Meiji Company of

Case 7:24-cv-00232-DC    Document 156-13    Filed 07/08/26    Page 13 of 24

Civil Judgment of Second Instance Concerning Disputes over Patent Ownership between Guangzhou Meiji Sixth Sense Sanitary Products Co., Ltd. and Gao, Guangzhou Meixi Daily Necessities Co., Ltd.

its statutory right to apply for patent protection. The judgment of the court of first instance's conclusion that Meiji Company holds all intellectual property rights to the disputed patent is fully substantiated by law and facts, and hereby affirmed by this Court.

Disputed Issue 3: Whether Meixi Daily Necessities Company acquired the disputed patent through bona fide acquisition

In this case, Gao held no ownership of the disputed patent, and his transfer of the patent right constituted unauthorized disposition. Gao was once a shareholder and General Manager of Meixi Daily Necessities Company. Evidentiary materials on record prove Langtao Jiang filed a patent invalidation petition with the Patent Reexamination Board on May 13, 2013, while Gao transferred ownership of the disputed patent to Meixi Daily Necessities Company on August 15, 2014. Mingduan Fang, legal representative of Meixi Daily Necessities Company, explicitly testified during the court of first instance trial that he possessed full knowledge of the ownership dispute over the disputed patent between Gao and Meiji Company. Accordingly, existing evidence sufficiently proves that Meixi Daily Necessities Company acquired the disputed patent with actual knowledge of the pending ownership dispute between Gao and Meiji Company, and its assertion of bona fide acquisition lacks any supporting evidentiary proof. The judgment of the court of first instance correctly rejected Meixi Daily Necessities Company's bona fide acquisition defense for failure to satisfy statutory constituent elements, and Meixi Daily Necessities Company did not file an appeal against such ruling. Gao's argument that the judgment of the court of first instance erroneously found Meixi Daily Necessities Company lacked good faith when acquiring the patent lacks sufficient supporting grounds and is rejected by this Court.

In summary, the judgment of the court of first instance clearly ascertained all material facts and correctly applied relevant laws, and shall be upheld in accordance with law. All appeal grounds and claims submitted by Appellant Gao are untenable and hereby dismissed. Pursuant to Item (1) of Paragraph 1 of Article 170 of the Civil Procedure Law of the People's Republic of China, this Court renders the following judgment:

Dismiss all appeals and uphold the original judgment.

Court of second instance case acceptance fee of RMB 500 shall be fully borne by Appellant Gao.

This judgment is final.

Presiding Judge: Yanhui Deng

Associate Judge: Lihua Ou

Associate Judge: Dan Ye

July 6, 2016

Judicial Assistant: Suliu Zhang

Clerk: Shaoyan Guo



Scan the QR code for convenient mobile reading

# 广州美吉第六感卫生用品有限公司与高某、广州美茜日用品有限公司专利权权属纠纷二审民事判决书

审　理　法　院：广东省高级人民法院

案　　　　　号：(2016) 粤民终 836 号

裁　判　日　期：2016.07.06

案　　　　　由：民事/知识产权与竞争纠纷/知识产权权属、侵权纠纷/发明专利权权属、侵权纠纷/发明专利权权属纠纷

---

上诉人（原审被告）：高某，男，汉族，住址：广东省广州市白云区。

委托代理人：贺文华，广东金桥百信律师事务所律师。

被上诉人（原审原告）：广州美吉第六感卫生用品有限公司。住所地：广东省广州市天河区。

法定代表人：姜勇，该公司董事长。

委托代理人：姜浪滔，该公司职员。

委托代理人：廉红果，深圳市合道英联专利事务所专利代理人。

原审被告：广州美茜日用品有限公司。住所地：广东省广州市白云区。

法定代表人：方明端，该公司总经理。

委托代理人：贺文华，广东金桥百信律师事务所律师。

上诉人高某因与被上诉人广州美吉第六感卫生用品有限公司（以下简称美吉公司）、原审被告广州美茜日用品有限公司（以下简称美茜日用品公司）专利权权属纠纷一案，不服广州知识产权法院（2015）粤知法专民初字第 519 号民事判决，向本院提起上诉。本院受理后，依法组成合议庭进行了审理。本案现已审理终结。

美吉公司于 2015 年 2 月 15 日向原审法院起诉称：姜浪滔与高某于 2012 年 5 月 16 日签订《合作协议书》，约定设立美吉公司，并由高某出任公司的法定代表人。同年 5 月 17 日美吉公司正式成立，经营范围为研究、开发、销售卫生用品、化妆品、日用品。为提高产品质量及竞争力，美吉公司于同年 5 月 2 日委托案外人佛山市正道功臣广告有限公司（以下简称正道功臣公司）进行包装设计，并签订了委托设计合同。由于高某任职于广州美茜贸易有限公司（以下简称美茜贸易公司），且该公司与正道功臣公司存在业务往来，正道功臣公司误认为该合同的甲方为美茜贸易公司，并以传真形式将该合同发送美吉公司，该传真件注明"高总收"。美吉公司收到该传真后，由姜浪滔将合同甲方改成"姜浪滔"并在"甲方代表签名"处署名。美吉公司将修改后的合同传真发送正道功臣公司，该公司在甲方"姜浪滔"后面加上美吉公司的名称后再次传真美吉公司。双方在合同"关于知识产权约定"部分对设计作品的知识产权进行了明确约定。同年 5 月 3 日，高某代表美吉公司支付正道功臣公司设计首期款人民币 12000 元。同年 6 月 20 日，正道功臣公司的设计师将设计初稿发给姜浪滔。经多次往来修改，同年 7 月 19 日，双方通过最终设计稿件。同年 9 月 27 日，美吉公司支付正道功臣公司余款 11200 元，该公司出具了知识产权归属声明。同年 6 月 29 日，姜浪滔将设计稿件发送高某。同年 9 月 21 日，高某擅自以个人名义向国家知识产权局申

广州美吉第六感卫生用品有限公司与高某、广州美茜日用品有限公司专利权权属纠纷二审民事判决书

请了名称为"包装袋（远红外夜用型卫生巾）"的外观设计专利，该专利于 2013 年 3 月 6 日获得授权，专利号为 ZL20123045××××.3。根据专利法第 8 条的规定，涉案专利的专利权人应为涉案设计合同的委托人即美吉公司。2015 年 2 月 2 日，得知美吉公司准备起诉后，高某向国家知识产权局申请变更专利权人，将涉案专利权人变更为美茜日用品公司。因高某曾是该公司的总经理，故美茜日用品公司并非善意第三人。高某、美茜日用品公司的违法行为，给美吉公司造成了巨大的经济损失。据此，美吉公司请求判令：1.确认专利号为 ZL20123045××××.3、名称为"包装袋（远红外夜用型卫生巾）"的外观设计专利的专利权人为美吉公司；2.高某赔偿美吉公司自 2013 年 1 月 1 日起无法生产和销售专利产品而带来的损失 5 万元；3.高某、美茜日用品公司共同负担本案的诉讼费用。

高某辩称：1.其对第 6 感包装袋的平面设计享有著作权。其从 2010 年至 2014 年 8 月任美茜贸易公司总经理，从事远红外卫生巾的策划、设计及销售等工作，对该领域很熟悉。2012 年 3 月左右，在进行远红外卫生巾策划时，高某想到将"第 6 感"的概念用于该卫生巾的销售，并且在姜浪滔、正道功臣公司的员工均在场时谈过该设计构思并表示希望尽快设计。之后其联系正道功臣公司进行"第 6 感"包装袋的设计和商标注册事宜。在收到委托设计合同之后，其代表美吉公司以转账形式支付正道功臣公司合同首期款 12000 元。因其此时任职于美茜贸易公司，故前期工作以美茜贸易公司的名义进行的，且涉案设计合同的甲方为美茜贸易公司，但美茜贸易公司并非合同的实际履行方。后期工作则由姜浪滔协助高某进行相关设计，并由姜浪滔代表美吉公司支付合同余款 6000 元。2012 年 5 月 16 日，其与姜浪滔签订《合作协议书》，共同出资注册成立美吉公司。同年 7 月 17 日，高某退出公司，至今未拿到股权转让款，亦未报销其在公司筹备阶段垫付的费用。在包装袋的设计过程中，该包装袋的设计要求、方案、思路均由高某提出，且第一笔设计费由其出资，故高某才是委托设计合同的签约方，对第 6 感包装袋的设计享有著作权。2.姜浪滔及美吉公司对第 6 感包装袋的平面设计均不享有著作权。首先，姜浪滔及美吉公司均不是《设计委托合同书》的签约方，合同传真件显示该合同上写的"高总收"、传真号码也是美茜贸易公司的号码，因此正道功臣公司的签约对象是高某。至于该合同所显示的美吉公司名称，是为了本次诉讼而添加；其次，设计方案的提出与设计过程的沟通，均由高某与设计方周先生通过电话进行，合同预付款 12000 元亦由高某支付，因此合同实际履行人为高某；第三，尽管设计方即正道功臣公司于 2012 年 9 月 27 日出具证明，证明有关知识产权及试用期归姜浪滔所有，但该证明并非该公司的真实意思表示，而是为收取余款而作出的不真实证明。3.涉案专利申请时高某早已不是美吉公司的法定代表人或员工，因此高某申请专利的行为不属于职务行为，且涉案专利是其将拥有著作权的设计用于包装袋并根据专利法的规定申请获得，未侵犯任何人的权利。4.本案为专利权权属纠纷，而委托涉案设计合同的稿件涉及著作权，二者是不同类型的权利，即使双方对设计稿件的著作权权属存在争议，该争议并不影响涉案专利权的归属。5.高某对涉案专利有处分权，美吉公司请求赔偿损失没有法律依据。综上，高某请求法院驳回美吉公司的诉讼请求。

美茜日用品公司辩称：1.其法定代表人方明端确认高某在美茜贸易公司工作时曾与其说过涉案专利的构思，同时关于高某与正道功臣公司谈过涉案专利的设计以及高某与姜浪滔之间的纠纷亦知情。2.姜浪滔曾就上述专利提起过无效宣告请求，后专利被维持有效，故其在确认涉案专利权人为高某的情形下，于 2014 年 8 月 15 日与高某签订涉案专利转让协议，约定以 15000 元的价格受让高某的三项专利（含涉案专

利），同时合同款项已经支付，专利权相应登记已作变更，故该转让行为均为善意，请求驳回美吉公司的诉讼请求。

原审法院经审理查明：

一、关于涉案专利

1.涉案专利申请、授权及转让的相关事实

2012年9月21日，高某向国家知识产权局申请了名称为"包装袋（远红外夜用型卫生巾）"的外观设计专利（以下简称涉案专利），并于2013年3月6日获得授权，高某为涉案专利的设计人与原专利权人。根据国家知识产权局于2015年2月25日出具的专利登记簿副本记载，2015年2月2日，涉案专利权人由高某变更为美茜日用品公司。该专利年费缴纳至2015年9月20日，至今合法有效。该专利授权公告图片如下：

主视图后视图左视图

右视图俯视图仰视图

2014年8月15日，高某与美茜日用品公司签订《专利转让协议书》，协议内容包括：1.高某同意将其拥有的三件专利转让给美茜日用品公司，转让费为15000元，三件专利为：名称为"包装袋（远红外日用型卫生巾）"，专利号为ZL20123045××××.7的外观设计专利；名称为"包装袋（远红外夜用型卫生巾）"，专利号为ZL20123045××××.3的外观设计专利；名称为"包装袋（远红外护垫）"，专利号为ZL20123045××××.6的外观设计专利。2.美茜日用品公司自本协议生效之日起三天内支付转让款10000元，剩余5000元自收到著录项目变更手续合格通知书之日起三天内付清。同年9月3日，高某向美茜日用品公司出具收条，内容为：本人已收到转让美茜日用品公司专利费用15000元，已结清在美茜工资、提成、一切账目。

2.涉案专利委托设计的相关事实

美吉公司提交两份不同版本的针对"第6感"卫生巾包装（以下简称涉案包装）的委托设计合同（以下简称涉案设计合同），两份合同的主文内容一致，相关记载如下："一、设计项目及费用：1."第6感"卫生巾包装创意：10000元／首款，同系列延续制作：300元／款……以上项目合计收费人民币18888元。注：甲方提供：关于新品开发的思路和总方向，提供公司的背景、企业文化、经营理念、原产品包装、经营方式、销售区域、目标消费群体相关资料以及设计好的电子牌标志。乙方提供：包装形象创意、包装立体效果图……二、付款方式：1）合同签订后，甲方支付设计总款项的60%（11332.8元）作为设计订金，乙方收到甲方订金设计工作开始……户名：周勇，开户行：农业银行佛山南海东二支行，卡号：62×××16……三、知识产权约定：……2）设计方案需要用人物模特或卡通图片时，由甲方提供企业的专属模特或卡通图片，如甲方不能提供，乙方寻找公告图片，人物模特的肖像权及卡通的版权责任由甲方审核承担。3）甲方在合同款项未付清之前对乙方设计的作品不享有任何权利。甲方在合同款项未付清之前擅自使用或者修改使用乙方设计作品而导致的侵权，乙方有权依据《中华人民共和国著作权法》追究其法律责任。甲方在付清合同款项后，乙方所设计的作品版权和使用权由甲方所有。……五、合同生效：本合同一式两份，经双方签字（盖章）后生效……。"合同甲方代表签名为姜浪涛，乙方代表签名处盖有正道功臣公司的公章。

两份合同的不同之处在于合同甲方及合同左上角的传真时间，具体区别如下：版本 1 中合同甲方处印刷体"广州美茜贸易有限公司"被划并改为手写体"姜浪滔"，合同左上角所显示"To：020－28077430"被划并改为"82160333，高总收""MAR-26-201913：16"。版本 2 中合同甲方处印刷体"广州美茜贸易公司"被划并改为手写体"姜浪滔广州第 6 感卫生用品有限公司"，合同左上角显示"高总收""FEB-24-202015：10"。

2012 年 5 月 3 日，高某在中国农业银行通过银行转账方式向正道功臣公司垫付设计首款 12000 元。

2012 年 9 月 27 日，正道功臣公司出具一份证明，该证明显示关于涉案包装的三份设计图案，此图案下方载明：本公司已收取以上图案设计费用，知识产权及使用权归合约方姜浪滔（131××××7996）所有。该证明盖有正道功臣公司公章。同年 9 月 27 日，正道功臣公司出具另一份证明，该证明同样显示关于三份设计图案，并在图案下方载明：本公司已收取以上图案设计费用，知识产权以使用权归合约方姜浪滔（131××××7996）所有。

正道功臣公司在对涉案包装进行设计期间，其工作人员周晖与姜浪滔通过电子邮件的形式沟通设计方案，并在多次修改后确定最终设计方案。姜浪滔将最终设计方案通过电子邮件发送高某。美吉公司对上述电子邮件申请证据保全。广州市海珠区公证处于 2015 年 1 月 20 日据此分别出具（2015）粤广海珠第878、879、880、881、882、883 号公证书。美吉公司与高某对涉案专利的平面设计图由正道功臣公司设计这一事实均无异议。

2013 年 11 月 6 日，正道功臣公司出具的一份证明，内容如下：本公司作为乙方，于 2012 年 5 月 2 日，与姜浪滔（甲方）签订了第 6 感包装袋的涉案设计合同，涉案设计合同上甲方名称起初写为"广州美茜贸易有限公司"，后由姜浪滔本人在甲方名称处修改为"姜浪滔"，实际签约时间和修改时间是 2012 年 5 月 2 日，由姜浪滔手写更正。

二、关于美吉公司的相关事实

2012 年 5 月 16 日，高某（甲方）与姜浪滔（乙方）签订《合作协议书》。据该协议载明，甲、乙双方共同出资注册成立美吉公司，该公司享有独立的法人资格。为明确双方间的权利义务关系，订立如下协议内容："甲、乙双方共同出资，共担风险，在广州天河区车陂路 68 号地域范围内专属享有独家代理、销售广东美洁卫生用品有限公司生产的标有'美洁'商标、'第 6 感远红外卫生巾'等系列产品……。公司成立后，甲乙双方同意：除公司公账账户外，以甲方名义开立银行账户，主管财务及往来账目，乙方监督。乙方主管日常账目和资料，甲方监督。……在合作期限内，甲乙双方中任何一方（含亲朋好友关系）不得单方面以任何形式（含直接、间接、变相等）避开公司独自经营公司同类产品（卫生用品系列）……。"

同年 5 月 17 日美吉公司正式成立，其法定代表人为高某，经营范围为研究、开发、销售卫生用品、化妆品、日用品。同年 7 月 17 日，美吉公司作出股东会决议，内容如下：1.任命姜东东为公司法定代表人，同时撤销高某的法定代表人职务；2.高某作为股东将其原出资人民币 51 万元中的 50 万元转让给姜浪滔，转让金额为 50 万元，将其原出资人民币 51 万元中的 1 万元转让给姜东东，转让金额为人民币 1 万元。该决议有高某、姜浪滔、姜东东签名并盖有美吉公司公章。同年 7 月 26 日，美吉公司在广州市工商行政管理局天河分局对上述变更事项进行了备案。

三、关于高某、美茜日用品公司的相关事实

2012 年 5 月 16 日，高某与姜浪滔共同投资成立美吉公司，并担任美吉公司的法定代表人。同年 7 月 17 日，经美吉公司股东会作出决议，撤销高某的法定代表人职务。与此同时，经美茜贸易公司出具证明，高某自 2008 年开始担任该公司的法定代表人。同年 6 月 28 日，经该公司股东会作出决议，撤销其公司股东资格。

美茜日用品公司为有限责任公司，注册资本为 50 万元。其前身为美茜贸易公司。美茜贸易公司成立于 2011 年 5 月 30 日，法定代表人为方明端，经营范围为批发、零售：日用品、五金制品、个人卫生用品、婴儿尿布。2012 年 6 月 28 日，美茜日用品公司做出股东决议，内容为公司股东由高某、方明端变更为方明端、曾思洁。同年 7 月 2 日，工商部门核准了该项变更。同年 11 月 21 日，经广州市工商行政管理局天河分局核准，美茜贸易公司将公司名称变更为美茜日用品公司。2014 年 8 月 14 日，该公司经营范围变更为日用器皿及日用杂货批发；日用杂品综合零售；化妆品及卫生用品批发等。

四、其它事实

2012 年 5 月 28 日，美吉公司向国家工商行政管理总局申请在第五类商品上注册"第 6 感"商标，并于 2015 年 4 月 14 日获准注册，其专用期限自 2015 年 4 月 14 日至 2025 年 4 月 13 日。该商标的内容与涉案专利设计相近似。

以上事实，有美吉公司提供的专利授权公告文本、专利登记簿副本、涉案设计合同、银行支付凭证、收据、公证书、合作协议书、美茜贸易公司出具的证明、正道功臣公司出具的证明、费用报销单、工商登记资料、注册商标证明，高某及美茜日用品公司提供的专利转让协议书以及当事人当庭陈述等予以证实。当事人提交的其他证据，因与本案没有关联，原审法院不予采信。

原审法院认为：美吉公司及美茜日用品公司均主张其为涉案专利的权利人，本案的争议焦点在于：一是美吉公司主张涉案专利的所有权是否具有事实和法律依据；二是美茜日用品公司对涉案专利的所有权是否构成善意取得。

一、关于美吉公司主张其对涉案专利享有所有权是否具有事实和法律依据的问题

涉案设计合同是委托人与正道功臣公司就涉案包装设计及相关知识产权等所作出的约定。该合同甲方处虽显示为美茜贸易公司，但美茜日用品公司（前身为美茜贸易公司）并未主张美茜贸易公司为该合同的缔约方；美吉公司与高某对涉案设计合同主文内容均无异议，但对于合同当事人存在争议，即双方均主张其是涉案设计合同的当事人。故美吉公司对涉案专利是否享有所有权的关键在于其是否为涉案设计合同的当事人。对此原审法院作如下分析：

关于美吉公司是否为涉案设计合同的当事人。第一，从涉案设计合同的订立目的来看，涉案设计合同订立于 2012 年 5 月 2 日，高某与姜浪滔于 2012 年 5 月 16 日签订涉案合作协议并于次日成立美吉公司。虽然涉案设计合同订立在美吉公司成立之前，但从涉案设计合同的缔约过程分析，首先，高某与姜浪滔曾共同向合同相对人正道功臣公司作出包括涉案包装的设计构思、合同价款等合同内容的意思表示，高某亦承认上述意思表示是其与姜浪滔为合作开发涉案专利产品并成立新公司而作出的；其次，以涉案合作协议记载，美吉公司成立之初的股东为高某、姜浪滔，法定代表人为高某，且美吉公司的主要设立目的为代理、销售包括专利产品在内的系列产品。可见美吉公司的设立目的与涉案设计合同的目相一致。第二，从

涉案专利的设计分析，涉案专利显示有"第6感"的图案，而美吉公司在公司成立后曾向国家工商行政管理总局申请在第五类商品上注册"第6感"商标并获准注册，该商标的内容与涉案专利的"第6感"的图案设计相同，可以推断美吉公司曾将该"第6感"的图案同时用于涉案专利的设计与作为商标使用。第三，从涉案设计合同的履行过程来看，首先，正道功臣公司通过电子邮件与美吉公司的职员姜浪滔沟通涉案专利的设计事宜，且最终设计稿由正道功臣公司与姜浪滔共同确定，高某于庭审时亦确认姜浪滔曾跟进涉案专利的后续设计；其次，涉案设计合同的首期款由高某支付，合同尾款由姜浪滔支付，尽管高某、姜浪滔支付的款项是否经美吉公司报销并不明确，结合高某、姜浪滔均为美吉公司股东的事实，可以推断高某、姜浪滔的上述付款行为均应视为职务行为，涉案设计合同的实际履行人应为美吉公司。综上，从涉案设计合同的订立目的、履行过程以及涉案专利的设计等综合分析，美吉公司主张其为涉案设计合同的委托方，证据充分且相互印证，原审法院予以支持。

关于美吉公司对涉案专利是否享有所有权。《中华人民共和国合同法》第八条规定，依法成立的合同，对当事人具有法律约束力。涉案设计合同是美吉公司与正道功臣公司之间的真实意思表示，其内容并未违反法律、行政法规的强制性规定，该合同合法有效且已经履行完毕，双方的权利义务应受合同约束。根据《中华人民共和国合同法》第三百三十九条第一款的规定，委托开发完成的发明创造，合同当事人可以对技术成果的归属作出约定。根据涉案设计合同第三条的约定，美吉公司在付清合同款项后，正道功臣公司所设计的作品版权及使用权归美吉公司所有；2012年9月27日正道功臣公司于2012年9月27日所出具的证明载明其已经收取涉案专利的图案设计费，且知识产权及使用权归合约方姜浪滔所有。根据上述关于美吉公司为涉案设计合同委托方的分析，合同中相关知识产权归属的约定应视为美吉公司与正道功臣公司之间的约定，且后续证明应视为双方就相关知识产权归属的进一步约定，对双方均有法律约束力，故美吉公司作为涉案设计合同的委托方，依约定享有涉案专利的知识产权。关于高某称美吉公司依据涉案设计合同仅享有著作权的主张，缺乏依据，原审法院不予采纳。综上，美吉公司主张其享有涉案专利的所有权具有事实及法律依据，原审法院予以支持。

二、关于美茜日用品公司对涉案专利的所有权是否构成善意取得的问题

关于专利权转让是否能适用善意取得制度，善意取得制度的目的在于保护占有的公信力，保障交易安全，保护交易当事人的信赖利益，维护市场正常的交易秩序。因专利权属财产权，该类权利通过国家知识产权局授权登记的方式获得对外公示的法律效力，在性质上与物权类似，具有对世性，故在无例外规定的情形下该类权利的转让可以参考适用物权法关于物权善意取得的规定。

善意取得是指财产占有人无权处分其占有的财产，并将该财产转让给受让人，受让人取得财产时出于善意则依法即时取得对该财产的所有权或其他物权。参照《中华人民共和国物权法》第一百零六条第一款的规定，善意取得应符合如下条件：受让人受让该财产时是善意的；以合理的价格转让；转让的财产依照法律规定应当登记的已经登记，不需要登记的已经交付给受让人。本案中，高某对涉案专利不具有所有权，其转让专利权的行为属于无权处分行为，美茜日用品公司作为受让人，应对其受让行为是否符合善意取得的法定条件负有证明责任。美茜日用品公司仅提供证据证明其与高某签订了涉案专利权转让协议，并以15000元的价格受让含涉案专利权在内的三个专利（均为美吉公司与高某因专利权权属发生纠纷的专利）权利，并在国家知识产权局办理变理登记，除此之外，对其受让时是否善意等并未提供任何证据或者

作出任何说明。高某曾是美茜日用品公司的股东及法定代表人，美茜日用品公司的现任法定代表人于庭审时亦明确表示其知晓高某与美吉公司之间存在涉案专利的权属纠纷，同时专利转让价格远低于涉案专利的市场价值，而美茜日用品公司对此亦未作出合理解释。根据《中华人民共和国合同法》第六条的规定，当事人行使权利、履行义务应当遵循诚实信用原则。从涉案专利的转让过程、转让人与受让人之间的关系以及专利的转让价格等因素综合分析，美茜日用品公司与高某签订专利权转让协议的行为显然不符合诚实信用原则，难以认定美茜日用品公司对涉案专利的受让行为符合善意取得的法定条件。故对美茜日用品公司关于善意取得的抗辩，原审法院不予支持。

关于美吉公司主张高某赔偿损失的诉讼请求，因美吉公司未提交任何证据证实该项主张，故原审法院对此不予支持。

综上所述，原审法院依据《中华人民共和国合同法》第六条、第八条、第三百三十九条第一款、《中华人民共和国物权法》第一百零六条第一款的规定，判决：一、确认专利号为 ZL20123045××××.3、名称为"包装袋（远红外夜用型卫生巾）"外观设计专利的专利权归美吉公司所有；二、驳回美吉公司的其他诉讼请求。如未按判决指定的期限履行金钱给付义务的，应当依照《中华人民共和国民事诉讼法》第二百五十三条的规定，加倍支付迟延履行期间的债务利息。案件受理费人民币 1050 元，由美吉公司负担 550 元，高某、美茜日用品公司共同负担 500 元。

高某不服原审判决，上诉称：一、原审法院认定事实错误。（一）原审法院认定"2012 年 5 月 3 日，高某在中国农业银行通过银行转账方式向正道功臣公司垫付设计首款 12000 元。"其中"垫付"是错误的，高某作为设计合同的一方当事人是支付而不是垫付。高某在一审中从未陈述过代表美吉公司以支付正道功臣公司合同首期款 12000 元。（二）原审判决认定"与此同时，经美茜贸易公司出具证明，高某自 2008 年开始担任该公司的法定代表人。"高某从未担任过美茜贸易公司的法定代表人，因此，此处认定有误。二、原审法院认为美吉公司是涉案设计合同的当事人是错误的。原审法院从涉案设计合同的订立目的、履行过程以及涉案专利的设计等综合分析，认为美吉公司是涉案设计合同的委托方，这是错误的，理由如下：首先，涉案设计合同的签约时间为 2012 年 5 月 2 日，此时美吉公司尚未成立，不具有民事主体资格，美吉公司成立后也未就涉案设计合同进行追认，因此其不是涉案设计合同的当事人。其次，美吉公司也没有履行过涉案设计合同，涉案设计合同的首期款是由高某通过银行转账支付，后期款是由姜浪淘支付，高某提供设计构思，姜浪淘在设计过程中进行后续跟进，高某和姜浪淘是合同的履行一方，因此，从合同履行的过程来说，美吉公司也不是涉案设计合同的当事人。最后，正道功臣公司于 2012 年 9 月 27 日出具证明载明设计图案的知识产权以及使用权归合约方姜浪淘所有，这就说明正道功臣公司作为设计合同的相对方也认为设计合同的合约方是姜浪淘而非美吉公司，因此，美吉公司不是设计合同的当事人。三、原审法院认为美吉公司对涉案专利享有所有权是错误的。首先，美吉公司不是设计合同的当事人，也就对设计图案不享有知识产权和所有权。其次，即使退一步来说，美吉公司对设计图案享有知识产权和所有权，也不能当然就对涉案专利享有所有权，因为设计图案是一种平面设计，仅涉及知识产权中的著作权问题，而涉案外观专利涉及的是一种立体设计，尽管涉案专利利用了涉案设计图案，但是有了涉案设计图案，并不必然就有了涉案专利，如果不去依照专利法申请专利，涉案设计图案永远获得不了外观设计专利；而高某申请专利的时候早已不是美吉公司的职员，其申请专利的行为并非职务行为或代理行为，因

此，所申请的涉案专利也就不能因职务行为的原因归美吉公司所有。也许高某申请的涉案专利侵犯了设计图案的著作权，那也是涉及专利无效的问题，而非本案的专利权权属的纠纷。涉及专利无效的问题，而非本案的专利权权属的纠纷。综上，美吉公司对设计图案都不享有所有权，更不用说对有别于设计图案的涉案专利享有所有权，因此，原审法院认为美吉公司对涉案专利享有所有权是错误的。四、原审法院认为美茜日用品公司受让涉案专利是非善意也是错误的。首先，美茜日用品公司受让涉案专利的时间是 2014 年 8 月 15 日，此时高某与美吉公司之间并没有产生专利权权属的纠纷。尽管在 2013 年 6 月份，姜浪淘曾对涉案专利提起无效宣告请求，最终专利复审委员会维持涉案专利有效，美茜日用品公司正是知晓专利维持有效较稳定后才愿意受让的，并不是因为知晓高某与美吉公司之间产生专利权权属之后故意帮助高某转移涉案专利，美茜日用品公司真正知晓高某与美吉公司的权属纠纷是在 2015 年 5 月份。其次，关于涉案专利转让的价格问题，2015 年 8 月，高某决定离开美茜日用品公司且离开卫生巾行业，觉得留住涉案专利也没用处，还不如转让给美茜日用品公司，也许能发挥其效用，由于高某并没有将涉案专利实施于实际生产，三件专利的设计图案的设计费也才 1 万余元，因此，三件相类似的专利的转让价格为 15000 元也是比较合理的，不存在转让价格远低于市场价值的情形。综上，原审法院并没有分析美茜日用品公司受让专利的时间及转受让双方当时的具体情况，就想当然地认为转让价格远低于市场价值，结合转受让双方的关系就得出美茜日用品公司受让涉案专利是非善意的，因此是错误的。五、高某对涉案专利享有所有权。如前文所述，美吉公司不是设计合同的当事人，对设计图案不享有所有权。高某和姜浪淘作为设计合同的实际履约人，设计图案的知识产权和所有权属于高某和姜浪淘共有。高某利用自己享有著作权的设计图案根据专利法的规定申请获得涉案专利，理应对涉案专利享有所有权。综上，请求二审法院撤销原审判决第一项，驳回美吉公司的全部诉讼请求，判决美吉公司承担一、二审的诉讼费。

美吉公司答辩如下：一、高某关于原审法院认定事实错误的上诉理由不成立，原审法院认定高某垫付设计首款有事实依据：由美吉公司与高某之间的合作协议，与案外人正道功臣公司签订的设计委托合同可知，该委托设计是以双方共同组建的公司为主体与正道功臣公司签订的，而且由美吉公司提交的费用报销单可知，的确是高某作为代表垫付的设计首款，但由美吉公司对这部分费用进行了报销，高某也认可了美吉公司提交的证据。原审法院据此认定"2012 年 5 月 3 日，高某在中国农业银行通过银行转账方式向正道功臣公司垫付设计首款 12000 元"有充分的事实依据，符合民事诉讼法证据规则。综上，原审法院认高某垫付设计首款是有事实依据的。二、高某认为原审法院认为美吉公司是涉案设计合同的当事人是错误的上诉理由不成立：首先，高某与姜浪滔之间在达成合作意向未能签订合作协议之前，于 2012 年 5 月 2 日就共同与正道功臣公司接洽，签订委托设计合同，随后在 2012 年 5 月 16 日高某与姜浪滔之间签合作协议书，开始办理成立美吉公司的程序。因此可知，高某之前的民事行为是代表美吉公司行使的。且美吉公司成立后，其对高某之间垫付的费用进行了报销，该报销行为即代表美吉公司对高某行为的认可，即是对涉案设计合同进行追认的实际意思表示。其次，委托设计合同的首款是由高某通过银行转账的方式进行垫付，后期款是由姜浪滔支付。但是美吉公司对首款进行报销，且姜浪滔也承认，其后期款是代美吉公司支付的。由于美吉公司是法人，其必须委托其员工进行合同过程的跟进，因此，从合同履行过程来讲，美吉公司是涉案设计合同的当事人。最后，由于姜浪滔是代表美吉公司行使委托设计合同，且在美吉公司成立之前就与正道功臣公司进行业务洽谈，导致正道功臣公司在知识产权归属上写了姜浪滔的名字，但并不代

表美吉公司不是设计合同的当事人，而由报销等证据可以证明美吉公司是委托设计合同真正的当事人。综上，原审法院认为美吉公司是涉案设计合同的当事人是正确的。三、高某认为原审法院认为美吉公司对涉案专利享有所有权是错误的上诉理由不成立：美吉公司是委托设计合同真正的当事人，委托设计的图案是用于包装上，且该包装在未使用时是平面产品；根据专利法第八条的规定，美吉公司对设计图案享有知识产权和所有权，即美吉公司对于涉案的图案具有申请专利的权利。而高某由于职位原因接触了本案的设计图案，且在其离职后将属于美吉公司所有的知识产权进行了专利申请，剥夺了美吉公司申请专利的权利。因此，原审法院据此将涉案专利的专利权判归美吉公司所有是正确的，高某辩称侵犯其著作权，造成专利无效的理由不成立。综上，美吉公司对涉案的用于卫生巾包装的图案享有知识产权和所有权，原审法院认为美吉公司对涉案专利享有所有权是正确的。四、高某认为原审法院认为美茜日用品公司受让涉案专利是非善意也是错误的上诉理由不成立，理由是：自 2013 年开始，由于高某的投诉导致美吉公司的产品下架，造成很大损失。由于美吉公司对法律不了解，不清楚是属于权属纠纷，因此在 2013 年 6 月份由姜浪滔对涉案专利提起无效宣告请求，当时是想通过宣告无效以避免产品下架的纠纷。而由美茜日用品公司提供的证明可知，自 2008 年起，高某一直担任其总经理职务至今，因此，美茜日用品公司非常清楚是由于高某的原因导致美吉公司产品下架，即其是了解高某与美吉公司之间关于涉案专利的纠纷。综上，原审法院认为美茜日用品公司受让涉案专利的行为是非善意是正确的。综上，原审判决涉案专利归美吉公司所有，事实清楚，证据充分，适用法律正确，特此请求二审法院驳回高某上诉请求，维持原审判决。

经审理，原判决查明"与此同时，经美茜贸易公司出具证明，高某自 2008 年开始担任美茜贸易公司的法定代表人"与事实不符，应为"与此同时，经美茜贸易公司出具证明，高某自 2008 年开始担任美茜贸易公司的总经理"，本院予以纠正。

本院根据一审双方当事人提供的证据补充查明以下事实：

美吉公司在一审提交的《费用报销单》显示：报销单据首页中的报销用途为费用报销（公司筹办），金额为 80633 元；备注一栏显示："有费用登记表为附件"，领导审批一栏显示："姜浪滔同意报销 2012 年 7 月 19 日"，领款人签名为高某。附件第一页为公司筹备各项目投资登记表，第 2 栏显示："付周勇设计首付款，金额 12000 元"，经手人签名为高生喜，股东签名为姜浪滔，最后一栏显示："计：高某截止 2012 年 7 月 13 号支付公司费用计 80633 元及姜浪滔签名"。

高某在一审中提供的证据《中华人民共和国国家知识产权局第 22863 号无效宣告请求审查决定书》载明：姜浪滔于 2013 年 5 月 13 日向专利复审委员会提出无效宣告请求。高某在一审中提交的证据《专利转让协议书》记载：高某与美茜日用品公司于 2014 年 8 月 15 日签订协议，以 15000 元转让涉案三个外观设计专利。

原审法院查明的其他事实属实，本院予以确认。

本院认为：本案系专利权权属纠纷。综合上诉人高某的上诉意见、被上诉人美吉公司和原审被告美茜日用品公司的答辩意见，本案二审当事人争议的焦点是：一、美吉公司是否为涉案设计合同的当事人；二、美吉公司对涉案专利是否享有所有权；三、美茜日用品公司受让涉案专利是否属于善意取得。

一、关于美吉公司是否为涉案设计合同当事人的问题

《中华人民共和国民事诉讼法》第六十四条第一款规定："当事人对自己提出的主张，有责任提供证据"。《最高人民法院关于适用＜中华人民共和国民事诉讼法＞的解释》第九十条亦规定："当事人对自己提出的诉讼请求所依据的事实或者反驳对方诉讼请求所依据的事实，应当提供证据加以证明，但法律另有规定的除外。在作出判决前，当事人未能提供证据或者证据不足以证明其事实主张的，由负有举证证明责任的当事人承担不利的后果。"本案中，美吉公司主张高某与姜浪滔合作成立美吉公司，销售"第6感远红外卫生巾"等系列产品，并委托了正道功臣公司设计涉案包装，美吉公司是涉案设计合同的当事人。为证明其主张，美吉公司提交了高某和姜浪滔于2012年5月16日签订的《合作协议书》、针对"第6感"卫生巾包装的《委托设计合同书》、正道功臣公司于2012年9月27日出具的证明、经公证保全的电子邮件、费用报销单（公司筹办）等证据。上述证据显示，美吉公司股东姜浪滔于2012年5月2日与正道功臣公司签订《委托设计合同》，委托正道功臣公司设计涉案包装，合同甲方代表签名为姜浪滔。同年5月3日，美吉公司另一股东高某支付正道功臣公司设计首款12000元。在设计期间，正道功臣公司工作人员周晖与姜浪滔通过电子邮件的形式沟通设计方案，并在多次修改后确定最终设计方案。姜浪滔将最终设计方案通过电子邮件发送给高某。同年9月27日，姜浪滔支付正道功臣公司设计余款，正道功臣公司出具证明称已收到涉案包装的设计费用，知识产权及使用权归合约方姜浪滔（131××××7996）所有。同年7月19日，高某在用途为费用报销（公司筹办）的《费用报销单》领款人处签字，其中附页显示"公司筹备各项目投资登记表"，第二栏显示"付周勇设计首付款金额12000元"。高某在上诉中对双方合作以及高某、姜浪滔分别支付涉案设计合同的首款和尾款的事实、以及美吉公司报销单上的签名均无异议。高某上诉认为，其虽在报销单上签名，但实际上未收到该笔款项，涉案设计合同签订时，美吉公司尚未成立，设计期间合同由高某和姜浪滔跟进，且正道功臣公司证明设计图案的知识产权及使用权归姜浪滔，因此，美吉公司不是涉案设计合同当事人。对此本院认为，美吉公司提供了初步证据证明高某和姜浪滔合作成立美吉公司、美吉公司报销高某支付的涉案设计首款的事实，姜浪滔与高某的行为系代表美吉公司，美吉公司的报销行为应视为美吉公司对其成立前的《委托设计合同书》的认可，是对涉案设计合同的追认。高某认为其未收到该笔款项，应提供证据加以证明，但高某未提供任何证据。即使美吉公司如高某所主张的未实际支付其支出的12000元的设计首款，但也未改变高某在美吉公司报销设计首款的性质。综上，高某的上诉主张证据不足，本院不予支持。原判决认定美吉公司为涉案合同的当事人并无不当，本院予以维持。

二、关于美吉公司对涉案专利是否享有所有权的问题

根据《中华人民共和国合同法》第三百三十九条第一款以及《中华人民共和国专利法》第八条的规定，对于委托开发完成的发明创造，合同当事人有约定的，应当按照约定确定权利归属。涉案委托设计合同第三条对涉案设计的知识产权进行了约定，明确："甲方在付清合同款项后，乙方所设计的作品版权和使用权由甲方所有"。正道功臣公司于2012年9月27日出具的证明亦证实其已收取涉案设计费用，知识产权以及使用权归合约方姜浪滔所有。姜浪滔亦确认其所从事的上述行为是代表美吉公司作出的。因此，根据合同当事人的约定，涉案设计的所有权以及包括版权在内的全部知识产权应归涉案委托设计合同委托方美吉公司所有，美吉公司享有对涉案设计申请专利的权利。高某在离职后以涉案设计申请外观设计专

广州美吉第六感卫生用品有限公司与高某、广州美茜日用品有限公司专利权权属纠纷二审民事判决书

利，侵犯了美吉公司申请专利的权利。原判决认定美吉公司享有涉案专利的知识产权理据充分，本院予以维持。

三、关于美茜日用品公司受让涉案专利是否属于善意取得的问题

本案中，高某对涉案专利不享有所有权，其转让行为属无权处分行为。高某曾是美茜日用品公司股东及总经理，本案证据显示，2013年5月13日姜浪滔向专利复审委员会提出无效宣告请求，2014年8月15日高某向美茜日用品公司转让涉案专利所有权。美茜日用品公司法定代表人方明端在一审庭审中亦明确表示其知晓高某与美吉公司之间存在涉案专利的权属纠纷。因此，现有证据足以证明美茜日用品公司在明知高某与美吉公司之间就涉案专利存在纠纷的情况下仍受让了涉案专利，美茜日用品公司主张该转让行为系善意取得缺乏证据证明。原判决认定美茜日用品公司的善意取得抗辩不符合法定条件，不予支持，并无不当，美茜日用品公司对此并未提出上诉。高某认为原判决认定美茜日用品公司受让涉案专利并非善意取得错误，理据不足，本院不予支持。

综上所述，原判决认定事实清楚，适用法律正确，依法应予维持。上诉人高某的上诉理由和请求均不成立，本院予以驳回。依照《中华人民共和国民事诉讼法》第一百七十条第一款第（一）项之规定，判决如下：

驳回上诉，维持原判。

二审案件受理费人民币500元，由上诉人高某负担。

本判决为终审判决。

审判长：邓燕辉

代理审判员：欧丽华

代理审判员：叶丹

二〇一六年七月六日

法官助理：张苏柳

书记员：郭少妍

扫一扫，手机阅读更方便