COBBLESTONE WIRELESS, LLC,

    Plaintiff,

    v.

APPLE INC.,

    Defendant.

Case No. 7:24-cv-00232-DC

**JURY TRIAL DEMANDED**

## DECLARATION OF MARK COHEN REGARDING CHINESE LAW

I, Mark Cohen, hereby declare:

1.  I have been retained by counsel for Defendant Apple Inc ("Apple") to submit this declaration addressing various aspects of Chinese law.

2.  I am being compensated $875 per hour for my time in preparing and revising this declaration, and providing consulting services regarding Chinese law. No part of my compensation depends on the outcome of this case.

## I.  QUALIFICATIONS AND EXPERIENCE

3.  My qualifications, including my educational background, career history, publications, and other relevant qualifications are recited in full in my curriculum vitae, which is attached as Ex. 1 to this declaration. My full publication list including congressional and other public testimony, books, articles, university lectures, and interviews are attached as Ex. 2 to this declaration.

4.  I currently serve as the Principal at China IP Strategies, LLC and have done so since 2023. In this role I advise government, companies, universities, and other

organizations on Chinese intellectual property including Chinese law, rules, regulations, and policy. In addition to this role, I serve as the Senior Technology Fellow for the Asia Society Northern California. I further have affiliated roles with a number of universities including the UC Berkeley Haas School of Business, the University of Akron School of Law/IP Policy Institute, UC San Diego, and the National Bureau of Asian Research. I have also served as a guest professor at Renmin (People's) University in the People's Republic of China.

5.	From 2017 through 2024, I served as a Lecturer in Law and as Director and Distinguished Senior Fellow at the Berkeley Center for Law and Technology at the University of California, Berkeley. At Berkeley, I taught Chinese Intellectual Property Law, and International Trade Law, and I led an initiative on intellectual property in Asia that focused on China.

6.	Between 2012 and 2018, I served at the United States Patent and Trademark Office as a Senior Advisor to the Undersecretary and Director. At the United States PTO, my responsibilities were to advise the Director and other PTO members on issues and strategies relating to Chinese intellectual property. I led a 21-member team focused on Chinese intellectual property made up of individuals in Washington, D.C. and in three cities in China.

7.	Between 2004 and 2008, I served as Senior Intellectual Property Attaché at the United States Embassy in Beijing, China. As a representative of the United States PTO, I supervised a staff and coordinated a United States Mission team, including representing the United States government in intellectual property maters at the World Trade Organization, World Intellectual Property Organization, and other bodies. I was the spokesperson for

United States Embassy on intellectual property issues in China. In this role I was the first United States PTO representative appointed to a foreign country. Prior to my position as Senior Intellectual Property Attaché, I was an Attorney-Advisor for the Office of Legislative and International Affairs at the PTO, where I led its China team. I was also responsible for establishing an Intellectual Property Working Group under the US-China Joint Commission on Commerce and Trade, as well as a Judicial Dialogue under that same Commission, in addition to organizing other bilateral committees and programs.

8. I have served in a variety of other positions related to researching and analyzing Chinese intellectual property law throughout my career. In my academic career, I have held academic positions at Fordham Law School in New York where I taught one of earliest Chinese IP classes at an American law school, and at the Barcelona College of Lawyers in Barcelona Spain, where I was a lecturer on Chinese Law. I have been a founding member for the past 12 years of the US-China IP Experts Dialogue along with former USPTO Director David Kappos, former CAFC Chief Judge Randall Rader and others, along with Chinese counterparts.

9. In my professional career, I served as Director, International IP Policy for both Microsoft in China and Microsoft Corporation in the United States. There I supported Microsoft's global intellectual property policies, with a focus on China. I have also worked for a number of law firms including Jones Day in Beijing, More & Bruce, and Mezzullo & McCandlish, P.C. In these professional roles I maintained a practice focusing on Chinese intellectual property laws and regulations.

10. I have testified before Congressional committees eleven times, including the Senate Judiciary Committee, the House Judiciary Committee, the House Ways and Means

Committee, the U.S.-China Economic and Security Review Commission and the Congressional Executive Commission on China. My testimony has focused on Chinese intellectual property law, U.S.-China trade relations, technology transfer, standards and licensing, antitrust, innovation policy, trade secrets, strategic competition, and the national security implications of emerging technologies.

11. In 2018, in recognition of my service, I was awarded the Presidential Rank Award (Silver) by President Donald Trump which is the highest award in the civil service from the United States government. I have also received numerous other awards from US government agencies and industry.

12. I speak and read Mandarin Chinese fluently, and I was qualified by U.S. State Department to serve as ad hoc interpreter/translator. In addition to my law degree from Columbia University, I also hold a Bachelor's degree in Chinese Studies and a Master's Degree in Chinese language and literature.

13. I have been informed that this dispute involves claims regarding U.S. Patent No. 8,891,347 ("the '347 patent"). While I am not a technical expert and I provide no technical opinions with respect to the '347 patent, I have reviewed relevant portions of the patent specification and the chain of recorded assignments to inform my analysis of the application of Chinese law and how it applies to determine the ownership of the '347 patent.

## II.    SUMMARY OF RELEVANT CHINESE PATENT LAW

14. The Patent Law of the People's Republic of China ("Chinese Patent Law") was first adopted in 1984 and has been in effect since then with various amendments occurring in 1992, 2000, 2008, and 2020.

15.     I understand that the relevant events in this case (including the patent filing date, grant date, and certain recorded assignment dates) occurred after the 2008 amendment but before the 2020 amendment.  Therefore, for purposes of this declaration, I have principally relied upon  the 2008 version of the Chinese Patent Law.  The Chinese language version of the 2008 Chinese Patent Law is available on the World International Property Organization ("WIPO") website as shown in Ex. 3.[1]  An English translation of the 2008 Chinese Patent Law is available on the WIPO website as shown in Ex. 4.  Note that while translations may be drawn from an official Chinese government source, the enacted Chinese text is the legally authoritative version.

16.     I have reviewed the 2008 Chinese Patent Law available on the WIPO website and I recognize it as a true and accurate translation of the 2008 Chinese Patent Law.  I have compared the WIPO English translation with the Chinese text and recognize it as an accurate English translation of the relevant provisions of the 2008 Patent Law. Further, I understand that the official Chinese Ministry of Commerce website[2] includes an English translation of the 2008 Patent Law that is identical to the WIPO English translation.

17.     Article 2 of the 2008 Chinese Patent Law defines "invention-creations" as "inventions, utility models and designs."  Ex. 4.  Article 2 defines "inventions" as "new technical solutions proposed for a product, a process or the improvement thereof."  Article 2 defines "utility models" as "new technical solutions proposed for the shape and structure of a product, or the combination thereof, which are fit for practical use."  Ex. 4.  Article 2 defines "designs" as "with respect to a product, new designs of the shape, pattern, or the

[1] https://www.wipo.int/wipolex/en/legislation/details/5484

[2] https://ipr.mofcom.gov.cn/zhuanti/jkblh/iplaws/patent/zlf.pdf

combination thereof, or the combination of the color with shape and pattern, which are rich in an aesthetic appeal and are fit for industrial application." Ex. 4. I understand that the '347 patent application covers an invention, utility model, and/or design such that it qualifies as an invention-creation under the 2008 Chinese Patent Law.

18. Article 6 of the 2008 Chinese Patent Law provides that "[a]n invention-creation that is accomplished in the course of performing the duties of an employee, or mainly by using the material and technical conditions of an employer shall be deemed an employment invention-creation." Ex. 4. Article 6 further confirms that "For an employment invention-creation, the employer has the right to apply for a patent. After such application is granted, the employer shall be the patentee." Ex. 4. I understand Article 6 to provide that, for a service invention-creation, the right to apply for a patent belongs to the employer and, upon grant, the employer is the patentee.

19. The Implementing Regulations of the Patent Law of the People's Republic of China ("Chinese Patent Law Implementing Regulations") were first adopted in 1985 and have remained in effect, as amended in 1992, 2001, 2010, and 2023. They were promulgated by China's State Council and are subordinate to the Constitution and national statutes but superior to local regulations and departmental and local government rules. The Chinese Patent Law Implementing Regulations constitute operative nationwide legal norms that are regularly applied by Chinese courts and administrative authorities.

20. I understand that the relevant events in this case occurred after the 2010 amendment but before the 2023 amendment. Therefore, for purposes of this declaration, I consider the 2010 version of the Chinese Patent Law Implementing Regulations to apply to the patent in suit. The Chinese language version of the 2010 Chinese Patent Law

6

Implementing Regulations is available on the World International Property Organization ("WIPO") website as shown in Ex. 5.[3] An English translation of the 2010 Chinese Patent Law Implementing Regulations is available on the WIPO website. I have reviewed that translation and recognize it as an accurate English translation of the relevant provisions of the 2010 Chinese Patent Law Implementing Regulations as shown in Ex. 6.

21. Section 12 of the 2010 Chinese Patent Law Implementing Regulations provides that "'A service invention-creation made by a person in the execution of tasks of the entity to which he belongs' referred to in Article 6 of the Patent Law means any invention-creation made: (1) in the course of performing his own duty; (2) in execution of any task, other than his own duty, which was entrusted to him by the entity to which he belongs; (3) within one year after the retirement, transfer from the entity to which he originally belongs or the labor and personnel relationship being terminated, where the invention-creation relates to his own duty or the other task entrusted to him by the entity to which he previously belonged." Ex. 6. Section 12 further holds that "'Material and technical means of the entity' referred to in Article 6 of the Patent Law mean the entity's money, equipment, spare parts, raw materials or technical materials which are not disclosed to the public." Ex. 6. I understand these provisions to govern the determination of whether an invention constitutes a service invention-creation under Article 6 of the Patent Law.

22. In addition to the statutory law in China, China's Supreme People's Court designates particular cases as "Guiding Cases" which contain authoritative judicial guidance that lower courts are expected to refer to in adjudicating similar cases. One such Guiding Case is Guiding Case No. 158: *Shenzhen Weibond Technology Co., Ltd. v. Jianyi*

---

[3] https://www.wipo.int/wipolex/en/legislation/details/6504

*Li, Shenzhen Distance Automation Equipment Co., Ltd.*, which concerned what qualifies as a service invention-creation under Article 6 of the Chinese Patent Law and Section 12 of the Chinese Patent Law Implementing Regulations.  Ex. 7.  The official Supreme People's Court website provides a report of the judgment in Guiding Case No. 158.  I have reviewed the report of judgment on Guiding Case No. 158 and a certified English translation thereof, and I find the English translation to be accurate.  Ex. 7.

23.     According to the Supreme People's Court's report on its decision on Guiding Case No. 158, "When determining whether an invention-creation falls under the 'related invention-creation' specified in Item (3) of Paragraph 1 of Section 12 of the Implementing Regulations of the Patent Law of the People's Republic of China, which is related to the original employer's regular duties or assigned tasks, the balance of interests among the original employer, the departing employee, and the new employer of the departing employee shall be safeguarded, and determination shall be made by comprehensively considering the following factors: 1. Specific contents of the regular duties undertaken or tasks assigned by the original employer to the departing employee; 2. Specific circumstances of the patent in dispute and its correlation with the regular duties or assigned tasks of the departing employee; 3. Whether the original employer carried out technical research and development activities related to the patent in dispute, or whether relevant technologies have other legitimate sources; 4. Whether the patentee and inventor of the patent application in dispute can provide reasonable explanations for the R&D process or technical origin of the patented technology."  Ex. 7.

24.     Based on Section 12 of the Chinese Patent Law Implementing Regulations as well as the report on Guiding Case No. 158, in my opinion, relevant factors as to whether

the invention was "an employment invention-creation," as defined by Article 6 of the 2008 Chinese Patent Law, would include factors relating to whether the invention was made in the course of the employment including factors such as when the invention occurred, what the employment entailed, and whether the invention related to the type of work done by the employee.

25.     I understand that the recorded inventor of the '347 patent was a Chinese professor, Mr. Xuefeng Yin, who was employed at a well-regarded Chinese university, Tongji University, at the time of '347 patent application, grant, and alleged assignment. Further, I understand that the '347 patent was issued during Mr. Yin's employment at the university and was related to the research, papers, and work that the professor performed in the course of his employment. Further, I understand that the Tongji University faculty page for Mr. Yin lists the '347 patent as one of the professor's accomplishments. In my opinion these are all considerations that a Chinese court would use to determine whether the invention was an employment invention-creation that properly belongs to Tongji University.

26.     Based on Article 6 of the 2008 Chinese Patent Law, Section 12 of the 2010 Chinese Patent Law Implementing Regulations, Guiding Case No. 158, and the facts that I understand to be true, including those described above, it is my opinion that the invention underlying the '347 patent qualifies as an employment invention-creation because it satisfies one or both of the statutory criteria set forth in Article 6 of the 2008 Chinese Patent Law. Under Article 6, the right to apply for a patent for an employment invention-creation belongs to the employer as a matter of law, and, upon grant, the employer becomes the patentee. Accordingly, it is my opinion that the right to apply for the '347 patent vested in

9

Tongji University and that, upon grant, Tongji University became the patentee. Professor Xuefeng Yin therefore did not possess the right to apply for the patent and, upon grant, did not own the patent. Consequently, he lacked authority under Chinese law to transfer ownership of the patent to another party.

Dated: July 8, 2026

_____
Mark Allen Cohen