# EXHIBIT 7

morningtrans.com

# TRANSLATION CERTIFICATION

Date: 2026/07/02

To whom it may concern:

This is to certify that the attached translation is an accurate representation of the documents received by this office. The translation was completed from:

- Chinese (PRC)

To:

- English (USA)

The documents are designated as:

- 'Guding Case 158 (Mandarin).pdf'

Samuel Wu, Managing Director of this company, attests to the following:
"To the best of my knowledge, the aforementioned documents are a true, full and accurate translation of the specified documents."

Signature of **Samuel Wu**, Managing Director

Questel Confidential: Limited External Use

299 South Main Street, Suite 1300
Salt Lake City, UT 84111

Case 724-cv-00232-DC   Document 156-33   Filed 07/08/26   Page 3 of 10

# Strive to Enable the People to Feel Fairness and Justice in Every Judicial Case

Tuesday, June 30, 2026     Good Evening!                            [Chinese Version] [English]      ✉ Log in to the Mail System      [Please Enter]

## 中华人民共和国最高人民法院
The Supreme People's Court of the People's Republic of China

| Homepage | New Era Studies | Organizational Setup | Court News | Authoritative Releases | Gazettes | Trial Business | Court Development | Government Service | Public Interaction | Circuit Courts |

Location: Homepage > Trial Business > Guiding Cases

# Guiding Case No. 158: Shenzhen Weibond Technology Co., Ltd. v. Jianyi Li, Shenzhen Distance Automation Equipment Co., Ltd., Dispute over Ownership of Patent Right

Source Release: Supreme People's Court    Release Time: 2021-07-30 09:31:47             Font size: ⊞ ⊟

Guiding Case No. 158

## Shenzhen Weibond Technology Co., Ltd. v. Jianyi Li,

## Shenzhen Distance Automation Equipment Co., Ltd., Dispute over Ownership of Patent Right

(Reviewed and Approved by the Judicial Committee of the Supreme People's Court, Released on July 23, 2021)

**Keywords** Civil Litigation / Ownership of Patent Right / Service Invention-Creation / Related Invention-Creation

### Key Points of Judgment

When determining whether an invention-creation falls under the "related invention-creation" specified in Item (3) of Paragraph 1 of Article 12 of the Implementing Regulations of the Patent Law of the People's Republic of China, which is related to the original employer's regular duties or assigned tasks, the balance of interests among the original employer, the departing employee, and the new employer of the departing employee shall be safeguarded, and determination shall be made by comprehensively considering the following factors: 1. Specific contents of the regular duties undertaken or tasks assigned by the original employer to the departing employee; 2. Specific circumstances of the patent in dispute and its correlation with the regular duties or assigned tasks of the departing employee; 3. Whether the original employer carried out technical research and development activities related to the patent in dispute, or whether relevant technologies have other legitimate sources; 4. Whether the patentee and inventor of the patent application in dispute can provide reasonable explanations for the R&D process or technical origin of the patented technology.

### Relevant Legal Provisions

Article 6 of the Patent Law of the People's Republic of China

Article 12 of the Implementing Regulations of the Patent Law of the People's Republic of China

### Basic Facts

Shenzhen Weibond Technology Co., Ltd. (hereinafter referred to as "Weibond") is a high-tech enterprise specializing in the research and development, manufacturing, sales, and after-sales service of hospital intravenous liquid dispensing robot series products and supporting equipment for liquid dispensing centers. Between February 2010 and July 2016, multiple patent applications filed by Weibond involved automatic medicine-dispensing equipment and devices. Among them, Patent No. 102847473A (hereinafter referred to as "Patent 473"), filed by Weibond on September 4, 2012, was mainly used for automatic liquid preparation in injection departments.

Jianyi Li joined the Production & Manufacturing Department of Weibond on September 24, 2012 and signed the Shenzhen Labor Contract and Employee Confidentiality Agreement with Weibond. He was appointed Director of the Production & Manufacturing Department, primarily responsible for R&D of products related to "infusion and medicine-dispensing robots." During his employment, Jianyi Li signed R&D Department Purchase Application Forms in his capacity as Department Manager and signed the review column of multiple technical drawings marked

"Controlled Document." The drawings covered designs for "sandwich composite needle assembly," "peristaltic pump infusion needle," "peristaltic pump upper cover connection plate test," "assembly body," "left clamping jaw," "right clamping jaw," "robot clamping jaw 1," "robot clamping jaw 2," and other series of automatic medicine-dispensing devices. In addition, work emails provided by Weibond showed that Jianyi Li received R&D test progress reports via email, arranged testing schedules, and put forward corresponding technical requirements for R&D tests. It can also be seen from the email records that Jianyi Li participated in multiple meetings discussing R&D schemes many times.

The labor relationship between Jianyi Li and Weibond terminated on April 17, 2013. On July 12, 2013, Jianyi Li filed an invention patent application titled "Automatic Intravenous Medicine Preparation Equipment and Swing Rotary Disc Medicine-Dispensing Device" with the State Intellectual Property Office, with Patent No. 201310293690.X (hereinafter referred to as the "Patent in Dispute"). Jianyi Li was the sole named inventor of the patent. The technical solution of the Patent in Dispute mainly relates to a medicine-dispensing device that uses robots to complete the whole preparation process of intravenous drugs. On February 5, 2016, Jianyi Li transferred the patent right of the Patent in Dispute to Shenzhen Distance Automation Equipment Co., Ltd. (hereinafter referred to as "Distance Automation"), an enterprise under his holding. Prior to joining Weibond, Jianyi Li held no academic certificates or work experience related to medical devices and equipment.

On December 8, 2016, Weibond filed a lawsuit with the court of first instance, claiming: 1. Confirmation that the invention patent right of the Patent in Dispute belongs to Weibond; 2. The order of Jianyi Li and Distance Automation to jointly compensate Weibond RMB 30,000 as reasonable expenses incurred for rights protection, and jointly bear the litigation fees.

### Judgment Result

On June 8, 2018, the Intermediate People's Court of Shenzhen, Guangdong Province issued Civil Judgment No. (2016) Yue 03 Min Chu No. 2829: 1. Confirming Weibond as the patentee of the Patent in Dispute; 2. Ordering Jianyi Li and Distance Automation to jointly pay Weibond RMB 30,000 as reasonable expenses. Dissatisfied with the judgment of first instance, Jianyi Li and Distance Automation filed an appeal with the Higher People's Court of Guangdong Province. On January 28, 2019, the Higher People's Court of Guangdong Province issued Civil Judgment No. (2018) Yue Min Zhong No. 2262, dismissing the appeal and upholding the original judgment. Still dissatisfied, Jianyi Li and Distance Automation filed an application for retrial with the Supreme People's Court. On December 30, 2019, the Supreme People's Court issued Civil Ruling No. (2019) Zui Gao Fa Min Shen No. 6342, dismissing the retrial application filed by Jianyi Li and Distance Automation.

### Reasons for Judgment

The core dispute of this case is whether the Patent in Dispute constitutes a service invention-creation completed by Jianyi Li during his employment at Weibond.

Article 6 of the Patent Law stipulates: "An invention-creation completed by performing tasks of an entity or mainly by utilizing the material and technical resources of the entity shall be a service invention-creation. The right to apply for a patent for a service invention-creation shall belong to the entity." Item (3) of Paragraph 1 of Article 12 of the Implementing Regulations of the Patent Law further stipulates: "Any invention-creation made within one year after retirement, transfer from the original employer, or termination of labor or personnel relations, which is related to the regular duties undertaken or tasks assigned by the original employer, shall be deemed a service invention-creation. "

Invention-creation is complex intellectual labor that relies on investment and support such as capital, technology, and R&D personnel, while bearing corresponding risks. When identifying service invention-creations involving departing employees, courts shall protect the legitimate rights and interests of original employers over scientific and technological achievements that truly belong to service inventions and shall encourage innovation-driven development. Meanwhile, the scope of "related invention-creation" under Item (3) of Paragraph 1 of Article 12 of the Implementing Regulations shall not be interpreted excessively broadly. An overbroad interpretation would improperly restrict the normal mobility of R&D personnel or their legitimate R&D activities at new employers, absent explicit legal provisions or contractual non-compete agreements. Therefore, to judge whether an invention-creation falls under the "related invention-creation" specified in Item (3) of Paragraph 1 of Article 12 of the Implementing Regulations, the balance of interests among the original employer, departing employee, and new employer shall be maintained, with comprehensive consideration of the following four factors: 1. Specific regular duties or assigned tasks of the departing employee at the original employer, including job responsibilities, authorities, and technical information related to the patent accessible, controllable, and obtainable by the employee; 2. Specific circumstances of the patent in dispute, including its technical field, technical problems to be solved, inventive purpose and technical effects, scope of protection defined by claims, substantive features over prior art, as well as its correlation with the employee's regular duties or assigned tasks; 3. Whether the original employer conducted R&D activities related to the patent in dispute or holds legitimate sources of relevant technologies; 4. Whether the patentee and inventor of the patent application can provide reasonable explanations for the R&D process or technical origin of the patent, including the complexity of the technical solution, required R&D investment, relevant knowledge, experience, skills, and material and technical resources possessed by the patentee and inventor, and evidence proving independent R&D activities.

Combining facts ascertained by the courts of first and second instance and evidence submitted by the retrial applicants, the court analyzes the core dispute based on the four factors above:

First, regarding the specific regular duties and assigned tasks performed by Jianyi Li during his employment at Weibond: 1. Jianyi Li served as Director of Production & Manufacturing Department at Weibond, directly responsible for R&D management of medicine-dispensing equipment and devices. He also acknowledged that he performed "R&D management work" in his retrial application. 2. During his employment with Weibond, Jianyi Li signed R&D procurement requisitions in his capacity as Department Manager and also signed in the review section of multiple technical drawings marked as "Controlled Document(s)," which are closely related to the patent in dispute. 3. Jianyi Li repeatedly participated in internal meetings and discussions concerning the R&D of automatic medication dispensing equipment and dispensing devices. He also received R&D test reports via email, assigned testing tasks, and set out corresponding technical requirements for the R&D tests. In summary, in light of the regular duties and assigned tasks undertaken by Jianyi Li during his employment at Weibond, he had direct access to, control over, and ability to obtain internal technical information of Weibond closely related to the research and development of automatic medication preparation equipment and dispensing devices, and such information was not common general knowledge, experience, or skills in this technical field.

Accordingly, the regular duties and assigned tasks undertaken by Jianyi Li at Weibond were closely relevant to the patented technology in

dispute. This Court rejects all grounds for retrial put forward by Jianyi Li, including that he merely conducted R&D management without participating in the R&D of intravenous dispensing devices at Weibond, and that the relevant evidence submitted by Weibond did not constitute essential documents truly related to research and development.

Second, regarding the specific circumstances of the patent in dispute and its correlation with the regular duties and assigned tasks of Jianyi Li: 1. The patent in dispute relates to "Automatic Intravenous Medicine Preparation Equipment and Swing Rotary Disc Medicine-Dispensing Device," which addresses the following technical problems: "1. Pharmacists bear heavy manual workload and can only work for a short period of time; 2. Uneven proficiency among pharmacists and the impossibility of mandatory fixed dispensing positions lead to unstable efficacy of prepared medicaments; 3. Chemotherapeutic agents pose severe health hazards to pharmacists." Its achieved technical effects are as follows: "The present invention adopts robots to complete the whole preparation process of intravenous injection medicaments and realizes precise control of medicament dosage through mechatronics integration, thus improving the quality of medicament preparation. Medical staff only need to pre-place medicament vials on the rotary worktable and mother liquid rack and finally take down the prepared mother liquid vials, which drastically reduces the manual workload of medical staff. For the preparation of medicaments harmful to human bodies (such as chemotherapeutic medicaments), pharmacists are not required to make direct contact with medicament vials; isolation tools are used to clamp and take out vials, which can substantially mitigate damage to human health caused by chemotherapeutic liquid medicines." Claim 1 of the granted and published patent in dispute mainly comprises components including a base, a rotary worktable, a plurality of vial clamps for fixing medicament vials, a fixture base, a rotary seat, a rotary transmission mechanism, a rotary motor, a backlight source and a visual sensor respectively arranged on both sides of the rear section of the rotary worktable, a robot, a clamping fixture, an infusion pump, an infusion tube, a needle fixing seat, a needle chuck, a front-rear swing plate, and a lifting mechanism. 2. Patent 473 filed by Weibond on September 4, 2012 is titled "Medicament Dispensing Method for Automatic Medicament Dispensing System and Automatic Medicament Dispensing System." It addresses the technical problem that "all medicament preparation in hospitals relies on manual operation by medical staff... such operation imposes heavy workload on medical staff, and certain toxic medicaments pose substantial threats to the safety of medical personnel." Its inventive purpose is: "To overcome the aforesaid deficiencies of the prior art and provide a medicament dispensing method for an automatic medicament dispensing system as well as the automatic medicament dispensing system. The system can realize automatic medicament dispensing without manual preparation of liquid medicaments by medical staff, greatly lowering the workload of medical staff and helping safeguard their health and safety." Its achieved technical effects are as follows: "The medicament dispensing method for an automatic medicament dispensing system and the automatic medicament dispensing system provided herein can rapidly complete preparation of multiple groups of liquid medicaments, boost dispensing efficiency, significantly reduce the workload of medical staff, and facilitate the protection of medical staff's health and safety." The specification of Patent 473 also discloses specific structures and attached drawings of components such as "liquid medicament input shaking device," "clamping assembly," "infusion hose loading, transferring, and liquid medicament distribution device," "ampoule breaking device," "mother liquid vial clamping device," "mother liquid vial," and "input rotary disc capable of accommodating multiple medicament vials at a time." By comparing the patent in dispute with Patent 473 of Weibond, the two patents basically address identical technical problems, share consistent inventive purposes and technical effects, and their technical solutions are highly interrelated. The Court of Second Instance properly held, based on the examination opinions of the patent in dispute and cited patent retrieval results, that Patent 473 constitutes a document capable of independently affecting the novelty or inventiveness of the claims of the patent in dispute. 3. The drawings submitted by Weibond relevant to the regular duties of Jianyi Li cover components closely associated with the patent in dispute, including "new cover of input module," "sandwich composite needle assembly," "peristaltic pump infusion needle," "peristaltic pump upper cover connection plate test," "assembly body," "left clamping jaw," "right clamping jaw," "robot clamping jaw 1," and "robot clamping jaw 2." All relevant drawings bear the seal of "Controlled Document" and carry the signature of Jianyi Li in the "Review" column. 4. Email correspondence between Jianyi Li and relevant staff of Weibond directly discussed R&D activities closely linked to the technical solution of the patent in dispute, such as rotary disc gripper design, mother liquid feeding schemes, and ampoule breaking tests. In summary, the patent in dispute bears a close connection to the regular duties and assigned tasks undertaken by Jianyi Li at Weibond.

Thirdly, Weibond carried out continuous research and development in the field of automatic intravenous medicament preparation equipment: Founded in 2002, Weibond engages in the research and development, manufacturing, sales, and after-sales service of hospital intravenous liquid dispensing robot series products and supporting equipment for liquid dispensing centers. Between February 2010 and July 2016, the Company filed more than 60 patents covering medical equipment, methods, and systems, among which 44 patents were filed prior to Jianyi Li's entry into the Company, including multiple patents related to automatic dispensing devices. Therefore, this Court rejects the ground for retrial raised by Jianyi Li that Weibond had completed the R&D of intravenous dispensing devices before his employment and that the patent in dispute does not constitute a service invention-creation.

Finally, regarding whether Jianyi Li and Distance Automation can provide a reasonable explanation for the R&D process or technical origin of the patent in dispute: According to the specification of the patent in dispute, the patent titled "Automatic Intravenous Medicine Preparation Equipment and Swing Rotary Disc Medicine-Dispensing Device" contains 13 pages of attached drawings and approximately 60 components, featuring a complex technical solution with high R&D difficulty. As the sole named inventor of the patent in dispute, Jianyi Li filed the patent in his personal name less than three months after resigning from Weibond, yet failed to provide a reasonable explanation for its technical R&D process or technical origin, which contradicts common sense. Furthermore, based on the findings of the Court of Second Instance, together with printed patent search webpages and self-compiled patent status summary tables submitted by Jianyi Li in the first instance, Jianyi Li, acting as inventor, first filed the patent in dispute and Utility Model Patent No. 201320416724.5 titled "Automatic Intravenous Medicine Preparation Equipment and Dispensing Device Equipped with Visual Sensors" on July 12, 2013. No evidence on record prior to that date proves that Jianyi Li possessed the knowledge and capacity to independently develop the technical solution of the patent in dispute.

In conclusion, after comprehensively weighing the relevant facts of this case and the evidence submitted by Jianyi Li and Distance Automation during the retrial proceedings, the Courts of First and Second Instance correctly ruled that the patent in dispute constitutes a service invention-creation completed by Jianyi Li during his employment at Weibond. All grounds for retrial submitted by Jianyi Li and Distance Automation are untenable.

(Judges for the effective judgment: Weike Du, Rong Wu, Lingling Zhang)

## Related Reports

- Guiding Case No. 279: Xi Industrial Software Co., Ltd. v. Guangzhou Wo Mould Co., Ltd.

- Guiding Case No. 277: Jiangsu Hong Rotary Compensator Technology Co., Ltd. v. Jiangsu...

- Guiding Case No. 275: Jiangsu Jin Seed Industry Technology Co., Ltd. v. Jiangsu Qin...

- Guiding Case No. 273: Zhejiang Ji Holding Group Co., Ltd., Zhejiang Ji Automobile...

- Guiding Case No. 271: Qun Wang Dangerous Driving Case

- Guiding Case No. 278: Fujian Heng Technology Co., Ltd. v. Quanzhou Ri Flowmeter...

- Guiding Case No. 276: Nuo Co., Ltd. v. State Intellectual Property Office...

- Guiding Case No. 274: Qingdao Qing Heavy Industry Co., Ltd. v. Qingdao Chen Machinery Equipment...

- Guiding Case No. 272: Ai et al. Dangerous Driving Case

- Guiding Case No. 270: Ming Cheng Dangerous Driving Case

| People's Daily Online | Gov.cn | NPC.gov.cn | CPPCC Website | China Court Network | Supreme People's Procuratorate |

National People's Tribunal Information Network　　|　　People's Court Litigation Asset Network

Address: No.27 Dongjiaomin Lane, Dongcheng District, Beijing　　　Postal Code: 100745　　　Switchboard: 67550114　　　Report Hotline: 67556131

All Rights Reserved © Supreme People's Court of the People's Republic of China

Beijing Public Security Network Security Record No. 11040102700145　|　Beijing ICP Registration No. 05023036

Case 7:24-cv-09282-DC Document 156-33 Filed 07/08/26 Page 7 of 10



努力让人民群众在每一个司法案件中感受到公平正义

2026年06月30日 星期二 晚上好！　　　　　　　　　　　　　　　　　　　　[ 中文版 ] [ English ]　　　📧 登录邮箱系统　　　请输入

## 中华人民共和国最高人民法院
### The Supreme People's Court of the People's Republic of China

🏠 **首页**　　学习新时代　　机构设置　　法院资讯　　权威发布　　公报　　**审判业务**　　法院建设　　办事服务　　公众互动　　巡回

所在位置：首页 ＞ 审判业务 ＞ 指导性案例

# 指导案例158号：深圳市卫邦科技有限公司诉李坚毅、深圳市远程智能设备有限公司权属纠纷案

来源：最高人民法院　　发布时间：2021-07-30 09:31:47　　　　　　　　　　　　　字号：🔲 🔲

指导案例158号

**深圳市卫邦科技有限公司诉李坚毅、**

**深圳市远程智能设备有限公司专利权权属纠纷案**

（最高人民法院审判委员会讨论通过 2021年7月23日发布）

**关键词** 民事/专利权权属/职务发明创造/有关的发明创造

**裁判要点**

判断是否属于专利法实施细则第十二条第一款第三项规定的与在原单位承担的本职工作或者原单位分配的任务"有关的发明创造重维护原单位、离职员工以及离职员工新任职单位之间的利益平衡，综合考虑以下因素作出认定：一是离职员工在原单位承担的本职位分配的任务的具体内容；二是涉案专利的具体情况及其与本职工作或原单位分配的任务的相互关系；三是原单位是否开展了与涉案技术研发活动，或者有关的技术是否具有其他合法来源；四是涉案专利（申请）的权利人、发明人能否对专利技术的研发过程或者来解释。

**相关法条**

《中华人民共和国专利法》第6条

《中华人民共和国专利法实施细则》第12条

**基本案情**

深圳市卫邦科技有限公司（以下简称卫邦公司）是一家专业从事医院静脉配液系列机器人产品及配液中心相关配套设备的研发、及售后服务的高科技公司。2010年2月至2016年7月期间，卫邦公司申请的多项专利均涉及自动配药设备和配药装置。其中，卫邦公9月4日申请的102847473A号专利（以下简称473专利）主要用于注射科药液自动配置。

李坚毅于 2012 年 9 月 24 日入职卫邦公司生产、制造部门，并与卫邦公司签订《深圳市劳动合同》《员工保密合同》，约定由该公司生产制造部门总监，主要工作是负责研发"输液配药机器人"相关产品。李坚毅任职期间，曾以部门经理名义在研发部门采购

字，在多份加盖"受控文件"的技术图纸审核栏处签名，相关技术图纸内容涉及"沙窝复合针装配""蠕动泵输液针""蠕动泵上盖验""装配体""左夹爪""右夹爪""机械手夹爪1""机械手夹爪2"等，系有关自动配药装置的系列设计图。此外，卫邦公司提件显示，李坚毅以工作邮件的方式接收研发测试情况汇报，安排测试工作并对研发测试提出相应要求。且从邮件内容可知，李坚毅多方案的会议讨论。

李坚毅与卫邦公司于 2013 年 4 月 17 日解除劳动关系。李坚毅于 2013 年 7 月 12 日向国家知识产权局申请名称为"静脉用药备和摆动型转盘式配药装置"、专利号为 201310293690.X的发明专利(以下简称涉案专利)。李坚毅为涉案专利唯一的发明人。涉案案的主要内容是采用机器人完成静脉注射用药配制过程的配药装置。李坚毅于 2016 年 2 月 5 日将涉案专利权转移至其控股的深圳市备有限公司（以下简称远程公司）。李坚毅在入职卫邦公司前，并无从事与医疗器械、设备相关的行业从业经验或学历证明。

卫邦公司于2016年12月8日向一审法院提起诉讼，请求：1.确认涉案专利的发明专利权归卫邦公司所有；2.判令李坚毅、远程公司卫邦公司为维权所支付的合理开支30000元，并共同承担诉讼费。

**裁判结果**

广东省深圳市中级人民法院于2018年6月8日作出（2016）粤 03 民初 2829 号民事判决：一、确认卫邦公司为涉案专利的专利权坚毅、远程公司共同向卫邦公司支付合理支出 3万元。一审宣判后，李坚毅、远程公司不服，向广东省高级人民法院提起上诉。广东法院于2019年1月28日作出（2018）粤民终2262号民事判决：驳回上诉，维持原判。李坚毅、远程公司不服，向最高人民法院申请人民法院于2019年12月30日作出（2019）最高法民申6342号民事裁定，驳回李坚毅和远程公司的再审申请。

**裁判理由**

最高人民法院认为：本案的争议焦点为涉案专利是否属于李坚毅在卫邦公司工作期间的职务发明创造。

专利法第六条规定："执行本单位的任务或者主要是利用本单位的物质技术条件所完成的发明创造为职务发明创造。职务发明创的权利属于该单位。"专利法实施细则第十二条第一款第三项进一步规定："退休、调离原单位后或者劳动、人事关系终止后1年内他其在原单位承担的本职工作或者原单位分配的任务有关的发明创造属于职务发明创造。"

发明创造是复杂的智力劳动，离不开必要的资金、技术和研发人员等资源的投入或支持，并承担相应的风险。在涉及与离职员工发明创造的认定时，既要维护原单位对确属职务发明创造的科学技术成果享有的合法权利，鼓励和支持创新驱动发展，同时也不宜将细则第十二条第一款第三项规定的"有关的发明创造"作过于宽泛的解释，导致在没有法律明确规定或者竞业限制协议等合同约定的适当地限制研发人员的正常流动，或者限制研发人员在新的单位合法参与或开展新的技术研发活动。因此，在判断涉案发明创造是否实施细则第十二条第一款第三项规定的"有关的发明创造"时，应注重维护原单位、离职员工以及离职员工新任职单位之间的利益平虑以下因素：一是离职员工在原单位承担的本职工作或原单位分配的任务的具体内容，包括工作职责、权限，能够接触、控制、获取利有关的技术信息等。二是涉案专利的具体情况，包括其技术领域，解决的技术问题，发明目的和技术效果，权利要求限定的保护范利相对于现有技术的"实质性特点"等，以及涉案专利与本职工作或原单位分配任务的相互关系。三是原单位是否开展了与涉案专利研发活动，或者是否对有关技术具有合法的来源。四是涉案专利（申请）的权利人、发明人能否对于涉案专利的研发过程或者技术来解释，相关因素包括涉案专利技术方案的复杂程度，需要的研发投入，以及权利人、发明人是否具有相应的知识、经验、技能或物质是否有证据证明其开展了有关研发活动等。

结合本案一、二审法院查明的有关事实以及再审申请人提交的有关证据，围绕前述四个方面的因素，就本案争议焦点认定如下：

首先，关于李坚毅在卫邦公司任职期间承担的本职工作或分配任务的具体内容。第一，李坚毅于卫邦公司任职期间担任生产制造从事配药设备和配药装置的研发管理等工作。其在再审申请书中，也认可其从事了"研发管理工作"。第二，李坚毅在卫邦公司任职部门经理名义，在研发部门采购申请表上签字，并在多份与涉案专利技术密切相关且加盖有"受控文件"的技术图纸审核栏处签字。毅多次参与卫邦公司内部与用药自动配药设备和配药装置技术研发有关的会议或讨论，还通过电子邮件接收研发测试情况汇报，安排并对研发测试提出相应要求。综上，根据李坚毅在卫邦公司任职期间承担的本职工作或分配的任务，其能够直接接触、控制、获取卫与用药自动配制设备和配药装置技术研发密切相关的技术信息，且这些信息并非本领域普通的知识、经验或技能。因此，李坚毅在卫

的本职工作或分配的任务与涉案专利技术密切相关。对于李坚毅有关其仅仅是进行研发管理，没有参与卫邦公司有关静脉配药装置的卫邦公司的相关证据都不是真正涉及研发的必要文件等相关申请再审理由，本院均不予支持。

其次，关于涉案专利的具体情况及其与李坚毅的本职工作或分配任务的相互关系。第一，涉案专利涉及"静脉用药自动配制设备盘式配药装置"，其针对的技术问题是："1.药剂师双手的劳动强度很大，只能进行短时间的工作；2.由于各药剂师技能不同、配制□强制固定，造成所配制的药剂药性不稳定；3.化疗药剂对药剂师健康危害较大。"实现的技术效果是："本发明采用机器人完成静脉整个配制过程，采用机电一体化来控制配制的药剂量准确，提高了药剂配制质量；医务人员仅需要将预先的药瓶装入转盘工作盘和母将配制好的母液瓶取下，极大地减少了医务人员双手的劳动强度；对人体有害的用药配制（比如化疗用药），由于药剂师可以不直接采用隔离工具对药瓶进行装夹和取出，可以很大程度地减少化疗药液对人体的健康损害。"在涉案专利授权公告的权利要求1中，主要座、转盘工作台、若干个用于固定药瓶的药瓶夹、具座、转盘座、转盘传动机构和转盘电机、近后侧的转盘工作台两边分别设有背光感器、机器人、夹具体、输液泵、输液管、针具固定座、针具夹头、前后摆动板、升降机构等部件。第二，卫邦公司于2012年9月4□专利的名称为"自动化配药系统的配药方法和自动化配药系统"，其针对的技术问题是："医院中配制药物的方式均通过医护人员手作。……操作时医护人员工作强度高，而且有的药物具有毒性，对医护人员的安全有着较大的威胁。"发明目的是："在于克服上述不足，提供一种自动化配药系统的配药方法和自动化配药系统，其可实现自动配药，医护人员无需手动配制药液，大大降低了医护人度，有利于保障医护人员的健康安全。"实现的技术效果是："提供一种自动化配药系统的配药方法和自动化配药系统，其可快速完的配制，提高了配药的效率，大大降低了医护人员的劳动强度，有利于保障医护人员的健康安全。"473专利的说明书中，还公开了摇匀装置""卡夹部件""输液软管装填移载及药液分配装置""用于折断安瓿瓶的断瓶装置""母液瓶夹持装置""母液瓶""可个药瓶的输入转盘"等部件的具体结构和附图。将涉案专利与卫邦公司的473专利相比，二者解决的技术问题、发明目的、技术效果二者技术方案高度关联。二审法院结合涉案专利的审查意见、引证专利检索，认定473专利属于可单独影响涉案专利权利要求的新颖的文件，并无不当。第三，在卫邦公司提供的与李坚毅的本职工作有关的图纸中，涉及"输入模块新盖""沙窝复合针装配""蠕动针""蠕动泵上盖连接板实验""装配体""左夹爪""右夹爪""机械手夹爪1""机械手夹爪2"等与涉案专利密切相关的部件，均加盖"受控文件"章，在"审核"栏处均有李坚毅的签字。第四，在李坚毅与卫邦公司有关工作人员的往来电子邮件中，讨论的内转盘抱爪、母液上料方案、安瓿瓶掰断测试等与涉案专利技术方案密切相关的研发活动。综上，涉案专利与李坚毅在卫邦公司承担的分配的任务密切相关。

再次，卫邦公司在静脉用药自动配制设备领域的技术研发是持续进行的。卫邦公司成立于2002年，经营范围包括医院静脉配液系产品及配液中心相关配套设备的研发、制造、销售及售后服务。其在2010年2月至2016年7月期间先后申请了60余项涉及医疗设备、的专利，其中44项专利是在李坚毅入职卫邦公司前申请，且有多项专利涉及自动配药装置。因此，对于李坚毅主张卫邦公司在其入职了静脉配药装置研发工作，涉案专利不属于职务发明创造的相关申请再审理由，本院不予支持。

最后，关于李坚毅、远程公司能否对涉案专利的研发过程或者技术来源作出合理解释。根据涉案专利说明书，涉案专利涉及"静配制设备和摆动型转盘式配药装置"，共有13页附图，约60个部件，技术方案复杂，研发难度大。李坚毅作为涉案专利唯一的发明人卫邦公司后不到3个月即以个人名义单独申请涉案专利，且不能对技术研发过程或者技术来源做出合理说明，不符合常理。而且，根□的认定，以及李坚毅一审提交的专利搜索网页打印件及自制专利状况汇总表，李坚毅作为发明人，最早于2013年7月12日申请了涉案201320416724.5号"静脉用药自动配制设备和采用视觉传感器的配药装置"实用新型专利，而在此之前，本案证据不能证明李坚毅立研发涉案专利技术方案的知识水平和能力。

综上，综合考虑本案相关事实以及李坚毅、远程公司再审中提交的有关证据，一、二审法院认定涉案专利属于李坚毅在卫邦公司职务发明创造并无不当。李坚毅、远程公司的申请再审理由均不能成立。

（生效裁判审判人员：杜微科、吴蓉、张玲玲）

## 相关报道

- 指导性案例279号：西某工业软件有限公司诉广州沃某模具有…
- 指导性案例278号：福建恒某科技有限公司诉泉州日某流量仪…
- 指导性案例277号：江苏宏某旋转补偿器科技有限公司诉江苏…
- 指导性案例276号：诺某股份有限公司诉国家知识产权局、第…
- 指导性案例275号：江苏省金某种业科技有限公司诉江苏亲某…
- 指导性案例274号：青岛青某重工有限公司诉青岛晨某机械设…
- 指导性案例273号：浙江吉某控股集团有限公司、浙江吉某汽…
- 指导性案例272号：艾某等危险驾驶案
- 指导性案例271号：王某群危险驾驶案
- 指导性案例270号：成某明危险驾驶案

| 中国共产党新闻网 | | 中国政府网 | | 中国人大网 | | 中国政协网 | | 中国法院网 | | 最高人民检察院 |

全国人民法庭信息网 | 人民法院诉讼资产网

地址：北京市东城区东交民巷27号　邮编：100745　总机：67550114　举报电话：67556131

中华人民共和国最高人民法院 版权所有

🚨京公网安备 11040102700145号 | 京ICP备05023036号