FILED UNDER SEAL

REDACTED PUBLIC VERSION

**UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF TEXAS**

**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| COBBLESTONE WIRELESS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Case No. 7:24-cv-00232-DC<br><br>JURY TRIAL DEMANDED |

**COBBLESTONE'S RESPONSE TO APPLE'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12 FOR LACK OF SUBJECT-MATTER JURISDICTION**

FILED UNDER SEAL
REDACTED PUBLIC VERSION

## TABLE OF CONTENTS


I. Introduction: Apple Frivolously Reargues What Apple Already Lost On ........................ 1

II. Legal Standard ........................ 2

A. U.S. Laws ........................ 2

1. Article III standing arises from owning an infringed patent ........................ 3

2. Nothing remains for consideration under the Rule 12(b)(1) standard ........................ 4

B. Chinese Laws ........................ 4

1. Apple/Tongji has the burden of proof ........................ 4

2. The Chinese service invention framework: Article 6 ........................ 5

3. Rule 12 elaborates on Article 6 service inventions made [1] "in the course of performing the duties" ........................ 5

4. Article 6 service inventions made [2] "mainly by using the material and technical conditions" 6

5. Chinese case SPC 1848 provides direct guidance ........................ 6

6. The "related to" factors apply only to departed employees ........................ 8

7. Chinese Bona Fide Purchaser Protections and Remedies ........................ 8

III. Timeline of Facts ........................ 8

IV. Argument ........................ 12

A. Cobblestone Has Shown That Dr. Yin Owned The '347 Patent—Not Tongji ..... 12

1. Apple automatically loses under the Rule 12(b)(1) standard after losing under the summary judgment standard ........................ 12

2. Cobblestone has shown that Dr. Yin owned the '347 Patent ........................ 13

3. Apple cannot prevail under U.S. law ........................ 15

4. Apple cannot carry its burden of proof under Chinese law ........................ 16

5. No Chinese remedy retroactively transfers title to Tongji University ............. 18

B. Apple's Chinese Export Control Theory Is Frivolous ........................ 19

V. Conclusion ........................ 20

FILED UNDER SEAL
REDACTED PUBLIC VERSION

# TABLE OF AUTHORITIES

**Cases**

*A.L.M. Holding Co. v. Zydex Indus. Priv. Ltd.*,
176 F.4th 1326 (Fed. Cir. 2026) ............ 3

Akazawa v. Link New Tech. Int'l, Inc.,
520 F.3d 1354 (Fed. Cir. 2008) ............ 3

*Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*,
563 U.S. 776 (2011) ............ 2

*Christianson v. Colt Indus. Operating Corp.*,
486 U.S. 800 (1988) ............ 12

*Int'l Nutrition Co. v. Horphag Rsch. Ltd.*,
257 F.3d 1324 (Fed. Cir. 2001) ............ 3

*Intellectual Tech LLC v. Zebra Techs. Corp.*,
101 F.4th 807 (Fed. Cir. 2024) ............ 3

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ............ 3

*Omni MedSci, Inc. v. Apple Inc.*,
7 F.4th 1148 (Fed. Cir. 2021) ............ 18

*Ramming v. United States*,
281 F.3d 158 (5th Cir. 2001) ............ 4, 13, 15

*SiRF Tech., Inc. v. Int'l Trade Comm'n*,
601 F.3d 1319 (Fed. Cir. 2010) ............ 4, 12

*Williamson v. Tucker*,
645 F.2d 404 (5th Cir.1981) ............ 4, 12, 15

**Statutes**

35 U.S.C. § 153 ............ 19

35 U.S.C. § 154(a)(1) ............ 3

35 U.S.C. § 261 ............ 3

35 U.S.C. § 271 ............ 19

**Rules**

F.R.C.P. 12 ............ *passim*.

F.R.C.P. 37(c)(1) ............ 15

F.R.C.P. 44.1 ............ 15

FILED UNDER SEAL
REDACTED PUBLIC VERSION

F.R.E. 702 .......... 16, 20

**Treatises**

U.S. Const. art. 1, § 8, cl. 8 .......... 2

**Chinese Laws and Cases**

2008 Patent Law Article 6 .......... 4

2008 Patent Law Article 7 .......... 4

2008 Patent Law Article 72 .......... 4

2010 Implementing Regulations, Rule 12 .......... 5

Chinese Civil Procedure Law .......... 4, 16

Chinese Property Law .......... 8, 19

*Shenzhen Weibond Technology Co., Ltd. v. Jianyi Li, Shenzhen Distance Automation Equipment Co., Ltd.*,
(2021) Zui Gao Fa Zhi Ming Zhong No. 158 .......... 8

*Zhengzhou Xincai Tech. Co., Ltd. v. Song Junli*,
(2020) Zui Gao Fa Zhi Min Zhong No. 1848 .......... 4, 6, 18

## I. Introduction: Apple Frivolously Reargues What It Already Lost

Apple's belated Motion to Dismiss Pursuant to Rule 12(b)(1) (hereafter "Rule 12 Motion") frivolously re-raises the same standing arguments that Apple lost on just two days prior to its filing, in a transparent effort to delay trial. This Court's omnibus pretrial order found that Apple had not "raised a material issue of fact as to Article III" on summary judgment, even when all facts were viewed in the light most favorable to Apple as the non-moving party. Dkt. 166 at 1–2. The Rule 12 Motion rehashes the same facts and arguments this Court already rejected. Apple has somehow interpreted the Court's ruling as an order that Apple "must present this issue [again] to the Court as a 12(b)(1) motion." Dkt. 190 at 3. Ultimately, Apple's Rule 12 Motion relies on attorney speculation, not evidence. The evidence shows conclusively that Cobblestone is the rightful owner of the asserted patent, and that Tongji University never had rights to Dr. Yin's invention.

The Rule 12 Motion fails at every turn. *First*, Chinese law does not govern the ownership of U.S. patents. *Second*, the standard for Rule 12(b)(1) does not allow Apple to win its motion after Apple just lost a summary judgment motion on the same issue. *Third*, the evidence shows that Dr. Yin, through [redacted] by third-party Empire, and Dr. Yin then developed the invention on his own time, [redacted] not in the course of any duty to his employer, Tongji University. Such evidence includes the recorded assignments, Empire's testimony, records as to Shanghai SAGE, and Empire-produced documents, including materials that clearly disprove Apple's baseless speculation that Dr. Yin's invention was part of his role at Tongji University. *Fourth*, even if Chinese law applied, Cobblestone's Chinese law experts Yuan Ma and Eunice Wu explain how Apple's Chinese law "experts" have either ignored the literal language of Chinese laws or misapplied Chinese cases. Yuan Ma explains that the technology in Cobblestone's '347 Patent was never subject to Chinese export controls, and even

if it was, [redacted] Dkt. 199. Eunice Wu explains numerous problems with Apple's other Chinese-law theories, including 1) that Apple has no evidence to support its speculations about Tongji ownership, 2) correcting the factual record, 3) explaining that under a proper application of Chinese law, the '347 Patent is not a service invention of Tongji University, and 4) even if it was, subsequent *bona fide* purchasers still have title to the '347 Patent. Dkt. 200.

The Court should deny Apple's Motion for the same reasons it did "not find that Apple has raised a material issue of fact as to Article III" (Dkt. 166 at 1–2), explicitly find Apple's Chinese law experts unreliable under *Daubert*, and impose sanctions on Apple for frivolously filing this Rule 12 Motion to delay trial. *See* Dkt. 193 at 5.

## II. Legal Standard

### A. U.S. Laws

China has no power to legislate ownership of U.S. Patents. Only "Congress shall have the Power . . . To promote the Progress of Science and useful Arts, by securing for limited Times **to Authors and Inventors** the exclusive Right to their respective Writings and Discoveries." U.S. Const. art. I, § 8, cl. 8.[1] Congress enacted 35 U.S.C. § 101 such that "**[w]hoever invents or discovers** any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor." Congress and the Constitution award patents to inventors, not to their employers or to the universities of foreign countries. *Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 563 U.S. 776, 785–86 (2011) (unless there is an agreement to the contrary, an employer does not have rights in an invention "which is the original conception of the employee alone").

[1] All emphasis is added herein, unless otherwise noted.

Patent rights "shall be assignable in law by an instrument in writing," and Congress legislated that the "applicant, patentee, or his assigns or legal representatives may in like manner grant and convey an exclusive right under his application for patent, or patents." 35 U.S.C. § 261; 35 U.S.C. § 154(a)(1) (granting patent to "the patentee, his heirs or assigns"). Because U.S. laws allow a patent owner to "assign" their patents, foreign laws may affect downstream assignments. *See, e.g.*, *Akazawa v. Link New Tech. Int'l, Inc.*, 520 F.3d 1354 (Fed. Cir. 2008) (applying Japanese inheritance law to determine the patent owner's assignment of rights permitted by 35 U.S.C. § 261); *Int'l Nutrition Co. v. Horphag Rsch. Ltd.*, 257 F.3d 1324, 1330 (Fed. Cir. 2001) (applying French law to interpret contractual assignment of U.S. patent due to forum clause selecting Bordeaux, France). However, such cases about downstream assignments do not give foreign countries the power to unilaterally override the constitutional inception of patent title *against* the will of an inventor—which is what Apple asserts Chinese law does. Giving China legislative power to take ownership of U.S. patents would give China the power to seek devastating technological injunctions and cripple this country's technological development.

**1. Article III standing arises from owning an infringed patent**

Cobblestone has constitutional standing because it owns the '347 Patent. The party invoking federal jurisdiction bears the burden of establishing the elements of Article III standing, including an injury in fact, traceability, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). In a patent case, that burden is discharged by a showing of owning allegedly infringed exclusionary patent rights. *A.L.M. Holding Co. v. Zydex Indus. Priv. Ltd.*, 176 F.4th 1326, 1332 (Fed. Cir. 2026) (quoting *Intellectual Tech LLC v. Zebra Techs. Corp.*, 101 F.4th 807, 816 (Fed. Cir. 2024)). "The recording of an assignment with the PTO … creates a presumption of validity as to the assignment and places the burden to rebut such a showing on one challenging the

assignment." *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1327–28 (Fed. Cir. 2010). Cobblestone met its burden when it produced the assignment record for the '347 Patent, which is entitled to a presumption of validity. Dkt. 109-1 at 1–5; Dkt. 109-2 at 1–8; Dkt. 109-6.

#### 2. Nothing remains for consideration under the Rule 12(b)(1) standard

District courts may decide a motion to dismiss for subject matter jurisdiction based on: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted ***only if it appears certain that the plaintiff cannot prove any set of facts*** in support of his claim that would entitle plaintiff to relief." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Otherwise, it should be denied. *See id.*

### B. Chinese Laws

The Wu Declaration (Dkt. 200) explains how Chinese laws apply, including: 2008 Patent Law Articles 6, 7, and 72, Chinese Civil Procedure Law, *Zhengzhou Xincai Tech. Co., Ltd. v. Song Junli*, (2020) Zui Gao Fa Zhi Min Zhong No. ("SPC 1848," Wu Ex. 2), and *bona-fide* purchaser rights. The Ma Declaration (Dkt. 199) explains Chinese export laws and Civil Procedure Law.

#### 1. Apple/Tongji has the burden of proof

Under Chinese Civil Procedure, "it is the duty of a party to an action to provide evidence in support of his allegations; otherwise, he shall bear the adverse consequences of failure of proof." Dkt. 200 ¶ 45 (citing Wu Ex. 2 at 40). In the context of service invention disputes, "the burden of proof cannot simply be placed on the inventor." Dkt. 200 ¶ 46 (citing Wu Ex. 2 at 39–40). This is because "[t]he party claiming the alteration or extinction of a legal relationship … shall bear the burden of proof for the basic facts concerning the alteration or extinction." Dkt. 199 ¶¶ 31–32 (citing Article 91 of Chinese Civil Procedure, Ma. Ex. 12B). So, Apple has the burden of proof.

FILED UNDER SEAL
REDACTED PUBLIC VERSION

**2. The Chinese service invention framework: Article 6**

If Chinese law applied, both parties' experts agree it would be Article 6 of the 2008 Patent Law. Dkt. 200 ¶¶ 23–26. Article 6 states:

> An invention-creation [1] that is accomplished in the course of performing the duties of an employee, or [2] mainly by using the material and technical conditions of an employer shall be deemed an employment invention-creation.
>
> For an employment invention-creation, the employer has the right to apply for a patent. After such application is granted, the employer shall be the patentee.
>
> For a non-employment invention-creation, the inventor or designer has the right to apply for a patent. After such application is granted, the said inventor or designer shall be the patentee.

*Id.* (citing Dkt. 156-4) (brackets added). Notably, Article 6 has two alternative prerequisites for deeming an invention to be an employment invention-creation (referred to as a "service invention"): [1] those made in the course of performing the duties of an employee, and [2] those made "mainly by using the material and technical conditions of an employer." *Id.*

**3. Rule 12 elaborates on Article 6 service inventions made [1] "in the course of performing the duties"**

As to prerequisite [1], those "made in the course of performing the duties of an employee," 2010 Implementing Regulations, Rule 12 further explains that:

> "A service invention-creation made by a person in the execution of tasks of the entity to which he belongs" referred to in Article 6 of the Patent Law means any invention-creation made
>
> (1) in the course of performing his own duty;
>
> (2) in execution of any task, other than his own duty, which was entrusted to him by the entity to which he belongs; or
>
> (3) within one year after retirement, transfer from the entity to which he originally belongs or the labor and personnel relationship being terminated, where the invention-creation relates to his own duty or another task entrusted to him by the entity to which he previously belonged.

Dkt. 200 ¶¶ 31–33 (citing Dkt. 156-6 at 3). Items (1) and (2) of Rule 12 apply to present employees, and an employer must prove the invention was made *in the course or execution* of a duty or another task entrusted to the employee by the employer. Dkt. 200, Wu Decl., ¶¶ 32–33. This is a very

FILED UNDER SEAL
REDACTED PUBLIC VERSION

exacting standard. *See* Section II.B.5, below (discussing example case SPC 1848). Item (3) of Rule 12 applies a looser regulation to departing employees for 1 year, such that the invention need only "relates to" his previous duty or previous employer-assigned task. The looser "relates to" standard for item (3) of Rule 12 does not apply here because Dr. Yin is still employed by Tongji.

#### 4. Article 6 service inventions made [2] "mainly by using the material and technical conditions"

For a service invention to be made "mainly by using the material and technical conditions of an employer shall be deemed an employment invention-creation," the word "mainly" requires Apple to prove that an employer's qualifying inputs like money, equipment, or confidential information ***substantively*** and ***predominantly*** produced the invention. Dkt. 200, Wu Decl. ¶¶ 38–41, 78–81. The employer's resources and confidential information must result in the "substantive features of the patented solution," not just provide a background problem. *Id.* ¶¶ 84–88.

#### 5. Chinese case SPC 1848 provides direct guidance

In Supreme People's Court case *Zhengzhou Xincai Technology Co., Ltd. v. Song Junli*, (2020) Zui Gao Fa Zhi Min Zhong No. 1848[2] ("SPC 1848"), the Supreme People's Court warned against "allowing the entity to reap an 'unexpected windfall' merely based on an employment relationship, thereby leading to adverse consequences that strike at the inventor's enthusiasm for invention and fundamentally stifle independent innovation." Dkt. 197-20, Wu Ex. 2 at 23, 39. The Court rejected an employer's Article 6 "service invention" claim to its employee's patent, despite the employer presenting far stronger evidence than Apple. *Id.* at 39–43.

There, an equipment-maintenance employee personally patented an improved microwave expansion furnace for making graphene. *Id.* at 38. The inventor's "main work position was

[2] SPC 1848 is a Reference Case that is *highly* persuasive authority because Chinese courts are ***required*** to search for and refer to such reference cases when making decisions, so it carries "greater institutional significance" than other types of cases. Dkt. 200, Wu Decl. ¶ 62.

equipment maintenance and management" in "the replacement of a belt-type conveyor belt" on a microwave expansion furnace for graphene production. *Id.* at 39–40. The patented improvement "adopts an annular rotary disc" to avoid the problems associated with broken belts on microwave expansion furnaces. *Id.* Under these facts, the Court ruled that the ***duty/task*** assigned by his employer was to ***replace and maintain*** belts, but not to ***invent or improve*****,** as his job "did not include R&D of graphene production equipment." *Id.* at 40 (finding the employer "failed to fulfill [its] burden of proof" where it was "required to provide valid evidence showing that it expressly assigned [inventor] a work task requiring him to propose a new technical solution to solve the service-life problem of the conveyor bel[t] of the graphene microwave expansion furnace").

The Court also found the employer failed to prove that the employee made a service invention "mainly by using the material and technical conditions of an employer" under Article 6. Dkt. 200, Wu Decl. ¶¶ 78–88; Dkt. 197-20, Wu Ex. 2 at 42. The word "mainly" means that such material must be "an indispensable necessary condition," and must "hold a primary position in importance and are sufficient to outweigh material and technical conditions from other sources." *Id.* The employee did not use replacement belts as part of invention research; the belts were instead "consumed in the production" graphene in the ordinary course of business. *Id.* at 42. The "Company did not express any intention to provide material conditions for [employee]'s scientific research activities," and no material consumption at work related to the "annular material conveying structure" that formed the basis of the invention. *Id.* at 42.

Even with all this evidence of work in the same field of repairing a belt on a graphene microwave expansion furnace, the employee's invention that improved graphene microwave expansion furnaces to use an annular rotary disc was not deemed to be a service-invention owned by the employer. *Id.* at 41–43. Dkt. 200, Wu Decl. ¶¶ 64–88.

### 6. The "related to" factors apply only to departed employees

Cohen misapplied Guiding Case No. 158, which considered factors that only apply to employees who recently departed from their employer. Dkt. 156-26, Cohen Decl., ¶¶ 24–25 (performing a "related to" analysis); Dkt. 200, Wu Decl. ¶¶ 15, 36–37, 56, 60–61, 89–93 (citing Dkt. 156-33, Cohen Ex. 7). The framework of Rule 12 explicitly considers item (3) "where the invention-creation ***relates to*** his own duty or the other task entrusted to him by the entity to which ***he previously belonged***." Dkt. 156-6 at 3. Guiding Case No. 158 considered the case with a "departing employee," so the People's Court correctly asked if the invention was merely "related to" the inventor's prior work under item (3) of Rule 12. Dkt. 156-33 (Cohen Ex. 7) at 3–4. Because Dr. Yin still works at Tongji University, his inventions are not subject to the broader "related to" analysis that departed employees receive. Rule 12 items (1) and (2) apply to present employees and do not include "related to" considerations. Dkt. 200, Wu Decl. ¶¶ 15, 36–37, 56, 60–61, 81–93 (citing Dkt. 156-33, Cohen Ex. 7). Cohen's opinion should be excluded under *Daubert*.

### 7. Chinese Bona Fide Purchaser Protections and Remedies

Article 106 of Chinese Property Law governs bona fide purchases, including for patents. Dtk. 200, Wu Decl. ¶ 52. It provides, in relevant part:

> Where a person untitled to dispose a real property or movable property transfers the real property or movable property to an assignee, the owner has the right to recover the real property or movable property. Except it is otherwise prescribed by law, once it is under any of the following circumstances, the assignee shall obtain the ownership of the real property or movable property:
> (1) The assignee accepted the real property or movable property in good faith; [or]
> (2) The real property or movable property is transferred at a reasonable price

*Id.* After a bona fide transfer, the transferee acquires the property, and the original owner may seek compensation from the person who made the unauthorized property transfer. *Id.* ¶ 54.

## III. Timeline of Facts

According to his University faculty page and LinkedIn profile from Apple, Dr. Yin joined

Tongji University in 2008 or 2009 as an "Associate Professor." Dkt 156-7 at 1; Dkt. 175 Ex. 2. Later, Dr. Yin took "Professor and Doctoral Advisor" and "Vice Dean" roles at Tongji. Dkt 156-7 at 1. His "research interests" generally include the field of wireless technology, including "modeling," "characterization," and "measurement" of communication channels in the 2010–2011 timeframe. *Id.* at 1-2. But there is no evidence in the record that he had any ***duty assigned by*** Tongji University to "invent" or "improve" on wireless communication algorithms or antenna arrays in 2010–2011, nor any Tongji-assigned "duties" related to the '347 Patent.

Abundant evidence shows that Dr. Yin developed his invention on his own time, using the resources of [redacted] or patenting—unrelated to his employment with Tongji. Empire's representative testified regarding the "assignment from Shanghai Sage Information Technology Co. Ltd. to Empire," explaining that [redacted] And so this Shanghai [SAGE] entity would have been one of those contributing organizations that sold its IP to Empire." Dkt. 200, Wu Ex. 7, 35:11–37:6.

The official chain of title recorded at the USPTO shows this. Effective July 20, 2010, Dr. Yin personally assigned to Shanghai SAGE Information Technology Co., Ltd. ("SAGE") his rights in the Solution Report titled "A User-Focusing Technique for MIMO and CoMP (Coordinated Multiple-Point Communication Systems)," and Dr. Yin accepted it as an officer of SAGE. Dkt. 109-1. This Dr. Yin-to-SAGE assignment was signed on February 15, 2011, authorized the insertion of U.S. Pat. App. No. 13/522,422 (later issued as the '347 Patent) when later known, and was recorded at the USPTO on July 16, 2012. *Id.* A corresponding SAGE-to-Empire assignment

FILED UNDER SEAL

REDACTED PUBLIC VERSION

took effect on January 18, 2011, was signed by Dr. Xuefeng Yin on behalf of SAGE on February 15, 2011, was signed by Empire on February 28, 2011, and was recorded with the USPTO on July 16, 2012. Dkt. 109-2. A confirmatory assignment executed on October 14, 2022 confirms that Empire assigned the ’347 Patent to Cobblestone based on a Patent Purchase Agreement with an effective date of September 28, 2022. Dkt. 109-6.

Events preceding the assignments corroborate that Dr. Yin developed the invention using [redacted] Empire would hold title to intellectual property. *Id.* at 13:3–16:19.

[redacted]

[3] Cites to the PDF page numbers of Wu Ex. 5. A cover sheet was added before filing on the docket, so citations in Wu’s Declaration may differ by 1 page.

FILED UNDER SEAL
REDACTED PUBLIC VERSION

[redacted]

[redacted] titled "A User-focusing technique for MIMO and CoMP (Coordinated Multiple-Point) communication systems" [redacted]

[redacted] The Exporter was tasked with the duty to "submit the application to the approval authority in the jurisdiction where Exporter is located" in accordance with "Technology Import and Export Regulations of the People's Republic of China." *Id.* at 59. [redacted].

In summary, [redacted] Dr. Yin worked through SAGE—not Tongji—on

multiple [redacted]. *See* Dkt. 197-26 (referencing multiple [redacted] other inventions).

## IV. Argument

### A. Cobblestone Has Shown That Dr. Yin Owned The '347 Patent—Not Tongji

#### 1. Apple automatically loses under the Rule 12(b)(1) standard after losing under the summary judgment standard

The complaint pleads that "Plaintiff owns by assignment all rights, title, and interest in U.S. Patent No. 8,891,347." Dkt. 1 ¶ 9. The recorded assignments from Dr. Yin to SAGE, SAGE to Empire, and Empire to Cobblestone at the USPTO are presumed valid and shift the burden of rebuttal on Apple. Dkt. 109-1, 109-2, 109-6; *SiRF Tech.,* 601 F.3d at 1327–28. The Court already ruled that "the Court does not find that Apple has raised a material issue of fact as to Article III." Dkt. 166 at 1–2. Apple's Rule 12 Motion raises no new facts—not a new pleaded fact, undisputed fact, disputed fact, or new intervening factual development—that can be legally considered under Rule 12. *Williamson*, 645 F.2d at 413. Apple's Rule 12 motion is frivolous and automatically fails as a matter of law after the Court's summary judgment ruling against Apple.

The gravamen of Apple's Rule 12 Motion is still speculation that the "'347 patent arose out of Yin's employment at Tongji University in China." Rule 12 Motion at 1, 5-6. Apple ignores that the Court already ruled against Apple where, when it came time for Apple to offer its best arguments and evidence, Apple failed to "raise[] a material issue of fact as to Article III." Dkt. 166 at 1–2. A party may raise subject-matter jurisdiction at any time, but it is not entitled to serial reconsideration of a jurisdictional record the Court has already weighed. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816–17 (1988) (under law-of-the-case principles, courts should be "loathe" to revisit prior decisions absent extraordinary circumstances). The evidence in Section III above precludes a ruling that Cobblestone "cannot prove any set of facts" in support of its claim to ownership of the '347 Patent, so Apple's Motion should be denied. *Ramming*, 281 F.3d at 161.

**2. Cobblestone has shown that Dr. Yin owned the '347 Patent**

Cobblestone's evidence shows that Dr. Yin owned the '347 Patent, and it disproves Apple's theory that Tongji University ever owned the patent. Apple's theory, that Dr. Yin developed the "predistortion" invention of the '347 Patent in the course of his employment at Tongji University, finds no support in the record—zero contemporaneous testimony or documents. In contrast, Cobblestone's evidence confirms that Dr. Yin, [redacted] and not in the course of his work for Tongji University. *See* Section III (Timeline of Facts), above.

*First*, Cobblestone's evidence includes the recorded assignment agreements signed by Dr. Yin, Shanghai SAGE, and representatives of Empire, [redacted]. The assignments are direct evidence that Dr. Yin developed the invention for Empire, not Tongji University.

*Second*, Cobblestone's evidence includes Ms. Rudersdorf's testimony on behalf of Empire. She confirmed that Shanghai SAGE developed the invention to contribute to Empire [redacted]. Dkt. 200, Wu Ex. 7 at 35:11–37:6.

*Third*, Cobblestone's evidence includes the Shanghai SAGE founding documents, which corroborate that [redacted]. *See* Section III, above.

*Fourth*, Cobblestone's evidence includes additional Empire-produced documents from prior to the assignments, including the [redacted] response Dr. Yin/SAGE [redacted] and complied with Chinese export controls in transferring the rights to Empire. *Id.*

As explained in Section III above, Dr. Yin [redacted]

[redacted] not Tongji University. Dkt. 200, Wu Ex. 5 at 16–21, 49–57. Any invention-related "duty/task" originated from [redacted] This affirmatively disproves Apple's baseless speculations (even though Cobblestone does not have this burden under Chinese law).

Against Cobblestone's consistent evidence, Apple has nothing but speculation. Apple argues that the invention necessarily arose out of Tongji because Dr. Yin's faculty page identifies the invention and because Dr. Yin's "research papers published contemporaneously are directed to overlapping issues of wireless communication." Rule 12 Motion at 5. But none of this would indicate that Dr. Yin developed the invention ***as part of his duties/tasks assigned by*** Tongji University. Instead, Dr. Yin listed patents on which he was named as an inventor (without attributing their ownership to anyone), and the research papers Apple references merely show his field of study is wireless communications. Apple does not even attempt to identify where these publications disclose the inventive aspects of the '347 Patent. Further, Apple points to *later*-published papers dated 2012–2014 (Dkt. 175, Exs. 3–7), well after [redacted]. Dkt. 200, Wu Ex. 5 at 49. These later papers are not evidence of who assigned, employed, or paid Dr. Yin [redacted].

To the contrary, the contemporaneous documents, including Empire's rebuttal documents, all corroborate that the invention was not made for Tongji University. The evidence consistently shows the invention was [redacted]. This evidence also contains explicit provisions defeating Apple's speculation as to Tongji University. Dr. Yin represented that

[redacted]

[redacted] Dkt. 200, Wu Ex. 5, at 18, 49.

Apple's Rule 12 Motion again tries to fault Cobblestone for not producing, during fact discovery, documents that rebut Apple's speculations in support of a foreign law theory that Apple did not raise until after the close of fact discovery, arguing that Cobblestone's inability to predict and pre-but Apple's baseless speculations "cannot be excused." Rule 12 Motion at 12. As explained in Cobblestone's Response to the Court's Order to Show Cause, Apple caused the entire mess by violating the Court's deadlines and withholding its Chinese law theory. Dkt. 193 at 3–5. Empire only recently produced the rebuttal evidence in Wu's Exhibit 5 (sealed under Dkt. 200) to disprove Apple's speculations about Tongji University. Rule 44.1 permits considering "any relevant material" in determining foreign law, and Rule 37(c)(1) allows the consideration of even late evidence, like rebuttal evidence, when "substantially justified" (as here, given Apple's delays). But even Apple's acknowledgement of the *possibility* of rebuttal evidence existing means Apple's frivolous Rule 12 Motion should never have been filed. *Ramming*, 281 F.3d at 161 ("Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted ***only if it appears certain that the plaintiff cannot prove any set of facts*** in support of his claim"); *Williamson*, 645 F.2d at 414 ("the district court must give the plaintiff an opportunity for discovery").

### 3. Apple cannot prevail under U.S. law

Apple's arguments fail at the outset under U.S. law. As explained in Section II.A above, incipient title to the '347 Patent vested in the inventor Dr. Yin under the U.S. Constitution and 35 U.S.C. § 101. Chinese laws may change the original owners of Chinese patents, but not the original owners of U.S. patents. So, under U.S. law, Dr. Yin owned the original rights to the '347 Patent. From there, the full chain of title (Dr. Yin to SAGE at Dkt. 109-1 at 1–5; SAGE to Empire at Dkt. 109-2 at 1–8; and Empire to Cobblestone at Dkt. 109-6) proves Cobblestone's ownership of the

’347 Patent and provides constitutional standing in this case.

**4. Apple cannot carry its burden of proof under Chinese law**

Even if Chinese laws apply here, Apple cannot carry its burden of proof. Chinese Civil Procedure places the burden of proof on Apple. *See* Section II.B.1, above. If Apple wants to prove a service invention made [1] “in the course of performing the duties” under Article 6, then Apple must prove under Rule 12 that the specific invention of the ’347 patent was made in the course of performing a duty or task assigned by Tongji University. *See* Section II.B.3, above. It is legally insufficient for Dr. Yin to have simply been in the same field, to have worked on similar problems, or to have published related papers in the field. *See* Section II.B.5 above (providing comparable caselaw). Apple’s expert opinions are based only on insufficient facts and bare speculation. Apple’s experts lack facts or data to opine that Tongji is the true owner, making their opinions irrelevant and methodologically unsound under F.R.E. 702 and *Daubert*.

Apple cannot prove that Dr. Yin was tasked or paid by Tongji University to come up with the invention. The task instead came [redacted] to Dr. Yin without the involvement of Tongji University. Dkt. 200, Wu Ex. 5 at 16–21, 49–57.

Here, Apple has no evidence of Dr. Yin’s specific duties and tasks at Tongji University, much less evidence that any such duties or tasks could be linked to the asserted patent. Dkt. 200, Wu Decl. ¶¶ 97–98, 100. Apple has not offered Dr. Yin’s engagement contract, Tongji-assigned tasks, annual reviews, research & development tasks, or the like. Apple’s severe lack of evidence stems from Apple’s position as a third-party asserting an ownership claim on behalf of Tongji University—a claim that Tongji University has not made. Employers often have easy access to evidence showing the tasks and duties that they assigned to their employees. *See* Dkt. 197-20, Wu Ex. 2 at 28–35, 37 (examining employment contract, performance evaluation, communication records, periodic work reports, payroll, and other internal documents). Apple has offered no similar

FILED UNDER SEAL
REDACTED PUBLIC VERSION

evidence—not even an allegation that the invention was made for a particular class, assignment, or research project assigned by Tongji University.

Apple's reliance on Dr. Yin's "research papers published contemporaneously" is misplaced. Rule 12 Motion at 5; Rule 12 Motion Exs. 3–7. First, their later publications dates in 2012–2014 are not "contemporaneous" with [redacted]. *Id.* Second, the publication titles reveal a different focus on "modeling" wireless channels, such as modeling channels "for high-speed railway scenarios." *Id.* None of the titles even suggest Dr. Yin came up with an improvement or invention, much less the invention in the '347 Patent. *Id.* Instead, Dr. Yin represented [redacted] So, a later publication on the Proposed Solution (if it ever even happened) would merely be publishing work he performed for SAGE, not Tongji.

Tongji University's internal regulations do not help Apple. Dkt. 156-8. The University's internal regulations are not Chinese laws, so they do not provide for legal transfer of patent title. The compilation was promulgated in December 2010 (*id.*, cover), and the section on "Administrative Measures for the Employment Contract System," which includes Article 56 on inventions, is dated "November 3, 2010." *Id.* at 28–40. By its own term, these regulations "shall be submitted to the University… and shall come into force on the date of promulgation" in December 2010. *Id.* at 40. These internal regulations were **not even in effect** on [redacted] But even assuming the '347 Patent qualifies as a "Service Invention" (it does not) under the University's not-yet-effective internal regulations, those internal regulations would only give the University "the right to demand immediate rectification." *Id.* at 39. Apple has no

evidence that the University ever demanded rectification of title, and without title ever passing to the University, Cobblestone retains title and Apple's motion must be denied. *Omni MedSci, Inc. v. Apple Inc.*, 7 F.4th 1148, 1151–52, 1157 (Fed. Cir. 2021).

Apple does not substantively argue that Dr. Yin came up with the '347 Patent invention [2] "mainly by using the material and technical conditions of an employer" under Article 6. Apple has no evidence of Dr. Yin using Tongji University's money, confidential information, or tools to come up with the '347 Patent invention. Dkt. 200, Wu Decl. ¶¶ 101–103. Instead, Dr. Yin worked through [redacted] not from Tongji University. Dkt. 200, Wu Ex. 5 at 16–21, 49–57. Moreover, Dr. Yin's Solution Report does not discuss field testing or prototypes using university resources; instead, it shows diagrams and math that would not have required physical test equipment or capital, much less Tongji equipment or capital. Dkt. 200, Wu Decl. ¶¶ 101–103.

Finally, none of Apple's evidence offers any specific tie between Tongji University and the specific inventive solution disclosed in the '347 Patent. The SPC 1848 case detailed above shows just how exacting the tie must be. *See* Section II.B.5, above. In SPC 1848, it was not enough for the inventor to have been employed to replace the belts on machines; the employer needed to have tasked the employee with inventing a better machine under Article 6. *Id.*; Dkt. 197-20 at 39–40. Proof of Dr. Yin's general work for Tongji University in a broad field like wireless communications is insufficient. Dkt. 200, Wu Decl. ¶¶ 32, 59, 70.

#### 5. No Chinese remedy retroactively transfers title to Tongji University

Even if the '347 Patent were a service invention (and it is not), title passed to Cobblestone as a bona fide purchaser, so Apple's Rule 12 Motion should be denied. Tongji University, at most, would merely have a claim to compensation from Dr. Yin. Dkt. 200, Wu Decl., ¶ 54 ("the original owner may seek compensation from the person who lacked authority to dispose of the right").

FILED UNDER SEAL
REDACTED PUBLIC VERSION

To overcome this problem, Apple's expert, Ms. Yang, would need to establish that neither SAGE nor Empire were bona fide purchasers. But Ms. Yang opines that SAGE and Empire are not bona fide purchasers based on her misunderstanding that assignments to these entities both occurred on July 16, 2012. Dkt. 156-1 at 4. That is wrong on its face, and it ignores the law and misrepresents the facts. Dr. Yin's assignment to SAGE was signed on February 15, 2011. Dkt. 109-1. The SAGE-to-Empire assignment was signed by Empire on February 28, 2011. Dkt. 109-2 at 8. [redacted] Thus, at least the SAGE-related transactions qualify as a bona fide purchase under Article 106, part (2), because the "real property or movable property is transferred at a reasonable price." So, *even if* the '347 Patent were a service invention, title passed to Cobblestone under Chinese Property Law, and *at most*, Tongji would be left with a claim for financial compensation (but not a claim for title) against Dr. Yin. Dkt. 200, Wu Decl. ¶¶ 123–140.

### B. Apple's Chinese Export Control Theory Is Frivolous

Apple's Chinese export control theory fails for three reasons.

*First*, U.S. Patents are not made in China or exported from China, so Chinese export controls do not apply to U.S. Patents. U.S. Patents are issued by the USPTO in Alexandria, Virginia and confer rights to exclude within the United States. 35 U.S.C. §§ 153, 271. At best, Chinese export control laws might affect the related PCT application PCT/CN2011/077718 filed at China's State Intellectual Property Office, but the PCT application is not asserted here.

*Second*, the technology of the '347 Patent was not export controlled under Chinese laws. The Ma Declaration explains that broad technology categories like "wireless communication technology" are **not** restricted. Dkt. 199 ¶¶ 14, 18–28. Instead, only four specific "Key Control Points" within this category are export controlled. *Id.* Cobblestone's technical expert confirmed

that the '347 Patent does not teach a POSITA any of these Key Control Points, so it would not have been export controlled under Chinese laws. *Id.* ¶¶ 34–36.

Apple's expert, Ms. Yang, misinterpreted Chinese export controls as applying to all "wireless communication technology." Dkt. 156-1 at 8 ("I confirm that the '347 patent pertains to the field of wireless communications. … the technology embodied in the '347 patent falls within the category of technologies restricted from export"). But Ms. Ma explains that "Ms. Yang should have compared the specific technical features of the '347 patent at issue against the Key control points." Dkt. 199, Ma Decl. ¶¶ 14, 37 ("she entirely bypassed that express standard … plainly falls short of the professional diligence"). Ms. Yang should be stricken as an expert on these Chinese law subjects under *Daubert* and F.R.E. 702 for using an unreliable methodology that ignores the Key Control Points in the referenced Technology Catalogue, and Apple should be sanctioned for asserting an argument with no basis in law.

*Third*, Dr. Yin and IDMC complied with the Chinese export control review process [redacted] Apple's and Ms. Yang's speculations that Dr. Yin never tried to comply with Chinese export law is false. Ms. Yang formed her opinion because she had "no evidence demonstrating that a license issued," but Ms. Yang had not seen the [redacted] More problematically, Ms. Yang should have known that Chinese export license decisions are not necessarily made public, so she should not have inferred the lack of an export license being granted by its absence from the public record (though here, an export license would not have been needed). Dkt. 199, Ma Decl. ¶¶ 15, 40–47.

## V. Conclusion

The Court should deny Apple's frivolous motion to dismiss under Rule 12, exclude Apple's foreign law experts under *Daubert*, impose sanctions on Apple, and promptly set a new trial.

FILED UNDER SEAL
REDACTED PUBLIC VERSION

Dated: August 27, 2026

Respectfully submitted,

/s/ Reza Mirzaie
Marc Fenster
Reza Mirzaie
Benjamin T. Wang
Brian Ledahl
Dale Chang
Neil A. Rubin
Jacob Buczko
James N. Pickens
Minna Jay
Jonathan Ma
Christian W. Conkle
Joshua Scheufler
Mackenzie Paladino
Matthew Aichele
RUSS AUGUST & KABAT
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Telephone: 310-826-7474

Qi (Peter) Tong
RUSS AUGUST & KABAT
8080 N. Central Expy., Suite 1503
Dallas, TX 75206

Attorneys for Plaintiff
Cobblestone Wireless, LLC

FILED UNDER SEAL
REDACTED PUBLIC VERSION

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document was filed via the Court's sealing procedures and served on all counsel of record via email on August 27, 2026.

/s/ Reza Mirzaie