# Yang Supplemental Ex. 4

# TRANSLATION CERTIFICATION

**Date: 2026/09/03**

To whom it may concern:

This is to certify that the attached translation is an accurate representation of the documents received by this office. The translation was completed from:

- Chinese (PRC)

To:

- English (USA)

The documents are designated as:

- Supp. Ex. 4

Samuel Wu, Managing Director of this company, attests to the following:

"To the best of my knowledge, the aforementioned documents are a true, full and accurate translation of the specified documents."

Signature of **Samuel Wu**, Managing Director

# Reflections on the Use of the Standard of High Probability in Criminal Cases

## —From the Perspective of Smuggling Crime Cases

Author: Jiang Zhijie (Beijing Dawei Law Firm)

Release Date: 2024.05.09

*****************************************************************************************

**Preface**

In criminal judicial practice, due to the nature of criminal cases and human rights guarantees, the strictest standards are adopted in evidence determination. The standard of "beyond a reasonable doubt", as the golden rule for criminal conviction, is intended to safeguard judicial justice and the legitimate rights and interests of defendants. When facing the determination of cases involving a large number of suspects, long time spans, and interwoven domestic and foreign evidence, such as smuggling cases, some judicial organs naturally adopt the standard of "high probability" in determining certain evidence chains. Although this approach is conducive to the efficiency of case handling, it comes at the premise of damaging judicial justice. This article combines criminal cases of smuggling to explore the practical effects and existing problems of using the "high probability" standard, in the hope of providing some considerations for judicial organs when determining case facts.

**I. Related Concepts**

According to the article "Research on the Construction of Phased and Diversified Standards of Proof in Environmental Civil Public Interest Litigation—From the Perspective of Comparison Between Private Interest Litigation and Public Interest Litigation" published by Zhang Jiajun in "Hebei Law" in November 2023, it is mentioned that currently in China, legislation or judicial interpretations only shape three determination methods: high probability, beyond a reasonable doubt, and greater possibility. In judicial practice, which determination method to apply is determined by judges according to legal provisions, case types, and specific circumstances.

**(I) Overview of High Probability**

High probability refers to a method of determining the facts of a case where, when the persuasive power of one party's evidence is significantly stronger than that of the other party, the judge can form inner conviction through judicial discretion. Article 108 of the "Interpretation of the Supreme People's Court on the Application of the Civil Procedure Law of the People's Republic of China (2022 Amendment)" clarifies the use of high probability in civil litigation, stipulating: "Where the evidence provided by a party bearing the burden of proof is examined by the people's court and combined with relevant facts, and the existence of the fact to be proven is convinced to have a high probability, the existence of such fact shall be determined." When the evidence used to determine a case cannot reach the standard of "beyond a reasonable doubt" in criminal judicial practice, some judicial organs may adopt this determination method. For example, Criminal Judgment (2019) Jin 1127 Xing Chu No. 56 states: "The defendants Chen 1 and Zhang performed acts of selling drugs, and drugs were seized from their residences. There is a high probability that the two defendants were selling the seized drugs; thus, it is presumed that they were used for sale, and the 1.39 grams of drugs seized should be included in the quantity of drug trafficking."

**(II) Overview of Beyond a Reasonable Doubt**

The relevant official of the Legislative Affairs Commission of the Standing Committee of the National People's Congress explained the meaning of beyond a reasonable doubt, pointing out that beyond a reasonable doubt means that for the determination of facts, there are no reasonable or grounded doubts left, reaching the degree of conviction in practice, which is the highest standard of proof in criminal litigation. Paragraph 2 of Article 55 of the "Criminal Procedure Law of the People's Republic of China (2018 Amendment)" further emphasizes the importance of beyond a reasonable doubt in criminal litigation in China, stipulating: "The evidence is reliable and sufficient, and shall meet the following conditions: (1) The facts for conviction and sentencing are supported by evidence; (2) The evidence relied upon for case determination verified through legal procedures; (3) based on a comprehensive assessment of all evidence in the case, reasonable doubt has been excluded regarding the established facts." This determination method not only guarantees the quality and efficiency of trials and fully protects the legitimate rights and interests of the defendant, but is also of great significance for enhancing judicial credibility and maintaining judicial justice.

**(III) Overview of Greater Possibility**

Greater possibility refers to a determination scheme in civil litigation where the court finds that a case fact exists when the possibility of its existence is relatively high. According to Paragraph 2 of Article 86 of the "Several Provisions of the Supreme People's Court on Evidence in Civil Litigation (2019 Revision) (Fa Shi [2019] No. 19) ": "For facts related to procedural matters such as litigation preservation and recusal, if the People's Court, considering the explanations of the parties and relevant evidence, deems that the possibility of the existence of the relevant facts is relatively high, it may determine that the facts exist." Therefore, this determination method is mainly applicable to procedural facts such as recusal and litigation preservation in civil litigation.

**II. Standards of Determination in Criminal Cases**

**(I) Characteristics of Criminal Cases**

Criminal cases possess seriousness, punitiveness, and authoritativeness. First, seriousness is reflected in the close connection between criminal cases and social public interests as well as the legal order, requiring judges to apply the law accurately and follow rigorous procedures, thereby ensuring the accuracy of legal application; second, punitiveness means that criminal cases directly target criminal acts, curbing and preventing crime through strict state sanctions to protect citizens' personal and property safety as well as social public interests; finally, authoritativeness stems from the fact that criminal judgments carry legal binding force and powerful social influence, accompanied by coerciveness; once rendered, they must be executed, embodying the stability and authority of the law.

Based on the purpose of criminal litigation to punish and sanction criminal acts and investigate the criminal liability of suspects, once the judge determines that the defendant committed the crime and the evidence is reliable and sufficient, the defendant may face severe legal consequences such as deprivation of personal freedom or even deprivation of life. This dictates that the standard of proof in criminal cases must necessarily be higher than that in civil or administrative cases.

**(II) Difficulties in Determining Criminal Cases**

With social development and technological progress, the emergence of new types of crimes and cross-border crimes brings new challenges and difficulties to the determination of criminal cases, which are mainly manifested in the following two aspects:

1. High difficulty in evidence collection. Various types of evidence such as physical and documentary evidence collected by investigators at the crime scene may be lost or tampered with, increasing the difficulty of evidence collection. Secondly, technological advances have rendered criminal methods increasingly high-tech, raising professional requirements for evidence evaluation, during which the scientific nature and accuracy of evidence determination must be ensured. Finally, due to the specificity, cross-border nature, and transnational nature of criminal acts, judges need to construct a complete chain of evidence based on existing evidence, placing high demands on the professional qualifications and handling experience of customs authorities and judges.

2. High standards for evidence determination. Judicial practice in criminal litigation requires that the determination of case facts must reach the standard of "beyond a reasonable doubt," and all evidence must reach an unquestionable level before finding the defendant guilty. This standard requires judges to thoroughly exclude all exculpatory evidence before issuing a guilty verdict against the defendant to ensure the fairness of the judgment. However, due to factors such as limitations of evidence and technical constraints, situations may arise where reasonable doubt cannot be completely excluded. In such cases, judges might consider using the "high probability" standard that is below the highest standard, but using this standard may lead to issues such as inconsistent judicial application and different judgments for similar cases.

**(III) Similarities and Differences between Criminal Cases and Civil Cases**

**1. Similarities between Criminal Cases and Civil Cases**

(1) Both cases hope to achieve the same social effect. The purpose of a criminal case is to pursue legal liability for criminal acts and protect national and public interests, thereby realizing the law's functions of punishing and preventing crimes; the purpose of civil litigation is to resolve private disputes between natural persons, legal persons, or between natural persons and legal persons. However, overall speaking, both are components of the socialist rule of law system, hoping to maintain social order through legal procedures, safeguard the legitimate rights and interests of the people, and promote judicial justice.

(2) Evidence is key to the judgment. As the foundation of litigated cases, evidence serves as the basis for adjudicators to decide cases and the key to case trials. In other words, without sufficient evidence to support any litigated case, it is difficult to obtain a fair judgment. "Going to court means presenting evidence." In court, the grounds for conviction proposed by prosecutors or the litigation claims raised by parties must be supported by corresponding evidence to justify their grounds for conviction or claims. Therefore, once entering the litigation stage, both parties should attach importance to the collection and organization of evidence, and ensure that the evidence they provide can effectively prove their own points of view.

(3) Both exclude illegal evidence. The principle of excluding illegal evidence originates from the "fruit of the poisonous tree" theory in US judicial practice. This theory refers to illegally obtained evidence as a "poisonous tree", and evidence derived from a "poisonous tree" as "fruit of the poisonous tree", which should be excluded from the case and cannot serve as the basis for deciding the case. In China's criminal procedure, "The Provisions on Several Issues Concerning the Strict Exclusion of Illegal Evidence in Handling Criminal Cases" provides specific guidance for the use of excluding illegal evidence, clarifying that illegal verbal evidence should

be excluded absolutely, while illegal physical evidence should be excluded at discretion in criminal litigation; in civil litigation, Article 106 of "The Interpretation of the Supreme People's Court on the Application of the Civil Procedure Law of the People's Republic of China (2022 Revision) " explicitly provides: "The People's Court shall, in accordance with statutory procedures, comprehensively and objectively verify and examine evidence, apply logical reasoning and everyday experience rules according to legal provisions, judge whether evidence has probative force and the degree of probative force, and disclose the reasons and results of the judgment." Based on the above, it can be seen that both criminal litigation and civil litigation have relevant provisions on the exclusion of illegal evidence to ensure judicial fairness and fully guarantee human rights.

**2. Differences between Criminal Cases and Civil Cases**

(1) Different standards of proof. Based on legal provisions, criminal litigation requires reaching the standard of excluding reasonable doubt to convict, and its standard of proof is stricter. The root cause is that the legal consequences of criminal cases involve personal freedom or even the right to life, requiring a higher standard of proof to ensure a fair judgment in the case. In civil litigation, the standard of high probability is often used for trial.

(2) Different subjects bearing the burden of proof. In criminal litigation, the burden of proof is mainly borne by the public prosecution organ, which provides sufficient evidence to prove that the defendant committed the criminal act, and the court adjudicates whether the defendant's criminal act constitutes a crime; civil litigation usually follows the principle of "he who asserts must prove", meaning that a party needs to bear the burden of proof for the litigation claims raised by themselves.

(3) Different legal consequences. Criminal cases may result in the defendant receiving criminal punishment, such as fixed-term imprisonment, life imprisonment, or even the death penalty, as well as property penalties such as fines; whereas civil cases pay more attention to the protection of infringed rights, and their legal consequences are usually civil remedy measures such as compensation for losses and restoration to original state.

If inconsistent standards of proof are adopted, differences will exist in various aspects such as evidence determination and collection, which may further lead to variations in judicial rulings and legal applications for similar cases. Judges will face dilemmas and challenges when judging whether evidence is sufficient and whether it reaches the conviction standard, ultimately affecting case verdicts and even leading to miscarriages of justice.

**III. Reasons for and Issues Arising from the Use of the "High Probability" Standard in Criminal Cases**

**(I) Reasons for the Emergence of the "High Probability" Standard in Criminal Case Determinations**

**1. Cases are Complex and Difficult, and Obtaining Evidence is Challenging**

In the practice of investigating and adjudicating criminal cases, some cases are genuinely complex, difficult, or novel, making evidence collection extremely challenging and causing relevant legal provisions to lag behind. Consequently, case handlers may resort to making judgments and arguments based on inclination rather than a strict evidentiary framework, thereby adopting a "high probability" standard to varying degrees. For instance, in cross-border cases such as smuggling, breaks in the chain of evidence frequently occur, making the use of a probability-based standard to evaluate certain pieces of evidence unavoidable.

**2. Intentional Disregard for Rules of Evidence**

Rules of evidence primarily encompass provisions regarding the exclusion of illegally obtained evidence, hearsay evidence, and opinion evidence. In judicial practice, issues arise in three ways: first, some investigators intentionally circumvent the rule excluding illegally obtained evidence, using various coercive measures to induce suspects into making "voluntary" confessions; second, the rule against hearsay evidence is undermined through the use of extensive hearsay (out-of-court evidence) to influence the subjective conviction of prosecutors and judges; and third, opinion-based evidence is repeatedly solidified to generate a large volume of speculative or inferential testimony—sometimes with the hope that similar speculative statements or confessions from different parties can fill gaps in the chain of evidence.

**3. Confusion Regarding Standards of Proof at Different Stages**

It must be clarified that the standards of proof for criminal cases differ across stages. The use of a probability standard during the investigation phase stems from the investigative nature of law enforcement agencies, which operate on the presumption of suspicion; at this stage, the existence of preliminary evidence suggesting a crime occurred is sufficient to warrant a case filing. However, the situation changes once a case proceeds to the prosecution and adjudication stages. According to Article 128, Paragraph 2 of the "Rules of the Supreme People's Procuratorate", evidence proving the existence of a criminal fact requires the simultaneous satisfaction of the following conditions: ① evidence proves that a criminal fact occurred; ② evidence proves that the criminal fact was committed by the suspect; and ③ the evidence proving the suspect's commission of the crime has been verified as authentic. Clearly, from the point of arrest onwards, the required standard of proof is significantly higher than that of the initial investigation phase. At the stages of initiating a public prosecution and rendering a guilty verdict, the required standard of proof is that the criminal facts must be clear and the evidence solid and sufficient.

Prosecutors and judges must not simply adopt the case-handling mindset and evidentiary standards of investigative agencies; the prevailing principle has shifted from "presuming guilt in cases of doubt" to "presuming innocence in cases of doubt." If the standard of "beyond a reasonable doubt" is not met, the only appropriate courses of action are a decision not to prosecute or an acquittal.

**(II) Problems Arising from the Use of the Probability Standard in Criminal Cases**

The preceding analysis reveals why the conflation of evidentiary standards occurs: judicial personnel face heavy workloads and staffing shortages, making it all too easy to slip into an expedited "quick-processing" mode where relying on a standard of "high probability" seems natural. However, applying a probability-based standard to criminal cases creates significant problems; a few examples are outlined below to clarify the proper legal stance.

**1. Vulnerable to Undermining the Gravity of Criminal Justice**

Criminal justice serves as the final line of defense for fairness, justice, and social order. Adopting a "high probability" standard lowers the evidentiary threshold, expands judicial discretion, and increases uncertainty in verdicts. This uncertainty—particularly in cases involving the right to life—can lead the public to question the integrity and fairness of the judicial system.

2. **Increasing the Likelihood of Wrongful Convictions**

Inconsistent evidentiary standards lead to discrepancies in how evidence is assessed and gathered. This can result in divergent judicial rulings and applications of law for similar cases, placing judges in a difficult

position when determining whether evidence is sufficient to meet the threshold for conviction. Ultimately, this impacts the verdict and can even lead to wrongful convictions.

**3. Vulnerable to Damaging the Legitimate Rights and Interests of the Defendant**

The use of the high degree of probability standard in criminal cases may lead to the failure to adequately protect the rights of the defendant due to insufficient evidence or inaccurate subjective judgments by judges. Based on this, criminal proceedings should treat the application of the high degree of probability standard in judicial practice with caution, avoiding damage to the defendant's legitimate rights and interests caused by lowering the standard of proof.

**IV. Difficulties in Evidence Identification and Choice of Proof Standards in Smuggling Offense Cases**

From the perspective of smuggling offense cases, in which the author is relatively specialized, this paper explains the reasons why strict standards of proof should be adhered to through analyzing the case characteristics and difficulties in proof of smuggling cases.

**(I) Case Characteristics and Difficulties in Proof of Smuggling Cases**

1. The primary characteristic of smuggling cases is their cross-border nature, meaning domestic and overseas evidence are intertwined throughout the entire case, and key evidence such as logistics and capital flows can easily be generated and remain overseas. Furthermore, due to the complexity of smuggling cases as gang-operated joint crimes, the difficulty for judicial authorities to collect evidence increases, easily causing situations where evidence is insufficient or difficult to confirm during investigation or trial. Given these identification difficulties, in the processes of handling cases, the author has also felt that some judicial authorities, when collecting evidence and making convictions, cite case complexity and evidence collection difficulty as reasons to rely on a single piece of evidence to cover the entire case, thereby determining the volume involved in the defendant's smuggling offense and convicting them accordingly.

2. Smuggling cases feature long crime timeframes, leading to situations where existing evidence cannot be obtained due to the passage of time. Moreover, smugglers' anti-investigation awareness has grown stronger, consciously replacing hardware and software equipment involved in cases frequently. Even if existing criminal technical capabilities can maximize the extraction and recovery of data prior to electronic devices, they are constrained by time limits from fully securing a complete chain of evidence. Meanwhile, Criminal Procedure Law explicitly stipulates prioritizing evidence over confessions; relying on sudden interrogation techniques to obtain suspects' confessions to compensate for gaps in the evidence chain is extremely prone to failure due to subsequent changes in confessions.

3. The evidence system in smuggling cases is tedious and complex. Generally speaking, smuggling acts involve logistics flows, capital flows, document flows, etc. Additionally, gang operations involve not only clear division of labor between upstream and downstream, but also internal division within the gang. This makes the complexity of the evidence chain in smuggling cases far higher than in ordinary criminal cases. If judged by the standard of proof beyond a reasonable doubt, many smuggling cases' evidence would actually struggle to satisfy this standard point by point.

**(II) Regardless of Various Difficulties in Case Handling, Beyond Reasonable Doubt as a Standard Is a Principle-based Provision, and Behind the Standard Lies Legal Credibility**

1. From the perspective of maintaining judicial authority and enhancing judicial credibility, this standard should be adhered to. "Law is a fair judgment, and justice is a fair scale." The premise of judicial

authority is judicial fairness, and the premise of judicial fairness is handling cases in accordance with the law. In China, using the beyond a reasonable doubt standard of proof in criminal cases has a legal basis and is a guideline that judicial organs must observe when adjudicating cases. When the public sees that judicial organs strictly adhere to handling smuggling cases according to law and applying high-standard entry criteria for crimes, they will trust the authority of the judicial system more. This is also an important avenue for judicial organs to demonstrate their commitment to and practice of judicial justice and the rule of law, enhancing the public's recognition and respect for judicial authority. Conversely, using a high probability standard in smuggling cases lowers evidentiary requirements, easily causing weakening of judicial authority and reduction of judicial credibility.

2. Although obtaining evidence in certain cases is extremely difficult, relying solely on high probability to determine criminal cases will produce a series of negative effects. The difficulty of case determination should serve to strengthen evidence collection capabilities and handling standards, which is conducive to building a rigorous evidence examination system. For example, in smuggling cases with complex and scattered evidence, constructing a complete evidence chain for conviction is indeed quite difficult. However, some judicial organs, due to difficulty and complexity, settle for less and choose a standard of proof lower than beyond reasonable doubt to convict. This is not only detrimental to motivating judicial organs to pursue the closure of the evidence chain and eliminate reasonable doubt, making it difficult to ensure the accuracy and fairness of verdicts, but also makes it hard to improve the quality of judicial judgments.

3. As for smuggling cases specifically, their cross-border and transnational nature make combating smuggling crimes a complex international task. In the context of globalization, most countries and regions adopt the standard of beyond reasonable doubt as the basic principle for identifying smuggling crimes. China should also apply beyond reasonable doubt in smuggling cases, which helps promote the unification of international judicial standards and facilitate information sharing and international judicial cooperation, thereby improving the efficiency and effectiveness of case handling, while serving as an important means to maintain the global rule of law order.

Finally, and most importantly, standing from the perspective of the bottom line, we should recognize that lowering the standard of proof easily leads to misjudgments and damages the legitimate rights and interests of defendants. If, due to the complex transaction network, large capital flows, and huge quantity of goods in smuggling cases, evidence collection is difficult, and evidence is analyzed and inferred roughly and one-sidedly with empiricism prevailing, it will not only fail to guarantee the quality of case handling, but will also lower the overall law enforcement level of judicial organs.

In summary, although through the above analysis we understand that complex criminal cases such as smuggling crimes indeed face many identification difficulties, making it nearly impossible to achieve a standard completely free of reasonable doubt, the principle of judicial identification remains strict. For instance, "The Notice on Issuing the <Opinions on Several Issues Concerning the Application of Law in Handling Smuggling Criminal Cases> by the Supreme People's Court, the Supreme People's Procuratorate, and the General Administration of Customs ([2002] No. 139) " emphasizes that strict requirements should be applied when handling smuggling cases. When criminal judicial organs determine that a defendant's smuggling act constitutes a crime, they must provide sufficient and reliable evidence and reach a degree of firm conviction on the basis of eliminating all reasonable doubts before closing the case. Therefore, the author still hopes that judicial organs uphold the legal bottom line in the process of reviewing cases. After all, handling criminal cases involves "other people's lives." Under circumstances where the case is not completely overturned, arbitrarily

increasing the suspect's liability through high probability is clearly unacceptable, which not only violates formal justice but also breaches legal professional ethics.

**Conclusion**

In criminal litigation, a unified scale of law enforcement should be maintained, and the identification standard should not vacillate. Legal provisions should be followed to apply beyond reasonable doubt. In particular, for key evidence determining conviction and sentencing, the standard of beyond reasonable doubt must be strictly maintained, which is the key to ensuring judicial fairness. One must not arbitrarily lower the identification standard simply because of the complexity of a case. Meanwhile, if there is reasonable doubt regarding the evidence used to decide a case, the rule of 'presumption of innocence in case of doubt' must be firmly adhered to, fully protecting the legitimate rights and interests of the defendant, and insisting on formal justice to promote the enhancement of judicial credibility.



Jiang Zhijie (Beijing Dacheng Law Offices)

zhijie.jiang@dentons.cn

Consultant at Beijing Dacheng (Guangzhou) Law Offices. Graduated from Southwest University of Political Science & Law, worked in frontline anti-smuggling law enforcement for 16 years, handled and co-handled a series of major cases supervised by the General Administration of Customs, and won first-class collective merit, third-class individual merit, and commendations in the public security and customs systems. Published multiple practical research articles within customs, and has in-depth research on criminal law, criminal procedure law, evidence law, customs law, foreign trade law, and other customs-related legal fields.

Beijing Dacheng Law Offices

http://dacheng.com/

Beijing Dacheng Law Offices was founded in 1992 and is one of the earliest and largest partnership law firms established in China. Adhering to the core cultural philosophy of "Aiming High, Embracing All, Taking Steady Steps to Build Great Success" and an open development strategy of "Global Resources, Local Wisdom", Dacheng has always been committed to providing professional, comprehensive, timely, high-quality, and efficient legal services to domestic and foreign clients.

After more than 30 years of development, Dacheng has become a standardized, large-scale, professional, branded, and internationalized large comprehensive law firm with 48 offices in Mainland China, covering all provinces, autonomous regions, and municipalities directly under the Central Government, as well as a preferred partnership with Dentons, the world's largest law firm with more than 160 offices across over 80 countries and regions worldwide.

**No reproduction without permission.**

Scan to read conveniently on mobile

# 刑事案件使用高度盖然性认定标准的反思——结合走私犯罪案件视角

**作　　　　者:**江志杰（北京大成律师事务所）

**发　布　日　期:**2024.05.09

**前　言**

刑事司法实践中，刑事案件因案件性质和人权保障使然，证据认定上采用最严格的认定标准。“排除合理怀疑”标准作为刑事定罪的黄金准则，就是旨在维护司法公正与被告人的合法权益。当面对走私案件这类涉案人员众多、时间跨度长、境内境外证据交杂的案件认定时，部分司法机关或然地在某些证据链认定上采用“高度盖然性”标准。该做法虽有利于案件办理效率但却以损害公正性为前提。本文结合走私刑事案件，探讨“高度盖然性”标准使用的实际效果和存在问题等，以期司法机关在认定案件事实时有所考量。

**一、相关概念**

根据张嘉军 2023 年 11 月发表在河北法学的文章《环境民事公益诉讼阶段性、多元化证明标准建构研究———基于私益诉讼与公益诉讼比较的视角》中提到，当下我国立法或者司法解释仅仅形塑了高度盖然性、排除合理怀疑、较大可能性三种认定方法。司法实践中，适用何种认定方法由裁判者根据法律规定、案件类型、具体情况进行确定。

**（一）高度盖然性概述**

高度盖然性是指当一方证据的说服力显著强于另一方，法官可通过自由裁量，形成内心确信的一种认定案件事实的方法。《最高人民法院关于适用〈中华人民共和国民事诉讼法〉的解释（2022 年修正）》第一百零八条明确了高度盖然性在民事诉讼中的使用，其规定：“对负有举证证明责任的当事人提供的证据，人民法院经审查并结合相关事实，确信待证事实的存在具有高度可能性的，应当认定该事实存在。”该认定方法在刑事司法实践中，据以定案的证据无法达到“排除合理怀疑”标准时，部分司法机关可能会采用。例如，（2019）晋 1127 刑初 56 号刑事判决书中载明：“被告人陈某 1、张某有贩卖毒品的行为，又从其处查获毒品，对被查获的毒品二被告人有贩卖的高度盖然性，故推定其将用于贩卖，即查获的 1.39 克毒品应计入贩卖毒品的数量。”

**（二）排除合理怀疑概述**

全国人大常委会法工委有关负责人对排除合理怀疑含义作出解释，其提出，排除合理怀疑是指对于事实的认定，已没有符合常理的、有根据的怀疑，实际上达到确信的程度，是刑事诉讼中的最高证明标准。《中华人民共和国刑事诉讼法（2018 修正）》第五十五条第二款进一步强调排除合理怀疑在我国刑事诉讼中的重要性，其规定：“证据确实、充分，应当符合以下条件：（一）定罪量刑的事实都有证据证明；（二）据以定案的证据均

经法定程序查证属实；（三）综合全案证据，对所认定事实已排除合理怀疑。”该认定方法不仅能够保障审理的质量与效率，充分维护被告人的合法权益，而且对提高司法公信力及维护司法公正具有重要意义。

**（三）较大可能性概述**

较大可能性指的是在民事诉讼中，针对一些特定的事实，法院认为案件事实存在可能性较大时，认定案件事实存在的一种认定方案。根据《最高人民法院关于民事诉讼证据的若干规定（2019 修正）法释〔2019〕19 号》第八十六条第二款，其规定：“与诉讼保全、回避等程序事项有关的事实，人民法院结合当事人的说明及相关证据，认为有关事实存在的可能性较大的，可以认定该事实存在。”因此，该认定方法主要适用在民事诉讼中关于回避、诉讼保全等程序的相关事实。

**二、刑事案件的认定标准**

**（一）刑事案件的特点**

刑事案件具有严肃性、惩罚性、权威性。首先，严肃性体现在刑事案件与社会公共利益、法律秩序紧密联系，要求审判者法律适用准确、程序严谨，从而确保法律适用的准确性；其次，惩罚性是指刑事案件直接针对犯罪行为，通过国家严格的制裁遏制与预防犯罪，从而保护公民的人身、财产安全与社会公共利益；最后，权威性则源于刑事判决具有法律约束力与强大的社会影响力，并带有强制性，一旦作出，就必须得到执行，体现了法律的稳定性与权威性。

基于刑事诉讼具有惩罚与制裁犯罪行为、追究犯罪嫌疑人刑事责任的目的，审判者一旦认定被告人存在犯罪事实且证据确实、充分，被告人便可能面临剥夺人身自由，甚至剥夺生命等严重法律后果，这决定了刑事证明标准必然要高于民事或是行政证明标准。

**（二）刑事案件认定的难点**

随着社会发展与科技进步，新型犯罪、跨境犯罪的出现为刑事案件的认定带来新的挑战与难点，其难点主要表现在以下两个方面：

1、证据收集难度大。侦查人员在案发现场收集的物证、书证等多种证据，可能因遗失、人为篡改等原因，增加了证据收集的难度。其次，科技的进步导致犯罪手段逐渐高科技化，对证据评估的专业性要求也逐步提高，在此过程中，需确保证据认定的科学性与准确性。最后，由于刑事案件犯罪行为的特殊性、跨境性及跨国性，法官需要根据已有证据构建完整的证据链条，这对于海关部门及法官的专业素质、办案经验要求较高。

2、证据认定标准高。刑事诉讼司法实践要求认定案件事实需达到“排除合理怀疑”标准，必须保证全部证据都达到无可置疑的程度，才能认定被告人有罪。该标准要求审判者在对被告人作出有罪判决前，需彻底排除所有无罪证据，以确保判决的公正性。然而，由于证据局限性、技术限制性等因素，可能存在难以完全排除合理怀疑的情况，此时审判者可能会考虑使用低于该标准的“高度盖然性”标准，但使用该标准，可能会带来司法适用不一致、同案不同判等问题。

**（三）刑事案件与民事案件的异同**

**1. 刑事案件与民事案件的相同点**

（1）均希望达到相同的社会效果。刑事案件目的是追究犯罪行为的法律责任，保护国家与社会公共利益，从而实现法律的惩罚与预防犯罪功能；民事诉讼的目的是解决自然人之间、法人之间或者自然人与法人之间的私权纠纷。但综合来说，二者均为社会主义法治体系的组成部分，都希望通过法律程序，维护社会秩序，保障人民合法权益及促进司法公正。

（2）证据都是判决的关键。证据作为诉讼案件的基础，是裁判者据以定案的依据，也是案件审理的关键，换言之，任何诉讼案件没有充分的证据支撑，都难以得到公正的判决。“打官司也即打证据”，在法庭上，检察官提出的定罪依据或者是当事人提出的诉讼请求，都必须出示对应的证据来支持自己的定罪理由或者是请求事项。因此，一旦进入诉讼阶段，双方都应当重视证据的收集与整理，并确保自己提供的证据能够有效地证明自身提出的观点。

（3）均排除非法证据。非法证据排除这一原则源自美国司法实践“毒树之果”理论，该理论是指非法取得的证据应为“毒树”，基于“毒树”而衍生出的证据为“毒树之果”，应当被排除在案件之外，不能作为据以定案的依据。在我国刑事诉讼中，《关于办理刑事案件严格排除非法证据若干问题的规定》中对非法证据排除的使用提供了具体指导，其明确了在刑事诉讼中，非法言词证据应当绝对排除，非法实物证据应当裁量排除；在民事诉讼中，《最高人民法院关于适用〈中华人民共和国民事诉讼法〉的解释（2022 年修正）》第一百零六条明确规定：“人民法院应当按照法定程序，全面、客观地审核证据，依照法律规定，运用逻辑推理和日常生活经验法则，对证据有无证明力和证明力大小进行判断，并公开判断的理由和结果。”基于上述可知，刑事诉讼与民事诉讼都有关于非法证据排除的相关规定，以确保司法公正及人权得到充分保障。

**2. 刑事案件与民事案件的不同点**

（1）证明标准不同。基于法律规定，刑事诉讼则要求达到排除合理怀疑才能够定罪，其证明标准更为严格。究其原因，是刑事案件的法律后果涉及人身自由甚至是生命权，使用更高的证明标准以此来确保案件得到公正判决。而民事诉讼中往往使用高度盖然性进行审理。

（2）证明责任承担的主体不同。刑事诉讼中，证明责任主要由公诉机关承担，由公诉机关提供充分的证据证明被告人存在犯罪行为，并由法院裁决被告人的犯罪行为是否构成犯罪；而民事诉讼通常遵循“谁主张谁举证”，也就是当事人对自己提出的诉讼请求需要承担举证责任。

（3）法律后果不同。刑事案件可能导致被告人受到刑事处罚，如有期徒刑、无期徒刑甚至是死刑以及罚金等财产性处罚；而民事案件更关注对于受损权利的维护，其法律后果的通常是赔偿损失、恢复原状等民事救济措施。

**三、刑事案件使用高度盖然性标准的原因与带来的问题**

**（一）刑事案件认定中出现高度盖然性的原因**

**1、案件疑难复杂且证据取证难度大**

刑事案件侦办及司法认定实践中，由于部分刑案确实疑难复杂新颖，导致取证难度极大，相应法律规定滞后，基于此办案人员只能脱离证据体系进行倾向性的判断和论证，因而或多或少地采用盖然性标准。如走私犯罪这样的跨境类案件，极容易产生证据链断裂的问题，无法避免地采用盖然性标准去认定部分证据。

**2、有意忽视诉讼证据规则**

诉讼证据规则主要包含非法证据排除、传闻证据、意见证据等规则，在司法实践中，首先存在部分侦办人员有意规避非法证据排除规则，通过不同强制措施的适用使嫌疑人“主动”供述；其次是破坏传闻证据规则，通过大量的传闻证据（庭外证据）触动检法的内心确认；再次是反复固定意见类证据，形成大量猜测性、推断性证言，甚至寄希望于通过不同当事人表达同类猜测性证言和供述填补缺失的证据链环。

**3、不同阶段刑事证明标准的混淆**

应当明确，不同阶段的刑事证明标准是不同的，侦查阶段使用盖然性是侦查部门疑罪推定的侦查天性使然，此时的犯罪事实存在，以存在初步证据即可。因为侦查部门怀疑有犯罪事实存在，且需要追究刑事责任就应立案。但是案件进入检法阶段则不同，根据《高检规则》第 128 条第 2 款的规定，有证据证明有犯罪事实是指同时具备以下情形：①有证据证明发生了犯罪事实②有证据证明该犯罪事实是犯罪嫌疑人实施的③证明犯罪嫌疑人实施犯罪行为的证据已经查证属实。可见，从逮捕开始，证明标准较之侦查初期提高很多。在提起公诉、作出有罪判决阶段则要求犯罪事实清楚，证据确实充分的证明标准。

作为检法官，盖不可完全延续侦查部门的办案思维及其证明标准，因为整个证明已经从“疑罪从有”进入“疑罪从无”，如果无法达到排除合理怀疑，要不就是作出不起诉处理，要不就是作出无罪判决。

**（二）刑事案件使用盖然性标准易衍生的问题**

通过上述分析，我们发现证明标准的混用确有其存在空间，现在司法机关工作人员人数不足，工作量大，稍微不慎就轻易进入了“快办快结”的便捷模式，使用高度盖然性也就理所当然。但是刑事案件混用盖然性标准明显是存在诸多问题的，这里简单列举一二，以期加强法律定位。

**1、容易削弱刑事司法严肃性**

刑事司法作为维护公平正义与社会秩序的最后一道防线，若使用高度盖然性标准，无疑降低了证明门槛，扩大裁判者的自由裁量权、增加判决的不确定性。尤其在涉及生命权的案件中，该不确定性会造成公众对司法体系、司法公正的质疑。

**2、增加冤假错案发生的概率**

若采用不一致的证明标准，其对证据的认定、收集等各方面都存在差异，进而可能引发同类案件司法裁判、法律适用的不同，法官在判断证据是否充分及是否达到定罪标准时就会面临困境与挑战，最终影响案件判决结果，甚至导致冤假错案的发生。

**3、易损害被告人的合法权益**

刑事案件使用高度盖然性标准，可能因证据不足或者法官主观判断不准确而致使被告人权利无法得到应有保障。基于此，刑事诉讼应当谨慎对待高度盖然性标准在司法实践中的使用，避免因降低证明标准而损害被告人的合法权益。

**四、走私犯罪案件证据的认定难点和证明标准选择**

本文以笔者较为擅长的走私犯罪案件为视角，通过走私案件的案件特征与证明难点，阐释其应坚持严格证明标准的原因。

**（一）走私案件的案件特征与证明难点**

1、走私案件最大的特点是存在跨境性，这就意味着全案的境内证据和境外证据穿插交错，物流资金流等关键证据极易产生并留存于境外。同时也基于走私案件属于团伙作案共同犯罪的复杂性，司法机关取证难度加大，易使得在侦查或审判过程中，遇到证据不足或者证据难以确认的情况。基于这种认定难的特点，笔者在承办案件过程中，亦感受到部分司法机关在收集证据、据以定罪时，会以案件较为复杂、证据收集难度大为由，依赖某一证据并覆盖全案，以此认定被告人犯罪走私涉案数量进而定罪。

2、走私案件具有犯罪时间跨度长的特点，这会导致现有证据因时间流逝而无法取得，且走私者反侦查意识愈加提高，对于软硬件涉案设备有意识频繁更换，即使现有的刑事技术力量能够最大限度地提取恢复电子设备之前的数据信息，也受时间限制而无法全面固定完整的证据链条。同时刑诉法明确规定重证据轻口供，通过突审手段取得嫌疑人供述以弥补证据链缺失这一做法也极易因后期的口供的改变而失效。

3、走私案件证据体系繁琐庞杂，一般而言走私行为会涉及物流资金流单据流等，加之团伙作案不仅上下游之间分工明细，团伙内部工作亦存在细分。这就使得走私案件证据链复杂程度远高于普通刑事案件，如果按照排除合理怀疑的认定标准，其实很多的走私案件证据难以逐条满足该标准。

**（二）且不论办案过程中的各种困难，排除合理怀疑作为一个标准，乃原则性规定，标准背后承载的是法律公信力。**

1、站在维护司法权威与提高司法公信力角度理应坚持该标准。“法律是公正的裁判，司法是公正的天平。” 司法权威存在的前提是司法公正，司法公正的前提是依法办案。在我国，刑事诉讼案件使用排除合理怀疑证明标准，有法律依据，是司法机关在裁判案件时应当遵守的准则。当社会公众看到司法机关对于走私案件，严格坚持依法办案、高标准入罪时，会更相信司法制度的权威性，这也是司法机关展现其对司法公正与法治国家建设的承诺与实践的重要途径，增强社会公众对司法权威的认可与尊重。而若在走私案件中使用高度盖然性标准，降低了对证据的要求，容易造成司法权威的削弱与司法公信力的降低。

2、虽然某些案件取证难度极大，但是仅靠盖然性去认定刑事案件，会产生一系列负面效果，本来认定难度大就应强化取证能力和办案水准，这才有利于构建严密的证据审查体系。例如走私案件复杂散乱的证据前提下构建案件定罪完整证据链条，难度确实较大。但是部分司法机关由于难度大、复杂性高可能退而求其次选择低于排除合理怀疑的证明标准据以定罪，这样不仅不利于提高司法机关追求证据链的闭合与排除合理怀疑的积极性，进而难以确保判决的准确性与公正性，还难以提高司法判决质量。

3、单就走私案件而言，其跨境性和跨国性使得打击走私犯罪成为复杂的国际任务。在全球化背景下，多数国家与地区均采用排除合理怀疑标准作为走私犯罪案件认定的基本原则，我国也应当在走私案件中使用排除合理怀疑，这有助于促进国际司法标准的统一，促进信息共享与国际的司法合作，从而提高案件处理的效率与效果，同时也是维护全球法治秩序的重要手段。

最后，也是最为重要的，就是站在底线视角，我们应看到认定标准的下降极易产生误判而损害被告人合法权益。如果因为走私案件具有复杂的交易网络、大额的资金流动、庞大的货物数量，证据收集难度大，而片面粗略地对证据进行分析与推断，经验主义盛行，不仅无法保证案件办理质量，还会整体拉低司法机关的执法水平。

综述之，虽通过上述梳理，我们明白走私犯罪案件等复杂刑事案件确实存在诸多的认定难点，要做到完全排除合理怀疑的标准，几近艰难。但司法认定的原则依然严格，如《最高人民法院、最高人民检察院、海关总署关于印发〈办理走私刑事案件适用法律若干问题的意见〉的通知法〔2002〕139 号》强调对走私案件处理应当严格要求，要求刑事司法机关在认定被告人的走私行为构成犯罪时，必须提供充分、确凿的证据，在排除所有合理怀疑的基础上，达到确信的程度才能定案。据此笔者依然希望司法机关在案件审查过程中秉持法律底线，毕竟刑事案件办理的是“别人的人生”，在案件不被全面推翻的情况下，通过盖然性加重嫌疑人的责任显然是不可取的，不仅有悖形式正义也有违法律职业道德的。

**结 语**

在刑事诉讼中，应当统一执法尺度，认定标准不应左右摇摆，应当根据法律规定，适用排除合理怀疑，特别是对于定罪量刑的关键性证据，务必坚持排除合理怀疑标准，这是确保司法公正的关键所在。不能因为案件的复杂性，就擅自降低认定标准。同时，若据以定案的证据存在合理怀疑，则应当坚持“疑罪从无”的规则，充分保护被告人的合法权益，坚持形式正义以促进司法公信力的提高。



江志杰 （北京大成律师事务所）

zhijie.jiang@dentons.cn

北京大成（广州）律师事务所顾问。毕业于西南政法大学，曾从事缉私一线执法工作 16 年，曾主办及协办海关总署督办的一系列大要案件，曾获公安、海关系统集体一等功、个人三等功及嘉奖等。在海关内部发表多篇实务研究文章，对刑法、刑诉法、证据法、海关法、对外贸易法等海关法律领域均有深入研究。

北京大成律师事务所

http://dacheng.com/

北京大成律师事务所成立于 1992 年，是中国成立最早、规模最大的合伙制律师事务所之一。秉承“志存高远，海纳百川，跬步千里，共铸大成”的文化核心理念以及“全球资源、本土智慧”的开放式发展战略，大成始终致力于为国内外客户提供专业、全面、及时、优质、高效的法律服务。

经过三十余年的发展，大成已经成为在中国境内拥有 48 家办公室，服务范围覆盖国内全部省、自治区和直辖市，以及与世界范围内 80 余个国家及地区设有 160 多个办公室的全球最大律师事务所 Dentons 拥有优先合作关系的规范化、规模化、专业化、品牌化、国际化的大型综合性律师事务所。

**未经许可，不得转载。**

扫一扫，手机阅读更方便