# Yang Supplemental Ex. 8

MORNINGSIDE
A Questel Company

morningtrans.com

# TRANSLATION CERTIFICATION

**Date: 2026/09/03**

To whom it may concern:

This is to certify that the attached translation is an accurate representation of the documents received by this office. The translation was completed from:

- Chinese (PRC)

To:

- English (USA)

The documents are designated as:

- Supp. Ex. 8

Samuel Wu, Managing Director of this company, attests to the following:

"To the best of my knowledge, the aforementioned documents are a true, full and accurate translation of the specified documents."

Signature of **Samuel Wu**, Managing Director



299 South Main Street, Suite 1300
Salt Lake City, UT 84111

DOI: 10. 16390/j. cnki. issnl672-0393. 2003. 04. 011

Law and Business Studies Issue 4, 2003 (Total Issue 96)

# Reversal of the Burden of Proof: Theoretical Analysis and Problem Study

Hao Li

(Professor at Nanjing Normal University School of Law Nanjing, Jiangsu 210097)

**Abstract:** The reversal of the burden of proof in civil litigation has specific academic backgrounds and unique implications. It involves partial modifications to the normal distribution of the burden of proof according to the legal element classification theory. Reversing the burden of proof has dual effects on substance and procedure. Judges' discretionary use of burden of proof reversal as a supplementary method should be affirmed but strictly regulated. Applying dual reversal of burden of proof in medical disputes protects patients' interests but imposes significant severity on medical institutions. Dual reversal is suitable for preservation in the near term but should be adjusted in the long term.

**Keywords:** Reversal of Burden of Proof Basis Methods Problem Study

## I. Analysis of the Meaning of Burden of Proof Reversal

Reversal of the burden of proof is a significant theoretical and practical issue in civil litigation. As early as 1992, the Supreme People's Court stipulated six situations in tort litigation requiring burden of proof reversal in its "Opinions on Several Issues Concerning Application of the Civil Procedure Law of the People's Republic of China." In December 2001, the Supreme People's Court further revised and expanded these situations in Article 4 of its "Provisions on Several Issues Regarding Evidence in Civil Litigation" (hereinafter referred to as "Evidence Provisions"). However, despite the use of burden of proof reversal in judicial practice, its precise meaning is yet to be fully understood. Without clarifying its inherent meaning, the analysis and research of this issue lack a foundation and premise.

In civil litigation, the reversal of the burden of proof has a specific meaning. It refers to reallocating the burden of proof among parties according to the legal element classification theory. One party initially bears the burden of proof for a legal-element fact's existence, but this is shifted to the other party to demonstrate the non-existence of that fact.

The aforementioned definition requires further explanation from the following three aspects.

(i) Reversal involves the losing risk of substantive facts

In China's civil litigation, the concept of the burden of proof is often used in different senses. Sometimes, it refers to the responsibility to provide evidence to the court, while other times it denotes the losing risk one party assumes when facts remain unclear. Article 2 of the "Evidence Provisions" also defines the connotations of the burden of proof on two levels: action and result. It is important to emphasize that burden of proof reversal refers to the result-oriented responsibility for losing risks, not the action-oriented responsibility of providing evidence. However, reversing result-oriented responsibility may impact the sequence of action-oriented responsibilities. This is because, first and foremost, between action and result responsibilities, only result responsibility truly represents the essence of the burden of proof. Action responsibility merely reflects result responsibility through adversarial debate practices in litigation. [①] Second, the allocation of the burden of proof focuses on result responsibility. Result-based responsibility is static and non-transferable, while action-based responsibility is dynamic and shifts between parties as the litigation unfolds. Static responsibility can be allocated in advance, whereas dynamic responsibility requires determination based on specific circumstances during litigation and cannot be abstractly allocated. Furthermore, the reversal of the burden of proof falls within the realm of burden of proof allocation, indicating consistency in subject matter between the two.



(C)1994-2022 China Academic Journal Electronic Publishing House. All rights reserved. http://www.cnki.net

In civil litigation, the objects of proof are divided into three tiers: essential facts prescribed by law, indirect facts, and auxiliary facts. Essential facts, also referred to as 'primary facts,' are the key elements specified by substantive law that give rise to, alter, or extinguish specific civil rights and obligations. Indirect facts are secondary-level facts used to infer the existence of essential facts. Auxiliary facts, at the third tier, relate to evidence admissibility and probative value. Although all three tiers of facts belong to the objects of proof, the allocation of the burden of proof focuses on essential facts and distributes the risk of losing the case regarding different essential facts between the parties. The reversal mirrors the allocation process; thus, reversal pertains to the shift of case-losing risk concerning essential facts. According to the prevailing civil law theory in China, general tort liability consists of four essential facts: damage results, unlawful behavior, causation, and fault. Special tort liability, primarily no-fault liability, excludes fault and comprises the other three essential facts. When the burden of proof is reversed, the causation and fault elements are the subject of reversal.

(ii) Reversal is a partial revision of the results of standard allocation.

Logically, reversal is relative to standard allocation. To analyze and understand the reversal of the burden of proof, it is necessary to first clarify what constitutes standard allocation. If the result of distributing the burden of proof based on certain principles is considered standard allocation, then adjusting this result to produce a situation opposite to the standard allocation represents a reversal of the burden of proof. Therefore, the reversal of the burden of proof is essentially a partial revision of the standard allocation, or a second round of allocation.

The essence of the burden of proof lies in the risk of losing the case. Its significance often becomes apparent during litigation when the authenticity of facts is unclear. However, waiting until such ambiguity arises for the judge to decide which party bears the burden of proof undermines legal stability and hinders the ability of parties to assert, defend, collect, and provide evidence. Thus, rules are needed to allocate the burden of proof between parties in advance. In countries within the continental legal system, such as Germany and Japan, the allocation of the burden of proof between parties primarily bases on Rosenberg's legal element classification theory. The distribution result derived from this theory represents standard allocation. [2] Reversal is relative to this standard allocation result; it adjusts the standard outcome to produce a distribution differing from the original allocation.

(iii) The reversal of the burden of proof produces dual effects—procedural and substantive.

The burden of proof imposes three pressures on litigating parties from the outset—responsibility for assertions, initial evidence provision, and risk of losing the case. Reversal of the burden of proof transfers these pressures from one party to the other. Among these pressures, the first two pertain to procedural issues: determining which party should make assertions and provide evidence first. The third pertains to substantive issues, deciding which party should lose when the facts remain unclear. For example, in an infringement lawsuit, once the element of fault shifts from the plaintiff to the defendant, the plaintiff no longer needs to allege that the defendant was at fault. This is because the absence of fault becomes a defense that the defendant is required to assert. If the defendant fails to argue their lack of fault, the court will presume fault and rule that the defendant was at fault. After asserting a defense of no fault, the defendant must initially provide evidence to the court to support their claim of no fault. This constitutes the primary evidence. If the defendant fails to produce evidence or provides insufficient evidence, they will likely lose the case. The plaintiff is only required to provide counter-evidence once the defendant has presented relatively sufficient evidence. After court investigations and debates, if the judge is still unable to establish whether fault exists, the judge will assign the consequence of bearing tort liability to the defendant based on the allocation of the burden of proof.

The procedural consequences are evident. With the reversal of the burden of proof, the defendant's claims and the burden of evidence become distinctly apparent during the litigation process. The substantive consequences, however, are potential and highly uncertain in terms of actual occurrence. If a fact is proven, the substantive consequences will not materialize. It is only when facts remain unclear that the risk of losing the case turns into an actual loss. However, if the fact in question is inherently challenging to prove, a reversal of the burden of proof may effectively equate to reversing the substantive legal consequence of losing the case.


(C)1994-2022 China Academic Journal Electronic Publishing House. All rights reserved. http://www.cnki.net

**II. Purposes and Rationales of Reversing the Burden of Proof**

Fairness and justice are eternal values and ideals of legal systems, pursued across all jurisdictions. Naturally, applying the reversal of the burden of proof aligns with this objective. In civil litigation, the burden of proof for each type of case needs to be allocated in advance between the parties based on specific principles. Generally, this allocation, when grounded in proper principles, meets the requirements of fairness and justice. However, given the wide variety of civil cases and the complexity of case facts, such allocation according to set principles cannot guarantee that all specific results will be appropriate. Moreover, societal development and changes in the environment may cause misalignment, making some previously fair and just allocations no longer align with the principles of fairness and justice under new social conditions. This necessitates reversal.

The legal element classification theory allocates the burden of proof based on whether the elements are facts that create rights, prevent rights, or extinguish rights, as well as on the interrelationships within legal provisions. While this method of allocation is generally appropriate, it relies on formal criteria and finds it difficult to comprehensively consider substantial factors that influence the allocation of the burden of proof. Thus, the allocation results based on the legal element classification theory may sometimes be inappropriate. For instance, a debtor's negligence in exercising a due debt is a factual element for a creditor to exercise the right of subrogation. Similarly, the publication or production of a copyright holder's work without legal authorization by publishers or producers constitutes the factual element of unlawful conduct. According to the legal element classification theory, the burden of proof falls on the creditor asserting subrogation or the copyright holder claiming infringement. However, this leads to an immediate problem. The facts asserted by such parties—such as the debtor not demanding repayment or publishers and producers not obtaining legal authorization—are inherently negative facts. Although the opposing party assumes a position of denial, they are, in reality, asserting affirmative facts. Asserting negative facts often means claiming that certain facts have not occurred. Non-existent facts are difficult or even impossible to prove. For instance, asking a creditor to prove that the debtor did not request a sub-debtor to settle the debt, or asking a copyright owner to prove they never authorized the other party, is unreasonable. The opposing party, when asserting affirmative facts by denial, naturally finds it easier and more feasible to provide proof. Therefore, it is necessary to introduce the substantive standard of the difficulty of proof and reverse the burden of proof to change the allocation result under the legal element classification theory. After the reversal, the sub-debtor will bear the burden of proof to show that the debtor has asserted rights promptly. Publishers or producers will carry the burden to prove they have obtained legitimate authorization.

The reversal of the burden of proof often occurs in lawsuits arising from torts. The need to apply the reversal of the burden of proof in tort lawsuits has emerged with the progress of modernization. Modernization is a goal pursued by all nations. While it brings abundant goods, convenient transportation, advanced healthcare, and more comfortable living conditions, it also introduces numerous problems. New technologies, equipment, and products often carry hidden dangers, leading to increases in medical accidents, traffic accidents, environmental pollution, and frequent damages. This not only triggers more lawsuits but also poses new challenges to tort law.

According to civil substantive law, general tort liability requires the fulfillment of four elements: damage, unlawful act, causation, and fault. Under the principle of burden of proof allocation determined by the legal element classification theory, these four elements fall under the facts constituting the claim for compensation. Thus, the party requesting compensation (usually the plaintiff) bears the burden of proof. However, in lawsuits arising from modernization, plaintiffs are often only able to prove their personal or property damage and that the defendant engaged in unlawful acts, but unable to prove the defendant's fault or establish causation between the defendant's actions and the damage. If the burden of proof continues to be allocated under the regular principle, the plaintiff would be unable to get compensation for the harm suffered. To alleviate the plaintiff's difficulty in providing proof, modern civil substantive laws in various countries apply the principle of strict liability to certain special torts. Nevertheless, plaintiffs often fail to be compensated due to setbacks in proving causation.

The main function of tort law is to compensate for the victim's loss and to deter tortious acts. The objectives of substantive law cannot be achieved without corresponding procedural laws. Otherwise, the substantive law's


(C)1994-2022 China Academic Journal Electronic Publishing House. All rights reserved. http://www.cnki.net

purpose would be undermined. As the renowned jurist Jhering sharply criticized: "The remedies provided by our common law often require evidence that is utterly impossible to obtain…Such lawsuits are a disaster for the plaintiff and a fortune for the defendant." [③] If the burden of proof continues to be allocated under the regular principle of the legal element classification theory, it would significantly hinder the realization of the function of tort law and lead to a loss of fairness and justice in such tort cases. Therefore, it is necessary to adjust the evidentiary system to address this issue. Reversing the burden of proof for "fault" and "causation" is one of the effective measures to tackle this problem.

However, in cases where the truth or falsity of key elements like "fault" or "causation" is unclear, why is it fairer for the party denying liability to bear the burden of proof compared to the party asserting the claim for compensation? There are at least four reasons for this:

First, the party causing harm has the ability to distribute losses. In most cases, placing the burden of proof on the defendant effectively makes them liable for damages. However, defendants are generally business operators, some of whom are large enterprises. They can mitigate the risk of compensation through insurance, thus distributing the risk among the group of operators. Of course, this might increase the cost for businesses, and the added cost may ultimately be passed on to consumers. However, this is still fairer than letting the disadvantaged victims bear the losses themselves.

Second, it is advantageous for suppressing harmful actions. While some risks arise from the use of new technologies and products in modern society, efforts can still be made to prevent and reduce their occurrence. The risk should be allocated to the party that can avoid it at the lowest cost. Between the victim and the perpetrator, who is better positioned to prevent risks at lower costs? Clearly, it's the perpetrator. The perpetrator is the product manufacturer, who understands the product's performance, design, and production processes. They are thus capable of preventing accidents by improving designs, processes, or adding safety devices.

Third, it helps suppress the occurrence of damages. Modern economics suggests that having operators of risky activities bear the responsibility for damages can suppress occurrences through market mechanisms. Since the cost of compensating damages will ultimately be included in production costs, it will increase the relative cost of producing defective goods or engaging in hazardous activities. Such products or activities will then be at a price disadvantage compared to other products with similar performance, unless operators invest in eliminating product defects. If the cost of eliminating defects is too high, producing defective products or using faulty technology becomes economically unviable, causing hazardous products and activities to be phased out through market mechanisms.

Fourth, the victim is distant from the evidence while the perpetrator is closer to it. In lawsuits involving environmental pollution or medical malpractice, there is often a significant difference in the proximity to evidence between the plaintiff and the defendant. Polluting entities and medical institutions not only have expertise but often control and possess evidence related to negligence and causation. Victims, on the other hand, don't have the right to access relevant documents and data from the perpetrator's enterprise or medical records stored by hospitals. When evidence disparity leads to an evident inequality in proving ability between parties, imposing the burden of proof on the party with weaker proving capability contradicts justice and thus necessitates reversing the burden of proof.

**III. Pathways for Reversing the Burden of Proof**

(i) Implementing the reversal of burden of proof in civil substantive law

In the civil substantive laws of various countries, there are occasionally provisions specifying which party bears the burden of proof. In China's civil laws, similar provisions exist. For instance, Article 126 of the General Principles of Civil Law stipulates that when buildings or other installations, as well as objects placed or hung on buildings, collapse, fall, or drop causing harm to others, their owner or manager must prove their lack of fault in order to be exempted from liability. Similarly, Article 57 of the Patent Law and Article 52 of the Copyright Law make similar provisions.

These civil legislative provisions are, in essence, regulations about reversing the burden of proof, even if the term 'reversal' is not explicitly mentioned in the text. When applying substantive laws to resolve disputes, issues regarding the burden of proof often arise. However, legislators cannot stipulate the distribution of the burden of


(C)1994-2022 China Academic Journal Electronic Publishing House. All rights reserved. http://www.cnki.net

proof for every provision. Otherwise, not only would the number of legal provisions multiply, but legal norms would also become cumbersome and complex, therefore, some countries have stipulated basic rules for the allocation of the burden of proof in their civil codes, ④ while others, without explicit provisions, have implicitly recognized these basic rules. ⑤ This explicitly stated or implicitly recognized basic rule is: the party asserting a right shall bear the burden of proof for the facts establishing the right, while the party asserting that the right does not exist, or that the right has changed or been extinguished, shall bear the burden of proof for the facts preventing the right from arising, or for facts altering or extinguishing the right. When the allocation of the burden of proof aligns with the basic rules, it is unnecessary to provide specific stipulations in substantive law. Only when the allocation deviates from these basic rules is it necessary to make specific provisions in the law, which in effect constitutes the reversal of the burden of proof.

(ii) Reversal of Burden of Proof Specified by the Supreme Court in Judicial Interpretations

This can be divided into two scenarios: one is when the reversal is stipulated in the interpretation of civil substantive law. For example, the "Interpretation on Several Issues Concerning the Application of the Contract Law of the People's Republic of China (I)" states that when there is a dispute about whether the debtor has delayed exercising a matured claim, which is a prerequisite for the right of revocation, the burden of proof does not lie with the creditor asserting the fact, but with the sub-debtor denying the fact, to prove that the debtor was not negligent in exercising the matured claim (Article 13, Paragraph 2). The other scenario is when the reversal is stipulated in the interpretation of civil procedural law. For instance, Article 4 of the "Evidence Provisions" stipulates eight situations where the burden of proof is reversed.

(iii) Reversal of the Burden of Proof by Judges in Individual Cases

The law and judicial interpretations cannot cover all scenarios requiring a reversal of the burden of proof. On the other hand, the necessity of reversing the burden of proof is closely related to the proximity of evidence to both parties and their respective abilities to provide proof. Therefore, allowing judges to decide on reversing the burden of proof based on the specific circumstances of each case is both reasonable and necessary. Article 7 of the "Evidence Provisions" states: “Where the law does not provide specific stipulations, and it is impossible to determine the allocation of the burden of proof based on these provisions and other judicial interpretations, the people's court may determine the allocation of the burden of proof based on the principles of fairness and good faith, taking into account factors such as the parties' proof capabilities.” This provision essentially authorizes judges to reverse the burden of proof in individual cases.⑥

(iv) Reversal of the Burden of Proof by Agreement of the Parties

An evidence agreement refers to a contract between parties concerning methods of establishing facts during litigation. Evidence agreements can be categorized as narrow or broad. Narrowly defined, they include admission agreements, appraisal agreements, and evidence method agreements. Broadly defined, they also encompass agreements that alter the principles of the allocation of the burden of proof. Contracts involving the reversal of the burden of proof are generally related to agreements between parties. If the contracting parties believe that the typical allocation of the burden of proof is unfair, they may preemptively agree to reverse the burden of proof when drafting the contract.

Among the four aforementioned methods of reversing the burden of proof, the first two are the most commonly used and the most reliable. This is because, firstly, the allocation of the burden of proof essentially involves the distribution of litigation disadvantages and the risks of losing the case. Reversing the burden of proof entails redistributing the risk of losing between the parties. Determining whether such redistribution is justified and appropriate requires value judgments and a balancing of interests. Additionally, it involves the question of who has the right or qualification to make judgments and decisions. From this perspective, it is undoubtedly appropriate for the legislative and the supreme judicial bodies to decide on the reversal. Secondly, the burden of proof is pre-allocated abstractly without being tied to specific litigation, or in other words, it is predetermined for the parties before the litigation starts. This reflects the legal requirements for stability and predictability. Only by having the legislative and supreme judicial bodies make prior provisions can the burden of proof be reversed in advance.

As for the fourth approach, as long as both parties voluntarily agree and the reversal does not violate principles of honesty, good faith, or fairness, and does not cause significant difficulty for the party bearing the burden of proof after reversal, the court has no reason to prohibit such agreements. A contract to reverse the burden of proof essentially allows parties to dispose of substantive rights through evidence, falling under the scope of the principle of disposition. Therefore, the court can determine the validity of the agreement based on this principle. Since the right to disposition imposes a reasonable limitation on adjudication, judicial authority should respect this right and ensure its realization. A contract reversing the burden of proof actually binds the court, which should follow the agreement during litigation and reverse the burden of proof accordingly. However, although this method of reversing


(C)1994-2022 China Academic Journal Electronic Publishing House. All rights reserved. http://www.cnki.net

the burden of proof exists theoretically, it is rare in judicial practice.

IV. Issues Worth Researching in the Future

(i) How to ensure the proper reversal of the burden of proof by judges

Allowing judges to reverse the burden of proof during the hearing of specific cases is necessary. However, on the other hand, such reversals, ultimately decided by a collegiate bench or a sole judge during litigation, lack the legitimacy of the first two approaches mentioned earlier. Furthermore, the reversal of the burden of proof requires value judgments and interest balancing, which are greatly influenced by a judge's legal expertise, life experience, ability to identify issues, and personal value preferences. Thus, while granting judges discretion to reverse the burden of proof, it is also essential to appropriately regulate the exercise of this discretionary power.

The author believes that control can be exercised through the following aspects: (1) Informing the parties in advance of situations where the burden of proof may be reversed. After reversing the burden of proof, the risk of losing the case shifts from the party originally bearing the burden to the other party. Additionally, the responsibility of providing evidence often transitions as well, requiring the other party to prove the nonexistence of the facts to be substantiated. If judges do not explain this beforehand, the reversed party would have no understanding of the need to prove the case, essentially depriving them of the opportunity to provide evidence, leading to 'evidence ambush' conducted by judges, which contradicts procedural justice. Therefore, judges should fulfill their duty of clarification and [7] promptly inform the parties. (2) Assigning new deadlines for evidence submission to the party bearing the burden due to the reversal. Since this type of reversal is decided temporarily by judges during litigation based on the specific circumstances of the facts to be proved, the affected party lacks prior preparation. Thus, to ensure the reversed party's procedural rights to collect and present evidence, new deadlines should be set for evidence submission. (3) Providing detailed explanations of the reasons for reversal within judgment documents. This approach generates at least three benefits: first, it convinces the losing party to accept the judgment and reduces appeals and motions for retrial; second, it makes judges cautious about reversing the burden of proof without sufficient reason; and third, should the losing party challenge the reversal by appealing, it facilitates higher courts in reviewing whether the reversal of the burden of proof was appropriate. (4) After the establishment of the three-instance final adjudication system, [8] allowed parties dissatisfied with the reversal of the burden of proof to appeal to the third instance or to propose a leapfrog appeal on this issue. The reversal of the burden of proof essentially concerns the application of substantive law, and allowing appeals to the third instance is appropriate. (5) When a judge believes it is necessary to reverse the burden of proof but is uncertain, they can escalate it as a complex legal application issue to higher courts, requesting a directive from the Supreme Court.

(ii) Dual Reversal of the Burden of Proof in Medical Dispute Litigation

Article 4, Clause 8 of the "Evidence Provisions" implements a dual reversal of the burden of proof in tort cases arising from medical disputes. It shifts the burden of proof for causation and fault from the plaintiff to the defendant. The medical institution, as the defendant, must prove there is neither causation between the medical act and the damage nor medical negligence.

This regulation has not only sparked significant reactions within the medical community but also caused some debate in legal academia. The medical community generally believes this will lead to more lawsuits and impose excessive risks on medical institutions. Some legal scholars also consider the dual reversal of the burden of proof to be too harsh on medical institutions.

In medical dispute litigation, the disparity in evidential capabilities between patients and medical institutions is evident. If such evidential bias is ignored and patients, who clearly lack adequate ability to present evidence, are not provided with relief, their chances of winning a lawsuit become exceedingly slim. Therefore, countries adopt various measures to provide relief to patients, with the reversal of the burden of proof being one of them. Whether reversing the burden of proof is excessively harsh on medical institutions can only be determined through comparative analysis with other forms of relief.

In civil law countries, Germany utilizes the method of prima facie evidence for relief, while Japan employs the method of general presumption.[9]

The so-called "prima facie evidence" refers to the process by which courts apply highly probable rules of experience to infer the fact under investigation from an existing fact observed in recurring events or phenomena (typified events). [10] For example, from the fact that a doctor left hemostatic forceps inside a patient after surgery,


(C)1994-2022 China Academic Journal Electronic Publishing House. All rights reserved. http://www.cnki.net

it can be inferred that the doctor was negligent.

Regarding the nature of prima facie evidence, there are differing views in German academia. One perspective holds that prima facie evidence is merely an issue of a judge applying rules of experience within the scope of free evaluation of evidence, making it a matter of evidence assessment. Another perspective considers prima facie evidence as a method to resolve how courts should rule when primary facts remain unclear, thereby serving to shift the burden of proof. The evidence assessment theory is the prevailing view and has been adopted by court precedents.

According to the evidence assessment theory, prima facie evidence has the following characteristics: (1) It is a form of indirect proof that applies highly probable, typified rules of experience to infer the existence of the primary fact from an indirect fact; (2) The plaintiff need only prove the presumed underlying facts and is not required to assert or prove the specific individual facts related to the fact to be proven, because once prima facie evidence applies, abstract determination of the fact to be proven is permitted even though certain gaps in the factual relationship remain unclear; (3) The defendant may offer rebuttal evidence to show that other possibilities exist, thereby preventing the application of prima facie evidence; (4) By applying prima facie evidence, the judge has already formed an inner conviction that the fact to be proven exists, and therefore need not consider the issue of the burden of proof; (5) If a judge misapplies prima facie evidence, this constitutes grounds for a third-instance appeal.[11]

General presumption is a method used by Japanese courts to lighten the plaintiff's burden of proof. The so-called general presumption means that when there exists a rule of experience under which the harm would not have occurred absent negligence, once the plaintiff has proven that the harm occurred, the court may presume the defendant was negligent unless the defendant can prove the existence of exceptional circumstances showing an absence of negligence.

Regarding the nature of general presumption, Japanese scholars hold three views: the factual presumption theory, the reduced standard of proof theory, and the burden of proof reversal theory, among which the factual presumption theory is the prevailing view and is also the theory adopted in Japanese judicial practice. This theory holds that general presumption is a presumptive finding of fact made by the judge based on rules of experience, which still falls within the scope of evidence assessment. Even where the defendant fails to offer rebuttal evidence, the law does not compel the judge to find that negligence existed, and the judge may still find, based on free evaluation of the evidence, that no negligence existed.[12]

There are clear distinctions between reversal of the burden of proof and prima facie evidence or general presumption. When the latter two methods of relief are used, the burden of proof concerning causation and fault does not shift; it remains with the plaintiff seeking damages. Applying prima facie evidence or general presumption merely lightens the plaintiff's burden of producing evidence and places the burden of producing contrary evidence on the defendant, thereby making it easier for the plaintiff to prove the existence of causation and medical fault. From the defendant's perspective, although burdened with the responsibility of producing rebuttal evidence, the burden of proof itself does not shift to the defendant. The defendant need only present evidence sufficient to cast doubt in the judge's mind as to the existence of causation and fault to succeed, without having to affirmatively prove the absence of causation and medical fault. If the burden of proof is reversed so that the defendant bears the burden of proving the absence of causation and fault, then, from a procedural law perspective, the defendant must not only assert the absence of causation and fault as a defense before the court, but must also, in the event of a dispute, be the first to produce evidence and prove the defense with sufficient evidence. In substantive terms, if the evidence presented is insufficient for the judge to form an inner conviction as to the existence of causation and fault, the judge will apply the burden of proof and rule against the defendant. An example of general presumption commonly cited by Japanese scholars can aptly illustrate this issue. When a general presumption applies, the defendant can overturn the presumption of fault by simply presenting evidence that the injection site was previously affected by a bug bite. This creates a situation where the defendant's negligence becomes uncertain, allowing the defendant to prevail. Once the burden of proof for negligence shifts to the defendant, the court will rule against the defendant under the same circumstances.

In terms of proving causation, civil law countries only reverse the burden of proof when the defendant is proven to have committed gross negligence. For example, a German doctor operated on the plaintiff who had finger contracture and left the hospital, returning 32 hours later. Shortly after the operation, the plaintiff's finger turned purple and caused severe pain. By the time the defendant returned to the hospital, the finger necrosis was irreversible, and he ultimately had to amputate the necrotic finger. In this case, the exact cause of the finger necrosis could not be determined, but Germany's High Court considered the defendant's failure to examine the patient for 32 hours after the surgery as gross negligence and ruled that the defendant bore the burden of proof due to the unclear cause of damage. [13] The Eastern High Court of Denmark 1988-6-22: in a judgment issued on this date, the burden


(C)1994-2022 China Academic Journal Electronic Publishing House. All rights reserved. http://www.cnki.net

of proof was likewise reversed because the defendant had committed serious medical negligence. In this lawsuit, "the hospital mistakenly removed one of the plaintiff's mother's healthy kidneys. The woman died of a cerebral hemorrhage three months later. Whether a causal relationship existed between the cerebral hemorrhage and the kidney surgery could not be explained medically; the court, due to the hospital's gross negligence, reversed the burden of proof and upheld the plaintiff's claim for damages." ⑭

This analysis shows that compared to prima facie evidence or general presumption, reversing the burden of proof is indeed a more robust measure for protecting patient rights and imposes strict accountability on medical institutions.

Given the current circumstances in our country, I believe it is necessary to implement a dual reversal of the burden of proof. Such a measure offers stronger protection for patients and imposes greater caution and diligence on medical institutions in treating patients. From the results of implementing the "Evidence Provisions" for over a year, the dual reversal of the burden of proof in medical dispute litigation has produced tangible positive effects as hospitals and doctors' practices have quietly transformed. For example, the issue of doctors writing illegibly and overly personalized notes in medical records, making them unreadable for patients, has improved. Before finalizing treatment plans and surgeries, doctors now take greater care in fulfilling their duty to inform patients. Medical records are kept with increased diligence, some hospitals record entire surgical processes to mitigate litigation risks, and others have even insured doctors against potential compensation liability. On the other hand, the dual reversal undeniably imposes excessive strictness on medical institutions. In the long term, as medical institutions continue to improve services and patients' positions are gradually strengthened, it's worth exploring whether the dual reversal of the burden of proof should remain necessary, and whether alternative methods that provide effective relief for patients without overly burdening medical institutions could replace it.

**Annotation:**

① Refer to Yongjia Luo's 'On Civil Burden of Proof,' published by Taiwan Commercial Press in 1972, p. 52.

② Rosenberg's theory is known as the 'Normative Theory' in Germany, while in China, it is commonly referred to as the 'Legal Element Classification Theory.' The issue of reversing the burden of proof arises when using the Legal Element Classification Theory to allocate the burden of proof. If the allocation is based on substantive standards (e.g., probability theory or interest balancing theory), although the final allocation result coincides with reversal, theoretically, it remains a direct allocation of the burden of proof rather than a reversal.

③ Quoted from Lin Wang et al., 'Activating Audio-Video Evidence,' published in Legal Daily, January 21, 2001, p. 3.

④ Countries that explicitly define the basic rules for burden of proof allocation in their civil codes include Switzerland, France, Italy, Spain, Greece, Turkey, and the Netherlands. The Civil Code of the Macao Special Administrative Region of China also stipulates in Article 335: (1) The fact that creates the right shall be proven by the person asserting the right; (2) The fact that obstructs, changes, or extinguishes the right asserted by another shall be proven by the person against whom the right is asserted; (3) In case of doubt, the relevant facts shall be deemed to be facts that create the right. "

⑤ Germany follows the basic rules for allocating the burden of proof by default. Articles 193 to 198 of the German Civil Code (Draft I) once regulated the allocation of the burden of proof, with Article 193 providing the basic rule: The party asserting the claim shall bear the burden of proving the facts necessary for the claim. The party asserting the extinction or limitation of the claim shall bear the burden of proving the facts required for such extinction or limitation. "

⑥ Some scholars believe that the authorization of judges by the "Evidence Provisions" to allocate and reverse the burden of proof based on principles of fairness and good faith in individual cases is inappropriate, as the burden of proof must be stipulated by law. Decisions by judges could undermine legal certainty and the predictability of judicial activities.

⑦ There are differing views in the academic community regarding whether the explanatory behavior of judges is a right or an obligation. Considering that China has not implemented mandatory lawyer representation and most litigants lack basic legal knowledge, the author tends to consider explanations as an obligation of judges.

⑧ Although the current Civil Procedure Law still adopts the two-instance final judgment system, this system results in most final appeal cases being handled by the Intermediate People's Courts, which is not conducive to the uniform application of the law. A three-instance final judgment system is increasingly supported by academic circles and judicial practice in China. The author believes that revising the Civil Procedure Law in the future to replace the two-instance final judgment system with a three-instance final judgment system is a plausible option.

⑨ Most Japanese scholars believe that general presumption and prima facie evidence have no substantial differences, and both serve similar functions in litigation. However, some argue that the two concepts differ: prima facie evidence requires merely the presence of certain negligence, whereas general presumption demands the party to specifically assert facts of negligence.

⑩ Refer to Chen Rongzong and Lin Qingmiao, Civil Procedure Law, Second Revised Edition, Taiwan Sanmin Book Co., Ltd., 2001, pp. 623–624.

⑪ Refer to Gong Saihong, Research on Medical Damage Compensation Legislation, Law Press 2001 Edition, p. 297.

⑫ Refer to Yu Min, Japanese Tort Law, Law Press 1998 Edition, pp. 131-133.

⑬ Refer to Chen Rongzong, The Allocation of Burden of Proof and Civil Procedure Law (Vol. II), Taiwan Sanmin Book Co. 1979 Edition, pp. 69–71.

⑭ [German] Christian•von•Bar, European Comparative Tort Law (Volume II), translated by Jiao Meihua, Law Press 2001 Edition, p. 574.

**Editor-in-Chief Zhang Zetao**


(C)1994-2022 China Academic Journal Electronic Publishing House. All rights reserved. http://www.cnki.net

DOI:10.16390/j.cnki.issn1672-0393.2003.04.011


法 商 研 究 2003年第4期(总第96期)

# 举证责任倒置:学理分析与问题研究

李 浩

(南京师范大学法学院教授 江苏 南京 210097)

**摘要:**举证责任倒置在民事诉讼中有其特定的学术背景并由此形成特有含义,是指对依法律要件分类说分配举证责任所形成的正置结果的局部修正。倒置举证责任会产生实体与程序双重效果。法官裁量决定倒置举证责任作为补充性方法应予肯定,但应严格控制。对医疗纠纷实行举证责任双重倒置有利于保护患者利益,但对医疗机构相当严厉。双重倒置宜近存远改。

**关键词:**举证责任倒置 依据 途径 问题研究

## 一、举证责任倒置含义的分析

举证责任的倒置,是民事诉讼中重大的理论和实践问题。早在1992年,最高人民法院便在《关于适用<中华人民共和国民事诉讼法>若干问题的意见》中规定了侵权诉讼中需要倒置举证责任的六种情形;2001年12月,最高人民法院又在其颁布的《关于民事诉讼证据的若干规定》(以下简称《证据规定》)第4条中对侵权诉讼中需要倒置举证责任的情形作了修正和扩充。然而,尽管审判实务中早就运用了举证责任的倒置,但对举证责任倒置的确切含义,还不能说已经准确把握。而如果不能辩明其应有的含义,对这一问题的分析和研究也就缺乏前提和基础。

民事诉讼中举证责任的倒置有其特定的含义,是指按照法律要件分类说在双方当事人之间分配举证责任后,对依此分配结果原本应当由一方当事人对某法律要件事实存在负举证责任,转由另一方当事人就不存在该事实负举证责任。

对上述定义,需从以下三个方面作进一步说明。

(一)倒置的是主要事实的败诉风险

在我国民事诉讼中,人们往往从不同的意义上使用举证责任这一概念,有时用它说明当事人向法院提供证据的责任,有时则是用来指事实真伪不明时一方当事人负担的败诉风险。《证据规定》第2条亦是分别从行为和结果两个层面对举证责任的内涵作出界定。需要强调指出的是,举证责任倒置是指败诉风险意义上结果责任的倒置而不是指提供证据意义上行为责任的倒置,虽然倒置结果责任会对行为责任发生的先后顺序产生影响。这是因为:首先,在行为与结果两种责任中,真正能够代表举证责任本质的乃是结果责任,行为责任不过是结果责任通过辩论主义在诉讼中的投影而已。[①]其次,举证责任分配的对象是结果责任。结果责任是一种静态的不会发生转移的责任,行为责任则是一种动态的会随着诉讼的展开而在双方当事人之间转移的责任。静态的责任可以预先分配,动态责任的承担须依诉讼中的具体情形而定,无法抽象地进行分配。再次,举证责任的倒置属举证责任分配的范畴,因而在对象上与举证责任分配具有同一性。



(C)1994-2022 China Academic Journal Electronic Publishing House. All rights reserved. http://www.cnki.net

民事诉讼中的证明对象分为三个层次——法律要件事实、间接事实和辅助事实。法律要件事实又称“主要事实”,是指由实体法规范规定的作为产生、变更或消灭特定民事权利义务关系的基本要素的事实;间接事实是第二层次的事实,是用来推断要件事实是否存在的事实;辅助事实则为第三层次的事实,是与证据能力和证明力相关的事实。尽管上述三个层次的事实均属证明对象,但举证责任分配针对的是法律要件事实,是将不同要件事实的败诉风险在双方当事人之间分配。倒置的对象与分配相同,因而倒置是要件事实败诉风险的倒置。依照我国民法理论中的通说,一般侵权责任由损害结果、违法行为、因果关系、过错四个要件事实构成,特殊侵权责任主要为无过错责任,由除过错以外的其余三个要件事实构成,实行举证责任倒置,倒置的是因果关系和过错这两个要件事实。

(二)倒置是对正置结果的局部修正

从逻辑上说,倒置必定是相对于正置而言的,因此只有先明确什么是举证责任的正置,才有可能进一步分析和说明举证责任倒置问题。如果说按照一定的原则对举证责任进行分配所产生的结果是举证责任的正置的话,通过对正置结果进行调整而形成的不同于正置结果的相反情形则为举证责任的倒置。可见,举证责任倒置实际上是对正置结果的局部修正,也可以说是举证责任的第二次分配。

举证责任的本质乃在于败诉的风险,举证责任的重要性往往是在诉讼过程中,尤其是在事实真伪不明发生时才凸现出来,但是,如果等到事实真伪不明出现时再由法官来确定举证责任由哪一方当事人负担,既不利于维护法的安定性,也不利于当事人主张、抗辩,收集和提供证据,因此需要依据一定的规则事先在双方当事人之间分配举证责任。在大陆法系的德、日等国,主要是依据罗森贝克的法律要件分类说在双方当事人之间分配举证责任的,按照上述学说获得的分配结果便是举证责任的正置。[②]倒置是相对于这一正置结果而言的,是对正置结果调整后获得的不同于正置的分配。

(三)举证责任倒置会产生程序和实体双重效果

举证责任的存在使进入诉讼的当事人一开始就面临着三重压力——主张的负担、首先提供证据的负担、败诉风险的负担,实行举证责任倒置意味着这三重压力从一方当事人转移至另外一方当事人。在这三重压力中,前两重指向的是应当由哪一方当事人向法院提出主张和由哪一方当事人首先提供证据的程序性问题,后一重指向的是事实真伪不明情形下法院应当判决哪一方当事人败诉的实体性问题。例如,在侵权诉讼中,当过错这一要件事实从原告转移至被告后,原告就不必再主张被告存在着过失,因为无过错已成为应当由被告主张的抗辩事由,被告若不提出自己无过错的抗辩,法院就会依据过错推定认定被告存在着过错。被告提出无过错的抗辩后,还须就所主张的无过错的事实首先向法院提供证据,这一举证在性质上属于本证,因而被告若提不出证据或举证不充分,都会招致败诉的后果,原告只是在被告已提出较充分的证据后才有必要提供反证。经过法庭调查和辩论后,如果法官最终仍然无法形成是否存在过错的心证,还会依举证责任的归属将承担侵权责任这一实体法后果判归被告一方。

程序法上的后果是显而易见的,实行举证责任倒置后,被告的主张与举证负担都会在诉讼过程中清晰地表现出来。实体法上的后果则是潜在的,并且实际发生与否具有相当大的不确定性。事实若获得了证明,实体法上的后果就不会发生,事实处于真伪不明状态,败诉风险才会转化为实际的败诉后果。但是,如果待证事实本身是证明起来难度相当大的事实,倒置举证责任也就接近于倒置了实体法上的败诉后果。



(C)1994-2022 China Academic Journal Electronic Publishing House. All rights reserved. http://www.cnki.net

## 二、举证责任倒置的目的与依据

公平与正义是法律制度永恒的价值与理念,是各国法律制度努力追求的目标。实行举证责任倒置自然也离不开这一目标。民事诉讼须按一定的原则将每一类诉讼的举证责任预先在双方当事人之间分配,一般而言,由于采用了正确的原则,分配结果是符合公平正义的要求的。但是,民事案件的类型多种多样,案件事实又错综复杂,按照一定原则的分配实际上无法保证每一具体分配结果都是妥当的。此外,社会的发展和环境的变化会造成两者间的不适应,使某些原先符合公平正义要求的分配结果在新的社会条件下背离公平正义的要求,于是便产生了倒置的必要性。

法律要件分类说是依据该要件事实是产生权利的事实,还是妨碍权利产生的事实、消灭权利的事实来分配举证责任的,并根据法律条文的相互关系来区别要件事实的归属。以此方式分配举证责任虽然在一般情况下是妥当的,但是毕竟是根据形式的标准分配举证责任,对一些影响举证责任分配的实质性因素考量难以周全。所以,依据法律要件分类说分配的结果可能是不妥当的,例如,债务人怠于行使到期债权,是债权人行使代位权的要件事实,复制品的出版者、制作者未经合法授权出版、制作著作权人的作品,是行为违法性的要件事实,按照法律要件分类说,应当由主张代位权的债权人、主张侵权赔偿的著作权人负举证责任。可这样一来,立刻就会产生一个问题,当事人主张的这些事实——在性质上属于消极事实,即债务人未要求次债务人清偿债务,出版者、制作者未取得合法授权——对方当事人虽处于否认者的地位,但实际上是主张积极的事实。主张消极事实常常是主张事实未发生,而未发生的事实是难以证明甚至无法证明的,如让债权人去证明债务人未要求次债务人清偿债务,让著作权人去证明他从未向对方授权,完全是强人所难。对方当事人通过否认而主张了积极的事实,自然是易于证明和能够证明的。因此,需要引入证明难易这一实质性考量标准,通过实行举证责任倒置来改变法律要件分类说的分配结果。实行倒置后,由次债务人就债务人已及时向他主张权利负举证责任,由出版者、制作者对已获得合法授权负举证责任。

举证责任倒置常常发生在侵权引起的诉讼中,侵权诉讼中实行举证责任倒置的必要性是随着社会的现代化而逐步显现的。现代化是各国努力奋斗的目标,然而,现代化在给人们带来丰富的物品、便利的交通、良好的医疗条件、更舒适的生活的同时,也带来了众多的问题。新技术、新设备、新产品往往也暗含着新的危险,导致了医疗事故、交通事故激增、环境污染加剧、损害频繁发生。这不但引发了更多的诉讼,也使侵权行为法面临着新的挑战。

依据民事实体法的规定,一般侵权责任须由四个要件构成——损害事实、违法行为、因果关系、过错。而依据法律要件分类说确定的分配举证责任的原则,这四个要件事实均属于损害赔偿请求权成立的事实,应由提出赔偿的一方当事人(通常为原告)负举证责任,但在那些因现代化而带来的新型诉讼中,原告往往只能证明自己的人身或财产受到了损害以及被告实施了违法行为,而无法证明被告有过错和被告的行为与损害之间存在因果关系。若继续按正置来分配举证责任,原告所受的损害就无法获得赔偿。为了缓解原告举证的困难,现代各国的民事实体法对某些特殊的侵权行为实行无过错责任,但即便如此,原告往往也因为在因果关系问题上证明受挫而无法获得赔偿。

侵权行为法的功能主要在于填补受害者的损失和抑制侵权行为,而实体法宗旨的实现离不开与之相适应的程序法,否则,实体法的宗旨就会落空,诚如著名法学家耶林曾尖锐批评的



(C)1994-2022 China Academic Journal Electronic Publishing House. All rights reserved. http://www.cnki.net

那样:"我们的普通法所提供给权利人的救济通常是以完全不可能得到的证据为前提的……这样的诉讼是原告的灾难,被告的幸运。"③若继续按照法律要件分类说以正置的方式分配举证责任,就会严重影响侵权行为法功能的实现,造成上述侵权诉讼中公平正义的失落。因此,需要调整证据制度来解决这一问题,倒置"过失"和"因果关系"的举证责任就是有力的对策之一。

可是,在"过失"、"因果关系"这些要件事实真伪不明的场合,为什么由否认负赔偿责任的一方当事人承担举证责任要比主张损害赔偿请求权的对方当事人承担举证责任更为公平呢?这至少有以下四个方面的理由:

首先,加害方有能力分散损失。被告方负担举证责任在多数情况下实际上等于是让他承担损害赔偿责任,但被告方一般是经营者,有些还是大企业,他们完全可以通过投保的方式分散赔偿的风险,让经营者群体来承担这一潜在的风险。当然,这有可能增加企业的成本,所增加的成本最终也可能转嫁给消费者,但无论如何,这总比让处于弱势地位的受害人自己承担损失更为公平。

其次,有利于抑制加害行为。虽然一些危险是伴随现代社会中新技术、新产品的使用而来的,但仍然有可能通过努力来防止和减少它们的发生。风险应当确定给能够以最低成本避免其发生的一方承担。在受害人和加害人之间,谁更有能力以较少的成本防范风险呢?显然是加害人。加害人是产品的制造者,他们最清楚产品的性能、产品的设计和生产工艺,因而有能力通过改进设计或工艺,通过增加安全装置来防范事故的发生。

再次,有利于抑制损害的发生。近代经济学有见解认为,由从事危险活动的经营者承担损害赔偿责任,可以用市场机制抑制损害发生。因为经营者赔偿损失的费用最终是要摊入成本的,这样就会使生产有缺陷商品或从事危险活动的经营者的成本相对提高,与具有同样性能的其他商品相比,在价格竞争上处于劣势,除非经营者投入费用来消除产品的缺陷。如果消除缺陷需投入的费用很大,生产有缺陷的产品或使用有缺陷的技术在经济上就不合算,危险的产品和活动就会因市场机制而被排除。

第四,受害人距离证据远而加害人离证据近。在污染环境致人损害、医疗事故致人损害诉讼中,原、被告双方与证据的距离有着显而易见的差别。排放污染物的单位、医疗单位不仅具有专业知识上的优势,而且往往也控制、掌握着与过失、因果关系相关的证据;受害人则不同,他们无权进入加害人的企业收集相关的资料和数据,难以获得由医院保存的医疗档案。当证据偏在造成双方当事人的证明能力明显不对等时,由证明能力弱的一方负举证责任是有违公正的,因而需要通过倒置举证责任来解决。

## 三、举证责任倒置的途径

### (一)在民事实体法中对举证责任实行倒置

在各国的民事实体法中,偶尔也会有些条文专门对举证责任由哪一方当事人负担作出规定。我国的民事法律中也有这样一些条款,如《民法通则》第 126 条规定,当建筑物或者其他设施以及建筑物上的搁置物、悬挂物发生倒塌、脱落、坠落造成他人损害的,它的所有人或者管理人欲免责,应当对自己无过错承担举证责任。同时,《专利法》第 57 条、《著作权法》第 52 条都作出了与此相似的规定。

上述民事立法中实际上都是关于举证责任倒置的规定,虽然条文中均未使用倒置一词。在适用实体法解决争议时,都会遇到举证责任问题,但立法者无法就每一条文的举证责任分配



(C)1994-2022 China Academic Journal Electronic Publishing House. All rights reserved. http://www.cnki.net

都作出规定，否则，不仅会使法律条文的数量成倍增加，而且也会使法律规范变得繁琐、复杂，因此，一些国家在民法典中规定了举证责任分配的基本规则，[4]一些国家虽未作出规定，但默认了举证责任分配的基本规则。[5]这条被明文规定或默认的基本规则是：主张权利的一方当事人，应当就产生权利的事实负举证责任，主张权利未发生或已发生权利变更或消灭的当事人，应当就阻碍权利发生的事实、变更或消灭权利的事实负举证责任。当举证责任的分配与基本规则相一致时，实体法中就没有必要特别作出规定，只有当举证责任的分配出现与基本规则相异的情形时，才有必要在法律中作出规定，而这种相异的情形，实际上就是举证责任的倒置。

（二）由最高法院在司法解释中规定举证责任倒置

这具体可分为两种情形：一种是在对民事实体法的解释中作出规定，如在《关于适用＜中华人民共和国合同法＞若干问题的解释（一）》中规定，当债务人是否怠于行使到期债权这一行使撤销权的要件事实发生争议时，不是由主张该事实的债权人负举证责任，而是由否认该事实的次债务人对债务人未怠于行使到期债权负举证责任（第 13 条第 2 款）。另一种是在对民事诉讼法的解释中作出规定，如《证据规定》第 4 条规定了 8 种倒置举证责任的情形。

（三）由法官在针对个案的裁判中倒置举证责任

法律和司法解释难以穷尽所有需要倒置举证责任的情形，另一方面，是否有必要倒置举证责任又与双方当事人与证据距离的远近、双方当事人证明能力的大小有密切关系。所以，由法官根据每个案件的具体情况决定倒置举证责任有其合理性和必要性。《证据规定》第 7 条规定："在法律没有具体规定，依本规定及其他司法解释无法确定举证责任承担时，人民法院可以根据公平原则和诚实信用原则，综合当事人的证明能力等因素确定举证责任的承担。"该规定实际上已授权法官在个案中倒置举证责任。[6]

（四）当事人在证据契约中倒置举证责任

证据契约是指当事人订立的有关诉讼中确定事实方法的契约。证据契约有狭义和广义之分，狭义指自认契约、鉴定契约、证据方法契约等，广义则还包括变更举证责任分配原则的契约。倒置举证责任的契约一般与合同有关，如果合同的双方当事人认为按通常情形分配举证责任有失公正，便会在订立合同之时预先对举证责任倒置作出约定。

在上述倒置举证责任的四种方法中，前两种是通常采用的方法，也是稳妥的方法。这是因为：首先，举证责任的分配实际上是诉讼上的不利益和败诉风险的分配，举证责任的倒置，是在双方当事人之间重新分配败诉风险，而如何重新分配才具正当性和妥当性，需要通过价值判断和利益衡量来确定。此外，还涉及谁有权力或资格进行判断考量和选择的问题。从这方面说，由立法机关和最高司法机关来决定倒置无疑是妥当的。其次，举证责任是脱离具体的诉讼而抽象地预先分配的，或者说是在当事人开始诉讼前就已经预置于双方当事人的，这体现了法律的稳定性和可预见性的要求。而由立法机关和最高司法机关预先作出规定，才能够将举证责任预先倒置。

至于第四种途径，只要双方当事人是自愿作出约定，且约定的倒置不违反诚实信用原则和公平原则，不会给倒置后负担举证责任的一方造成显著的困难，法院自无禁止的必要。倒置举证责任的契约，实际上是当事人通过证据处分实体权利，属处分原则支配的范围，所以法院可以依据处分原则确定约定的有效性。由于处分权构成了对审判的合理制约，审判权应当尊重处分权并保障处分权的实现，当事人倒置举证责任的契约实际上具有约束法院的效力，法院在诉讼中应当按照当事人的约定倒置举证责任。不过，这种倒置举证责任的途径虽然从理论上



(C)1994-2022 China Academic Journal Electronic Publishing House. All rights reserved. http://www.cnki.net

说是存在的,但在司法实务中,却是罕见的。

**四、今后值得研究的问题**

(一)如何保证法官妥当倒置举证责任

允许法官在审理具体案件中倒置举证责任是必要的,但另一方面,这样的倒置毕竟是在诉讼过程中由合议庭或独任法官裁量决定的,其正当性毕竟不如前面两种途径。再说,倒置举证责任需要通过价值判断和利益衡量来完成,而能否作出妥当的衡量与判断同法官的法律水准、生活经验、识别能力、价值偏好有极大的关系。因此,在授权法官裁量倒置举证责任的同时,对自由裁量权的行使予以适当的控制也是必要的。

笔者认为,可以从以下几个方面进行控制:(1)将倒置举证责任的情形事先告知当事人。倒置举证责任后,败诉风险从原先负担举证责任的一方当事人转移到另一方,而且提供证据的责任往往也会随之转移,要由另一方当事人从反面来证明待证事实不存在。对此,法官若不事先加以说明,被倒置的一方无从知道要由自己来证明,这无异于剥夺该方当事人证明的机会,造成由法官实施的证据突袭,有悖程序的公正。因此,应由法官通过履行阐明义务,[⑦]及时告知当事人。(2)为因倒置而承担举证责任的一方当事人重新指定举证期限。这类倒置是由法官在诉讼过程中依据待证事实的具体情形临时决定的,被倒置的一方事先无任何准备,因此,为从程序上保障被倒置一方收集和提供证据的权利,应当为其重新指定举证期限。(3)在判决书中详细说明倒置的理由。这至少可以带来三个方面的益处:其一使因倒置而败诉的一方当事人信服,减少上诉和申请再审;其二是使法官在缺乏充分理由时不至于轻率地倒置举证责任;其三是在败诉一方不服倒置提出上诉时,使上级法院易于审查倒置举证责任是否正确。(4)在建立三审终审制后,[⑧]允许不服举证责任倒置的当事人上诉于第三审,或者允许就此问题提出飞跃上诉。举证责任的倒置,实质上是实体法的适用问题,允许上诉到第三审是恰当的。(5)当法官认为需要倒置举证责任但又没把握时,可以将它作为适用法律中的疑难问题逐级上报,请求最高法院作出批复。

(二)医疗纠纷诉讼中举证责任的双重倒置

《证据规定》第 4 条第 8 款对因医疗纠纷引起的侵权诉讼实行举证责任的双重倒置,将因果关系与过错的举证责任均从原告转移至被告,由作为被告的医疗机构就医疗行为与损害结果之间不存在因果关系及不存在医疗过错负举证责任。

这一规定不仅在医务界引起了很大的反响,而且在法学界也引起了一些争议。医务界普遍认为这会诱发更多的诉讼并使医疗机构承担太多的风险,法学界的一些学者也认为实行举证责任双重倒置对医疗机构过于严厉。

在医疗纠纷诉讼中,病人与医疗机构在证据问题上的不对等是显而易见的。如果对证据偏见视而不见,对举证能力明显弱的病人不给予某种救济,病人获得胜诉的希望是相当渺茫的。所以,各国均采用一定的方式对病人进行救济,举证责任倒置只是其中的一种。实行举证责任倒置对医疗机构是否过于严厉,要将它与其他救济方法比较分析后才能得出结论。

从大陆法系国家的情况看,德国采用的救济方式是表见证明,而日本采用的则是大致推定。[⑨]

所谓“表见证明”,是指法院利用具有高度盖然性的经验法则,就一再重复出现的事件或现象(定型事象),从已存在的某种事实,推断作为证明对象的待证事实的证明过程。[⑩]例如,从医



(C)1994-2022 China Academic Journal Electronic Publishing House. All rights reserved. http://www.cnki.net

生做手术后,将止血钳留在病人体内这一事实,推断该医生存在过失。

对表见证明的性质,德国学术界有不同的认识。一种观点认为表见证明不过是法官在自由心证范围内适用经验法则的问题,因而是证据评价的问题;另一种观点认为表见证明是用来解决主要事实真伪不明时法院如何判决的,所以具有转移举证责任的功能。其中证据评价说为通说,也是为法院判例所采纳的学说。

据照证据评价说,表见证明具有以下特征:(1)它是一种间接证明,是运用具有高度盖然性的定型化的经验法则,从间接事实推定主要事实存在;(2)原告只须证明推定的前提事实,无须主张和证明与待证事实相关的个别的具体的事实,因为适用表见证明后,事实关系虽然还存在未明了的空白部分,也允许抽象地认定待证事实;(3)被告可以提出反证,证明还存在其他可能性,以阻止表见证明的适用;(4)法官通过适用表见证明,已获得待证事实存在的心证,因而无需考虑举证责任问题;(5)法官若误用表见证明,构成上诉第三审的理由。[11]

大致推定是日本法院用来减轻原告举证负担的一种方法。所谓大致推定是指当存在非因过失损害便不至于发生的经验法则时,在原告证明损害已发生后,若被告不能证明存在表明其无过失的例外情形,法院便可据此推定被告存在着过失。

对大致推定的性质,日本学者存在事实推定说、证明度减轻说以及举证责任倒置说三种认识,其中事实推定说居通说地位,也是日本司法实务所采用的学说。该说认为大致推定是法官依据经验法则对事实作出的推测性认定,仍然属于证据评价的范畴,在被告未能提出反证的情况下,法律并未强制法官作出存在过失的认定,法官依据自由心证认定不存在过失也是允许的。[12]

举证责任倒置与表见证明、大致推定存在着明显的区别。采用后两种救济方式时,关于因果关系和过错的举证责任并未发生转移,它们仍存在于请求损害赔偿的原告一方,实行表见证明或大致推定的结果只是减轻了原告负担的提供证据的责任,并且将提供相反证据的责任置于被告方,从而使原告较为容易证明存在因果关系和医疗过错。从被告一方说,虽然被课以提供反证的责任,但由于举证责任本身并没有转移到他身上,他只需提出证据,使法官对因果关系和过错的存在产生怀疑,就能够获得举证成功,而不必从反面证明不存在因果关系和医疗过错。如果实行举证责任倒置,由被告对不存在因果关系和无过错负举证责任,那么,从程序法的角度看,被告不仅需要把不存在因果关系和无过错作为抗辩事实向法院主张,而且在发生争议时首先应提供证据,用充分的证据证明自己的主张。在实体上,如果证明的结果不足以使法官形成是否存在因果关系和有无过错的心证,法官就会适用举证责任判决被告败诉。日本学者常举的大致推定的例子可以恰当地说明这一问题。适用大致推定时,被告在原告证明受注射部位化脓后,为推翻存在过错的推定,只需举出注射部位曾被虫子叮咬的事实,使被告是否存在过失处于真伪不明状态,即可获得胜诉。而一旦将过失的举证责任转移于被告,相同的情形下法院就会判决被告败诉。

就因果关系的证明而言,大陆法系国家只是在被告被证明有严重过失的情况下,才会对举证责任实行倒置。例如,德国一医生为患手指萎缩症的原告开刀后即离开医院,直至 32 小时后才回到医院,而原告手术后几小时手指就变紫并严重发痛,被告回到医院后已无法阻止手指坏死,最后只得把坏死手指切除。在该案件中,造成手指坏死的确切原因无法查明,但德国高等法院认为,被告手术后 32 小时未检查病人系严重过失,应对损害原因不明负举证责任。[13]丹麦东部高等法院 1988 年 6 月 22 日作出的一判决中也由于被告方有严重的医疗过失而倒置了



(C)1994-2022 China Academic Journal Electronic Publishing House. All rights reserved. http://www.cnki.net

举证责任。在该诉讼案中,"医院错误地切除了原告的母亲一个健康的肾。该妇女在三个月后死于脑溢血。脑溢血和肾手术之间有无因果关系是医学上无法解释的,法院因医院方的重大过失倒置了举证责任并肯定了原告的损害赔偿请求权。"⑭

以上分析表明,较之于表见证明与大致推定,举证责任倒置的确是一种对患者权益保护力度更大、对医疗机构十分严厉的救济措施。

就我国的现实国情而言,笔者认为,实行举证责任双重倒置这一对患者保护力度更大、对医疗机构格外严厉的措施是必要的,能够促使医疗单位更慎重、更细心地对待病人。从《证据规定》实施一年多的情况看,在医疗纠纷诉讼中实行举证责任双重倒置已产生了明显的积极效果,医院和医生的行为悄然发生了变化。例如,病历上医生写字太潦草、太个性化,病人无从认识的现象有所改变;确定治疗方案和动手术前医生能认真履行对病人的告知义务;对医疗档案的保管更为细心;为防范诉讼证明的风险,有的医院对手术的过程全程录像;有的医院还就可能产生的赔偿风险为医生们向保险公司投保等等。但另一方面,双重倒置也的确存在着对医疗单位过于严厉的问题。从长远看,随着医疗单位不断改进服务,随着病人地位的逐步改善,是否有必要继续实行举证责任的双重倒置,能否用既可以对患者实行有效救济又不至于对医疗单位过于严厉的其他方法替代双重倒置,是今后需要关注和研究的问题。

注释:

①参见骆永家:《民事举证责任论》,台湾商务印书馆 1972 年版,第 52 页。

②罗森贝克的学说在德国称作"规范说",我国一般将它称为"法律要件分类说"。采用法律要件分类说分配举证责任,才产生举证责任倒置问题。若是采用依实质性标准分配举证责任的学说(如盖然性说、利益衡量说),尽管分配的最终结果与倒置相同,但从理论上说,仍然是举证责任的直接分配而非倒置。

③转引自王琳等:《激活录音录像证据》,《法制日报》2001 年 1 月 21 日,第 3 版。

④在民法典中明文规定举证责任分配基本规则的国家有瑞士、法国、意大利、西班牙、希腊、土耳其、荷兰等。我国澳门特别行政区的民法典也作了规定,其第 335 条规定:"(1)创设权利之事实,由主张权利之人负责证明;(2)就他人所主张之权利存有阻碍、变更或消灭权利之事实,由主张权利所针对之人负责证明;(3)如有疑问,有关事实应视为创设权利之事实。"

⑤德国属默认举证责任分配基本规则的国家。《德国民法典(第一草案)》第 193 条至 198 条曾对举证责任分配作出规定,其中第 193 条为基本规则的规定,其内容为:"主张请求权者,应就发生该请求权所需之事实为举证。主张请求权消灭或主张请求权之效力受制,应就发生消灭所需事实或发生受制所需事实为举证。"

⑥有学者认为,《证据规定》授权法官在个案中依据公平和诚实信用原则分配举证责任和倒置举证责任是不妥当的,因为举证责任的负担须由法律来规定,由法官决定会损害法的安定性和司法活动的可预知性。

⑦对法官的阐明行为究竟是权利还是义务,理论界有不同认识。考虑到我国未实行律师强制代理,多数诉讼当事人欠缺法律的基本知识,笔者倾向于将阐明作为法官的义务设定。

⑧尽管现行民诉法仍实行两审终审制,但由于实行这一制度致使大部分案件的终审法院为中级人民法院,不利于法律的统一适用,三审终审正成为有力的学说得到我国民诉法学理论界和司法实务部门的认同。笔者认为,将来修订民诉法,改两审终审为三审终审是可能的。

⑨日本学者大多认为,大致推定与表见证明并无实质性区别,两者在诉讼中发挥着相似的机能。但也有人认为,两者是存在差异的,表见证明只要存在某种过失即可,大致推定则要求当事人主张具体的过失事实。

⑩参见陈荣宗、林庆苗:《民事诉讼法》,台湾三民书局股份有限公司 2001 年修订第 2 版,第 623—624 页。

⑪参见龚赛红:《医疗损害赔偿立法研究》,法律出版社 2001 年版,第 297 页。

⑫参见于敏:《日本侵权行为法》,法律出版社 1998 年版,第 131—133 页。

⑬参见陈荣宗:《举证责任分配与民事程序法》(第二册),台湾三民书局 1979 年版,第 69—71 页。

⑭[德]克雷斯蒂安·冯·巴尔:《欧洲比较侵权行为法》(下卷),焦美华译,法律出版社 2001 年版,第 574 页。

责任编辑 张泽涛



(C)1994-2022 China Academic Journal Electronic Publishing House. All rights reserved. http://www.cnki.net