# Yang Supplemental Ex. 17

MORNINGSIDE
A Questel Company

morningtrans.com

# TRANSLATION CERTIFICATION

**Date: 2026/09/03**

To whom it may concern:

This is to certify that the attached translation is an accurate representation of the documents received by this office. The translation was completed from:

- Chinese (PRC)

To:

- English (USA)

The documents are designated as:

- Supp. Ex. 17

Samuel Wu, Managing Director of this company, attests to the following:

"To the best of my knowledge, the aforementioned documents are a true, full and accurate translation of the specified documents."

Samuel Wu

Signature of **Samuel Wu**, Managing Director



299 South Main Street, Suite 1300
Salt Lake City, UT 84111

# Construction and Regulation of a System for Lowering the Standard of Proof for Substantive Facts

WANG Gang*

**Abstract:** The establishment of a general standard of proof in litigation is conducive to unifying the standards for judicial adjudication and enhancing legal stability and predictability. However, a general standard of proof in litigation cannot adequately accommodate the requirements of fairness in all litigation cases. Its deficiencies may be remedied by lowering the standard of proof. Lowering the degree of conviction required for the fact to be proven to be true may serve to alleviate the burden of proof borne by the parties. The legal nature of lowering the standard of proof is the mitigation of the burden of proof, rather than the exemption from or alteration of the original allocation of the burden of proof. Lowering the standard of proof does not constitute a negation of the general standard of proof in litigation; rather, it is an exceptional rule premised upon the general standard, and the relationship between the two is that of “general rule and exception.” To construct a model for lowering the standard of proof that is consistent with the theoretical traditions and practical experience of civil procedure in China, in addition to adhering to the principle of “general rule and exception”, strict conditions for its application should also be established, namely, that the difficulty of proof is indeed caused by the nature of the facts of the case themselves and that such difficulty results in an obviously unjust outcome of the adjudication on the merits; at the same time, it should be subject to dual regulation in terms of both degree and procedure: as regards degree, the lower limit of the reduction should be the preponderance of probability (exceeding 50%); as regards procedure, the process and outcome of the judicial conviction resulting from the reduction should be disclosed in a timely manner, and the parties should be permitted to engage in argument and appeal, so as to prevent arbitrary adjudication.

**Keywords:** substantive facts; difficulty of proof; lowering of the standard of proof; mitigation of the burden of proof

The burden of proof and the evaluation of proof influence each other, with the standard of proof serving as the medium between them. As the measure by which a court determines whether a party has succeeded in proving its case, the standard of proof connects the burden of proof with the evaluation of proof and constitutes one of the core elements of the evidentiary system. With respect to facts constituting substantive elements, China's current law (mainly judicial interpretations) has established a civil standard-of-proof system that adopts a high degree of probability [1] as the general standard of proof, [2] supplemented by proof beyond reasonable doubt [3] (an elevated standard of proof). However, an excessively high standard of proof cannot safeguard the principle of equality of arms and substantive justice across all areas of litigation.

*Postdoctoral Researcher, School of Law, East China University of Political Science and Law, Doctor of Laws; Tenured Judge, Xiangcheng District People's Court of Suzhou City, Jiangsu Province.

[1] Article 73, Paragraph 1 of the Several Provisions of the Supreme People's Court on Evidence in Civil Litigation (Judicial Interpretation [2001] No. 33, hereinafter referred to as the “Provisions on Evidence in Civil Litigation (2001)”) provides: “The People's Court shall, in light of the circumstances of the case, determine whether the probative force of the evidence provided by one party is manifestly greater than that of the evidence provided by the other party, and shall confirm the evidence with greater probative force.” The Supreme People’s Court, in its interpretation of this provision, took the view that this article formally established the standard of proof based on a high degree of probability in China's civil litigation. See Li Guoguang (ed.): Understanding and Application of the Several Provisions of the Supreme People's Court on Evidence in Civil Litigation, China Legal Publishing House, 2002 edition, p. 462. The academic community has likewise endorsed this view. See Li Hao: “A New Exploration of the Standard of Proof,” published in China Legal Science, Issue No. 4, 2002, p. 132. In fact, Article 73, Paragraph 1 merely permits the inference, from its literal wording, that a standard of proof based on a high degree of probability was established, whereas an explicit provision establishing such a standard is found in the Interpretation of the Supreme People's Court on Several Issues Concerning the Application of the Civil Procedure Law of the People's Republic of China (hereinafter referred to as the “Interpretation of the Civil Procedure Law (2015)”), promulgated by the Supreme People's Court on January 30, 2015. Article 108, Paragraph 1 of that Interpretation provides: “Where, upon examination and in conjunction with the relevant facts, the People's Court is convinced that there is a high probability that the fact to be proven exists, it shall determine that such fact exists.” On March 22, 2022, the Supreme People's Court amended the aforementioned judicial interpretation of the Civil Procedure Law. The amended provision remained Article 108, and its content was unchanged.

[2] There has been a debate in academic circles as to whether a general standard of proof in litigation exists in civil litigation. Some scholars have argued that, given the requirements of objectification and concretization of standards, constructing an abstract standard of proof that nevertheless depends on a judge's subjective understanding can only be a “Utopian” fantasy. See Zhang Weiping: “The Utopia of Constructing Standards of Proof,” published in Legal Studies, Issue No. 4, 2003, p. 60. However, a greater number of scholars maintain that standards of proof in litigation objectively exist, and that constructing a system of standards of proof for China's civil litigation is of great significance. See He Jiahong: “Judicial Standards of Proof and Utopia—A Response to Liu Jinyou and a Discussion with Zhang Weiping and Wang Minyuan,” published in Legal Studies, Issue No. 6, 2004, pp. 101–103. The prevailing view advocates adopting a high degree of probability as the general standard of proof in China’s civil litigation. See Jiang Wei (ed.): Civil Procedure Law, China Renmin University Press, 2013 edition, pp. 213–214.

[3] Article 109 of the Interpretation of the Civil Procedure Law (2015) for the first time prescribed that the standard of proof for facts involving fraud, duress, malicious collusion, and facts concerning an oral will or gift shall be proof beyond reasonable doubt. On October 25, 2019, the Supreme People’s Court promulgated the Decision on Amending the Several Provisions on Evidence in Civil Litigation (Judicial Interpretation [2019] No. 19, hereinafter referred to as the “Provisions on Evidence in Civil Litigation (2019)”), which comprehensively amended the Provisions on Evidence in Civil Litigation (2001). Article 86 of the amended provisions contains the same provision as Article 109 of the Interpretation of the Civil Procedure Law (2015).



© 1994-2024 China Academic Journal Electronic Publishing House. All rights reserved. http://www.cnki.net

In cases involving evidence-biased litigation [4] and cases in which proof is difficult due to the nature of the facts to be proven themselves, [5] parties may be unable to produce effective evidence because they are farther removed from the evidence or are constrained by their capacity to adduce evidence. If the evaluation of proof is nevertheless conducted according to the general standard of proof, this will ordinarily leave the facts to be proven in a state of uncertainty as to whether they are true or false, thereby causing the party bearing the burden of proof (primarily the party asserting the right) to suffer the adverse consequences. This is manifestly unfair and cannot command the confidence of the parties or the general public. The Interpretation of the Supreme People's Court on Several Issues Concerning the Application of the Civil Procedure Law (2015) only expressly provides in Article 108, Paragraph 3 [6] that "where the law provides otherwise for the standard of proof that the fact to be proven shall attain, such provision shall prevail," but contains no provision concerning the lowering of the standard of proof. [7] From a comparative law perspective, Germany, Japan, and other countries, as well as Taiwan, China, have already established relatively well-developed systems for lowering the standard of proof. In China's judicial practice, judges have, based on the need to achieve substantive justice in individual cases, spontaneously alleviated the burden of proof borne by the party bearing the negative burden of proof (the right holder) by lowering the standard of proof, thereby making it relatively easier for such party to prove the existence of the fact to be proven and maintaining a balance of interests between the parties. However, because the lowering of the standard of proof for substantive facts lacks systematic institutional rules and norms, confusion in specific applications and inconsistency in adjudicative standards have resulted, and the practice has consequently been criticized to varying degrees. The academic community's understanding of the lowering of the standard of proof also remains relatively unclear.[8] In view of this, it is necessary to conduct a systematic study of the system for lowering the standard of proof for substantive facts. This article begins by exploring the legal nature of lowering the standard of proof, defines the status and functions of lowering the standard of proof, examines and reflects upon the practice of lowering the standard of proof in China, and, on this basis, attempts to construct a system for lowering the standard of proof that is consistent with China's legal context.

## I. Legal Nature of Lowering the Standard of Proof

From a global perspective, the standard of proof is a term used in the law of evidence rather than a term expressly defined by statute, and therefore lacks a legislative definition. [9] "It is a yardstick for measuring when proof has succeeded; the standard of proof also determines the judicial conviction regarding specific matters, and it determines what the judge must rely upon in order to be deemed to have reached a judicial conviction." Prütting defined the standard of proof in this manner. [10] In essence, the standard of proof is a measure used in litigation to determine whether, following the evaluation of evidence, a judge has found the facts of the case to be true or has reached an inner conviction, [11] and "is the lowest level of judicial conviction necessary for the determination of facts." [12] Subjectivity, objectivity, and threshold character are its salient characteristics. [13] The so-called lowering of the standard of proof refers to lowering, below the general standard of proof, the minimum degree of judicial conviction required of a judge, following the evaluation of evidence, to find the fact to be proven to be true. [14] Where the evaluation of evidence produces no result, that is, where the facts remain uncertain as to whether they are true or false, the judge may render a judgment by relying upon the principle of the burden of proof. The burden of proof and the standard of proof both apply to facts constituting elements of a claim, and it may be said that, in terms of the criterion for judgment, the modes of reasoning underlying the two are "basically" the same. [15] Therefore, exploring the legal nature of lowering the standard of proof cannot be separated from

[4] These primarily include modern-type litigation (such as disputes involving compensation for damage caused by environmental pollution and compensation for damage caused by defective products) and other cases in which evidence is unevenly distributed.

[5] For example, specific types of cases involving the proof of negative facts, bank card unauthorized transactions (involving transactions conducted with counterfeit cards), and disputes over investments in digital currencies.

[6] Article 108, Paragraph 3 of the Interpretation of the Civil Procedure Law (2022) is likewise Article 108, Paragraph 3.

[7] This refers specifically to the issue of lowering the standard of proof for facts constituting substantive elements; no further specific explanation will be provided below. Article 86, Paragraph 2 of the Provisions on Evidence in Civil Litigation (2019) provides for a system of lowering the standard of proof for procedural facts, such as facts concerning litigation preservation and recusal.

[8] Although a few individual articles have addressed this issue, academic research on lowering the standard of proof remains limited and insufficiently in-depth.

[9] Jiang Shiming: "A Study of the Degree of Proof," published in The NCCU Law Review, Issue No. 98, 2007, p. 310.

[10] [Germany] L. Prütting: Problems of the Burden of Proof in Modern Times, translated by Wu Yue, Law Press China, 2006 edition, p. 88.

[11] There are many formulations concerning the standard of proof, but most revolve around the concepts of "measure" or "degree". For example, German and Japanese scholars commonly refer to it as the degree of proof (Beweismaß), strength of proof (Beweislast), standard of proof (Beweiskriterium), and so forth. See [Germany] Hans-Joachim Musielak: Basic Course in German Civil Procedure Law, translated by Zhou Cui, China University of Political Science and Law Press, 2005 edition, p. 268; [Japan] Makoto Ito: Civil Procedure Law (4th Revised Edition), translated by Cao Yunji, Peking University Press, 2019 edition, pp. 234–235. In the Anglo-American legal system, the standard of proof refers to the degree of proof that the party bearing the burden of proof is required to attain by presenting evidence in a particular category of case or in a specific case. See Xue Bo (ed.): Yuanzhao Dictionary of Anglo-American Law, with Pan Handian as Chief Reviewer, Peking University Press, 2017 edition, p. 1283. That is, the degree or level of proof required in a specific case. See Bryan A. Garner, Black's Law Dictionary 1624 (10th ed., Thomson Reuters 2014).

[12] See Qiu Lian'gong: On the Right to Choose Procedures, Sanmin Book Company, 2001 edition, p. 176.

[13] First, subjectivity. The standard of proof is a yardstick held by the judge in mind when conducting the evaluation of evidence, and both the evaluative act and the process by which its outcome is formed exist within the judge's mind, and therefore unquestionably possess a strong subjective character. Second, objectivity. The standard of proof arises concurrently with litigation activities and exists objectively, whether viewed in an abstract sense or in a concrete sense. Third, threshold character. The standard of proof constitutes the minimum degree of judicial conviction required for a judge to determine that the fact to be proven is true.

[14] Rather than lowering the "elevated standard of proof" prescribed in Article 109 of the Interpretation of the Civil Procedure Law (2015).

[15] See [Japan] Shigeo Ito: Foundations of Facts Constituting Elements, translated by Xu Ke and [Japan] Masahiro Kobayashi, Law Press China, 2022 edition, p. 126.



© 1994-2024 China Academic Journal Electronic Publishing House. All rights reserved. http://www.cnki.net

an examination of the relationship between it and the burden of proof [16], particularly by focusing on the bearing and mitigation of the burden of proof.

(I) The Burden of Proof and the Standard of Proof Are Closely Interrelated in Practice [17]

In practice, the burden of proof and the standard of proof are closely interrelated. First, the level of the standard of proof determines the probability of applying the objective burden of proof. Here, it is necessary to reiterate the two meanings of the burden of proof, namely, the responsibility borne by a party to produce evidence to prove its assertions (the subjective burden of proof) and the burden of the consequences where, upon completion of the evidentiary process, the facts of the case remain uncertain as to whether they are true or false (the objective burden of proof). The standard of proof is the yardstick by which a judge conducts the evaluation of evidence. The evaluation of evidence is the activity whereby a judge evaluates the evidentiary conduct of the parties in order to determine whether the standard of proof has been attained. The objective burden of proof is a methodological issue concerning the allocation of adverse consequences where, even after the judge has exhausted all means permitted by law, the judge is still unable to form a judicial conviction as to whether the fact to be proven has been established. The probability with which a judgment based on the objective burden of proof will arise directly depends on the degree of difficulty the judge encounters in forming a judicial conviction. "In short, the lower the requirement imposed by the standard of proof, the fewer cases there will be in which the judge adjudicates the case in accordance with the rules governing the burden of proof; conversely, the opposite is also true." [18]

Second, the level of the standard of proof determines whether the subjective burden of proof is transferred. Theoretically, there is no direct connection between the burden of proof and the standard of proof. The standard of proof is merely a perspective from which the parties conduct evidentiary activities and the judge conducts the evaluation of evidence, and the objective burden of proof arises only when the proof fails (is unsuccessful). However, the burden of proof and the standard of proof may become indirectly connected through the subjective burden of proof as a bridge. Where the party bearing the burden of proof presents evidence to prove its factual assertions, if the judge determines that its proof by affirmative evidence has attained the standard of proof, the opposing party must, in order to avoid the adverse consequence of losing the case, provide strong counterevidence to undermine the judicial conviction already formed by the judge; that is, the subjective burden of proof is transferred. If the standard of proof is excessively high, the difficulty of proving the favorable facts asserted by one party increases, making it difficult for the affirmative evidence to cause the judge to form a judicial conviction, and the opposing party has no need to present counterevidence. As one scholar has stated, "With respect to the subjective burden of producing evidence or the necessity of producing evidence, if it is examined in the context of the evidentiary activities involving affirmative evidence and counterevidence, it is apparent that reference must be made to the degree of proof and the judicial conviction formed by the court at individual stages of the adjudication of a particular case, and the two must be compared, so that appropriate litigation direction may be provided and the parties may be enabled to present appropriate evidence." [19]

(II) The Lowering of the Standard of Proof Should, in Nature, Be Defined as the Mitigation of the Burden of Proof

The standard of proof is the minimum degree of judicial conviction that a judge must reach, following the evaluation of evidence, in order to determine that the fact to be proven is true. The lowering of the standard of proof means lowering the minimum degree of judicial conviction below that required under the general standard of proof. By lowering the standard of proof applicable to the fact to be proven, the right holder can prove its case more easily, thereby alleviating the burden of proof borne by the party bearing the negative burden of proof, safeguarding the principle of equality of arms between the parties, and achieving substantive justice in the adjudication of individual cases. This is precisely the value pursued by the rule on mitigation of the burden of proof. The so-called mitigation of the burden of proof refers to a situation in which, under the general rules governing the allocation of the burden of proof [20], the party bearing the objective burden of proof encounters difficulty in proving the facts for reasons not attributable to itself, resulting in uncertainty as to whether the basic facts of the case are true or false; where it would be manifestly unfair to impose the adverse consequences upon that party by way of judgment, the court adopts certain methods to alleviate its difficulty in proving the facts and reduce its burden of proof, ascertain the truth of the facts to the greatest extent possible, avoid rendering a judgment based on the burden of proof, and ultimately achieve substantive justice in the adjudication of the individual case. [21] The purpose of lowering the standard of proof is likewise directed toward maintaining fairness between the parties, so as to prevent a party from bearing the adverse consequence of losing the case due to difficulty in proving the facts.

It may be said that the modes of reasoning underlying the lowering of the standard of proof and the mitigation of the burden of proof are basically the same: the former focuses on resolving instances of difficulty in proving facts in specific cases, whereas the latter focuses on general and categorizable difficulties in proving facts. [22] In fact, the lowering of the standard of proof is a specific method and manifestation of the mitigation of the burden of proof. Based on the foregoing considerations, this article defines the legal nature of lowering the standard of proof as the mitigation of the burden of proof. Specifically, this may be analyzed at three levels:

First, the lowering of the standard of proof alleviates the party's burden of proof through the application of the subjective burden of proof.

---

[16] The "responsibility" referred to herein means the objective burden of proof. Unless otherwise specified in this article, the allocation of the burden of proof refers to the allocation of the objective burden of proof; bearing (having) the burden of proof refers to bearing (having) the objective burden of proof.

[17] First, the two are clearly distinct in terms of their respective boundaries. As Rosenberg stated, "Free evaluation of evidence and the burden of proof govern two domains; although these two domains are closely connected, the boundaries between them remain quite distinct." [Germany] Leo Rosenberg: The Theory of the Burden of Proof (5th Edition), translated by Zhuang Jinghua, China Legal Publishing House, 2018 edition, p. 77. Second, the two are also closely interrelated in practice.

[18] [Germany] L. Prütting: Problems of the Burden of Proof in Modern Times, translated by Wu Yue, Law Press China, 2006 edition, p. 96.

[19] Jiang Shiming: "A Study of the Degree of Proof," published in The NCCU Law Review, Issue No. 98, 2007, p. 316.

[20] The general rule governing the allocation of the burden of proof refers to the basic rules for allocating the burden of proof established on the basis of Rosenberg's theory of the burden of proof (primarily the "Norm Theory").

[21] See Wang Gang: "A Study of the System for Mitigating the Burden of Proof," published in Comparative Law Review, Issue No. 6, 2021, p. 184.

[22] See [Japan] Shigeo Ito: Foundations of Facts Constituting Elements, translated by Xu Ke and [Japan] Masahiro Kobayashi, Law Press China, 2022 edition, p. 126.



© 1994-2024 China Academic Journal Electronic Publishing House. All rights reserved. http://www.cnki.net

Proofs of the burden of proof mitigation system primarily rely on the application of the subjective burden of proof as the principal means, directly or indirectly alleviating the burden of proof borne by the party bearing the burden of proof, so as to achieve the objectives of overcoming uncertainty as to whether the facts are true or false and avoiding adjudication based on the burden of proof. [23] It should be said that, when a party encounters difficulty in proving facts for reasons not attributable to itself, the lowering of the standard of proof likewise operates, after the party has produced preliminary evidence, by having the judge transfer the subjective burden of proof to the opposing party and require the opposing party to provide counterevidence to prove its assertions. The lowering of the standard of proof is a highly typical manifestation and method under the system for mitigating the burden of proof. [24] Therefore, "as a means of facilitating the right holder's realization of its rights, the lowering of the standard of proof objectively alleviates the burden of proof borne by the parties." [25] Second, the direct objective of lowering the standard of proof is to avoid uncertainty as to whether the facts are true or false and reduce adjudication based on the burden of proof. One of the objectives of mitigating the burden of proof is to avoid adjudication based on the burden of proof, namely, to ascertain the basic facts of the case as fully as possible through certain methods or techniques, thereby avoiding a state of uncertainty as to whether the facts are true or false at the conclusion of oral arguments. The pursuit of prudent and correct adjudication is one of the fundamental principles of civil litigation, and in order to obtain prudent and correct adjudication, procedural law should accordingly endeavor to design a system capable of discovering or even reconstructing the truth of the facts. The burden of proof is merely a last resort and an unavoidable means of resolution. The lowering of the standard of proof reduces the probability of uncertainty as to whether the facts are true or false, thereby reducing adjudication based on the burden of proof.

Third, the ultimate objective of lowering the standard of proof is to seek substantive justice in the resolution of individual cases while taking into account the procedural interests of the parties. By lowering the general standard of proof in litigation, the probability of a party succeeding in proving its case is increased, thereby avoiding a judgment based on the burden of proof resulting from the party's insufficient capacity to prove the facts.

## II. Value Orientation of Lowering the Standard of Proof

**(I) Status of Lowering the Standard of Proof**

The lowering of the standard of proof is not a negation of the general standard of proof, but rather an exceptional rule premised upon adherence to the general standard of proof.

First, the general standard of proof is the principal rule. From the macro perspective of civil litigation as a whole, it is both necessary and significant to establish a general standard of proof and define it as a high degree of probability. Civil law countries such as Germany and Japan have all established a high degree of probability as their general standard of proof and require judges to form an inner conviction. [26] The principal considerations are as follows: an excessively low standard of proof will lead to the proliferation of bases for claims under substantive law; the increased probability of parties winning their cases with ease will result in an excessive burden of litigation. The operation of the litigation system is borne by all taxpayers; if judicial fact-finding were based merely on probability as its benchmark, it would inevitably cause ordinary people to experience a crisis of confidence in judges' findings of fact. [27] At the same time, allowing parties to initiate litigation arbitrarily and easily achieve their litigation objectives would also result in legal instability. This article agrees with the foregoing approach. On the one hand, establishing a general standard of proof helps unify the standards for judicial adjudication and enhance the stability and predictability of the law, which is what the rule of law requires. On the other hand, establishing a general standard of proof can also effectively constrain judges' exercise of free evaluation of evidence, improve the quality of judges' adjudication, [28] and enhance the social acceptance of judicial decisions.

Second, lowering the standard of proof is an exception. From the micro perspective of civil litigation cases in specific fields, the general standard of proof cannot adequately accommodate all issues of fairness in litigation. The German Code of Civil Procedure contains numerous provisions adopting the preponderance of probability as the standard of proof, [29]

[23] See Wang Gang: "A Study of the System for Mitigating the Burden of Proof", published in Comparative Law Review, Issue No. 6, 2021, p. 186.

[24] In addition to lowering the standard of proof, typical methods of mitigating proof include proof by means of investigation, judicial discretion in determining damages, and orders to produce documentary evidence (which, in essence, are also a form of proof by means of investigation).

[25] See Jiang Shiming: "A Study of the Degree of Proof", published in The NCCU Law Review, Issue No. 98, 2007, p. 384.

[26] Article 286, Paragraph 1 of the German Code of Civil Procedure establishes the system of free evaluation of evidence and the statutory standard of proof. The prevailing view holds that the statutory standard of proof established by Article 286 is complete proof, requiring the judge to obtain complete conviction. See [Germany] Ottmar Jauernig: Civil Procedure Law (27th Edition), translated by Zhou Cui, Law Press China, 2003 edition, p. 262. Article 247 of the Code of Civil Procedures of Japan provides for the principle of free evaluation of evidence and links it to the standard of proof. See [Japan] Koji Shindo: New Civil Procedure Law, translated by Lin Jianfeng, Law Press China, 2008 edition, p. 386.

[27] See [Japan] Murakami Hiroki: The Burden of Proof in Civil Adjudication (1980 edition), p. 1; cited in [Japan] Shigeo Ito: Civil Procedure Law (4th Revised Edition), translated by Cao Yunji, Peking University Press, 2019 edition, p. 235.

[28] See He Jiahong: "Judicial Standards of Proof and Utopia—A Response to Liu Jinyou and a Discussion with Zhang Weiping and Wang Minyuan", published in Legal Studies, Issue No. 6, 2004, p. 104.

[29] See Article 605, Paragraph 2, Article 592, Article 114, Paragraph 1, Article 331, Paragraph 1, and other provisions of the German Code of Civil Procedure. In addition, the German Civil Code also contains exceptional provisions concerning the lowering of the standard of proof. For a corresponding review, see [Germany] L. Prütting: Problems of the Burden of Proof in Modern Times, translated by Wu Yue, Law Press China, 2006 edition, pp. 113–120, 129.



© 1994-2024 China Academic Journal Electronic Publishing House. All rights reserved. http://www.cnki.net

and the prevailing view holds that, as an exception to the statutory standard of proof, lowering the standard of proof constitutes a simplification of the complete proof required under Article 286 of the German Code of Civil Procedure, that is, a simplification of the standard of proof requiring the judge to form a conviction, with the corresponding obligations to prove and obligations to substantiate the facts likewise being simplified. [30] By lowering the standard of proof, the principle of equality of arms between the parties is realized, the procedural interests of the parties are balanced, and substantive justice is achieved in the adjudication of individual cases. However, the lowering of the standard of proof can only apply to specific areas of litigation, rather than being universally applicable to all areas of civil litigation. In other words, within the system of standards of proof in civil litigation, the lowering of the standard of proof can only serve as a supplement to and an exception to the general standard of proof.

**(II) Functions of Lowering the Standard of Proof**

First, pursuing substantive justice. With respect to the proof of facts constituting elements of a claim in certain special types of cases, such as the determination of causation in damage caused by radiation from radioactive substances, it is extremely difficult to require parties who lack scientific knowledge and possess relatively weak evidentiary capabilities to prove such facts to a high degree of probability. With respect to matters to be proven for which there exists an (objective) difficulty in proving, such as where "the difficulty in producing evidence arising essentially from the nature of the case is unavoidable, for example, cost factors such as the money and time required for producing evidence, and where, after comprehensively considering the purpose and intent of the legal system involved in the case, the circumstances in which it applies, and the purpose and intent of substantive legal norms that should be applied by analogy, it is determined that requiring one party to lose the case due to insufficient proof would manifestly contravene the fairness of producing evidence," consideration may then be given to lowering the requirements of the standard of proof. [31] The judge lowers the standard of proof required to establish the existence of the fact to be proven from a high degree of probability to a preponderance of probability, thereby alleviating the difficulty faced by the party asserting the right in proving the fact, so as to achieve substantive justice in the adjudication of the individual case.

Second, facilitating fact-finding. Rosenberg pointed out: "When the kingdom of free evaluation of evidence comes to an end, the rule of the burden of proof begins; once the judge has traversed the kingdom of free evaluation of evidence and is unable to render a judgment, the burden of proof will give the judge what the evaluation of evidence is capable of giving." [32] At the conclusion of oral arguments, after all available means of proof have been exhausted, if the judge is still unable to form a judicial conviction regarding the facts of the case, the judge can only apply the rules governing the burden of proof to render a judgment, with the party bearing the burden of proof assuming the adverse consequences of losing the case. However, applying the burden-of-proof rules to render a judgment where the facts remain uncertain as to whether they are true or false can only constitute an "ultima ratio" or "last resort," [33] a reluctant measure necessitated by the judiciary's duty not to refuse to adjudicate. With respect to certain special types of cases, however, German law has achieved good results by reducing the difficulty of judicial fact-finding through prima facie proof, Japanese law through rough presumptions, or through directly lowering the standard of proof, thereby reducing the number of judgments rendered on the basis of the burden of proof.

Finally, enhancing judicial legitimacy. Legitimacy is one of the important objectives pursued by civil litigation in the civil law system. By establishing reasonable standards of proof, public trust in the legitimacy of judicial judgments can be cultivated. [34] In ordinary litigation, where the parties possess comparable evidentiary capabilities, if the party bearing the burden of proof fails to fulfill its subjective burden of proof, resulting in the facts of the case being incapable of being proven to exist or remaining uncertain as to whether they are true or false, the assumption of the adverse consequences by that party is an inevitable requirement of the general rules governing the allocation of the burden of proof. However, where the party bearing the burden of asserting and proving the claim is constrained by its own relatively weak evidentiary capabilities and is in an unequal position with the opposing party in terms of litigation capabilities, or even where it is difficult to produce evidence because the facts of the case themselves constitute negative facts (such as in an unjust enrichment action asserting erroneous payment or a divorce action based on having suffered "cold violence"), continuing to apply the standard of proof of a high degree of probability would be tantamount to directly declaring that party to be the losing party. Such a judicial adjudication obviously cannot obtain the parties' acceptance, and is even less capable of withstanding the evaluation of the general public. On the other hand, judgments based on the burden of proof are likewise not welcomed by adjudicators. From the perspective of an ordinary rational person in society, judges tend to render judgments after the facts have been ascertained, which reflects both an inherent requirement of the judge's inner conscience and considerations of avoiding professional risks faced by judges. [35] Where, on the basis of the preliminary evidence presented by the party asserting the right, a judge forms the inner conviction that the fact to be proven may exist, but nevertheless dismisses the party's claim because of the difficulty of proof, the judge's inner conscience tells the judge that such a result is unacceptable. Where a judgment is simultaneously unacceptable to both the parties and the judge, it is difficult to speak of its judicial legitimacy. As Hiroshi Takahashi aptly stated: "Taking the high degree of probability generally accepted by prevailing doctrine as the principle, and lowering the requirements for the degree of proof in exceptional circumstances, is conducive to the stable operation of the system as a whole." [36]

---

[30] [Germany] Leo Rosenberg, Karl Heinz Schwab, and Peter Gottwald: German Code of Civil Procedure (Vol. II) (16th Edition), translated by Li Daxue, China Legal Publishing House, 2007 edition, p. 843.

[31] See [Japan] Shigeo Ito: Foundations of Facts Constituting Elements, translated by Xu Ke and [Japan] Masahiro Kobayashi, Law Press China, 2022 edition, p. 88.

[32] [Germany] Leo Rosenberg: The Theory of the Burden of Proof (5th Edition), translated by Zhuang Jinghua, China Legal Publishing House, 2018 edition, p. 78.

[33] See [Germany] L. Prütting: Problems of the Burden of Proof in Modern Times, translated by Wu Yue, Law Press China, 2006 edition, p. 27.

[34] See Bryant G. Garth, Observations on an Uncomfortable Relationship: Civil Procedure and Empirical Research, 49 Ala. L. Rev. 113, 114 (1997).

[35] In judicial practice, what judges are most concerned about is "rendering an incorrect judgment" in a case, thereby resulting in the parties repeatedly filing complaints and petitions, making appeals to higher authorities, and creating disturbances through such complaints and petitions. The so-called "incorrect judgment" is generally determined by assessing the degree to which the outcome of the judgment corresponds with objective truth.

[36] [Japan] Hiroshi Takahashi: Key Lectures on Civil Procedure Law, translated by Zhang Weiping and Xu Ke, Law Press China, 2007 edition, p. 37.



© 1994-2024 China Academic Journal Electronic Publishing House. All rights reserved. http://www.cnki.net

## III. Practice of Lowering the Standard of Proof in China

Like the general standard of proof, the system for lowering the standard of proof is likewise not expressly provided for in China's Civil Procedure Law. The difference is that, although the provisions of the Civil Procedure Law do not contain any provisions in this regard, the judicial interpretations of the Civil Procedure Law and the provisions on evidence have established rules concerning the general standard of proof for substantive facts, thereby forming a relatively complete institutional framework. With respect to the lowering of the standard of proof, however, only individual judicial interpretations in specific areas have established provisions concerning particular facts. [37] Article 5, Paragraph 2 of the Provisions of the Supreme People's Court on Several Issues Concerning the Application of Law in the Trial of Food and Drug Dispute Cases (Fa Shi [2020] No. 17) requires consumers to provide only preliminary proof of the existence of causation. Due to limitations in evidentiary capabilities, consumers ordinarily have difficulty proving the existence of a causal relationship between the damage and the consumption or use of food or drugs; the "preliminary proof" referred to here therefore means that the consumer's proof of causation need only reach a preponderance of probability. According to Article 32, Paragraph 1 of China's 2019 Anti-Unfair Competition Law, in civil adjudication proceedings involving the infringement of trade secrets, where the holder of the trade secret provides preliminary evidence, the burden of proof that the relevant information does not constitute a trade secret and that the relevant conduct does not constitute infringement is transferred to the alleged infringer. The "preliminary evidence" referred to here in fact lowers the standard of proof applicable to the rights holder's proof of the facts constituting the elements of the claim. The Provisions of the Supreme People's Court on Several Issues Concerning the Application of Law in the Trial of Patent Infringement Dispute Cases (Fa Shi [2020] No. 19), Article 27, and the Provisions of the Supreme People's Court on Several Issues Concerning the Application of Law in the Trial of Civil Dispute Cases Involving Infringement of the Right of Communication through Information Networks (Fa Shi [2020] No. 19), Article 13, contain similar provisions. The judicial interpretations under certain sector-specific laws provide that the condition for a party to initiate an action is to "provide preliminary evidence," with the purpose of lowering the threshold for the party to bring an action; such provisions are mainly concentrated in the fields of civil public interest litigation, procuratorial public interest litigation, consumer public interest litigation, and company law, [38] and constitute the lowering of the standard of proof for procedural facts. [39]

In contrast to the absence of institutional norms, judicial adjudication has spontaneously explored lowering the standard of proof for particular facts to be proven, seeking to balance the interests between the parties so as to achieve substantive justice in the outcome of the adjudication of an individual case. This exploration is mainly manifested in the following three aspects:

First, mitigating the difficulty of proof through prima facie proof or presumptions. With respect to facts constituting elements of a claim for which the parties face difficulty in producing evidence, after the party asserting the right provides preliminary evidence, the judge, by relying on rules of experience and rules of logic, determines the existence of the fact to be proven or forms a preliminary judicial conviction by means of prima facie proof or presumptions; if the opposing party raises a rebuttal, it is required to provide rebutting evidence, and if it fails to provide rebutting evidence, or although it provides rebutting evidence, such evidence is insufficient to shake the judge's judicial conviction, the opposing party shall bear the adverse consequences. In Guiding Case No. 52 of the Supreme People's Court (the case concerning the dispute over a marine cargo transportation insurance contract between a certain grain and oil company in Hainan and the Hainan Branch of a certain insurance company), where the plaintiff had already produced evidence proving that the subject matter insured had suffered actual loss, with respect to whether the occurrence of the insured event was caused by the intentional act or negligence of the insured, the court mitigated the burden of proof concerning this negative fact and, on the ground that "there was no evidence proving that the insured had acted intentionally or negligently," determined that the insured had not engaged in any intentional or negligent conduct. In addition, with respect to the "accidental nature" of the occurrence of the insured event and the causal relationship between such accidental occurrence and the actual loss suffered by the subject matter insured, the court made a determination by means of prima facie proof; with respect to the key factor in insurance indemnification, namely the "external cause" of the accidental event, the court made its determination on the basis of the rule of experience of "ordinary understanding." The foregoing constitutes a determination of the existence of the fact to be proven by means of lowering the standard of proof, which objectively mitigated the party's burden of proof and also placed the insured, who had originally been faced with difficulty in proving the relevant facts, on an equal footing in terms of evidentiary capabilities with the defendant insurance company, thereby achieving substantive fairness in the outcome of the adjudication of the individual case. [40]

Second, directly lowering the standard of proof to mitigate the difficulty of proof. In some cases, it is practically impossible for an ordinary person to directly prove the existence of a causal relationship to a high degree of probability. Under such circumstances, the judge requires the party to produce evidence without the need for rigorous scientific verification, provided that the proof reaches a preponderance of probability. In some other cases, where the facts of the case themselves are difficult to prove, it would likewise be inappropriate to require the party asserting the right to provide complete proof thereof; the judge therefore requires the party to first provide preliminary proof by means of indirect proof, and such proof is not required to reach a high degree of probability, but only needs to reach a preponderance of probability. For example, in a dispute over unjust enrichment arising from erroneous payment between Li XXX A and Li XXX B, the plaintiff asserted that, based on an erroneous understanding, the plaintiff had transferred the funds to the defendant and that the defendant should return the funds.

---

[37] The Supreme People's Court, through judicial interpretations in such fields as the protection of consumer rights and interests and the protection of intellectual property rights, lowers the standard of proof for certain facts constituting the elements of liability for infringement, so as to reflect specialized protection.

[38] For a review of the relevant judicial interpretations, see Shao Ming and Li Haiyao: "Application of the Diversified Standards of Proof in Civil Litigation in China", published in Application of Law, Issue No. 11, 2021, pp. 18–20.

[39] With respect to the issue of lowering the standard of proof for procedural facts, see Zhan Shangang: "The Institutional Logic and Chinese Approach to Lowering the Standard of Proof for Procedural Facts", published in Comparative Law Review, Issue No. 6, 2021.

[40] See Guiding Case No. 52 of the Supreme People's Court, released on April 15, 2015. A similar case may also be found in the Civil Judgment of the Supreme People's Court, (2003) Min Si Ti Zi No. 5.



© 1994-2024 China Academic Journal Electronic Publishing House. All rights reserved. http://www.cnki.net

For the proof of the negative fact of having acted on the basis of an erroneous understanding, the court required the proof to reach a preponderance of probability in order to make a finding thereof. [41] In a similar case, namely, a bank card dispute case, the court held that the time and place of the unauthorized withdrawal of the funds from the card account as provided by Li XX, together with the record of the inquiry conducted by the public security authorities with Li XX after the unauthorized withdrawal, rendered it highly credible that the transaction at issue was a transaction conducted with a counterfeit card. The "high credibility" referred to here should be between 60% and 70%, and it would be difficult for it to reach more than 75%; the standard of proof adopted in that case was therefore a preponderance of probability. [42]

Third, lowering the standard of proof without obvious typological characteristics. On the China Judgments Online website, using "preponderant evidence" and "preponderance of evidence" as keywords, from February 4, 2015 to April 11, 2022, 14,238 and 17,198 civil judgments, respectively, and 1,402 and 1,440 civil rulings, respectively, could be retrieved. [43] Relevant formulations include: "The Court holds that the preponderant evidence submitted by Tiger Company is sufficient to prove that it holds a creditor's claim against Wan Company"; [44] "Although the evidence-collection video produced by Zhong Company did not display the contents of the book, the page of Mi Company displayed the characters 'finished' (完) and 'read' (阅) and the corresponding number of words; according to the principle of preponderance of evidence, it may be determined that Mi Company uploaded the infringing work." [45] Although the Interpretation of the Civil Procedure Law (2015) expressly established a high degree of probability as the general standard of proof in litigation, a large number of cases were nevertheless adjudicated on the basis of "preponderant evidence" or "preponderance of evidence." It can thus be seen that judges objectively do lower the standard of proof based on the nature of the case and the particularity of the facts to be proven, and such lowering is indeed necessary. [46] The primary purpose of a judge's adoption of the standard of proof based on preponderant evidence is to alleviate the evidentiary burden of the party bearing the burden of proof and to avoid rendering a judgment based on the burden of proof. For example, in a dispute over a private lending relationship, in view of the parties' difficulty in producing evidence, the court held that, based on ordinary experience in daily life, it could be presumed that the parties had orally agreed upon interest at an annual rate of 8%; in substance, this amounted to lowering the standard of proof from a high degree of probability to a preponderance of probability. [47]

The practical exploration of lowering the standard of proof has, to a certain extent, resolved the predicament in which parties face difficulties in proving facts for reasons not attributable to themselves, realized the principle of equality of arms between the parties, and safeguarded substantive justice in individual cases. Hayek stated: "In any relatively large group, cooperation among people is always based on both spontaneous orders and deliberately constructed organizations." [48] At the same time, he also pointed out that spontaneous orders pursue various purposes and cannot be directed toward any particular objective. [49] This reminds us that, while the foregoing spontaneous practices possess an objective basis, they have also given rise to problems such as inconsistency in adjudicative standards and the arbitrary lowering of the standard of proof.

## IV. Construction of the System for Lowering the Standard of Proof in China

### (I) Areas of Application of Lowering the Standard of Proof

As an exceptional system to the general standard of proof, the lowering of the standard of proof has a relatively narrower scope of application in terms of the areas of litigation to which it applies. However, since the lowering of the standard of proof concerns the proof of the facts of a case (facts to be proven), regardless of the type of action involved (an action for infringement, an action for breach of contract, or any other action), as long as the standard of proof established for proving the fact to be proven to be true is excessively high, causing the party bearing the burden of proof to encounter difficulty in proof for reasons not attributable to itself, thereby resulting in substantive injustice in the outcome of the adjudication of the case, there should be room for the application of the lowering of the standard of proof.

*1. The Types of Cases to Which the Lowering of the Standard of Proof Applies Should Primarily Be Evidence-Imbalanced Cases*

First, in modern-type litigation, evidence is ordinarily concentrated in the hands of the party in a superior position, while the party asserting the right (mostly the victim) has difficulty accessing the evidence or possesses relatively weak evidentiary capabilities.

---

[41] The court of first instance in this case held that the plaintiff had already submitted evidence proving that the plaintiff had delivered the RMB 100,000 at issue to the defendant, and had provided a reasonable explanation and submitted corresponding preliminary evidence, whereas the defendant had raised a rebuttal but failed to submit evidence in support thereof; accordingly, the court upheld the plaintiff's claim. The court of second instance affirmed the judgment of the court of first instance. See Civil Judgment of the Hunan Provincial High People's Court, (2019) Xiang Min Zhong No. 618.

[42] See Civil Judgment of the Jiangmen Intermediate People's Court of Guangdong Province, (2018) Yue 07 Min Zhong No. 3771.

[43] The reason for taking February 4, 2015 as the starting date is that it was the effective date of the Interpretation of the Civil Procedure Law (2015), Article 108 of which expressly provided for a high probability (preponderance of probability) as the general standard of proof in litigation. The two amendments on December 23, 2020 and March 22, 2022 did not alter the content of Article 108. Article 73, Paragraph 1 of the Provisions on Evidence in Civil Litigation (2001), however, could only be interpreted as providing for a high degree of probability as the general standard of proof.

[44] See Civil Judgment of the Guangdong Provincial High People's Court, (2018) Yue Min Zhong No. 608.

[45] See Civil Judgment of the Shandong Provincial High People's Court, (2019) Lu Min Zhong No. 1453.

[46] Although the possibility of an erroneous application of the standard of proof cannot be ruled out, its proportion should be extremely small.

[47] See Civil Judgment of the Lushan Municipal People's Court of Jiangxi Province, (2017) Gan 0483 Min Chu No. 503.

[48] [UK] Friedrich August von Hayek: Law, Legislation and Liberty (Vol. I), translated by Deng Zhenglai, Zhang Shoudong, and Li Jingbing, Encyclopedia of China Publishing House, 2000 edition, p. 67.

[49] [UK] Friedrich August von Hayek: Law, Legislation and Liberty (Vol. I), translated by Deng Zhenglai, Zhang Shoudong, and Li Jingbing, Encyclopedia of China Publishing House, 2000 edition, p. 57.



© 1994-2024 China Academic Journal Electronic Publishing House. All rights reserved. http://www.cnki.net

In modern-type litigation, the facts constituting the elements of causation and fault are the principal subjects for the lowering of the standard of proof. The causal relationship between the harmful conduct and the damage suffered by the victim is relatively complex, and sometimes it is difficult to prove it effectively by ordinary means. This is because the causes of the damage and the relevant evidentiary materials are often within the sphere controlled by the tortfeasor, while the victim is unable to obtain comprehensive knowledge thereof; accordingly, the victim should not be subjected to excessively stringent requirements of proof.

Second, in other evidence-imbalanced cases, the party in the weaker position likewise has difficulty effectively proving its claim. For example, a worker may only be able to provide testimony from former employees who have already left the employer in order to prove the fact that the worker worked overtime. [50] In order to avoid rendering a judgment based on the burden of proof, judges will also choose to lower the standard of proof, thereby reducing the difficulty for the party in proving the fact to be proven to be true. Judges determine whether causation and fault exist on the basis of general rules of experience in everyday life; once a preliminary judicial conviction has been formed, the opposing party is required to provide rebutting evidence, thereby achieving a lowering of the standard of proof through the transfer of the subjective burden of proof.

It can thus be seen that, in evidence-imbalanced cases, if the general standard of proof in litigation continues to be imposed on the party asserting the right, this would be tantamount to forcing that party to abandon litigation and instead seek private relief.

*2. There is also room for the application of lowering the standard of proof where the difficulty of proof is caused by the facts of the case themselves.*

First, the fact to be determined is a negative fact. When a negative fact constitutes a fact constituting an element of the occurrence of a right, the party asserting the right should bear the burden of proof with respect thereto. A so-called negative fact refers to a fact that has never occurred or a fact that is unfavorable to one of the parties. [51] As for "a fact that is unfavorable to one of the parties," such fact is ordinarily within the control of that party, and therefore does not give rise to a difficulty of proof; it is simply, from an ethical perspective, inappropriate to compel that party to make statements and provide proof that are adverse to itself. As for "a fact that has never occurred," however, there is a legal maxim in Roman law that "the denier bears no burden of proof"; a fact that has never occurred cannot be proved by evidence, or is difficult to prove effectively. The most typical example is an action for unjust enrichment based on erroneous payment, in which the absence of a legal basis, as one of the elements constituting the claim, is a negative fact; accordingly, it is inappropriate to impose the general standard of proof in litigation, and the fact should instead be found once the plaintiff, by means of indirect proof, establishes that the existence of the negative fact has a preponderance of probability.

Second, difficulty of proof arising from factors inherent in the case itself. First, new types of cases. Examples include disputes over compensation for accidental insurance events, [52] bank card dispute cases arising from unauthorized transactions conducted with bank cards, [53] and disputes over investments in digital currencies. [54] Second, difficulty of proof caused by the nature of the case itself. For example, in a divorce dispute case, the husband initiates a divorce action and seeks division of the marital community property on the ground that the wife has subjected him to "cold violence" over an extended period of time. According to the rules governing the allocation of the burden of proof, the husband should bear the burden of proving the fact favorable to him, namely, that the wife subjected him to "cold violence"; however, "cold violence" itself is abstract in nature and is difficult to prove effectively, and therefore the evidentiary burden of the victim can only be alleviated by lowering the standard of proof. [55]

**(II) Conditions for the Application of Lowering the Standard of Proof**

The lowering of the standard of proof is merely an exception to the application of the general standard of proof in litigation and should therefore be subject to strict conditions of application. As Shigeo Ito stated: "The standard of proof may be lowered only when it is necessary to take judicial policy into consideration for the purpose of resolving the dispute, and when there is sufficient necessity to do so

---

[50] In such circumstances, a party may also be permitted, to an appropriate extent, to engage in exploratory proof in order to enhance its evidentiary capabilities. In practice, however, there are sometimes situations in which exploratory proof fails, such as where archival records and other documentary materials are lost due to reasons such as the cessation of a company's business operations, making it impossible to obtain overtime records.

[51] The facts of a case may be divided into positive facts and negative facts. Positive facts refer to facts that have actually occurred or facts that are favorable to one of the parties. The theory of negative facts was first developed by the German scholar Imerius and was once the prevailing view in German academic circles. See Chen Rongzong: Allocation of the Burden of Proof and the Civil Procedure Law, San Min Book Co., Ltd., 1979 edition, p. 9.

[52] With respect to the "accidental nature" of the occurrence of the insured event in disputes over accident insurance contracts, such accidental nature constitutes a prerequisite for insurance indemnification; however, "accidental nature" is characterized by non-intentionality, non-planning, and unpredictability, and therefore also constitutes a negative fact. In judicial practice, there is a certain degree of controversy as to who should bear the burden of proof with respect to the fact of "accidental nature."

[53] In a bank card dispute arising from the unauthorized use of a bank card, where the cardholder brings an action against the bank seeking compensation for losses of principal and interest, the cardholder should bear the burden of proving that the transactions involving the funds in the bank card at issue were counterfeit-card transactions (i.e., transactions in which another person used a forged bank card to withdraw funds through the banking system). However, the cardholder is often only able to prove such matters as that the cardholder had not been present at the place of the transaction when the funds in the card were withdrawn, and to report the matter to the police and obtain an investigative transcript prepared by the public security authorities, but is unable to submit direct evidence proving the existence of the counterfeit-card transaction. In practice, some judges will determine the existence of the fact to be proven by lowering the standard of proof. For example, in a bank card dispute case, the court held that the facts asserted by the plaintiff had a relatively high degree of credibility, and therefore determined that the counterfeit-card transaction had occurred. The "relatively high degree of credibility" referred to here is the preponderance of probability. See Civil Judgment of the Jiangmen Intermediate People's Court of Guangdong Province, (2018) Yue 07 Min Zhong No. 3771. The issue of the standard of proof in disputes involving unauthorized use of bank cards has attracted considerable attention in practice, and a research group has conducted a specialized review and study of the issue. See Research Group of the Civil Division II of the Shandong Provincial High People's Court: "Research on the Standard of Proof for Cases Involving Unauthorized Use of Bank Cards," published in Journal of Shandong Judges Training Institute, Issue No. 1, 2019.

[54] In disputes over investments in virtual currencies, an investor controls its virtual currency solely through the private key (password) provided by the operating platform; once the platform shuts down its system, the investor will not only have difficulty determining the total amount of virtual currency it holds, but will also be unable to conduct transactions involving the virtual currency, and will likewise have difficulty effectively producing evidence.

[55] See Civil Judgment of the Shanghai Pudong New Area People's Court, (2019) Hu 0115 Min Chu No. 45291.



© 1994-2024 China Academic Journal Electronic Publishing House. All rights reserved. http://www.cnki.net

in order to maintain fairness between the parties." [56] The lowering of the standard of proof should satisfy the following four conditions of application:

First, the nature of the facts of the case itself determines the difficulty of proof. As stated above, the difficulty in proving the facts constituting the elements of causation and fault in evidence-imbalanced litigation is an inevitable result of the objective inequality in the evidentiary capabilities of the two parties in such types of cases. The injured party is ordinarily in a disadvantaged position, is more remote from the evidence, and is also unable to effectively collect and submit evidence to prove its factual assertions. Negative facts are difficult to prove by evidence, and are particularly difficult for the party itself to prove by means of direct proof; this likewise constitutes a difficulty of proof caused by the inherent nature of the facts themselves.

Second, it is difficult to find alternative means of proof. When a difficulty of proof arises, the party bearing the burden of proof should first make every effort to seek alternative means of proving the relevant facts, such as providing preliminary proof of a negative fact through indirect evidence, thereby enabling the judge to form a probabilistic judicial conviction regarding the existence of the fact to be proven; or, for a party that is more remote from the evidence and unable to effectively collect evidence, allowing it to conduct a limited degree of exploratory proof while relaxing its obligation to particularize its allegations. Only where proof cannot be achieved through alternative means, or where alternative methods are available but their costs are excessively high and inconsistent with the principle of proportionality, or where no alternative means can be found at all, may the standard of proof be lowered so as to alleviate the evidentiary burden of the party.

Third, the difficulty of proof causes the outcome of the adjudication to be manifestly unfair. Because of the difficulty of proof, the party bearing the burden of proof has difficulty establishing factual assertions favorable to itself, or its proof of the fact to be proven cannot reach the general standard of proof in litigation, resulting in a state of uncertainty as to whether the facts are true or false, and the party consequently bears the adverse consequence of losing the case. However, if such adjudicative outcome is clearly unacceptable to ordinary rational members of the public and at the same time contravenes the normative purpose of substantive law, then application of the general standard of proof in litigation in that case is undoubtedly excessively stringent and should therefore be lowered. If only a difficulty of proof arises, but the adjudicative outcome based on the entirety of the circumstances of the evidence investigation and arguments already conducted would not result in manifest unfairness, the standard of proof should not be lowered.

Finally, the burden of proof is only mitigated and has not been eliminated. When lowering the standard of proof, the evidentiary burden of the party bearing the burden of proof is merely alleviated, and the difficulty of proof encountered by that party is mitigated; the allocation of the burden of proof is neither eliminated nor altered. The party asserting the right must still make every effort to collect and submit evidence to prove the fact to be proven; only after its proof enables the judge to form a preliminary judicial conviction regarding the existence of the fact to be proven (at least a preponderance of probability, i.e., more than 50%), and the party then encounters an objective difficulty in producing further evidence, may the judge directly determine, on the basis of the circumstances of the evidence investigation and court arguments, that the fact to be proven exists; alternatively, the judge may require the defendant to provide rebutting evidence in support of its rebuttal, thereby transferring the subjective burden of proof to the defendant, and if the defendant fails to provide strong rebutting evidence, the existence of the fact to be proven asserted by the plaintiff shall be determined. At the same time, the party bearing the burden of proof has a duty to make statements and a responsibility to provide explanations with respect to the difficulty of proof encountered.

## V. Regulation of the System for Lowering the Standard of Proof in China

### (I) Approaches to Lowering the Standard of Proof

#### *1. Achieving Lowering of the Standard of Proof through Prima Facie Proof*

Prima facie proof (*Anscheinsbeweis*) is a concept under German law, developed by the German Imperial Court (*Reichsgericht, RG*) and the Federal Court of Justice (*Bundesgerichtshof, BGH*) through judicial precedents. [57] It is extremely difficult to provide a general definition and explanation of prima facie proof; "'prima facie proof' still lacks a satisfactory explanation to this day." [58] However, it can be generally understood through its external characteristics, namely, that the judge, in accordance with ordinary experience in daily life, infers from confirmed factual events other facts connected with those facts. For example, where a truck driver drives a truck onto a sidewalk and injures a pedestrian, it may be inferred, based on the general experience of daily life of the public, that the truck driver was at fault. Where a standardized sequence of events comes into operation, an inference may be directly drawn with respect to a certain fact. In other words, there exists a typical sequence of events that can be verified through ordinary experience in daily life, thereby making it possible to verify the actual circumstances of past facts; the typical sequence of events used for comparison and the sequence of facts inferred are similar in nature. Hiroshi Takahashi vividly likened it to the following: "The ordinary process of fact-finding is like taking a train that stops at every station, whereas prima facie proof is a special process of fact-finding that reaches the terminal station directly by taking an express train"; it can be used at the same level as "rough presumptions" (*Japanese: 大致の推定*). [59]

[56] See [Japan] Shigeo Ito: Foundations of Facts Constituting Elements, translated by Xu Ke and [Japan] Masahiro Kobayashi, Law Press China, 2022 edition, p. 126.

[57] Vgl. Baumgärtel, Beweislastpraxis im Privatrecht, 1996, Rdnr. 227.

[58] [Germany] L. Prütting: Problems of the Burden of Proof in Modern Times, translated by Wu Yue, Law Press China, 2006 edition, p. 132.

[59] See [Japan] Hiroshi Takahashi: Civil Procedure Law: In-Depth Analysis of Systems and Theories, translated by Lin Jianfeng, Law Press China, 2003 edition, pp. 460–461.



© 1994-2024 China Academic Journal Electronic Publishing House. All rights reserved. http://www.cnki.net

Prima facie proof is most commonly applied in the determination of fault and in cases involving the assessment of complex causal relationships. Once a party proves the occurrence of a typical event, the court may determine the inferred fact, because the rules of experience supporting the inference of fault or causation have a high degree of probability. In judicial practice, judges primarily infer other facts from confirmed facts on the basis of rules of experience. For example, in a medical malpractice tort dispute, where a doctor leaves a surgical instrument inside a patient's body after surgery, the judge will infer that the doctor was at fault; [60] in a road traffic accident damages compensation case, where the driver of a motor vehicle has not obtained a valid driver's license, it is presumed that the motor vehicle party was at fault and that there was a causal relationship between its conduct and the road traffic accident. [61] After a party proves the occurrence of a typical event, if the judge is able to form a preliminary judicial conviction regarding the existence of the fact to be proven, the necessity of proof is then transferred to the opposing party; if the opposing party fails to provide strong rebutting evidence demonstrating that there were exceptional circumstances in the course of the development of the events such that the circumstances did not conform to the typical sequence of events, the existence of the fact to be proven shall be determined. Therefore, in Japanese judicial precedents, "preliminary presumption" (*Japanese: 一応の推定*) is sometimes used, referring to the inference of fault and causation on the basis of rules of experience having a high degree of probability. [62] In substance, this means that when a party encounters difficulty in proving a fact, it is permitted to achieve preliminary proof on the basis of rules of experience, thereby inducing the judge to transfer the responsibility for producing evidence.

Through the application of prima facie proof, the purpose of lowering the standard of proof is achieved, thereby producing the effect of mitigating the party's burden of proof. First, the prerequisite for prima facie proof is the existence of a rule of experience having a high degree of probability (the occurrence of a typical event), on the basis of which the existence of the resultant fact is inferred. From a logical perspective, the prerequisite itself is merely a rule of experience having a high degree of probability; [63] therefore, the probability of the fact inferred on this basis will necessarily be lower than, or at most equal to, that of the high degree of probability, demonstrating that the result of applying prima facie proof is a lowering of the standard of proof. Second, the function of prima facie proof is to transform the subject matter of proof from facts constituting the elements of a claim into typical related facts that are easier to prove. [64] If it could not serve the function of lowering the standard of proof, the system of prima facie proof developed through a large number of judicial precedents would lose its vitality. In specific cases, because excessively stringent proof requirements create tremendous difficulties in proving any causal relationship and may lead to unfair outcomes, courts ordinarily rely on prima facie proof to lower the standard of proof for determining causal relationships, except that such judicial conviction activities are less frequently disclosed publicly. A study of German judicial precedents in which facts are determined through the application of prima facie proof reveals that the prerequisites recognized as constituting prima facie proof are not necessarily all characterized by a high degree of probability, because excessively stringent proof requirements can create tremendous difficulties in proving causal relationships and may result in unfair outcomes. [65]

Prima facie proof constitutes an application of rules of experience in the process of evaluating evidence; in essence, it forms part of the evaluation of evidence rather than constituting an independent means of proof. Through prima facie proof, the standard of proof applicable to specific types of cases and other cases involving difficulty of proof may be lowered, thereby alleviating the difficulty of proof faced by the party bearing the burden of proof, which in substance constitutes "drawing factual inferences by means of a relatively strong rule of experience, which may be regarded as a shortcut method of fact-finding." [66] If a judge adopts prima facie proof to draw an inference regarding a particular fact, the opposing party need only submit rebutting evidence [67] to overturn such inference, without having to provide proof to the contrary. The opposing party may directly challenge, by means of rebutting evidence, the prerequisite facts and the resultant facts themselves to which the application of prima facie proof relates, as well as the causal relationship between the two, in order to overturn the inference. In order to prevail or rebut the opposing party's position, the opposing party ordinarily only needs to present rebutting evidence sufficient to undermine the conclusion reached through prima facie proof, and need not prove the rebutted facts to a higher degree of probability. [68]

2. *Directly Lowering the Standard of Proof (Without Resorting to Other Means)*

The so-called direct lowering of the standard of proof refers to a situation in which, during the evaluation of evidence, the judge does not resort to prima facie proof, but instead directly lowers the degree of judicial conviction required for determining the fact to be proven to be true. In general, direct lowering of the standard of proof is adopted only when fact-finding cannot be accomplished through prima facie proof or when the difficulty of making such a determination is relatively substantial; the judge determines the fact to be proven on the basis of the entirety of the circumstances of the evidence investigation and arguments, in accordance with the principle of free evaluation of evidence.

With respect to negative facts, the prerequisite for prima facie proof—the occurrence of a typical event determined on the basis of a rule of experience having a high degree of probability—is difficult to prove;

---

[60] The Civil Code of 2020 of China (including the Tort Liability Law of 2009) does not expressly provide for a reversal of the burden of proof with respect to causation in disputes concerning liability for medical accidents; prima facie proof may be used to reduce the difficulty of proof faced by the parties.

[61] Of course, the degree of such causal relationship constitutes a separate factual issue.

[62] [Japan] Hidetoshi Yasui: "On the Function of 'Preliminary Presumption' in Modern-Type Litigation", published in The Doshisha Law Review, Issue No. 3, 2007, p. 279.

[63] When rules of experience are measured from the perspective of probability, they ordinarily cannot reach one hundred percent.

[64] Zhou Cui: "From Factual Presumptions to Prima Facie Proof," published in Modern Law Science, Issue No. 6, 2014, p. 108.

[65] See [Germany] Hans-Joachim Musielak: Basic Course on German Civil Procedure Law, translated by Zhou Cui, China University of Political Science and Law Press, 2005 edition, p. 272.

[66] Jiang Shiming: On the Evaluation of Evidence, Xiamen University Press, 2017 edition, p. 215.

[67] Rebutting evidence is different from contrary evidence. Rebutting evidence is contrasted with affirmative evidence, and the submission of rebutting evidence need only undermine the judge's judicial conviction formed on the basis of the affirmative evidence; contrary evidence, however, constitutes affirmative evidence, and it should cause the judge to form a judicial conviction (inner conviction) regarding the existence of the fact established by the contrary evidence, rather than merely undermine the judicial conviction that the judge has already formed.

[68] Zhou Cui: "From Factual Presumptions to Prima Facie Proof," published in Modern Law Science, Issue No. 6, 2014, p. 119.



© 1994-2024 China Academic Journal Electronic Publishing House. All rights reserved. http://www.cnki.net

that is, it is relatively difficult for the party bearing the burden of proof in this regard to directly prove the negative fact, or even if it undertakes such proof (such as by stating the course of events as they occurred), it is nevertheless difficult for the party to provide corresponding evidence to corroborate such proof. Rosenberg maintains that, although facts that have not occurred cannot be proved directly, evidence may nevertheless be produced with respect thereto in the following ways: a thing is discovered, but if the fact existed, such thing should not have been discovered; or a relevant fact is not discovered, but if it existed, it should have been discovered. However, with respect to proof by indirect means, it is sufficient that such proof enables the judge to form a preliminary judicial conviction, without requiring that the judicial conviction necessarily reach a high degree. A party bringing a divorce action on the ground that the party has long suffered from "cold violence," for example, may prove such circumstance by submitting WeChat chat records between the party and the spouse, demonstrating that over a period of two years, the party alone sent messages and received no response from the opposing party (with neither any response via WeChat nor any reply by telephone call or text message). Although the opposing party may argue that the opposing party frequently communicated with the plaintiff face-to-face, it may be determined on the basis of ordinary experience in daily life that the "cold violence" asserted by the plaintiff is more likely to exist than not to exist, and therefore the requirements of the standard of proof should not be excessively stringent. [69] The same applies to some unjust enrichment cases.

In the evaluation of evidence, judges inevitably apply rules of experience; [70] ordinary experience in daily life is not a phenomenon unique to prima facie proof, and such rules are derived, to a large extent, from the judge's own experiential knowledge. Among the factors considered by a judge in determining specific facts, experiential knowledge based on scientific testing constitutes only one aspect; to a greater extent, the judge relies on the understanding acquired through experience in daily life. [71] In addition, with respect to evidence-imbalanced cases, after the party bearing the burden of proof has already submitted preliminary evidence regarding the fact to be proven, the judge need not form an excessively high degree of judicial conviction before transferring the responsibility for producing evidence to the party having greater access to the evidence; if that party fails to fulfill its responsibility to produce evidence, the judge may, depending on the nature and importance of the evidence that has not been produced, decide to lower the standard of proof for the existence of the fact to be proven or directly determine that the fact to be proven exists.

When engaging in the evaluation of evidence, a judge may, based on the judge's assessment, in substance raise or lower the standard of proof; even where a relatively clear standard of proof has been established, it is difficult to escape the subjective factors inherent in the judge's evaluation of evidence, and, unless the judge's determination is manifestly contrary to common sense or regularities generally recognized by humanity, there is no reason for persons other than the judge to impose the standard of proof as understood by themselves upon the judge. [72] Some scholars have proposed that, where the raising or lowering of a statutory standard of proof in fact lacks a legal basis, but application of the statutory standard of proof would produce an obviously unfair result, it may be appropriate to rely on factual analysis to achieve a proper resolution of the case. [73] In any event, regardless of how factual analysis is conducted, it remains impossible to avoid the judge's subjective assessment. In fact, regardless of what standard of proof is adopted, the evaluation of evidence can only be conducted by the judge rather than by a procedure established in advance. Therefore, subjectivity in the process of evaluating evidence is inevitable, and this point cannot be avoided. [74] However, the direct lowering of the standard of proof should be exercised with the greatest possible restraint. In addition, procedural regulation is indispensable.

**(II) Regulation of Lowering the Standard of Proof**

The system for lowering the standard of proof is established on the basis of the judge's free evaluation of evidence and inevitably involves the possibility of arbitrary adjudication by judges. In constructing the system for lowering the standard of proof, attention should be paid to regulating the operation of the system, strengthening control over the degree of lowering, and enhancing procedural regulation.

1. *Control over the Degree of Lowering the Standard of Proof*

The lowering of the standard of proof takes the general standard of proof in litigation (a high degree of probability) as its starting point and lowers it from there; the extent to which it is lowered should be subject to control rather than being unrestricted. Corresponding to the dial theory of the burden-of-proof point proposed by the German scholar of procedural law Ekelof, Prütthing

---

[69] On the China Judgments Online website, using "marriage and family disputes" as the cause of action and "cold violence" as the keyword, 904 judicial documents were available for the two-year period from January 2018 to December 2021 (some cases may not have been uploaded online because they involved personal privacy). After the plaintiff asserted the factual allegation of "cold violence", the plaintiff often lost the case because the plaintiff was unable to provide strong evidence. Even where some judgments supported the plaintiff's request for divorce, the adjudication was mostly based on other facts and grounds.

[70] The so-called rule of experience is a general conclusion derived on the basis of experience through a large number of facts of the same type; it may constitute either general experience in daily life or specialized professional knowledge. In contrast to specific facts, rules of experience concern abstract propositions. See [Germany] Ottmar Jauernig: Civil Procedure Law (27th Edition), translated by Zhou Cui, Law Press China, 2003 edition, p. 265.

[71] It is generally believed that such experiential knowledge may be established on a scientific basis, but is more likely to be established in daily life, and possesses a relatively high degree of reliability. The usual means of acquiring such knowledge include the judge's personal experience, expert appraisal opinions, expert opinions, and the like.

[72] See Duan Housheng: "Practical Interaction and Institutional Coordination among the Burden of Proof, the Standard of Proof, and the Evaluation of Evidence," published in Journal of Nanjing Normal University (Social Sciences Edition), Issue No. 3, 2007, p. 26.

[73] See Wu Zeyong: "The Standard of Proof in Civil Litigation under Chinese Law," published in China Legal Science, Issue No. 1, 2013, p. 88. Here, the statutory standard of proof, in the context of China's Civil Procedure Law, should refer to the general standard of proof in litigation.

[74] Even in some individual cases in which the evidence imbalance was not particularly apparent, there have been instances in which judges indirectly lowered the standard of proof by applying prima facie proof in the evaluation of evidence, or directly lowered the standard of proof on the basis of ordinary experience in daily life. For example, in the environmental pollution liability dispute case of Li XXX versus a certain Real Estate Development (Chongqing) Co., Ltd., the court determined, on the basis of ordinary experience in daily life and in conjunction with expert opinions and other evidence, whether the defendant had engaged in conduct that polluted the environment. See Guiding Case No. 128 of the Supreme People's Court, released on December 26, 2019.



© 1994-2024 China Academic Journal Electronic Publishing House. All rights reserved. http://www.cnki.net

divides the results of a judge's proof into four levels: very unlikely (1%–24%), relatively unlikely (26%–49%), roughly likely (51%–74%), and very likely (75%–99%). If Prütthing's "four-level" theory is used for calculation, the lower limit of the lowering of the standard of proof discussed in this article is "roughly likely," that is, from "very likely" down to "roughly likely," with its lower limit being reduced from 75% to the minimum value exceeding 50%. If it is 50%:50%, this constitutes a balance in the judge's judicial conviction, and the fact to be proven falls into a state of uncertainty as to whether it is true or false. [75]

Although the standard of proof constitutes the degree of judicial conviction in the judge's mind as to whether the fact to be proven is true, and constitutes a free evaluative activity within the judge's mind, no person may arbitrarily interfere with it. However, the judge's lowering of the standard of proof in the judge's mind should nevertheless remain subject to control as to its degree, rather than being arbitrary. First, there is a lower limit to the lowering of the standard of proof, namely, it must at least exceed 50%. The lowering of the standard of proof does not constitute an exemption from the burden of proof, but merely a mitigation of the subjective burden of proof. If it reaches 50% or below, however, this would exceed the fundamental principles governing the burden of proof. Second, the judge's adjustment of the standard of proof should still satisfy the degree of recognition generally shared by ordinary rational members of the public. The judge's inner conviction should result from the mutual reinforcement of thought, nature, and rules of experience. However, the degree of recognition generally shared by judges likewise must not contravene the general understanding commonly held by ordinary rational members of the public; that is, the degree of judicial conviction that the fact to be proven is true should likewise be what ordinary people would ordinarily regard as actually being the case. Regardless of the extent to which the standard of proof is lowered to above 50% in response to the judge's need to pursue the truth of the facts and safeguard substantive justice, it must necessarily reach the judge's inner conviction.

2. *Procedural Regulation of the Lowering of the Standard of Proof*

With respect to judges' conduct of lowering the standard of proof in practice, if such conduct is not reasonably constrained and regulated, it will undoubtedly seriously undermine the stability and certainty of the law. [76] Therefore, it is necessary to impose procedural regulation on the lowering of the standard of proof, which should specifically be addressed from the following two aspects: First, the process and result of the judicial conviction underlying the lowering of the standard of proof should be disclosed in a timely manner. In litigation, when a judge applies a lowered standard of proof to evaluate the truthfulness of the fact to be proven and, on that basis, makes a preliminary determination, the judge should promptly disclose the process by which such judicial conviction was formed and the result thereof to the parties. By safeguarding the opposing party's right to know and right to participate, surprises in adjudication can be avoided. Second, the parties should be permitted to argue and appeal with respect to the result of the lowering of the standard of proof. The advancement of litigation and the ascertainment of the facts of the case are jointly accomplished by the judge and both parties. When the judge determines the relationship between facts and legal norms, the parties must be given sufficient opportunities to fully state and explain their views and opinions. This is also where the essence of the theoretical foundation (procedural rationality) of Habermas's theory of deliberative law lies. [77] Making the reasons for the judgment public and providing the parties with sufficient opportunities to participate and present arguments is the best means of persuading the parties to accept the judge's adjudication. [78] At the same time, the parties' right to appeal against the reasons underlying the formation of the judicial conviction concerning the lowering of the standard of proof and against the resulting determination should also be guaranteed.

## VI. Conclusion

The establishment of a general standard of proof in litigation helps unify the standards applied in judicial adjudication and enhance the stability and predictability of the law. However, a general standard of proof cannot take into account the requirements of fairness in all litigation cases. With respect to evidence-imbalanced cases, civil litigation cases in which the nature of the case itself differs from that of ordinary litigation, and other special civil litigation cases, where difficulty of proof arises due to insufficient evidentiary capabilities, and where, despite making every effort, the parties are still unable to effectively prove the existence of the fact to be proven, thereby resulting in substantive injustice in the outcome of the adjudication of an individual case, it is necessary to adopt certain means to lower the degree of judicial conviction required of the judge with respect to the truth of the fact to be proven. The lowering of the standard of proof can have the effect of mitigating the party's burden of proof. The civil judicial practice in China has already conducted useful explorations into rules for lowering the burden of proof; however, at the legislative level of the Civil Procedure Law (including judicial interpretations), there remains a regulatory gap. Regardless of whether from the perspective of achieving substantive justice in the adjudication of cases or from the need to construct a diversified system of standards of proof, it is necessary to establish a system for lowering the standard of proof and, together with the system for raising the standard of proof, make it a supplement to the general standard of proof.

[75] Ekelof maintains that the degree required of a judge in evaluating evidence in litigation can be expressed through a hypothetical dial, the sequence of which is, in order, "impossible," "relatively unlikely," "possible," "roughly likely," "certain," and "obvious," each representing a different point of evidentiary evaluation. He refers to the point on the scale at which proof is required as the burden-of-proof point, and the emergence of the burden of proof is attributable to a particular probability value falling below the burden-of-proof point, rather than to the existence of uncertainty as to whether the facts are true or false. For the relevant views of Ekelof and Prütthing, see [Germany] Prütthing: Modern Issues of the Burden of Proof, translated by Wu Yue, Law Press China, 2006 edition, pp. 102–104.

[76] Jiang Shiming: Burden of Proof and Degree of Proof, Xin Xuelin Publishing Co., Ltd., 2008 edition, p. 231.

[77] Habermas pointed out that the theory of deliberative law connects the reasonable acceptability of judicial judgments not only with the quality of the arguments, but also with the structure of the process of argumentation, and one of its theoretical foundations is the concept of procedural rationality. See [Germany] Habermas: Between Facts and Norms: Contributions to a Discourse Theory of Law and Democracy, translated by Tong Shijun, SDX Joint Publishing Company, 2014 edition, pp. 277–278.

[78] See Hong Dongying: "The Application and Regulation of Presumptions in Civil Litigation," published in Law Science, Issue No. 10, 2010, p. 34.



© 1994-2024 China Academic Journal Electronic Publishing House. All rights reserved. http://www.cnki.net

In constructing the system for lowering the standard of proof in China, the principle should be established that the general standard of proof (a high degree of probability) constitutes the prerequisite, while a preponderance of probability (lowering to a preponderance of probability) constitutes the exception; this is not only a principle generally followed by civil law countries at present, but is also consistent with the theories and practices of civil litigation in China. On the basis of the principle of “general rule and exception”, the following aspects should be emphasized when establishing the institutional model: First, the lowering of the standard of proof should be subject to strict conditions of application, namely, that the nature of the facts of the case itself determines the existence of a difficulty of proof, that it is difficult to find alternative means by which to achieve proof, and that the difficulty of proof causes the outcome of the adjudication of the case to be manifestly unfair; second, the operation of the lowering of the standard of proof should be regulated, with the focus placed on control from two aspects, namely, degree and procedure: in terms of degree, the lower limit of lowering from a high degree of probability as the starting point should be a preponderance of probability (more than 50%); in terms of procedure, the process and result of the judicial conviction underlying the lowering should be disclosed in a timely manner, and the parties should be permitted to argue and appeal. In this way, the potential problem of arbitrary adjudication by judges in the process of lowering the standard of proof can be effectively regulated, enabling this system to genuinely realize the value objective of pursuing substantive justice. Finally, it should be made clear that the legal nature of lowering the standard of proof is the mitigation of the burden of proof; it merely alleviates the evidentiary burden of the party bearing the burden of proof and mitigates the difficulty of proof encountered by that party, and does not exempt the party from the burden of proof or alter the allocation of the burden of proof.

## Lowering Standard of Proof for the Substantive Fact: Institutional Design and Regulation

Wang Gang

**Abstract:** Establishing a standard of proof in general litigation helps to standardize judicial decision-making and improve the stability and predictability of the law. However, this general standard may not always ensure fairness in all litigation cases. To address this defect, a reduction in the standard of proof can be implemented. By lowering the requirement for judges to accept the facts as true, the burden of proof on parties can be lightened. However, it is crucial to emphasize that reducing the standard of proof only eases the burden of proof for the party responsible for presenting evidence, making it easier to prove their case, without exempting or altering the overall the burden of proof. Such reduction should be viewed as an exception to, rather than a negation of, the general standard in litigation. The relationship between the two can be characterized as "general and exception." To construct a model for reducing the standard of proof in line with the China's civil procedure, strict application conditions must be established. These conditions should involve cases where proving the facts is challenging and where the trial outcome would be significantly unfair without a reduction in the standard of proof. Additionally, this model should be subject to both qualitative and procedural regulations. The minimum threshold for reducing the standard should be a more than 50% probability advantage. Procedurally, the evaluation process and outcomes of the reduction should be transparent and open to public scrutiny, allowing parties to present arguments and appeal decisions to prevent arbitrary judgments.

**Keywords:** substantive facts; difficulty of proof; reduction of standard of proof; reduction of burden of proof; rule and regulation

(Editor: Huang Shuai)



© 1994-2024 China Academic Journal Electronic Publishing House. All rights reserved. http://www.cnki.net

# 实体事实证明标准降低制度的建构与规制

王 刚*

**摘 要：**一般性诉讼证明标准的确立，有助于统一司法裁判尺度，提升法律的安定性与可预测性。但是，一般性诉讼证明标准无法兼顾到全部诉讼案件的公正问题。针对其缺陷，可通过证明标准降低予以弥补。将待证事实为真的心证要求予以降低，可以起到减轻当事人证明责任负担的效果。证明标准降低的法律性质为证明责任减轻，不免除或者改变原来的证明责任的分配。证明标准降低，不是对一般性诉讼证明标准的否定，而是以其为前提下的例外规则，两者关系为"一般与例外"。建构符合我国民事诉讼理论传统及实践的证明标准降低模型，除了坚持"一般与例外"原则外，还应设置严格的适用条件，即确因案件事实本身性质造成证明困难且致实体审理结果显失公正；同时，应对其施以程度和程序上的双重规制，在程度上降低的下限为盖然性优势（超过50%），在程序上及时公开降低的心证过程及结果并允许当事人论辩与上诉，以防止恣意裁判。

**关键词：**实体事实；证明困难；证明标准降低；证明责任减轻

证明责任与证明评价相互影响，媒介为证明标准。证明标准作为法院认定当事人证明成功与否的尺度，连接着证明责任与证明评价，是证明制度的核心内容之一。就实体要件事实而言，我国现行法（主要是司法解释）已建立以高度盖然性[1]为一般证明标准，[2]排除合理怀疑[3]（证明标准提高）为补充的民事证明标准体系。但是，过高的证明标准无法保障全部诉讼领域的武器对等原则与实体公正问题，对

---

* 华东政法大学法律学院博士后研究人员，法学博士；江苏省苏州市相城区人民法院员额法官。

〔1〕《最高人民法院关于民事诉讼证据的若干规定》（法释〔2001〕33号，以下简称"《民事证据规定》（2001年）"）第73条第1款规定："人民法院应当结合案件情况，判断一方提供证据的证明力是否明显大于另一方提供证据的证明力，并对证明力较大的证据予以确认。"最高人民法院对此解读认为，该条正式确立了我国民事诉讼高度盖然性的证明标准。参见李国光主编：《关于民事诉讼证据的若干规定的理解与适用》，中国法制出版社2002年版，第462页。学界对此亦持认同观点。参见李浩：《证明标准新探》，载《中国法学》2002年第4期，第132页。其实，第73条第1款只是从文义推断出确立了高度盖然性的证明标准，而对此作出明确规定的是2015年1月30日最高人民法院公布的《关于适用〈中华人民共和国民事诉讼法〉的解释》（以下简称"《民事诉讼法解释》（2015年）"）。该解释第108条第1款规定"人民法院经审查并结合相关事实，确信待证事实的存在具有高度可能性的，应当认定该事实存在。"2022年3月22日，最高人民法院对上述民事诉讼法司法解释进行修改，修改后的条文仍为第108条，内容没有变化。

〔2〕学界曾就民事诉讼中是否存在一般性诉讼证明标准有过争论。有学者认为，基于标准的客观化、具体化的要求，构建一种抽象的、又依赖于法官主观认识的证明标准，只能是一种"乌托邦"式的空想。参见张卫平：《证明标准建构的乌托邦》，载《法学研究》2003年第4期，第60页。但是，更多观点认为诉讼证明标准是客观存在的，构建我国民事诉讼证明标准体系具有十分重要的意义。参见何家弘：《司法证明标准与乌托邦——答刘金友兼与张卫平、王敏远商榷》，载《法学研究》2004年第6期，第101—103页。通说主张将高度盖然性作为我国民事诉讼的一般性证明标准。参见江伟主编：《民事诉讼法》，中国人民大学出版社2013年版，第213—214页。

〔3〕《民事诉讼法解释》（2015年）第109条首次将欺诈、胁迫、恶意串通事实及口头遗嘱或者赠与事实的证明标准规定为排除合理怀疑。2019年10月25日，最高人民法院公布的《关于修改〈关于民事诉讼证据的若干规定〉的决定》（法释〔2019〕19号，以下简称"《民事证据规定》（2019年）"）对《民事证据规定》（2001年）进行全面修改。该规定第86条作出与《民事诉讼法解释》（2015年）第109条同样的规定。



(C)1994-2024 China Academic Journal Electronic Publishing House. All rights reserved. http://www.cnki.net

于证据偏在型诉讼[4]及因待证事实本身性质造成证明困难的案件，[5]当事人因距离证据较远、举证能力所限无法提出有效证据，若仍按一般性证明标准进行证明评价，通常会使得待证事实处于真伪不明的状态，从而由负证明责任的一方当事人（主要是权利主张者）承担不利后果，这样显然有失公正，也不能为当事人及社会公众所信服。最高人民法院《民事诉讼法解释》（2015年）仅在第108条第3款[6]明确"法律对于待证事实所应达到的证明标准另有规定的，从其规定"，但未对证明标准降低进行规定。[7]从比较法上考察，德国、日本等国及我国台湾地区已经建立了较为完善的证明标准降低制度。我国司法实务中法官基于个案实体公正的需要已在自发地通过降低证明标准的方式，减轻负证明责任一方当事人（权利人）的证明负担，使其相对容易地证明待证事实的存在，以维持当事人之间的利益平衡。然而，由于实体事实证明标准降低缺乏系统的制度规范，导致具体适用上的混乱与裁判尺度的不统一，因而遭到不同程度的批评。学界对于证明标准降低的认识也仍显模糊。[8]鉴于此，有必要对实体事实证明标准降低制度进行系统研究。本文首先从对证明标准降低的法律性质的探知开始，对证明标准降低的地位与功能进行界定，考察并反思我国证明标准降低的实践，在此基础上尝试建构符合我国法律语境的证明标准降低制度。

## 一、证明标准降低的法律性质

就世界范围而言，证明标准是证据法学上的用语，而非法律明定用语，故而欠缺立法上的定义。[9]"其为一把尺子，衡量什么时候证明成功了；证明尺度也决定对某个具体内容的心证，它决定着法官必须凭什么才算得到了心证"，普维庭对证明标准作了如此定义。[10]从本质上说，证明标准就是在诉讼中衡量法官经证明评价后认定案件事实是否为真或者达到内心确信的一种尺度，[11]"乃事实认定所必要之心证的最下限"。[12]主观性、客观性及底线性是其显著特征。[13]所谓证明标准降低，就是指将法官经证明评价后对待证事实为真的最低心证程度较一般性证明标准再进行降低。[14]证明评价没有结果，即存在真伪不明时，法官才能借助证明责任原理作出判决。证明责任与证明标准都适用于要件事实，可以说，两者的思维方式在判断标准上是"基本"相同的。[15]所以，对证明标准降低的法律性质进行探知，离不开

〔4〕 主要是现代型诉讼（环境污染损害赔偿、产品质量损害赔偿等纠纷）及其他证据偏在的案件。
〔5〕 如消极性事实证明问题及银行卡被盗刷（涉及伪卡交易）、数字货币投资纠纷等特定类型案件。
〔6〕 《民事诉讼法解释》（2022年）也为第108条第3款。
〔7〕 此处是指实体要件事实的证明标准降低问题，以下不再专门说明。《民事证据规定》（2019年）第86条第2款就诉讼保全、回避等程序性事实证明标准降低制度进行了规定。
〔8〕 尽管有个别文章关注到该问题，但学界对证明标准降低的研究仍是寥寥，也不够深入。
〔9〕 姜世明：《证明度之研究》，载《政大法学评论》2007年第98期，第310页。
〔10〕 ［德］普维庭：《现代证明责任问题》，吴越译，法律出版社2006年版，第88页。
〔11〕 关于证明标准的提法很多，但多围绕"尺度"或者"度"展开。如德国、日本学界多称之为证明度（Beweismaß）、证明强度（Beweislast）、证明标准（Beweiskriterium）等。参见［德］汉斯–约阿希姆·穆泽拉克：《德国民事诉讼法基础教程》，周翠译，中国政法大学出版社2005年版，第268页；［日］伊藤真：《民事诉讼法》（第4版补订版），曹云吉译，北京大学出版社2019年版，第234—235页。英美法系中的证明标准（standard of proof），是指在某一类案件或某一特定案件中要求负有证明责任的一方提供证据进行证明应达到的程度。参见薛波主编：《元照英美法词典》，潘汉典总审订，北京大学出版社2017年版，第1283页。也就是，在一个具体案件中证明所要求的程度或者水平。See Bryan A. Garner, Black's Law Dictionary 1624 (10th ed., Thomson Reuters 2014).
〔12〕 参见邱联恭：《程序选择权论》，三民书局2001年版，第176页。
〔13〕 其一，主观性。证明标准是法官进行证明评价时内心所把握的一种标尺，而这种评价行为及结果形成过程都存在于法官内心，无疑具有很强的主观性。其二，客观性。证明标准是与诉讼活动同时产生的，不论从抽象意义还是从具体意义上来看都是客观存在的。其三，底线性。证明标准是法官认定待证事实为真的最低限度的心证要求。
〔14〕 而非针对《民事诉讼法解释》（2015年）第109条规定的"提高证明标准"进行降低。
〔15〕 参见［日］伊藤滋夫：《要件事实的基础》，许可、［日］小林正弘译，法律出版社2022年版，第126页。



(C)1994-2024 China Academic Journal Electronic Publishing House. All rights reserved.　http://www.cnki.net

对其与证明责任[16]之间的关系进行梳理,特别是应以证明责任的负担与减轻为中心展开。

**(一)证明责任与证明标准在实践中紧密联系**[17]

实践中,证明责任与证明标准是紧密联系的。首先,证明标准的高低决定客观证明责任的适用概率。在这里重提一下证明责任的两层含义,即当事人负有的提出证据证明其主张的责任(主观证明责任)与证明活动结束时案件事实真伪不明下的后果负担问题(客观证明责任)。证明标准是法官开展证明评价的标尺。证明评价是法官对当事人的证明行为进行评价以判断是否达到证明标准的活动。客观证明责任是法官用尽所有法律许可的手段仍然不能对待证事实成立与否形成心证的条件下,而对不利后果进行分配的方法论问题。客观证明责任判决出现的概率大小,直接取决于法官形成心证的难易程度。"简言之,对证明尺度的要求越低,法官按照证明责任规则判案的数量就越少;反之亦然。"[18]

其次,证明标准的高低决定主观证明责任的转移与否。从理论上看,证明责任与证明标准之间并无直接联系。证明标准只是当事人进行证明活动和法官进行证明评价的一个视角,在证明落空(失败)时才会出现客观证明责任。但是,证明责任与证明标准可因主观证明责任这一桥梁而发生间接的联系。负证明责任的一方当事人就其事实主张提出证据证明,若法官认定其对于本证的证明已达到证明标准,此时相对方当事人为避免败诉的不利后果,须提供有力反证以动摇法官已经形成的心证,即主观证明责任发生了转移。若证明标准过高,主张有利事实的一方当事人的证明难度加大,对于本证的证明即难以让法官形成心证,对方当事人并无提出反证的必要。如有学者所言,"对于主观举证责任或举证责任必要,若置于本证及反证之举证活动中观察,则显须借助于证明度及法院于个案审理中之个别阶段所形成心证,进行比对,乃能为适当之诉讼指挥,而得使当事人为适当之提证"。[19]

**(二)证明标准降低在性质上应界定为证明责任减轻**

证明标准是法官经证明评价后认为待证事实为真的最低心证程度。证明标准降低则将最低心证程度较一般性证明标准再予以降低。通过对待证事实的证明标准进行降低,使得权利主张者更容易证明成功,从而减轻负证明责任一方当事人的证明负担,保障当事人之间的武器对等原则,实现个案裁判的实体公正。而这正是证明责任减轻规则的价值追求。所谓证明责任减轻,是指依证明责任分配的一般规则[20]负客观证明责任的一方当事人遇到非可归责于其自身的原因出现证明困难,导致案件基本事实真伪不明,若判决由其负担不利后果则明显有失公平,而由法院采取一定的方法缓解其证明困难,减轻其证明负担,最大限度地查明事实真相,避免作出证明责任裁判,最终实现个案裁判结果的实体正义。[21]而证明标准降低的目的亦指向维持当事人之间的公平,以避免当事人因证明困难而承担败诉的不利后果。

可以说,证明标准降低与证明责任减轻的思维方式是基本相同的,前者着眼于解决具体案件中的证明困难情形,而后者则聚集于普遍的、可类型化的证明困难。[22]其实,证明标准降低也就是证明责任减轻的具体方法和表现形式。基于以上考虑,本文将证明标准降低的法律性质界定为证明责任减轻。具体从三个层面分析:

一是证明标准降低通过对主观证明责任的运用减轻当事人的证明负担。证明责任减轻是以对主观

---

[16] 此处的责任是指客观证明责任。在本文中,若不特别说明,证明责任分配是指对客观证明责任进行分配;负(有)证明责任,是指负(有)客观证明责任。

[17] 首先,两者是界限分明的,如罗森贝克所言,"自由证明评价和证明责任统治着两个领域,虽然这两个领域有着密切的联系,但它们之间的界限还是非常分明的。"[德]莱奥·罗森贝克:《证明责任论》(第5版),庄敬华译,中国法制出版社2018年版,第77页。其次,两者在实践中又紧密联系。

[18] [德]普维庭:《现代证明责任问题》,吴越译,法律出版社2006年版,第96页。

[19] 姜世明:《证明度之研究》,载《政大法学评论》2007年第98期,第316页。

[20] 证明责任分配的一般规则,是指以罗森贝克证明责任理论(主要是"规范说")为基础而确立的证明责任分配基本规则。

[21] 参见王刚:《证明责任减轻制度研究》,载《比较法研究》2021年第6期,第184页。

[22] 参见[日]伊藤滋夫:《要件事实的基础》,许可、[日]小林正弘译,法律出版社2022年版,第126页。



(C)1994-2024 China Academic Journal Electronic Publishing House. All rights reserved. http://www.cnki.net

证明责任的运用为主要方式,直接或者间接地减轻负证明责任一方当事人的证明负担,以实现克服真伪不明与避免证明责任裁判的目的。[23]应当说,证明标准降低也是在当事人遇到非因自身原因造成的证明困难时,在其提供初步证据后,法官将主观证明责任转移至对方当事人,要求对方当事人就其主张提供反证予以证明。证明标准降低就是证明责任减轻制度下一种非常典型的表现形式和方法。[24]所以,“证明标准降低作为轻易化权利主张者实现其权利的手段,客观上减轻了当事人的证明责任负担”。[25]

二是证明标准降低的直接目的在于避免事实真伪不明,减少证明责任裁判。证明责任减轻的目标之一是避免证明责任裁判,即通过一定的方法或者技术尽可能地查明案件基本事实,避免在法庭辩论终结时出现真伪不明状态。追求慎重、正确的裁判乃民事诉讼之基本理念之一,而为获得慎重、正确的裁判,在程序法上即应尽量设计一个可以发现甚至还原事实真相的制度。证明责任只是最后的选择,是不得已的解决路径。证明标准降低减少真伪不明出现的概率,进而减少了证明责任裁判。

三是证明标准降低的最终目标是在兼顾当事人程序利益的前提下寻求个案解决上的实体正义。通过对一般诉讼证明标准的降低,使得当事人证明成功的概率提高,避免当事人因证明能力不足而导致证明责任判决。

## 二、证明标准降低的价值定位

### (一)证明标准降低的地位

证明标准降低,不是对一般性证明标准的否定,而是在坚持一般性证明标准为前提下的一种例外性规则。

首先,一般性证明标准是主体。对于宏观上民事诉讼而言,确立一般性证明标准并将其定为高度盖然性十分必要且有重要意义。德国、日本等大陆法系国家均将其一般性证明标准确立为高度盖然性,并要求法官形成内心确信。[26]其主要考虑是:过低的证明标准,将导致实体法上诉讼请求权基础的泛滥;当事人轻易获胜的概率提高,导致讼灾。诉讼制度的运行是由全体纳税人所负担,若司法裁判的心证仅以盖然性为基准,难免会使普通人对法官的事实认定产生信任危机。[27]同时,随意提起诉讼的当事人可以轻易实现诉讼目的,也将造成法的不安定性。本文认同上述做法。一方面,一般性证明标准的确立有助于统一司法裁判尺度,提升法律的安定性与可预测性,此为法治应有之义。另一方面,一般性证明标准的确立还可有效约束法官的自由证明评价行为,提高法官的办案质量,[28]提高司法裁判的社会认可度。

其次,证明标准降低是例外。对于微观上特定领域的民事诉讼案件而言,一般性证明标准并无法兼顾到所有的诉讼公平问题。德国民事诉讼法有不少以盖然性优势为证明标准的规定,[29]通说认为,作为

〔23〕 参见王刚:《证明责任减轻制度研究》,载《比较法研究》2021年第6期,第186页。

〔24〕 典型的证明减轻方法除证明标准降低外,还有摸索证明、损害赔偿酌定、书证命令提出(其本质上也是摸索证明的一种表现形态)等。

〔25〕 参见姜世明:《证明度之研究》,载《政大法学评论》2007年第98期,第384页。

〔26〕 《德国民事诉讼法》第286条第1款确立了自由心证制度与法定证明标准。通说认为第286条确定的法定证明标准为完全证明,要求法官获得完全的确信。参见[德]奥特马·尧厄尼希:《民事诉讼法》(第27版),周翠译,法律出版社2003年版,第262页。《日本民事诉讼法》第247条对自由心证主义作了规定,并将其与证明标准相关联。参见[日]新堂幸司:《新民事诉讼法》,林剑锋译,法律出版社2008年版,第386页。

〔27〕 参见[日]村上博己:《民事裁判的证明责任》(1980年版),第1页;转引自[日]伊藤真:《民事诉讼法》(第4版补订版),曹云吉译,北京大学出版社2019年版,第235页。

〔28〕 参见何家弘:《司法证明标准与乌托邦——答刘金友兼与张卫平、王敏远商榷》,载《法学研究》2004年第6期,第104页。

〔29〕 参见《德国民事诉讼法》第605条第2款、第592条、第114条第1款、第331条第1款等。另外,《德国民法典》也对证明标准降低作了例外性的规定。相应的梳理可参见参见[德]普维庭:《现代证明责任问题》,吴越译,法律出版社2006年版,第113—120页,第129页。



(C)1994-2024 China Academic Journal Electronic Publishing House. All rights reserved. http://www.cnki.net

法定性证明标准的例外，证明标准降低是对《德国民事诉讼法》第286条完全证明的简化，即法官形成确信的证明标准简化，相应的证明义务和实质化义务也得以简化。[30]通过证明标准降低，实现当事人之间武器对等原则，平衡当事人之间的程序利益，实现个案审理上的实体正义。但是，证明标准降低，只能是适用特定诉讼领域，而非普遍性地适用于所有民事诉讼领域。也就是说，在民事诉讼证明标准这个体系中，证明标准降低只能是对一般性证明标准的补充和例外。

**（二）证明标准降低的功能**

第一，追求实体正义。对于部分特殊类型案件的要件事实——如放射性物质辐射引起的损害的因果关系认定——的证明，要求缺乏科学知识、举证能力较弱的当事人将其证明到高度盖然性，难度极大。对于存在（客观）证明困难的待证事项，如“因案件性质所带来的举证困难在本质上是无法避免的，比如举证所花费的金钱、时间等成本因素，而且根据案件所涉法律制度的旨趣、适用情形以及应当类推适用的实定法规范旨趣，在进行综合考量后，如果认为由于证明不充分而令一方当事人败诉，将明显违背举证的公平性”，那么此时可考虑降低证明标准的要求。[31]法官将待证事实存在的诉讼证明标准由高度盖然性降至盖然性优势，减轻权利主张一方当事人的证明难度，以实现个案审理上的实体正义。

第二，利于事实认定。罗森贝克指出：“自由证明评价王国终结之时，正是证明责任的统治开始之时；一旦法官游历自由证明评价王国，未能作出判决，证明责任会给予其证明评价所能给予的东西。”[32]在法庭辩论终结之时，所有证明用尽之后，法官仍然无法对案件事实形成心证，此时只能适用证明责任规则作出裁判，由负证明责任一方当事人承担败诉后果。但是，在真伪不明下适用证明责任判决只能是“最后的救济”（ultima ratio）或者“最后一招”，[33]是司法不得拒绝裁判下的无奈之举。而针对某些特殊类型案件，德国法上通过表见证明，日本法上通过大致推定，或者采用直接降低证明标准的方式，降低法官事实认定的难度，减少证明责任判决，取得了很好的效果。

最后，提升司法正当性。正当合法性，是大陆法系民事诉讼所追求的重要目标之一。通过设置合理的证明标准，培养大众对司法裁判的正当合法性（the legitimacy of judgements）的信任。[34]对于普通诉讼，当事人之间证明能力相当，若负证明责任的一方当事人未能尽到其主观证明责任，导致案件事实不能被证明存在或者真伪不明，由其承担不利后果，此系证明责任分配一般规则的必然要求。但是，若负主张和证明责任的一方当事人囿于自身证明能力偏弱，与对方当事人诉讼能力不对等，甚至是因案件事实本身（如主张给付错误的不当得利之诉、以遭受“冷暴力”为由的离婚之诉）为消极事实而难以举证，仍然适用高度盖然性的证明标准，无异于直接宣告其败诉。该种司法裁判显然无法得到当事人的认可，更难以经得起社会公众的评判。另一方面，证明责任判决同样也不受裁判者的欢迎。以一般社会理性人的视角观察，法官倾向于在事实查明的情况下作出裁判，既有法官内心良知之内在要求，也有规避法官职业风险的考虑。[35]法官根据主张权利的一方当事人的初步举证，内心对待证事实认为可能存在，只是因为证明困难而判决驳回其诉讼请求，法官内心的良知告诉自己无法接受。一份裁判同时不为当事人与法官所接受，便难言其司法正当性了。正如高桥宏志所言：“以通说所持的高度盖然性为原则，在例外情形下通过降低证明度的要求，从制度整体上来说有助于其稳定运行。”[36]

---

〔30〕［德］罗森贝克、施瓦布、戈特瓦尔特：《德国民事诉讼法（下）》（第16版），李大雪译，中国法制出版社2007年版，第843页。

〔31〕参见［日］伊藤滋夫：《要件事实的基础》，许可、［日］小林正弘译，法律出版社2022年版，第88页。

〔32〕［德］莱奥·罗森贝克：《证明责任论》（第5版），庄敬华译，中国法制出版社2018年版，第78页。

〔33〕参见［德］普维庭：《现代证明责任问题》，吴越译，法律出版社2006年版，第27页。

〔34〕See Bryant G. Garth, Observations on an Uncomfortable Relationship: Civil Procedure and Empirical Research, 49 Ala. L. Rev. 113, 114 (1997).

〔35〕在司法实践中，法官最为担心的就是“判错”案件，从而导致当事人不断地投诉与信访、上访、闹访。而所谓“判错”，普遍是以判决结果与客观真实的相符程度进行判断。

〔36〕［日］高桥宏志：《重点讲义民事诉讼法》，张卫平、许可译，法律出版社2007年版，第37页。



(C)1994-2024 China Academic Journal Electronic Publishing House. All rights reserved. http://www.cnki.net

## 三、我国证明标准降低的实践

与一般性证明标准一样,我国民事诉讼法对证明标准降低制度亦未作明确规定。不同的是,虽然民事诉讼法条文未作规定,但是民事诉讼法司法解释及证据规定就实体事实的一般性证明标准进行了规定,并形成了较为完善的制度体系。而对于证明标准降低,只有个别专项领域的司法解释就特定事实作了规定。〔37〕《最高人民法院关于审理食品药品纠纷案件适用法律若干问题的规定》(法释〔2020〕17号)第5条第2款要求消费者对因果关系的存在达到初步证明即可。因举证能力所限,消费者通常难以对损害与食用食品或者药品存在因果关系,此处的"初步证明"即要求消费者对因果关系的证明只需达到盖然性优势即可。根据我国2019年反不正当竞争法第32条第1款的规定,在侵犯商业秘密的民事审判程序中,商业秘密权利人提供初步证据,相应的信息不构成商业秘密和相应的行为不构成侵权的举证责任就转移至涉嫌侵权人处。此处的"初步证据"其实是将权利人对要件事实的证明标准进行了降低。《最高人民法院关于审理侵犯专利权纠纷案件应用法律若干问题的解释(二)》(法释〔2020〕19号)第27条、《最高人民法院关于审理侵害信息网络传播权民事纠纷案件适用法律若干问题的规定》(法释〔2020〕19号)第13条均作了类似规定。有的部门法下的司法解释将当事人提起诉讼的条件规定为"提供初步证据",其目的在于降低当事人起诉的门槛,主要集中在民事、检察及消费公益诉讼领域及公司法领域,〔38〕这属于程序事实的证明标准降低。〔39〕

与制度规范缺位形成反差的是,司法裁判则在自生自发地探索对特定待证事实的证明标准予以降低,寻求当事人之间的利益平衡,以实现个案审理结果的实体正义。这种探索主要体现在以下三个方面:

其一,通过表见证明或推定以减轻证明难度。对于存在当事人证明困难的要件事实,在主张权利的一方当事人提供初步证据后,法官借助于经验法则、逻辑规则通过表见证明或者推定的方式认定待证事实存在或者形成初步心证;若相对方予以反驳的,则要求其提供反证,未能提供反证或者虽提供反证但不足以动摇法官心证的由其承担不利后果。在最高人民法院指导案例52号(海南某粮油公司诉某保险公司海南省分公司海上货物运输保险合同纠纷案)中,在原告已经举证证明保险标的存在实际损失的情况下,对于保险事故的发生是否系被保险人的故意或者过失所引起,法院对这一消极事实的证明责任予以减轻,而以"无证据证明被保险人存在故意或者过失"为由认定被保险人不存在故意或者过失行为。另外,对于保险事故发生的"意外性"与保险标的存在实际损失的因果关系,法院通过表见证明的方式予以认定;对于意外事故中的"外来原因"这一保险理赔的关键因素,依据"通常理解"经验法则予以判断。以上即为通过降低证明标准的方式认定待证事实的存在,客观上减轻了当事人的证明责任,也使得原本处于证明困难的被保险人在举证能力上与被告保险公司对等,达到了个案审理结果上的实质公正。〔40〕

其二,直接降低证明标准以减轻证明难度。有的案件,由权利主张的一方当事人直接证明因果关系的存在达到高度盖然性,于一般人而言实属不可能。在这种情况下,法官要求当事人无须经过严密的科学验证,只要达到盖然性优势的举证即可。还有一些因案件事实本身即属难以证明,若强令主张权利的一方当事人对此进行完全证明亦属不当,法官则要求其先通过间接证明的方式进行初步证明,该种证明并不要求达到高度盖然性,而只须达到盖然性优势证明即可。如在李某A与李某B之间因错误给付引发的不得当利纠纷案中,原告主张其基于错误认识将款项转给被告,被告应当予以返还。对基于错误认识

〔37〕最高人民法院就消费者权益保护、知识产权保护等领域的司法解释,对侵权行为责任的部分构成要件事实的证明标准予以降低,以体现专门保护。

〔38〕对相应司法解释的梳理,可参见邵明、李海尧:《我国民事诉讼多元化证明标准的适用》,载《法律适用》2021年第11期,第18—20页。

〔39〕关于程序事实的证明标准降低问题,可参见占善刚:《降低程序事实证明标准的制度逻辑与中国路径》,载《比较法研究》2021年第6期。

〔40〕参见最高人民法院指导案例52号,发布时间为2015年4月15日。类似案例还可参见最高人民法院(2003)民四提字第5号民事判决书。



(C)1994-2024 China Academic Journal Electronic Publishing House. All rights reserved.　http://www.cnki.net

这一消极事实的证明,法院要求达到盖然性优势即予以认定。[41]类似案例还有,在一个银行卡纠纷案件中,法院认为黎某某提供的卡内款项被盗刷的时间、地点,以及被盗刷后公安对黎某某所作的询问笔录,案涉交易为伪卡交易具有较高的可信度。此处"较高的可信度"应当在60%至70%之间,而很难达到75%以上,该案采取的证明标准即为盖然性优势。[42]

其三,无明显类型特征的证明标准降低。在中国裁判文书网上,以"优势证据"、"证据优势"为关键词,自2015年2月4日起至2022年4月11日期间,可检索出民事判决书分别有14238份、17198份,民事裁定书分别有1402份、1440份。[43]相关表述如:"本院认为,虎某公司提交的优势证据能够证明其享有对万某公司的债权";[44]"众某公司的取证视频虽未打开书籍内容,但咪某公司的页面显示了'完'和'阅'的字样及相应字数,根据优势证据原则,可以认定咪某公司上传了侵权作品"。[45]在《民事诉讼法解释》(2015年)明确确定高度盖然性为一般性诉讼证明标准的情况下,仍然有大量案件以"优势证据"或者"证据优势"裁判。可见,法官根据案件性质及待证事实的特殊性对证明标准予以降低的情况客观存在,且实属必要。[46]法官采优势证据的证明标准,其目的主要在于减轻负证明责任的一方当事人的证明负担,避免证明责任裁判。例如,在一个民间借贷纠纷案件中,鉴于当事人证明困难,法院认为可依日常生活经验推定双方存在口头约定年利率8%利息的事实,其实质上即为将证明标准由高度盖然性降低到盖然性优势。[47]

实务上对证明标准降低的探索,在一定程度上解决了当事人非因自身原因造成证明困难的困境,实现了当事人之间的武器对等原则,保障了个案上的实体正义。哈耶克认为:"在任何一个规模较大的群体中,人们之间的合作都始终是以自生自发的秩序和刻意建构的组织为基础的。"[48]但其也同时指出,自生自发秩序追求各种各样的目的,而不能具体为一个特定目标。[49]这提醒我们,上述自生自发的实践,有其客观性的同时,也引发了诸如裁判尺度不统一、证明标准降低随意化等问题。

## 四、我国证明标准降低制度的建构

### (一)证明标准降低的适用领域

证明标准降低作为一般性证明标准的例外制度,其适用的诉讼领域相较而言更窄一些。但是,证明标准降低系针对案件事实(待证事实)的证明行为而言,无论什么样的案由(侵权之诉,违约之诉,抑或是其他诉),只要由于待证事实被证明为真的证明标准设置过高,导致负证明责任的一方当事人遭遇非因其自身原因造成的证明困难,造成案件审理结果实质上的不正义,则均应有其适用的空间。

1. 证明标准降低适用的案件类型以证据偏在型案件为主

首先,现代型诉讼中的证据通常偏在于处于优势地位的一方,而主张权利的一方当事人(多为受害

---

〔41〕 该案一审法院认为,原告已经提交证据证明其向被告交付了案涉10万元款项,并作出合理说明及提交相应的初步证据,而被告对其予以反驳却未能提交证据证明,故对原告的主张予以支持。二审维持一审判决。参见湖南省高级人民法院(2019)湘民终618号民事判决书。

〔42〕 参见广东省江门市中级人民法院(2018)粤07民终3771号民事判决书。

〔43〕 以2015年2月4日为起算时间的原因是,其为《民事诉讼法解释》(2015年)的施行日期,该法第108条将高度可能性(盖然性)明确规定为一般性诉讼证明标准。2020年12月23日、2022年3月22日的两次修改对第108条的内容未作变动。而《民事证据规定》(2001年)第73条第1款只是可以解读出将一般性证明标准规定为高度盖然性。

〔44〕 参见广东省高级人民法院(2018)粤民终608号民事判决书。

〔45〕 参见山东省高级人民法院(2019)鲁民终1453号民事判决书。

〔46〕 尽管不能排除有错误适用证明标准的可能,但占比应该极小。

〔47〕 参见江西省庐山市人民法院(2017)赣0483民初503号民事判决书。

〔48〕 [英]弗里德利希·冯·哈耶克:《法律、立法与自由(第一卷)》,邓正来,张守东,李静冰译,中国大百科全书出版社2000年版,第67页。

〔49〕 [英]弗里德利希·冯·哈耶克:《法律、立法与自由(第一卷)》,邓正来,张守东,李静冰译,中国大百科全书出版社2000年版,第57页。



(C)1994-2024 China Academic Journal Electronic Publishing House. All rights reserved. http://www.cnki.net

人)难以接近证据或者举证能力偏弱。在现代型诉讼中,因果关系及过错要件事实为证明标准降低的主要对象。损害行为与受害方所受损害之间的因果关系较为复杂,有时运用通常手段难以有效证明。这是因为损害原因及证据资料往往处于加害人所控制的领域,受害人无法全面掌握,自是不应对其提出过于严格的证明要求。

其次,对于其他证据偏在型案件,处于弱势的一方当事人也难以有效证明其主张。如劳动者只能提供已离职员工的证人证言以证明其加班事实。[50]为了避免适用证明责任裁判,法官也会选择降低证明标准,使得当事人证明待证事实为真的难度下降。法官依一般生活经验法则对因果关系及过错的存在与否进行判断,当形成初步的心证时,便要求对方当事人提供反证,通过转移主观证明责任的方式实现证明标准的降低。

可见,对于证据偏在型案件,若仍以一般性诉讼证明标准对主张权利的一方当事人加以要求,无异于迫使其放弃诉讼,转而寻求私力救济。

2. *在因案件事实本身造成的证明困难时也有证明标准降低的适用空间*

一是待定事实为消极性事实。当消极性事实是权利发生的要件事实时,主张权利的一方当事人应对此负证明责任。所谓消极性事实,是指未曾发生的事实或者对当事人一方不利的事实。[51]关于"对当事人一方不利的事实",其常为该方当事人所掌握,故而不存在证明困难问题,只是从伦理学上看不适宜强迫作出对其不利的陈述及证明。而就"未曾发生的事实"而言,罗马法有法谚云:"否定者不承担证明",不曾发生的事实无法举证证明,或者难以有效证明。最为典型的是给付不当得利之诉,其构成要件之一无法律上的原因,即为消极性事实,就不宜以一般性诉讼证明标准加以要求,而是只要原告通过间接举证的方式证明消极事实存在具有优势盖然性就应予以认定。

二是基于案件本身因素而出现证明困难。其一,新类型案件。如意外保险事故赔偿纠纷,[52]银行卡被盗刷引起的银行卡纠纷案件,[53]数字货币投资纠纷[54]。其二,案件本身性质导致证明困难。如离婚纠纷案件,男方以女方对其长期实施"冷暴力"为由,提起离婚诉讼并分割夫妻共同财产。根据证明责任分配规则,男方应就于其有利之事实即女方实施"冷暴力"负有证明责任,但"冷暴力"本身具有抽象性,难以有效举证,只能通过降低证明标准的方式,减轻受害方的证明负担。[55]

### (二)证明标准降低的适用条件

证明标准降低只是适用一般性诉讼证明标准的例外,应有严格的适用条件。正如伊藤滋夫所言:"只有在为了解决纠纷而有必要考虑司法政策,且为了维系当事人之间的公平而有充分必要性的条件

[50] 对于该种情形也可适度地许可当事人的摸索证明行为,以提高其举证能力。但实务上有时会出现摸索证明失灵的情况,如公司停止经营等原因导致档案资料灭失而无法获取加班记录。

[51] 案件事实可以分为积极性事实与消极性事实。积极性事实是指实际发生的事实或者对当事人一方有利的事实。消极事实说最早为德国学者伊尔勒纽斯(Imerius)所创,曾一度为德国学界通说。参见陈荣宗:《举证责任分配与民事程序法》,三民书局1979年版,第9页。

[52] 对于意外保险合同纠纷中保险事故发生的"意外性",为保险理赔的前提要件,但"意外性"具有非故意性、非计划性及不可预测性特征,也属于消极性事实。在司法实践中,关于"意外性"这一事实,应由谁负证明责任存在一定的争议。

[53] 在因银行卡被盗刷而引起的银行卡纠纷中,持卡人起诉要求银行赔偿本金及利息损失,其应对案涉银行卡内的款项交易系伪卡交易(他人持伪造的银行卡通过银行系统支取款项)负证明责任。而持卡人多只能证明在卡内款项被支出时,其未曾到过交易地方等证据,并报警获取公安调查笔录,但无法提交直接的证据证明伪卡交易事实的存在。实务中,有的法官会通过降低证明标准的方式对待证事实的存在予以认定。如在一件银行卡纠纷案件中,法院认为原告所主张的事实具有较高的可信度,从而认定伪卡交易事实的存在。此处"较高的可信度"即是盖然性优势。参见广东省江门市中级人民法院(2018)粤07民终3771号民事判决书。关于银行卡被盗刷纠纷的证明标准问题已引起实务高度重视,有课题组对此进行了专门梳理与研究。参见山东省高级人民法院民二庭课题组:《银行卡盗刷类案证明标准研究》,载《山东法官培训学院学报》2019年第1期。

[54] 在虚拟货币投资纠纷中,投资人仅通过经营平台提供的私钥(密码)对其虚假币进行控制,一旦平台关闭系统,投资人既难以确定其持币总量,也无法对虚拟币进行交易,还难以有效举证。

[55] 参见上海市浦东新区人民法院(2019)沪0115民初45291号民事判决书。



(C)1994-2024 China Academic Journal Electronic Publishing House. All rights reserved. http://www.cnki.net

下,才可以降低证明标准。”[56]证明标准降低应具备以下四个适用条件:

首先,案件事实本身性质决定证明困难。一如上述,证据偏在型诉讼中因果关系及过错要件事实的证明困难,是该种类型案件中双方当事人举证能力客观上不对等造成的必然结果。受害一方当事人通常处于弱势地位,距离证据较远,也无法有效收集和提交证据证明其事实主张。消极性事实难以举证证明,特别是难以由其本人通过直接证明的方式加以证明,此亦系因事实本身固有性质造成的证明困难。

其次,难以找到替代性手段实现证明。在出现证明困难时,应当先由负证明责任一方当事人尽其努力寻找替代性方式进行证明,比如通过间接证据对消极性事实进行初步证明,使得法官对待证事实的存在形成盖然性的心证;或者对于距离证据较远无法有效收集证据的一方当事人,允许其进行适度地摸索证明,而弱化其具体化义务。只有无法通过替代性手段加以证明,或者虽有替代性方法但成本过高而不符合比例原则,或者根本无法找寻到替代性方式时,方可降低证明标准,减轻当事人的证明负担。

再次,证明困难致使审理结果显失公正。因为出现证明困难,负证明责任一方当事人难以证明对其有利的事实主张,或者对于待证事实的证明无法达到一般性诉讼证明标准,出现真伪不明状态,而承担败诉的不利后果。但是,该裁判结果明显不为一般理性的社会公众所接受,同时违背实体法的规范目的,那么在该案中适用一般性诉讼证明标准无疑过苛,应当予以降低。若仅仅出现证明困难,但根据已经进行的证据调查及辩论全部情况作出的裁判结果并不会导致明显的不公平,则不应降低证明标准。

最后,证明责任仅为减轻并没有免除。在进行证明标准降低时,只是减轻了负证明责任一方当事人的证明负担,缓解其遭遇的证明困难,并没有免除或者改变证明责任的分配。权利主张的一方当事人对于待证事实仍应尽力收集和提出证据加以证明,只有其证明行为使得法官对于待证事实的存在达到初步心证(至少盖然性占优,即超过50%)后,面临进一步举证的客观困难,此时法官才可能依证据调查及法庭辩论情况径直认定待证事实存在;或者,法官要求被告对其辩驳提供反证,将主观证明责任转移至被告处,若被告未提出有力反证的,则认定原告所主张的待证事实存在。同时,负证明责任的一方当事人对遇到证明困难负有陈述义务与解释责任。

## 五、我国证明标准降低制度的规制

### (一)证明标准降低的路径

1. 通过表见证明实现证明标准降低

表见证明(Anscheinsbeweis),是德国法上的概念,由德国帝国法院(Reichsgericht, RG)及联邦最高法院(Bundesgerichtshof, BGH)从判例中发展起来。[57]对表见证明进行一般性定义和解释是十分困难的,“‘表见证明’至今尚没有一个令人满意的解释”。[58]但可以通过外在特征对其一般性地加以了解,即法官依照生活经验从已确认的事实事件中推断出与该事实相连接的其他事实。例如,货车司机将货车驶上人行道而伤及行人,依社会公众的一般生活经验,可推断货车司机存在过错。在一个定型化的事态经过发生作用的情形下,可以直接对某一事实作出推定。也就是说,存在一个可以由生活经验验证的典型事件发生过程,从而可以对过去事实的实际情况进行验证,作为对比的典型事件发生过程与被推定的事实过程具有类似性。高桥宏志将其形象地比喻为,“一般的事实认定过程好比乘坐各站点都停靠的列车,而表见证明则是通过特快列车直接达到终点站来进行的特殊的事实认定”,其与“大致的推定”(大致の推定)可以在同一层面上使用。[59]

---

〔56〕 参见[日]伊藤滋夫:《要件事实的基础》,许可、小林正弘(日)译,法律出版社2022年版,第126页。

〔57〕 Vgl. Baumgärtel, Beweislastpraxis im Privatrecht , 1996 , Rdnr. 227.

〔58〕 [德]普维庭:《现代证明责任问题》,吴越译,法律出版社2006年版,第132页。

〔59〕 参见[日]高桥宏志:《民事诉讼法:制度与理论的深层分析》,林剑锋译,法律出版社2003年版,第460—461页。



(C)1994-2024 China Academic Journal Electronic Publishing House. All rights reserved. http://www.cnki.net

表见证明,多被运用在过错的认定与复杂因果关系的判断场合中。当事人只要对典型的事件发生作出证明,法院即可对推定事实作出认定,因为对过错或者因果关系推定的经验法则具有高度的盖然性。在司法实务中,法官主要根据经验法则从被确认的事实中推断出其他的事实。例如在医疗事故侵权行为纠纷案件中,医生术后将手术刀遗留在病人体内,法官则推定其存在过错;[60]在道路交通事故损害赔偿案件中,机动车驾驶人未取得有效驾照,推定机动车一方存在过错及其行为与道路交通事故之间存在因果关系。[61]当事人在对典型事件的发生作出证明后,如果法官对待证事实的存在可以形成初步心证,此时证明的必要性即转移至相对方当事人,若其未能就事态发展过程中存在例外的情形以致于不符合典型的事件经过提出有力反证,则认定待证事实存在。所以,在日本的判例中,有时会使用"初步推测"(一応の推定),就是指依据具有高度可能性的经验法则来推测过失和因果关系。[62]其实质在于,允许当事人在遇到证明困难时,可以依据经验法则达到初步证明,以促成法官将证据提出责任进行转移。

通过对表见证明的运用,实现降低证明标准的目的,达到减轻当事人证明责任的效果。其一,表见证明的前提是存在一个具有高度盖然性的经验法则(典型的事件发生),从而以该前提推定结果事实的存在。从逻辑上理解,前提条件本身只是高度盖然性的经验法则,[63]以此为基础推断出的事实的盖然性势必会低于(至多持平)高度盖然性,可见表见证明运用的结果即为证明标准的降低。其二,表见证明的作用在于,将证明对象从要件事实转化为更容易证明的典型的关联事实。[64]若无法起到降低证明标准的作用,由大量司法判例发展出来的表见证明制度将失去其生命力。在具体的案件中,由于过高的证明要求在任何因果关联证明中都带来了极大的困难并且可能导致不公平的结果,法院通常借助于表见证明对因果关系的认定降低证明标准,只是这种心证活动较少公开。对德国适用表见证明认定事实的判例进行研究可以发现,被认定为表见证明的前提条件未必全是具有高度盖然性的,这是因为过高的证明要求会在因果关联证明中带来极大的困难并可能导致不公平的结果。[65]

表见证明是在证明评价过程中对经验规则的应用,其本质上为证明评价的一部分,而不是独立的证明手段。通过表见证明,可以降低特定类型案件及其他证明困难案件的证明标准,减轻负证明责任的一方当事人的证明难度,实质上为"借由一较强之经验法则而作事实推论,可谓系抄捷径式之认事方式"。[66]如果法官采取表见证明的方式对某项事实进行推定,则对方当事人只需提出反证[67]就可以推翻,而无需提出反面证明。对方当事人可以直接针对表见证明运用得以适用的前提事实与结果事实本身,以及两之间的因果关系,提出反证予以推翻。为了胜诉或者反驳,对方当事人通常只须提起反证足以动摇表见证明得出的结论即可,不必将反证事实证明到更高的盖然性。[68]

2.(不借助其他方式)直接降低证明标准

所谓直接降低证明标准,是指法官在证明评价中不借助表见证明方式,而是将认定待证事实为真所要求的心证程度直接予以降低。一般情况下,直接降低证明标准是通过表见证明无法进行事实认定或者认定难度较大时,才会采用,由法官依证据调查及辩论全部情况,根据自由心证对待证事实进行认定。

关于消极事实,表见证明的前提条件——具有高度盖然性的经验法则所认定的典型的事件发

[60] 我国2020年民法典(包括2009年侵权责任法)对于医疗事故责任纠纷中的因果关系未明确规定进行证明责任倒置,可以通过表见证明降低当事人的证明难度。

[61] 当然,这种因果关系的程度大小则是另外一个事实问题。

[62] [日]安井英俊:《現代型訴訟における「一応の推定」の機能について》,载《The Doshisha Law Review》2007年第3期,第279页。

[63] 从盖然性的角度来衡量经验法则,其通常是达不到百分之百的。

[64] 周翠:《从事实推定走向表见证明》,载《现代法学》2014年第6期,第108页。

[65] 参见[德]汉斯-约阿希姆·穆泽拉克:《德国民事诉讼法基础教程》,周翠译,中国政法大学出版社2005年版,第272页。

[66] 姜世明:《证据评价论》,厦门大学出版社2017年版,第215页。

[67] 反证与反面证据不同,反证与本证相对,反证的提出只需动摇法官对本证的心证即可;而反面证据为本证,其应当使得法官对反面证据证明的事实存在形成心证(内心确信),而非仅是动摇其已经形成的心证。

[68] 周翠:《从事实推定走向表见证明》,载《现代法学》2014年第6期,第119页。



(C)1994-2024 China Academic Journal Electronic Publishing House. All rights reserved. http://www.cnki.net

生——难以证明,也即,对此负证明责任的一方当事人直接就消极事实进行证明难度较大,或者其即使进行证明(如陈述事件发生的经过),但也难以提供相应的证据佐证。罗森贝克认为,对于未发生的事实,虽然不能以直接方式证明,但仍可经由以下方式加以举证,即某事物被发现,但若事实存在时,该事物不应被发现;或相关事实未被发现,然如其存在,应被发现。但对间接方式的证明,以能够使法官形成初步心证为可,而无须要求一定达到较高程度的心证要求。如以长期遭受"冷暴力"为由提起离婚诉讼的一方当事人,可通过提交其与配偶之间的微信聊天记录,证明长达两年时间内只有其发出信息而无对方的回音(既无微信回应,也无通话及短信回复)。虽然对方可能会提出其常与原告当面交流,但根据生活经验可以判断原告所主张的"冷暴力"存在比不存在的可能性高即可,而不宜对证明标准作过苛的要求。〔69〕部分不当得利案件同样如此。

法官在证明评价时不可避免地会运用经验法则,〔70〕生活经验并非表见证明所独有的现象,这种法则多来源于法官自身的经验知识。法官在对具体事实判断所考虑的因素中,以科学测验为基础的经验知识仅为一方面,更多地是根据其在日常生活经验中获得的认知。〔71〕另外,针对证据偏在型案件,负证明责任的一方当事人已经就待证事实提出初步证据,法官无须形成过高的心证即可将证据提出责任转移至证据偏在的一方当事人,若该方当事人未能尽到提出证据的责任,则法官可视未被提出证据的性质及重要性,决定将待证事实存在的证明标准予以降低或者直接认定待证事实存在。

法官在证明评价活动中根据其判断在实质上提高或者降低证明标准,即使设定比较明确的证明标准,也难以摆脱法官在证明评价中的主观性因素,除非明显违背人类公认的常识或者规律,法官之外的人没有理由将自己理解的证明标准强加给法官。〔72〕有观点提出,对于法定证明标准的提高或者降低,实在没有法律依据而适用法定证明标准又明显不公时,不妨借助事实分析来达到妥当处理案件的效果。〔73〕无论如何进行事实分析,仍然避不开法官的主观判断。其实,不论采取什么样的证明标准,证明评价也只能由法官而非由事先设定的程序作出。所以,证明评价活动中的主观性在所难免,这一点不容回避。〔74〕只是,对于直接降低证明标准应予最大程度的克制。另外,程序规制不可或缺。

**(二)证明标准降低的规制**

证明标准降低制度是建立在法官自由心证的基础上,不可避免地存在法官恣意裁判的可能。对证明标准降低制度进行建构,应当注重对制度运行的规制,强化程度把握与程序规制。

1. 证明标准降低的程度控制

证明标准降低是以一般性诉讼证明标准(高度盖然性)为起点向下降低,其降低的程度应受控制,而非不受节制。与德国诉讼法学者埃克罗夫(Ekelöf)所主张的证明责任点刻度盘理论相对应,普维庭

---

〔69〕 在中国裁判文书网上,以婚姻家庭纠纷为案由、"冷暴力"为关键词,在2018年1月至2021年12月两年期间的裁判文书有904篇(可能有部分案件因涉及个人稳私未上网)。原告提出"冷暴力"事实主张后,多因无法提供有力证据而败诉。即使有的判决支持原告的离婚请求,也多以其他事实与理由作为裁判基础。

〔70〕 所谓经验法则,是建立在经验基础上的,通过大量同类事实得出的一般性结论,其或者是一般生活经验,或者是专门的专业知识。与具体事实相反,经验法则涉及抽象的学说。参见[德]奥特马·尧厄尼希:《民事诉讼法》(第27版),周翠译,法律出版社2003年版,第265页。

〔71〕 一般认为,这种经验知识可能建立在科学的基础上,更有可能是建立在日常生活中,并且具有较高程度的可靠性。通常的获取途径为法官的个人阅历、鉴定意见、专家意见等。

〔72〕 参见段厚省:《证明责任、证明标准和证明评价的实践互动与制度协调》,载《南京师大学报(社会科学版)》2007年第3期,第26页。

〔73〕 参见吴泽勇:《中国法上的民事诉讼证明标准》,载《中国法学》2013年第1期,第88页。此处的法定证明标准对于我国民事诉讼法语境而言,应为一般性诉讼证明标准。

〔74〕 即使在个别证据偏在并不那么明显的案件中,也出现过法官在证明评价中运用表见证明对证明标准进行间接降低,或者依据生活经验直接降低。如在李某诉某置地(重庆)有限公司环境污染责任纠纷案中,法院即依据生活经验及结合专家意见等对被告是否有污染环境的行为进行认定。参见最高人民法院指导案例第128号,发布时间:2019年12月26日。



(C)1994-2024 China Academic Journal Electronic Publishing House. All rights reserved. http://www.cnki.net

将法官的证明结果划分为非常不可能（1%—24%）、不太可能（26%—49%）、大致可能（51%—74%）及非常可能（75%—99%）四个级别。如果以普维庭的“四个级别”理论来计算，本文所讨论的证明标准降低的下限为大致可能，即从非常可能下降到大致可能，其下限由75%降低至超过50%的最低值。若是50%:50%，则为法官的心证平衡，待证事实陷入真伪不明。〔75〕

尽管证明标准是法官在证明评价时内心对待证事实真实与否的心证程度，其是法官内心的自由评价活动，任何人不得随意干涉。但是，法官内心对证明标准的降低，仍应有程度上的把握，而非恣意而为。首先，证明标准降低存在下限，即至少为超过50%。证明标准降低并非免除证明责任，而只是主观证明责任上的减轻。而若达到50%及以下，将突破了证明责任的基本原理。其次，法官对证明标准的调整仍应满足一般理性的社会公众所普遍认知的程度。法官的内心确信应当为思想、自然和经验法则的相互促成。但是，这种法官所普遍认知的程度，同样不能违背一般理性的社会公众的普遍认知，即对待证事实为真的心证程度，也应当是普通人通常会认为确实如此。不论法官为了追求事实真相及保障实体正义的需要，将证明标准降低到超过50%的何种程度，都必须达到其内心的确信。

2.证明标准降低的程序控制

对于实践中法官降低证明标准的行为，若不加以合理约束与规制，无疑会严重破坏法律的安定性。〔76〕所以，有必要对证明标准降低进行程序控制，具体应从以下两个方面把握：其一，证明标准降低的心证过程及结果应及时公开。在诉讼中，法官适用证明标准降低评价待证事实的真实性，并以此作出初步判断时，应及时将心证的形成过程及结果向当事人公开。通过保障相对方的知情权与参与权，避免裁判上的突袭。其二，对证明标准降低的结果应允许当事人论辩与上诉。诉讼的推进与案件事实的查明，由法官和双方当事人共同完成。法官在对事实与规范之间的关系认证时，须给予当事人充分阐明观点与意见的机会。这也是哈贝马斯的商谈法律理论的理论基础（程序合理性）的要义所在。〔77〕公开判决理由并给予当事人充分参与和论证的机会，是说服当事人接受法官裁决最好的途径。〔78〕同时，还应当保障当事人对证明标准降低的心证形成的理由及其认定结果享有提起上诉的权利。

## 六、结语

一般性诉讼证明标准的确立，有助于统一司法裁判尺度，提升法律的安定性与可预测性。但是，一般性证明标准无法兼顾到全部诉讼案件的公正问题。对于证据偏在、案件自身性质异于普通诉讼以及其他特殊的民事诉讼案件，囿于证明能力不足而出现证明困难，当事人尽其努力仍然无法对待证事实的存在实现有效证明，而造成个案审理结果实体上的不正义的，对此，有必要采取一定方式降低法官对待证事实为真的心证要求。证明标准降低，可以起到减轻当事人证明责任的效果。我国民事司法实践已对证明责任降低规则进行有益探索，但是民事诉讼法立法（包括司法解释）层面仍处于缺位状态。不论是从实现案件审理实质正义的角度出发，还是基于建构多元化证明标准体系的需要，都有必要建立证明标准降低制度，将其同证明标准提高制度一起作为一般性证明标准的补充。

---

〔75〕 埃克罗夫认为，可以通过一个假定的刻度盘来表述法官在诉讼证明评价中要求达到的程度，这个刻度的顺序依次是“不可能”、“不太可能”、“可能”、“大概”、“一定”到“明显”，它们分别代表不同的证明评价点。他把要求证明的刻度称之为证明责任点，证明责任的出现是因为某个盖然性值低于证明责任点，不是基于真伪不明的存在。关于埃克罗夫和普维庭的相关观点，可参见［德］普维庭：《现代证明责任问题》，吴越译，法律出版社2006年版，第102—104页。

〔76〕 姜世明：《举证责任与证明度》，新学林出版股份有限公司2008年版，第231页。

〔77〕 哈贝马斯指出，商谈的法律理论把司法判决的合理可接受性不仅同论据的质量相连接，而且与论辩过程的结构相连接，其理论基础之一即为程序合理性概念。参见［德］哈贝马斯：《在事实与规范之间——关于法律和民主法治国的商谈理论》，童世骏译，生活·读书·新知 三联书店2014年版，第277—278页。

〔78〕 参见洪冬英：《民事诉讼中推定的运用与规制》，载《法学》2010年第10期，第34页。



(C)1994-2024 China Academic Journal Electronic Publishing House. All rights reserved. http://www.cnki.net

建构我国证明标准降低制度,应确立以一般性证明标准(高度盖然性)为前提,(降低至)盖然性优势为例外的原则,这既为当前大陆法系国家所普遍遵循,也符合我国民事诉讼理论及实践。以“一般与例外”这一原则为基础,在设置制度模型时应当着重考虑以下几个方面:一是证明标准降低应有严格的适用条件,即案件事实本身性质决定存在证明困难,难以找到替代性手段实现证明,且证明困难致使案件审理结果显失公正;二是应对证明标准降低的运行进行规制,重点从程度和程序两个方面予以把控,程度上表现为以高度盖然性为起点向下降低的下限为盖然性优势(超过50%),程序上表现为对降低的心证过程及结果应予及时公开并应允许当事人论辩与上诉。这样可以有效规制法官在进行证明标准降低过程中可能产生的恣意裁判问题,让该项制度真正地实现追求实体正义这一价值追求。最后,要明确的是证明标准降低的法律性质为证明责任减轻,其只是减轻了负证明责任的一方当事人的证明负担,缓解其遭遇的证明困难,并没有免除证明责任或者改变证明责任的分配。

## Lowering Standard of Proof for the Substantive Fact: Institutional Design and Regulation

Wang Gang

**Abstract:** Establishing a standard of proof in general litigation helps to standardize judicial decision-making and improve the stability and predictability of the law. However, this general standard may not always ensure fairness in all litigation cases. To address this defect, a reduction in the standard of proof can be implemented. By lowering the requirement for judges to accept the facts as true, the burden of proof on parties can be lightened. However, it is crucial to emphasize that reducing the standard of proof only eases the burden of proof for the party responsible for presenting evidence, making it easier to prove their case, without exempting or altering the overall the burden of proof. Such reduction should be viewed as an exception to, rather than a negation of, the general standard in litigation. The relationship between the two can be characterized as "general and exception." To construct a model for reducing the standard of proof in line with the China's civil procedure, strict application conditions must be established. These conditions should involve cases where proving the facts is challenging and where the trial outcome would be significantly unfair without a reduction in the standard of proof. Additionally, this model should be subject to both qualitative and procedural regulations. The minimum threshold for reducing the standard should be a more than 50% probability advantage. Procedurally, the evaluation process and outcomes of the reduction should be transparent and open to public scrutiny, allowing parties to present arguments and appeal decisions to prevent arbitrary judgments.

**Keywords:** substantive facts; difficulty of proof; reduction of standard of proof; reduction of burden of proof; rule and regulation

(责任编辑:黄 帅)



(C)1994-2024 China Academic Journal Electronic Publishing House. All rights reserved. http://www.cnki.net