# Cohen Supplemental Ex. 8

MORNINGSIDE
A Questel Company

morningtrans.com

# TRANSLATION CERTIFICATION

**Date: 2026/09/02**

To whom it may concern:

This is to certify that the attached translation is an accurate representation of the documents received by this office. The translation was completed from:

- Chinese (PRC)

To:

- English (USA)

The documents are designated as:

- Summary of Supreme People_s Court Intellectual Property Tribunal Judgments (2021)

Samuel Wu, Managing Director of this company, attests to the following:

"To the best of my knowledge, the aforementioned documents are a true, full and accurate translation of the specified documents."

Samuel Wu

Signature of **Samuel Wu**, Managing Director



299 South Main Street, Suite 1300
Salt Lake City, UT 84111

# Summary of Judgments from the Supreme People's Court Intellectual Property Tribunal (2021)

Published on: February 28, 2022, 4:00:20 PM Source: Supreme People's Court Intellectual Property Tribunal

To showcase the judicial philosophies, trial approaches, and adjudication methods of the Supreme People's Court Intellectual Property Tribunal in technological intellectual property and antitrust cases, the tribunal has selected 48 representative cases and distilled 55 judgment principles from the 3,460 cases concluded in 2021, forming the "Summary of Judgments from the Supreme People's Court Intellectual Property Tribunal (2021)" for public release, serving as a reference for all sectors of society.

I. Patent Administrative Cases

1. Reasonableness in the Interpretation of Claim Terms

[Case Number] (2019) Supreme People's Court Administrative Final No. 61

[Key Points of the Judgment] In patent authorization and confirmation cases, the interpretation of claim terms should be based on the ordinary meaning as understood by a person skilled in the art after reading the claims, description, and drawings. During this process, a reasonable interpretation should be the starting point and endpoint to determine the maximum scope of meaning for the claim terms.

2. Novelty Assessment of Numerical Range Technical Features Defining the Quantity of Mechanical Components

[Case Number] (2021) Supreme People's Court Administrative Final No. 349

[Key Points of the Judgment] A numerical range defining the quantity of mechanical components involves a natural number interval, distinguishing it from continuous physical quantities like length. In principle, such numerical range technical features should be regarded as a collection of parallel technical means rather than a single technical means. When a cited document discloses only one or part of the quantities, it is insufficient to conclude that the document has directly disclosed the remaining parallel technical means defined by the technical feature.

3. Principle of Separate Comparison in Novelty Assessment

[Case Number] (2021) Supreme People's Court Administrative Final No. 83

[Key Points of the Judgment] If a person skilled in the art can directly and unambiguously determine, after a holistic reading of an existing technical document, that the technical contents recorded in different parts of the document are logically related to the same technical solution, then the technical solution formed by the combination of those technical contents may be used as the object of comparison for evaluating novelty without violating the principle of separate comparison.

4. Determining Disclosed Contents When Contradictions Exist Within the Same Prior Art Document

[Case Number] (2021) Supreme People's Court Administrative Final No. 83

[Key Points of the Judgment] When a specific technical solution described in a prior art document contradicts other related contents in the same document, and a person skilled in the art cannot reasonably explain or determine its accuracy even after fully reading the document and referring to common knowledge, it may be concluded that the prior art document does not disclose the specific technical solution in question.

5. Selection of Closest Prior Art in Inventive Step Assessment for Traditional Chinese Medicine Patents

[Case Number] (2021) Supreme People's Court Administrative Final No. 158

[Key Points of the Judgment] In assessing the inventive step of a traditional Chinese medicine invention patent, the selection of closest prior art should not overly focus on the number of overlapping technical features disclosed in existing technology, such as the degree of overlap in medicinal ingredients. Instead, it should comprehensively consider the technical characteristics of the traditional Chinese medicine field, especially the principles of herbal combinations, formula variations, substitution of medicinal ingredients, and whether the invention's technical solution shares similar indications, treatment principles, therapeutic methods, and medication approaches with the prior art.

6. Consideration of Synergistic Relationships Among Distinctive Technical Features in Inventive Step Assessments

[Case Number] (2020) Supreme People's Court Administrative Final No. 155

[Key Points of the Judgment] In assessing inventive step, distinctive technical features that are closely related, interdependent, synergistic, jointly address the same technical problem, and yield related technical effects, should be considered as a whole rather than

evaluated in isolation.

7. Inventive Step Assessment of Known Product Use Inventions

[Case Number] (2020) Supreme People's Court Administrative Final No. 558

[Judgment Summary] In the case of an invention related to the use of a known product, the key to determining its inventiveness lies in whether the product's intended use can be obviously derived from the known active properties of the product itself and its existing uses. If the invention of the known product's use merely selects one of the indications generalized from prior art applications without achieving any unexpected technical effects, it lacks inventiveness.

8. The Impact of Use Limitations in Claims for Compound Combination Products on the Assessment of Inventiveness

[Case Number] (2020) Supreme People's Court Administrative Final No. 286

[Judgment Summary] Use limitations in claims for compound combination products generally do not affect or alter the components, proportions, or physicochemical properties of the compound combination. Therefore, in assessing the inventiveness of claims for compound combination products, it is generally unnecessary to consider such use limitations.

9. Consideration of Non-Shape or Non-Structural Features in Utility Model Patent Inventiveness Assessment

[Case Number] (2021) Supreme People's Court Administrative Final No. 621

[Judgment Summary] The subject matter of protection for utility model patents concerns technical solutions comprised of shapes, structures, or their combination. If non-shape or non-structural features in claims do not affect the product's shape, structure, or their combination, such features typically do not contribute to the inventiveness of the claim.

10. Assessment of Prior Art's Technical Guidance on Traditional Chinese Medicine (TCM) Inventions

[Case Number] (2021) Supreme People's Court Administrative Final No. 158

[Judgment Summary] In assessing the inventiveness of traditional Chinese medicine inventions, whether the prior art provides guidance for applying the distinguishing technical features to solve the technical problem actually addressed by the invention should be comprehensively analyzed. This analysis should be based on traditional TCM theories, combined with the basic principles of TCM syndrome differentiation and treatment, considering factors like therapeutic principles, methods, compatibility, formulas, and effects.

11. The Relationship Between Direct Evidence of Inventiveness and the 'Three-Step Test'

[Case Number] (2021) Supreme People's Court Administrative Final No. 119

[Judgment Summary] The widely used 'three-step test' in patent inventiveness evaluation is a generally applicable logical reasoning method. On the other hand, using direct evidence such as solving long-standing technical challenges, overcoming technical biases, achieving unexpected technical effects, or attaining commercial success is an experiential presumption method. Both are analytical tools for determining inventiveness. If the conclusion from the 'three-step test' is that the technical solution is inventive, further examination of direct evidence of inventiveness is generally unnecessary. However, if the conclusion from the 'three-step test' is that the technical solution lacks inventiveness, it is necessary to examine the direct evidence of inventiveness and re-verify the 'three-step test' analysis based on the experiential presumption from direct evidence, combining both logical reasoning and experiential presumption conclusions to make a comprehensive judgment.

12. Consideration of Unexpected Technical Effects in Inventiveness Assessment

[Case Number] (2021) Supreme People's Court Administrative Final No. 119

[Judgment Summary] When recognizing patent inventiveness based on unexpected technical effects, the patentee bears the burden of proving the existence of such effects, which must originate from the relevant distinguishing technical features. These unexpected technical effects must sufficiently constitute an improvement goal addressing the technical problem the technical solution aims to solve. If a technical solution is the inevitable choice to solve a technical problem, even if the associated technical effects are hard to predict, such effects are merely by-products of a choice that any skilled person in the field could inevitably make, which alone is insufficient to establish the inventiveness of the technical solution.

13. Examination of Whether the Specification is Sufficiently Disclosed

[Case Number] (2020) Supreme People's Court Administrative Final No. 520

[Judgment Summary] The assessment of whether a patent specification is sufficiently disclosed should focus on the technical solution defined in the claims and the technical problem it aims to address. The standard is whether a person skilled in the art can implement the technical solution and solve the technical problem after reading the specification. Content in the specification that is unrelated to the technical solution limited by the claims and the technical problem it addresses generally does not affect the determination of whether the specification is adequately disclosed.

14. Determination of Whether Amendments to Design Patent Application Documents Exceed the Original Scope

[Case Number] (2021) Supreme People's Court Administrative Final No. 9

[Key Points of the Judgment] When determining whether amendments to design patent application documents exceed the scope depicted in the original drawings or photographs, it is necessary to examine whether the "amended design" and the "originally disclosed design" constitute the same design. Deleting drawings or photographs with obvious errors from design patent application documents,

as long as the deletion does not result in changes to the design represented by other drawings or photographs in the original application documents, generally does not constitute an amendment exceeding the original scope.

15. Judicial Review of Administrative Decisions Based On Effective Judgments

[Case Number] (2021) Supreme People's Court Administrative Final No. 199

[Key Points of the Judgment] Where a party files a lawsuit against an administrative decision made based on an earlier effective judgment, the people's court shall review whether the contested decision fully and accurately implements the earlier effective judgment and whether it introduces new facts or reasoning. If the contested decision does not fully and accurately implement the earlier effective judgment or introduces new facts or reasoning, the people's court shall accept the case and examine the portions not bound by the earlier effective judgment. If the contested decision fully and accurately implements the earlier judgment and does not introduce new facts or reasoning, the party no longer has the right to sue over the administrative decision, and the people's court shall not accept the case.

16. Determination of the Starting Point for Filing Deadlines in Patent Authorization and Validity Administrative Cases

[Case Number] (2021) Supreme People's Court Administrative Final No. 278

[Key Points of the Judgment] The starting point for the statute of limitations in administrative cases concerning patent grant and confirmation is the date on which the contested decision is received. Where the evidence in the case can prove the actual date on which the administrative counterpart received the contested decision, that actual date of receipt shall prevail. Where the evidence in the case is insufficient to prove the actual date of receipt by the administrative counterpart, or where the China National Intellectual Property Administration has otherwise provided or agreed on the date of actual receipt by the administrative counterpart, and such provision or agreement is favorable to the administrative counterpart and does not violate any prohibitive provisions of laws or administrative regulations, then, in order to protect the reliance interests of the administrative counterpart, an interpretation of "the date of receiving the relevant decision" favorable to the administrative counterpart may be adopted based on the specific circumstances of the case.

II. Patent Civil Cases

17. Interpretation of Clearly Defined Technical Features in Claims and Specifications

[Case Number] (2020) Supreme People's Court Civil Final No. 1742

[Key Points of the Judgment] Clearly defined technical features in claims and specifications must not be abstractly interpreted in a manner that deviates from their explicitly defined meaning, as such interpretations may improperly expand the scope of patent protection.

18. Determination of Use Environment Features

[Case Number] (2020) Supreme People's Court Civil Final No. 313

[Key Points of the Judgment] Use environment features are technical features within claims that describe the usage context or conditions of an invention or creation. These features are not limited to technical features related to the installation position or connection structure of the protected object. Under specific circumstances, they may also encompass features related to the use, applicability, or usage method of the protected object.

19. Determination of the Contents of Functional Features in Cases of Multiple Use Environments

[Case Number] (2019) Supreme People's Court Civil Final No. 409

[Key Points of the Judgment] When a patent's technical solution involves multiple use environments, the contents of functional features defined by specific embodiments described in the specification should be determined from the perspective of a person skilled in the art. This determination should distinguish the technical features indispensable for achieving the function or effect defined by the functional features in the specific embodiments from adaptive technical features arising from different use environments. Adaptive technical features generally are not part of the contents of functional features.

20. Determination of Functional Features in Utility Model Patents

[Case Number] (2021) Supreme People's Court Civil Final No. 411

[Key Points of the Judgment] In utility model patents, the features related to shape and structure as well as non-shape and structure characteristics documented in the specification and attached drawings, required to achieve the functional characteristics of functionality and effects, constitute substantial limitations. These elements form the content of functional features and must be considered when determining infringement.

21. Infringement Determination of Microbial Invention Patents Defined by “Deposit Number”

[Case Number] (2020) Supreme People's Court Civil Final No. 1602

[Key Points of the Judgment] To determine whether the accused infringing strain falls under the protective scope of a microbial invention patent defined by “deposit number,” it is generally acceptable to use one or more gene-specific fragment detection methods combined with morphological analysis. Full genome sequencing is not mandatory for detecting the genetic specificity of microbial strains. If the strain defined by “deposit number” has specific amplified sequence tags (SCAR) as molecular markers, these markers

can serve as detection indices. By combining gene sequencing and morphological analysis, infringement can be determined for the accused strain.

22. Impact of Not Including Known Technical Solutions in Claims on Doctrine of Equivalents

[Case Number] (2021) Supreme People's Court Civil Final No. 192

[Key Points of the Judgment] If a patent holder knowingly excludes particular technical solutions from claims during patent drafting, and those skilled in the art, after reviewing the claims and specification, conclude that the patent holder clearly does not seek protection for the omitted technical solutions, such solutions typically cannot be included in the scope of patent protection through the doctrine of equivalents.

23. Evidentiary Standard for Original Scope under the Prior Use Defense

[Case Number] (2021) Supreme People's Court Civil Final No. 508

[Key Points of the Judgment] The evidentiary standard for “original scope” in a prior use defense should not be excessively high. If the accused infringer has made reasonable efforts to provide evidence, and the evidence preliminarily demonstrates the reasonableness of their claimed original scope, but the patent holder fails to present sufficient counter-evidence, it is generally recognized that the accused infringer has operated within the original scope.

24. Damages for Acts of Offer to Sell

[Case Number] (2020) Supreme People's Court Civil Final Nos. 1658 and 1659

[Key Points of the Judgment] Liability for civil infringement associated with acts of offering to sell does not require actual sales as a precondition. Once an act of offering to sell occurs, it can result in damages such as disrupting the reasonable pricing of patented products and reducing or delaying the patent holder’s commercial opportunities. Accordingly, perpetrators of such acts must bear civil liability including cessation of infringement, reimbursement for reasonable expenses incurred in making a claim, and compensation for damages. If the infringer has only engaged in acts of offering to sell and the patent holder is unable to present evidence showing the specific losses incurred, the damages may be calculated statutorily based on case-specific circumstances and evidence reflecting the infringement severity.

25. Determination of Infringement Location and Applicable Law for Network-Related Patent Infringements

[Case Number] (2020) Supreme People's Court Civil Final No. 746

[Key Points of the Judgment] In cases involving network-related patent infringement, if substantive steps of the accused infringement or partial infringement results occur within the domestic Chinese territory, the infringement location can be deemed within China. The geographic location of the accused website server is not the sole factor in determining infringement location. Generally, claims that infringement does not occur in China due solely to the server being outside China are not upheld.

26. Determination of Utilizing Material and Technical Conditions of Enterprise to Complete Invention Creation

[Case Number] (2020) Supreme People's Court Civil Final No. 1848

[Key Points of the Judgment] In determining whether an invention or creation is 'primarily utilizing the material and technical conditions of the employer,' the term 'material and technical conditions' includes material resources such as funding, equipment, components, and raw materials, as well as technical conditions like undisclosed technical information and documentation. 'Primarily' refers to the pivotal role of aforementioned material and technical conditions in the research and development process, signifying that the employer's material and technical conditions are indispensable. Compared to other material and technical resources used by the inventor, those provided by the employer are more significant and occupy a primary position.

27. Determination of Inventions or Creations Made by an Employer’s Responsible Personnel While Performing Work Duties.

[Case Number] (2021) Supreme People's Court Civil Final No. 403

[Key Points of the Judgment] When an inventor is a unit head authorized to mobilize relevant resources of the unit, it is permissible to comprehensively consider their daily work responsibilities, knowledge background, and the unit's nature and primary business to assess the relevance between these factors and the contested patent, determining whether the patent was created in the course of 'performing tasks for the unit.'

28. Whether Infringement Compensation Obtained From an Employee Invention Patent Can Serve as the Basis for Calculating Inventor Remuneration.

[Case Number] (2019) Supreme People's Court Civil Final No. 230

[Key Points of the Judgment] The compensation for infringement damages obtained by an entity based on the patent rights of a job-related invention constitutes income from prohibiting unauthorized use of the patent. After deducting necessary expenses for rights protection, it can be regarded as operating profits as stipulated in Article 78 of the Regulations for the Implementation of the Patent Law, and the inventor may claim reasonable remuneration accordingly.

29. Consequences of Company Directors or Senior Executives Breaching Fiduciary Duties to Transfer Company Patent Rights Without Compensation.

[Case Number] (2021) Supreme People's Court Civil Final No. 194

[Key Points of the Judgment] When a company's director or senior executive transfers the company's patent rights to their personal name without compensation, and fails to provide sufficient evidence proving that the transfer complies with the company's bylaws or is approved by the shareholders' meeting or general meeting of shareholders, it constitutes a breach of the duty of loyalty to the company. Such patent transfer is invalid, and the patent rights should remain with the company.

30. Burden of Proof for Ownership When Obtaining a Patent by Improving Another’s Non-Public Technical Solution.

[Case Number] (2020) Supreme People's Court Civil Final No. 1293

[Key Points of the Judgment] Where the plaintiff claims ownership of the disputed patent on the grounds that the defendant applied for the patent using the plaintiff's non-public technical solution, the plaintiff must provide evidence that the disputed patent originated from their prior-completed non-public technical solution and that the defendant had access to said technical solution prior to the patent application date. If the defendant claims to have improved the plaintiff's technical solution and thereby holds rights to the disputed patent, the defendant must at least prove or reasonably explain the differences between the disputed patent and the plaintiff's technical solution, and demonstrate that such differences constitute substantive characteristics and advancements of the disputed patent.

31. Legal Consequences of Unauthorized Transfer or Disposal of Preserved Evidence

[Case Number] (2021) Supreme People's Court Civil Final No. 334

[Key Points of the Judgment] In patent infringement disputes, when the accused infringer unauthorizedly transfers or disposes of the allegedly infringing products that a people's court has lawfully subjected to evidence preservation measures, resulting in the inability to ascertain relevant facts of infringement, this constitutes a violation of the principle of good faith litigation. It may be presumed that the accused infringing products fall within the scope of protection of the patent at issue, and civil enforcement measures such as fines may be imposed on the accused infringer.

III. New Plant Variety Cases

32. Determination of Seed Sales Behavior Involving the ‘Information Matching Platform'

[Case Number] (2021) Supreme People's Court Civil Final No. 816

[Key Points of the Judgment] If the alleged infringer organizes the sale and purchase of the allegedly infringing seeds on an online trading platform under the pretense of 'information matching,' and in fact takes the lead in determining specific transaction terms such as price, quantity, and performance time, it can be determined that they have engaged in the sale of the allegedly infringing seeds.

33. Evidence Nature and Probative Value of Unilaterally Commissioned Inspection Reports

[Case Number] (2021) Supreme People's Court Civil Final No. 732

[Key Points of the Judgment] In disputes over the infringement of new plant variety rights, opinions issued by institutions or personnel commissioned by one party on specialized issues, while not constituting expert opinions in legal terms, are still admissible as evidence. Such opinions can generally be reviewed following the rules applicable to expert opinions and the evidentiary rules for private documentary evidence as stipulated in laws and Key Points of the Judgments, while exercising stricter scrutiny based on the specifics of the case to evaluate their probative value. Written opinions obtained through self-commissioning by qualified institutions or personnel, provided the testing procedures are lawful, the origin of comparison samples is reliable, and the testing methods are scientific, may generally be deemed credible if the opposing party fails to present sufficient evidence to refute the opinions during cross-examination. However, if the procedures are found to be seriously unlawful, the origin of comparison samples is unclear, or the opposing party submits evidence sufficient to overturn the opinions, such opinions will not be admitted.

IV. Cases Involving Layout Designs of Integrated Circuits

34. Handling of Infringement Cases When Exclusive Rights to Layout Designs of Integrated Circuits are Revoked

[Case Number] (2021) Supreme People's Court Civil Final No. 1313

[Key Points of the Judgment] In disputes over infringement of exclusive rights to layout designs of integrated circuits, if the exclusive rights at issue are revoked, leaving the legal basis for the lawsuit in an indeterminate state, the people's court may rule to dismiss the suit. The rights holder may be allowed to refile the lawsuit after evidence is provided showing that the administrative decision revoking the exclusive rights has been overturned by a valid court judgment.

35. Evaluation of the Developer's Fulfillment in Chip Mass Production Technology Commission Development Contracts

[Case Number] (2020) Supreme People's Court Civil Final No. 394

[Key Points of the Judgment] In disputes involving technology commission development contracts for chip mass production, the completion of development tasks should be assessed based on contractual terms, combined with the technological research and development characteristics and industry practices prevalent in the chip mass production field. If the contract clearly stipulates the goal of developing mass-production chips but does not specify detailed development tasks, it is generally deemed that completing the manufacturing of wafer materials, integrated circuit production, chip packaging and testing, with qualified wafer and packaging testing, constitutes fulfillment of the development tasks. Considering that integrated circuit production is the most challenging, complex step requiring the highest investment in the entire development process, and also noting that chip packaging testing may be carried out separately after wafer testing is qualified, a developer who completes integrated circuit design and prototype manufacturing with qualified wafer testing, even without completing chip packaging testing, can be recognized as having completed the primary development tasks.

V. Cases Involving Trade Secrets

36. Protection Subject and Proof of Computer Software Trade Secrets

[Case Number] (2020) Supreme People's Court Civil Final No. 1472

[Key Points of the Judgment] The source codes of computer software, along with their processes, logical relationships, and algorithms, generally constitute relatively independent technical information. When a party claims that both the source codes of computer software and the processes, logical relationships, and algorithms corresponding to the source codes constitute trade secrets, they must clearly specify the specific technical information for which protection is sought and separately demonstrate its compliance with the conditions stipulated in law for trade secret protection.

37. Post-Expiration Confidentiality Obligations in Technology Secret Licensing Contracts

[Case Number] (2020) Supreme People's Court Civil Final No. 621

[Key Points of the Judgment] Upon the expiration of confidentiality terms stipulated in a technology secret licensing contract, unless otherwise explicitly agreed, such expiration generally means the termination of the licensee's agreed confidentiality obligations. However, the licensee still bears general negative non-acting duties under tort law and post-contractual ancillary confidentiality obligations based on the principle of good faith.

38. Presumption Regarding the Use of Trade Secrets Upon Illicit Acquisition of All Secrets

[Case Number] (2020) Supreme People's Court Civil Final No. 1667

[Key Points of the Judgment] If the right holder provides evidence proving that the alleged infringer has unlawfully acquired complete technological secret information or carriers, such as the entire product process or complete sets of production equipment, and the alleged infringer has actually produced identical products, it can be presumed—based on the preponderance of evidence principle and common life experience—that the alleged infringer has used all the technological secrets.

39. Determination of Joint Infringement by the Company's Legal Representative or Actual Controller and the Company

[Case Number] (2020) Supreme People's Court Civil Final No. 1667

[Key Points of the Judgment] If the alleged infringing enterprise is established and registered by its legal representative or actual controller specifically for the purpose of infringement, and the primary business activities of the alleged infringing enterprise consist of carrying out the alleged infringing acts, and the legal representative or actual controller is directly involved in committing the infringement, the legal representative or actual controller and the alleged infringing enterprise can be deemed to have jointly committed the infringement and shall bear joint liability in accordance with the law.

40. Calculation of Profits from Infringement When Infringement Constitutes Business Activity

[Case Number] (2020) Supreme People's Court Civil Final No. 1667

[Key Points of the Judgment] In cases concerning disputes over technological secret infringement, if the alleged infringer engages in infringement as a business, the damages may be calculated based on the sales profit of the products related to the alleged infringement. If the sales profit of the infringing products is difficult to determine, damages may be calculated based on the sales volume of the infringing products multiplied by the right holder's sales price and profit margin for related products.

41. Factors and Calculation Methods for Determining Compensation Amount in Technological Secret Infringement

[Case Number] (2019) Supreme People's Court Civil Final No. 7

[Key Points of the Judgment] When determining the compensation amount for technological secret infringement, factors such as the nature, commercial value, R&D costs, degree of innovation, competitive advantages brought by the technology, the level of technical contribution, the subjective fault and infringement circumstances of the infringer, and the portion of infringement loss or profits demonstrable by existing evidence, can be taken into account.

42. Determination of Repeated Litigation Involving the Disclosure of Technological Secrets

[Case Number] (2019) Supreme People's Court Civil Final No. 7

[Key Points of the Judgment] Disclosure of technological secrets is a one-time act. If the right holder has already brought litigation against a party for disclosing the same technological secret to a third party, and later files another lawsuit concerning the same disclosure during the proceedings or after the judgment takes legal effect, such action constitutes repeated litigation.

VI. Cases Involving Computer Software

43. Lawful Exercise of Co-Owned Copyrights

[Case Number] (2020) Supreme People's Court Civil Final No. 402

[Key Points of the Judgment] The exercise of co-owned copyright may refer to the provisions of the Copyright Law and its implementation regulations regarding the exercise of copyrights for collaborative works by co-authors. In principle, co-owners of copyright should exercise their rights through mutual agreement; if such agreement cannot be reached, or coordination is practically not feasible, no co-owner may unjustly obstruct other co-owners from exercising rights other than transferring, exclusively licensing, or mortgaging the copyright. However, any revenues obtained from such exercise shall be reasonably distributed among all co-owners.

44. Burden of Proof in Determining Infringement of Computer Software Copyright

[Case Number] (2020) Supreme People's Court Civil Final No. 1138

[Key Points of the Judgment] If the copyright holder provides evidence proving that the alleged infringing software displays a high degree of similarity to the interface of the prior copyrighted software, or contains identical rights management information, design flaws, redundant designs, or other specific information unique to the prior software, which preliminarily demonstrates substantial similarity between the two, and establishes the likelihood of the alleged infringer's access to the prior software, then the burden of proof shifts to the alleged infringer to provide contrary evidence proving that the infringing act did not occur.

45. Responsibility Assessment for Infringement During Conditional Free Commercial Use of Computer Software

[Case Number] (2021) Supreme People's Court Civil Final No. 1547

[Key Points of the Judgment] When a software copyright holder provides software to unspecified users, allowing them to download and use it for free for commercial purposes, but explicitly requires in the user agreement that copyright marks and link information must be preserved, users who download the software for free and remove such marks or links during commercial use are deemed to infringe upon the attribution right of the software copyright holder. They may be ordered to cease the infringement, compensate for damages, and, depending on the infringer's fault and the circumstances of the infringement, may also be ordered to issue a formal apology.

46. The Impact on Contract Objectives Due to Failure to Fulfill the Warranty Against Title Defects in Commissioned Software Development Contracts.

[Case Number] (2021) Supreme People's Court Civil Final No. 677

[Key Points of the Judgment] In a commissioned software development contract where it is agreed that the developer is responsible for developing the source code and the commissioning party holds the copyright to the source code, the developer has a warranty obligation against title defects, meaning they must ensure that no third party holds any rights to the source code. If the developer violates the warranty against title defects, it can be determined that the commissioning party's objective of obtaining software copyright under the contract cannot be achieved, and the commissioning party has the right to terminate the contract.

VII. Antitrust Cases

47. Antitrust Review of ‘Reverse Payment Agreements’ in Pharmaceutical Patent Infringement Cases.

[Case Number] (2021) Supreme People's Court Civil Final No. 388

[Key Points of the Judgment] A 'reverse payment agreement’ in pharmaceutical patents refers to an agreement wherein the pharmaceutical patent holder promises to provide direct or indirect compensatory benefits (including disguised compensation such as reducing disadvantages for generic drug applicants), and the generic drug applicant promises not to challenge the validity of the relevant pharmaceutical patent or to delay entering the market of the patented drug. In pharmaceutical patent infringement cases involving the patent holder and the generic drug applicant, if an agreement appears to be a 'reverse payment agreement' and is cited as a basis by the parties or referenced in the court's judgment, the court should generally conduct some level of antitrust review to determine whether it violates antitrust laws.

When assessing whether a 'reverse payment agreement' primarily aimed at not challenging patent validity constitutes an anticompetitive agreement, the focus is on whether it restricts or eliminates competition in the relevant market for the patented drug. This assessment can generally be conducted by comparing the actual scenarios under such agreements with hypothetical scenarios without such agreements. A key consideration is evaluating the likelihood of the patent becoming invalid due to an invalidity declaration request had the generic drug applicant not withdrawn such a request, and, based on this, analyzing whether and to what extent the agreement has caused harm to competition in the relevant market. In principle, if the patent holder provides large compensatory benefits without valid justification to induce the generic drug applicant to withdraw an invalidity declaration request, this can be an important factor in determining that there is a high likelihood of the patent being invalidated due to the invalidity declaration request. At the same time, it is usually necessary to conduct a hypothetical prediction of the likely outcome of a review where the generic drug applicant had not withdrawn the request.

48. Burden of Proof for Exemption From Antitrust Agreements.

[Case Number] (2021) Supreme People's Court Civil Final No. 1722

[Key Points of the Judgment] If the alleged perpetrator of an antitrust agreement claims that the agreement falls under the circumstances outlined in Article 15, Paragraph 1, Items 1 to 5 of the Anti-Monopoly Law, and thus does not constitute an antitrust agreement, they must provide sufficient evidence to prove that: the agreement has positive competitive or socio-economic effects under the aforementioned five legal scenarios; the agreement is necessary to achieve such effects and does not severely restrain competition in the relevant market; and the agreement enables consumers to share in the resultant benefits. The alleged perpetrator of an antitrust agreement cannot rely solely on general speculation or abstract presumptions about positive competitive or socio-economic effects but must provide evidence showing that such effects are specific and tangible.

49. Judicial Review of Administrative Penalties for Monopolistic Acts

[Case Number] (2021) Supreme People's Court Administrative Final No. 880

[Key Points of the Judgment] In reviewing the legality and reasonableness of administrative penalties for monopolistic acts, key considerations should include: whether the administrative penalty falls within the standards and scope stipulated by law; whether the penalty has sufficient deterrent effect to achieve the legislative objectives of the Anti-Monopoly Law in preventing and prohibiting monopolistic behavior; and whether the penalty aligns with the principle of proportionality. Specific reviews should consider factors such as the degree of harm caused by the monopolistic behavior, the subjective intention of the operator, the operator’s role and position in the illegal act, whether the illegal gains have been confiscated, and whether the operator has resisted administrative investigations

or voluntarily ceased the illegal behavior. A comprehensive judgment should be made to ensure fairness in case outcomes and to achieve the legislative objectives of the Anti-Monopoly Law in preventing and prohibiting monopolistic behavior.

50. Determination of the Validity of Contracts Involving Monopoly Agreements

[Case Number] (2021) Supreme People's Court Civil Final No. 1722

[Key Points of the Judgment] Anti-monopoly laws pertain to the overall efficiency of the national economy and the public interest. Provisions in the Anti-Monopoly Law prohibiting horizontal monopoly agreements generally constitute mandatory effectiveness provisions, and any contract clauses violating such provisions are deemed invalid. To mitigate the risks of operators continuing to implement monopoly agreements and to achieve the legislative objective of the Anti-Monopoly Law in preventing and prohibiting monopolistic behavior, contract clauses closely related to horizontal monopoly agreement terms, which lose their independent significance if separated from those terms or which essentially serve the implementation of horizontal monopoly agreements, shall also be deemed invalid.

51. Determination of Administrative Inaction by Antitrust Enforcement Agencies

[Case Number] (2021) Supreme People's Court Administrative Final No. 112

[Key Points of the Judgment] If no statutory time limit is specified in laws, regulations, or rules for investigating a written antitrust report, the reasonable time for an antitrust enforcement agency to perform its legal duties may be determined by considering factors such as the nature of the suspected monopolistic behavior under investigation, the complexity of the investigation, and its scope. Claims that an antitrust enforcement agency has committed administrative inaction will not be supported if the administrative lawsuit is filed within the reasonable time for the agency to perform its legal duties.

52. Determination of Duplicate Litigation Between Contractual Disputes and Monopoly Agreement Disputes Involving the Same Contract

[Case Number] (2021) Supreme People's Court Civil Jurisdiction Final No. 187

[Key Points of the Judgment] Contractual disputes and monopoly agreement disputes concerning the same contract involve different legal relationships: the former relates to contract law, while the latter pertains to antitrust law. The subject matter of the lawsuits differs, and even if the parties involved are the same or the subsequent lawsuit’s claims essentially negate the prior judgment, it does not constitute duplicate litigation. However, such cases should, as a matter of principle, be consolidated for trial by a single court for better adjudication.

VIII. Cases Involving Intellectual Property Contracts Related to Technology

53. Determination of Whether a Contract Was Concluded with Fraudulent Intent

[Case Number] (2021) Supreme People's Court Civil Final No. 809

[Key Points of the Judgment] To determine whether a contract was concluded with fraudulent intent, the following steps can generally be taken: First, examine whether the primary obligations under the contract exhibit the essential characteristics of the main obligations under specific types of contracts. If not, a preliminary determination can be made that the contract was concluded with fraudulent intent. Second, based on the circumstances before and after the contract was concluded and the actual performance of the contract, further identify the true intent concealed at the time of conclusion. Third, consider the overall case facts comprehensively; if the first two determinations are consistent and reasonable doubts can be eliminated, it can be concluded that the contract was concluded with fraudulent intent.

54. Determination of the Place of Contract Performance When There is No Agreement or the Agreement is Unclear in Jurisdictional Disputes

[Case Number] (2021) Supreme People's Court Civil Jurisdiction Final No. 73

[Key Points of the Judgment] Article 18, Paragraph 2 of the Civil Procedure Law Key Points of the Judgment provides that "if the place of contract performance is not agreed upon or is unclear, and the disputed subject matter involves the payment of money, the location of the party receiving the payment shall be deemed the place of contract performance." The term "disputed subject matter" refers to the specific contractual obligation targeted by the plaintiff's claims in the lawsuit. Claims involving monetary payments should not simply equate the disputed subject matter with the obligation to pay money. Rather, the precise contractual obligation should be clarified according to the specific contents of the contract.

55. Distinction Between Labor Dispatch Contracts and Technical Development Contracts

[Case Number] (2021) Supreme People's Court Civil Jurisdiction Final No. 73

[Key Points of the Judgment] Where the principal terms of a contract concern the requirements for the personnel to be dispatched, the period of the dispatch assignment, the grading assessment of the personnel and the settlement of personnel fees, and where the settlement of those fees is based principally on the personnel grading assessment rather than on the results of technology development, and where the contract does not expressly stipulate the specific rights and obligations relating to technology development, the contract may generally be found to be a labor dispatch contract rather than a technology development contract.

Supervisor: Intellectual Property Court

Official WeChat

---

Address: Building 3, Yard 2, Automobile Museum East Road, Fengtai District, Beijing Postal Code: 100160 Litigation Service Hotline: 12368
Email: ipc@court.gov.cn
Beijing ICP No. 05023036 Copyright Supreme People's Court of the People's Republic of China
Please use a browser IE10 or above for a better experience.

# 最高人民法院知识产权法庭裁判要旨摘要（2021）

发布时间：2022-02-28 16:00:20 来源：最高人民法院知识产权法庭

为集中展示最高人民法院知识产权法庭在技术类知识产权和垄断案件中的司法理念、审理思路和裁判方法，法庭从2021年审结的3460件案件中，精选48个典型案例，提炼55条裁判要旨，形成《最高人民法院知识产权法庭裁判要旨摘要（2021）》，现予发布，供社会各界研究和参考。

一、专利行政案件

1.权利要求用语解释的合理性

【案号】（2019）最高法知行终61号

【裁判要旨】在专利授权确权案件中，应当以本领域技术人员在阅读权利要求书、说明书及附图后所理解的通常含义，界定权利要求的用语。在此过程中，应当以合理解释为出发点和落脚点，确定权利要求用语的最大含义范围。

2.限定机械部件数量的数值范围技术特征的新颖性评价

【案号】（2021）最高法知行终349号

【裁判要旨】限定机械部件数量的数值范围是自然数区间，其区别于长度等具有连续性物理量的数值范围；限定机械部件数量的数值范围技术特征原则上应当视为并列技术手段的集合而非一个技术手段，当对比文件仅公开其中一个或者部分数量时，不足以认定该对比文件已经直接公开了该技术特征所限定的其余并列技术手段。

3.新颖性单独比对原则

【案号】（2021）最高法知行终83号

【裁判要旨】如果本领域技术人员对一份现有技术文献作整体性解读后可以直接地、毫无疑义地确定，记载于该文献不同部分的技术内容之间存在属于同一技术方案的逻辑关系，将该不同部分的技术内容共同构成的技术方案作为新颖性判断的比对对象，不违反单独比对原则。

4.同一现有技术文献中存在矛盾记载时公开内容的认定

【案号】（2021）最高法知行终83号

【裁判要旨】同一现有技术文献所记载的特定技术方案内容与其所记载的其他关联内容存在矛盾，本领域技术人员完整阅读文献后，结合公知常识亦不能作出合理解释或者不能判断其正误的，可以认定该现有技术文献未公开上述特定技术方案。

5.中药发明专利创造性判断中最接近的现有技术的选择

【案号】（2021）最高法知行终158号

【裁判要旨】中药发明专利创造性判断中，对于最接近现有技术的选择，不宜过度关注现有技术披露的发明技术特征数量，如药味重合度，而应当根据中药领域技术特点，特别是配伍组方、方剂变化、药味功效替代等规律，综合考虑发明技术方案和现有技术方案的适应症及有关治则、治法、用药思路是否相同或者足够相似。

6.创造性判断中对具有协同关系的区别技术特征的考量

【案号】（2020）最高法知行终155号

【裁判要旨】创造性判断中，对于紧密联系、相互依存、具有协同作用、共同解决同一技术问题、产生关联技术效果的区别技术特征，可以作整

体考虑，而不宜简单割裂评价。

7.已知产品的用途发明的创造性判断

【案号】（2020）最高法知行终558号

【裁判要旨】已知产品的用途发明中，该产品用途能否从产品本身已知的活性性质以及现有用途中显而易见地得出，是创造性判断的关键。如果该已知产品的用途发明是从现有技术概括的用途中选择其中一种适应症且并未取得预料不到的技术效果，则其不具备创造性。

8.化合物组合产品权利要求中的用途限定对创造性判断的影响

【案号】（2020）最高法知行终286号

【裁判要旨】化合物组合产品权利要求中的用途限定通常不会影响或者改变化合物组合的组分、配比、理化性质等，故在对化合物组合产品权利要求的创造性判断中，原则上无需考虑用途限定。

9.实用新型专利创造性判断中对于非形状构造类特征的考量

【案号】（2021）最高法知行终621号

【裁判要旨】实用新型专利权的保护对象是由形状、构造或者其结合所构成的技术方案。如果权利要求中非形状构造类特征对产品的形状、构造或者其结合不具有影响，则其通常对于该权利要求的创造性不产生贡献。

10.现有技术对中药发明技术启示的判断

【案号】（2021）最高法知行终158号

【裁判要旨】中药发明创造性判断中，关于现有技术是否给出将区别技术特征用于最接近现有技术以解决技术方案实际要解决的技术问题的启示，应当基于中医药传统理论，结合中医辨证施治的基本治疗原则，从治则、治法、配伍、方剂、效果等方面全面分析。

11.创造性判断的直接证据与“三步法”的关系

【案号】（2021）最高法知行终119号

【裁判要旨】专利创造性判断中广泛使用的“三步法”是具有普适性的逻辑推演方法；基于解决长期技术难题、克服技术偏见、实现预料不到的技术效果、获得商业成功等直接证据判断创造性的方法则属于经验推定方法，两者都属于创造性判断的分析工具。运用“三步法”判断的结论是技术方案具备创造性时，一般无需再审查有关创造性直接证据；运用“三步法”判断的结论是技术方案不具备创造性时，应当审查有关创造性的直接证据，并根据基于创造性直接证据的经验推定结论复验“三步法”分析，综合考虑逻辑推演和经验推定两方面结论作出判断。

12.创造性判断中对预料不到的技术效果的考虑

【案号】（2021）最高法知行终119号

【裁判要旨】基于预料不到的技术效果认定专利创造性时，专利权人应当对存在该预料不到的技术效果且其来源于相关区别技术特征承担举证责任。该预料不到的技术效果应当足以构成技术方案实际要解决的技术问题的改进目标。如果某一技术方案是解决技术问题的必然选择，即便有关技术效果难以预料，其也仅为本领域技术人员均可作出的必然选择的“副产品”，仅此尚不足以证明该技术方案具备创造性。

13.说明书是否充分公开的审查

【案号】（2020）最高法知行终520号

【裁判要旨】关于专利说明书是否充分公开的判断，应当以权利要求限定的技术方案及其所要解决的技术问题为对象，以本领域技术人员阅读说明书后能否实现该技术方案和解决该技术问题为标准。说明书中与权利要求限定的技术方案及其所解决的技术问题无关的内容，对于说明书公开是否充分的判断一般不产生影响。

14.外观设计专利申请文件修改是否超范围的判断

【案号】（2021）最高法知行终9号

【裁判要旨】对外观设计专利申请文件的修改是否超出原图片或者照片表示的范围的认定，应当审查“修改后示出的外观设计”与“修改前示出

的外观设计”是否属于相同设计。删除外观设计专利申请文件中存在明显错误的图片或者照片，未导致原申请文件中其他图片或者照片表示的外观设计发生变化的，该删除一般不构成修改超范围。

15.对依据生效裁判所作行政决定的司法审查

【案号】（2021）最高法知行终199号

【裁判要旨】当事人对依据在先生效裁判重新作出的行政决定提起诉讼的，人民法院应当审查该被诉决定是否全面、准确履行了在先生效裁判以及是否增加了新的事实或理由；被诉决定未全面、准确履行在先生效裁判或者增加了新的事实或理由的，人民法院应予受理并对其中不受在先生效裁判羁束的内容予以审理；被诉决定全面、准确履行在先生效裁判且未增加新的事实或理由的，当事人对该行政决定不再享有诉权，人民法院不予受理。

16.专利授权确权行政案件起诉期限起算点的确定

【案号】（2021）最高法知行终278号

【裁判要旨】专利授权确权行政案件起诉期限的起算点是收到被诉决定之日。在案证据能够证明行政相对人实际收到被诉决定时间的，以实际收到之日为准；在案证据难以证明行政相对人实际收到被诉决定时间的，或者国家知识产权局对于行政相对人实际收到被诉决定的时间另有规定或约定，且该规定或约定有利于行政相对人，也不违反法律、行政法规禁止性规定的，为保护行政相对人的信赖利益，可以根据具体案情对“收到有关决定之日”作出有利于行政相对人的解释。

二、专利民事案件

17.权利要求和说明书已明确界定的技术特征的解释

【案号】（2020）最高法知民终1742号

【裁判要旨】对于权利要求和说明书已有明确界定的技术特征，不能脱离其所界定的明确含义对其作抽象解释，进而不适当地扩大专利权的保护范围。

18.使用环境特征的认定

【案号】（2020）最高法知民终313号

【裁判要旨】使用环境特征系权利要求中用来描述发明创造的使用背景或者条件的技术特征，其并不限于与被保护对象的安装位置或者连接结构等相关的技术特征，在特定情况下还包括与被保护对象的用途、适用对象、使用方式等相关的技术特征。

19.存在多种使用环境时功能性特征内容的认定

【案号】（2019）最高法知民终409号

【裁判要旨】在专利技术方案存在多种使用环境的情况下，结合说明书记载的具体实施方式确定功能性特征的内容时，应当从本领域技术人员角度，区分具体实施方式中为实现该功能性特征限定的功能或者效果不可缺少的技术特征和因使用环境不同而产生的适应性技术特征，适应性技术特征通常并不属于功能性特征的内容。

20.实用新型专利中功能性特征内容的认定

【案号】（2021）最高法知民终411号

【裁判要旨】实用新型专利中，说明书及附图所载、为实现功能性特征所限定的功能、效果不可缺少的形状构造类特征和非形状构造类特征，均对该功能性特征具有实质限定作用，均构成功能性特征的内容，在侵权判定时均应予以考虑。

21.“保藏号”限定的微生物发明专利的侵权认定

【案号】（2020）最高法知民终1602号

【裁判要旨】关于被诉侵权菌株是否落入以“保藏号”限定的微生物发明专利权利要求的保护范围，一般可以借助一种或者多种基因特异性片段检测方法，并结合形态学分析等予以认定。检测微生物菌株的基因特异性时，并非必须采用全基因序列检测方法，如果以“保藏号”限定的菌株具有

特有特定序列扩增标记（SCAR）的分子标记片段，则可以该分子标记为检测指标，结合基因序列以及形态学分析，对被诉侵权菌株作出认定。

22.未将明确知晓的技术方案写入权利要求对等同侵权判断的影响

【案号】（2021）最高法知民终192号

【裁判要旨】专利权利人在撰写专利申请文件时未将其明确知晓的技术方案写入权利要求，本领域技术人员在阅读权利要求书、说明书后认为专利权利人明确不寻求保护该未写入权利要求的技术方案的，一般不应再通过等同侵权将该技术方案纳入专利权保护范围。

23.先用权抗辩中原有范围的证明标准

【案号】（2021）最高法知民终508号

【裁判要旨】先用权抗辩中“原有范围”的证明标准不宜过高。被诉侵权人已经尽力举证，所举证据能够初步证明其所主张的原有范围具有合理性，专利权利人没有提供充分反证予以推翻的，一般可以认定被诉侵权人系在原有范围内实施。

24.许诺销售行为的损害赔偿

【案号】（2020）最高法知民终1658、1659号

【裁判要旨】许诺销售行为侵权民事责任的承担不以销售实际发生为前提。许诺销售行为一经发生，即可能造成影响专利产品合理定价、减少或者延迟专利权利人商业机会等损害，因此，许诺销售行为实施者不仅应当承担停止侵害、支付维权合理开支的民事责任，还应当承担损害赔偿责任。侵权人仅实施了许诺销售行为，专利权利人难以举证证明其因此遭受的具体损失的，可以基于具体案情，着重考虑在案证据反映的侵权情节等，以法定赔偿方式计算损害赔偿数额。

25.涉信息网络专利侵权行为地的判断及法律适用

【案号】（2020）最高法知民终746号

【裁判要旨】涉信息网络侵害专利权纠纷案件中，被诉侵权行为的部分实质环节或者部分侵权结果发生在中国领域内的，即可以认定侵权行为地在中国领域内。被诉侵权网站服务器所在地并非判断侵权行为实施地的唯一因素，被诉侵权人仅以该服务器位于中国域外为由，抗辩其行为不侵害中国专利权的，一般不予支持。

26.主要是利用本单位物质技术条件完成的发明创造的认定

【案号】（2020）最高法知民终1848号

【裁判要旨】关于“主要是利用本单位的物质技术条件”所完成发明创造的认定中，“物质技术条件”包括资金、设备、零部件、原材料等物质条件和未公开的技术信息和资料等技术条件；“主要”是对前述物质技术条件在发明创造研发过程中所起作用的限定，系指单位物质技术条件是作出发明创造不可缺少的条件，相对于发明人使用的其他来源的物质技术条件而言，单位物质技术条件在重要性上胜过其他来源的物质技术条件，居于主要地位。

27.单位负责人执行本单位工作任务完成的发明创造的认定

【案号】（2021）最高法知民终403号

【裁判要旨】发明人是可以调动单位有关资源的单位负责人时，可以综合考虑其日常工作内容、知识背景以及单位的性质、主营业务等与诉争专利的关联性，判断专利是否为其“执行本单位的任务”所完成的发明创造。

28.因职务发明专利获得的侵权损害赔偿能否构成发明人报酬的计算基础

【案号】（2019）最高法知民终230号

【裁判要旨】单位基于职务发明专利权获得的侵权损害赔偿，系禁止他人未经许可实施专利而获得的收入，在扣除必要的维权开支后，可以视为专利法实施细则第七十八条规定的营业利润，发明人可以据此主张合理报酬。

29.公司董事、高管违反忠实义务无偿受让公司专利权的后果

【案号】（2021）最高法知民终194号

【裁判要旨】公司董事、高级管理人员将公司专利权无偿转让至其个人名下，且未能提交充分证据证明该转让行为符合公司章程的规定或者经股东会、股东大会同意的，构成对公司忠实义务的违反，有关专利权转让行为无效，专利权仍然应归公司所有。

30.通过改进他人非公开技术方案获得专利时的权属证明责任

【案号】（2020）最高法知民终1293号

【裁判要旨】原告以涉案专利系被告将原告的非公开技术方案申请专利为由，主张涉案专利权归其所有的，应当举证证明涉案专利来源于其在先完成的非公开技术方案，并且被告在涉案专利申请日前能够获知该技术方案；被告主张其对原告的技术方案进行了改进并据此享有涉案专利权的，至少应当证明或者合理说明涉案专利相对于原告的技术方案存在区别，且该区别构成涉案专利的实质性特点和进步。

31.擅自转移、处分保全证据的法律后果

【案号】（2021）最高法知民终334号

【裁判要旨】侵害专利权纠纷案件中，被诉侵权人擅自转移、处分人民法院已经依法采取证据保全措施的被诉侵权产品，致使有关侵权事实无法查明的，构成对诚信诉讼原则的违反，可以推定被诉侵权产品落入涉案专利权保护范围，并对被诉侵权人采取罚款等民事强制措施。

三、植物新品种案件

32.涉“信息匹配平台”销售种子行为的认定

【案号】（2021）最高法知民终816号

【裁判要旨】被诉侵权人通过网络交易平台以“信息匹配”名义组织被诉侵权种子买卖交易，并实际主导确定交易价格、交易数量、履行时间等具体交易条件的，可以认定其实施了销售被诉侵权种子的行为。

33.单方委托检验报告的证据性质和证明力

【案号】（2021）最高法知民终732号

【裁判要旨】侵害植物新品种权纠纷案件中，一方当事人就专门性问题自行委托有关机构或者人员出具的意见，在法律性质上虽非鉴定意见，但仍具备证据资格，一般可以参照法律和司法解释关于鉴定意见的审查规则和准用私文书证的质证规则，结合具体案情，对其证明力适当从严审查。自行委托取得的书面意见由具有相应资格的机构和人员作出、检测程序合法、对照样品来源可靠、检测方法科学，经质证对方当事人未提出足以推翻意见的相反证据的，一般可以确认其证明力；存在程序严重违法、对照样品来源不明等重大错误，或者对方当事人提交了足以推翻意见的相反证据的，不予采信。

四、集成电路布图设计案件

34.集成电路布图设计专有权被撤销时侵权案件的处理

【案号】（2021）最高法知民终1313号

【裁判要旨】侵害集成电路布图设计专有权纠纷案件中，涉案集成电路布图设计专有权被撤销，权利人据以提起诉讼的权利基础处于不确定状态的，人民法院可以裁定驳回起诉，并允许权利人在有证据证明撤销涉案集成电路布图设计专有权的行政决定被生效判决撤销后另行起诉。

35.芯片量产技术委托开发合同中开发方履约情况的认定

【案号】（2020）最高法知民终394号

【裁判要旨】涉及芯片量产的技术委托开发合同纠纷案件中，应当根据合同约定，结合量产芯片研发领域的技术研发特点和产业实践惯例，认定开发任务完成情况。有关合同明确约定以量产芯片为研发目标，但未明确约定全部研发任务详细内容的，原则上应当以完成晶圆材料制造、集成电路制造、芯片封装测试，且晶圆测试、封装测试合格，作为认定完成全部研发任务的标准。鉴于集成电路制造是整个技术开发流程中难度最高、步骤最多、投资最大的主要环节，亦鉴于晶圆测试合格后，有关芯片封装测试可以另行开展，故开发方完成了集成电路设计、样片制造且晶圆测试合格，但未完成芯片封装测试的，可以认定其完成了主要研发任务。

五、技术秘密案件

36.计算机软件技术秘密的保护对象及其证明

【案号】（2020）最高法知民终1472号

【裁判要旨】计算机软件的源代码与流程、逻辑关系、算法等内容一般构成相对独立的技术信息。当事人主张计算机软件的源代码和与源代码对应的流程、逻辑关系、算法均构成技术秘密的，应当分别明确请求保护的具体技术信息并分别证明其符合法律保护条件。

37.约定保密期限届满后的保密义务

【案号】（2020）最高法知民终621号

【裁判要旨】技术秘密许可合同约定的保密期限届满，除非另有明确约定，一般仅意味着被许可人的约定保密义务终止，但其仍需承担侵权法上普遍的消极不作为义务和基于诚实信用原则的后合同附随保密义务。

38.非法获取全部技术秘密后对使用技术秘密行为的推定

【案号】（2020）最高法知民终1667号

【裁判要旨】权利人举证证明被诉侵权人非法获取了完整的产品工艺流程、成套的生产设备等技术秘密信息或者技术秘密载体，且被诉侵权人已经实际生产出相同产品的，可以根据优势证据规则和日常生活经验，推定被诉侵权人使用了全部技术秘密。

39.公司法定代表人或者实际控制人与公司共同侵权的认定

【案号】（2020）最高法知民终1667号

【裁判要旨】被诉侵权企业系其法定代表人或者实际控制人专门为从事侵权而登记设立，该被诉侵权企业的生产经营主要系实施被诉侵权行为，且该法定代表人或者实际控制人自身积极参与侵权行为实施的，可以认定该法定代表人或者实际控制人与该被诉侵权企业共同实施了侵权行为，并应当依法承担连带法律责任。

40.以侵权为业时侵权获利的计算

【案号】（2020）最高法知民终1667号

【裁判要旨】侵害技术秘密纠纷案件中，被诉侵权人以侵权为业的，可以被诉侵权行为相关产品的销售利润为基础计算损害赔偿数额；被诉侵权行为相关产品的销售利润难以确定的，可以被诉侵权行为相关产品的销售量乘以权利人相关产品的销售价格及销售利润率为基础计算损害赔偿数额。

41.技术秘密侵权赔偿数额的考量因素及计算方法

【案号】（2019）最高法知民终7号

【裁判要旨】确定技术秘密侵权损害赔偿数额时，可以考虑技术秘密的性质、商业价值、研究开发成本、创新程度、能带来的竞争优势、技术贡献度和侵权人的主观过错、侵权情节，以及现有证据能证明的部分侵权损失或者侵权获利情况等因素。

42.针对披露技术秘密行为的重复诉讼认定

【案号】（2019）最高法知民终7号

【裁判要旨】技术秘密的披露是一过性行为，权利人已就同一主体向另一主体披露同一技术秘密信息的行为提起诉讼，又在诉讼过程中或者裁判生效后再次就此提起诉讼的，构成重复诉讼。

六、计算机软件案件

43.共有著作权的正当行使

【案号】（2020）最高法知民终402号

【裁判要旨】共有著作权人的权利行使可以参照适用著作权法及其实施条例关于合作作者行使合作作品著作权的规定。原则上，共有著作权人应当通过协商一致行使著作权；不能协商一致或者实际已不具备协商可能的，任何共有著作权人无正当理由不得阻止其他共有著作权人行使除转让、许可他人专有使用、出质以外的其他权利，但是所得收益应当合理分配给所有共有著作权人。

44.计算机软件著作权侵权认定中的举证责任

【案号】（2020）最高法知民终1138号

【裁判要旨】著作权人已经举证证明被诉侵权软件与主张权利的在先软件界面高度近似，或者被诉侵权软件存在相同的权利管理信息、设计缺陷、冗余设计等特有信息，能够初步证明被诉侵权软件与主张权利软件构成实质性近似且被诉侵权人接触主张权利软件的可能性较大的，举证责任转移至被诉侵权人，由其提供相反证据证明其未实施侵权行为。

45.计算机软件附条件免费商业使用中的侵权认定责任承担

【案号】（2021）最高法知民终1547号

【裁判要旨】软件著作权人向不特定用户提供软件，允许其免费下载并商业使用，但在用户协议中明确要求必须保留有关版权标识和链接信息，用户免费下载并在商业使用时去除该版权标识或者链接信息的，应当认定其构成侵害软件著作权人的署名权，可以判令其依法承担停止侵害、赔偿损失的责任，还可以根据侵权人过错及侵权情节视情判令其赔礼道歉。

46.计算机软件委托开发合同中未履行权利瑕疵担保责任对合同目的实现的影响

【案号】（2021）最高法知民终677号

【裁判要旨】计算机软件委托开发合同约定开发方负责开发源代码、委托方享有源代码著作权的，开发方负有权利瑕疵担保责任，即保证第三人不就该源代码享有任何权利。开发方违反权利瑕疵担保责任的，可以认定委托方取得软件著作权的合同目的不能实现，委托方有权解除合同。

七、垄断案件

47.药品专利侵权案件中对“药品专利反向支付协议”的反垄断审查

【案号】（2021）最高法知民终388号

【裁判要旨】“药品专利反向支付协议”是药品专利权利人承诺给予仿制药申请人直接或者间接的利益补偿（包括减少仿制药申请人不利益等变相补偿），仿制药申请人承诺不挑战该药品相关专利权的有效性或者延迟进入该专利药品相关市场的协议。在涉及药品专利权利人和仿制药申请人的药品专利侵权案件中，作为当事人主张依据或者作为法院裁判依据的有关协议具有“药品专利反向支付协议”外观的，人民法院一般应当对其是否违反反垄断法进行一定程度的审查。

对于以不挑战专利权有效性为主要内容的“药品专利反向支付协议”是否涉嫌构成垄断协议的判断，核心在于其是否涉嫌排除、限制专利药品相关市场的竞争，一般可以通过比较签订并履行有关协议的实际情形和未签订、未履行有关协议的假定情形，重点考察在仿制药申请人未撤回其无效宣告请求的情况下，药品相关专利权因该无效宣告请求归于无效的可能性，进而以此为基础分析对于专利药品相关市场而言有关协议是否以及在多大程度上造成了竞争损害。原则上，专利权利人为使仿制药申请人撤回无效宣告请求，无正当理由给予高额利益补偿的，可以作为认定专利权因仿制药申请人提出的无效宣告请求归于无效的可能性较大的一个重要考量因素，同时一般还要对假定仿制药申请人未撤回其无效宣告请求情况下相关审查结果进行预测判断。

48.垄断协议豁免的证明责任

【案号】（2021）最高法知民终1722号

【裁判要旨】被诉垄断协议实施者主张涉案协议具有反垄断法第十五条第一款第一项至第五项情形，不构成垄断协议的，应当提供充分证据证明：该协议具有前述五项法定情形所称积极的竞争效果或者经济社会效果；该协议为实现上述效果所必需，因而不会严重限制相关市场的竞争；该协议能够使消费者分享由此产生的利益。被诉垄断协议实施者不能仅仅依赖一般性推测或者抽象推定有关积极的竞争效果或者经济社会效果，而应当提供证据证明有关效果是具体的、现实的。

49.垄断行政处罚的司法审查

【案号】（2021）最高法知行终880号

【裁判要旨】对于垄断行政处罚的合法性与合理性的审查，应当重点考量：该行政处罚是否在法律规定的处罚标准和范围之内；该行政处罚是否具有足够的威慑作用，能够实现反垄断法关于预防和制止垄断行为的立法目的；该行政处罚是否符合过罚相当原则。具体审查时，应当结合垄断行为

的危害性程度、经营者的主观恶意、经营者在违法行为中所处的地位和作用、是否已经并处没收违法所得、经营者是否存在抗拒行政查处或者主动停止违法行为的情节等个案具体情况，以有利于实现反垄断法预防和制止垄断行为的立法目的和确保个案处理结果公正为指引，进行综合判断。

50.涉及垄断协议的合同效力认定

【案号】（2021）最高法知民终1722号

【裁判要旨】反垄断涉及国家整体经济运行效率和社会公共利益，反垄断法关于禁止横向垄断协议行为的规定原则上属于效力性强制性规定，违反该规定的合同条款应属无效。为降低和消除经营者继续实施垄断协议行为的风险，实现反垄断法预防和制止垄断行为的立法目的，与横向垄断协议条款具有紧密关系、与之脱离即不再具有独立存在意义的合同条款，以及实质上服务于横向垄断协议行为实施的合同条款，亦应属无效。

51.反垄断执法机构行政不作为的认定

【案号】（2021）最高法知行终112号

【裁判要旨】法律、法规和规章未对反垄断书面举报的调查设定期限的，可以综合考虑作为调查对象的涉嫌垄断行为的行为性质、调查难度、调查范围等因素确定反垄断执法机构履行法定职责的合理期限。当事人于反垄断执法机构履行法定职责的合理期限内提起行政诉讼，主张反垄断执法机构构成行政不作为的，不予支持。

52.涉及同一合同的合同之诉与垄断协议之诉的重复诉讼认定

【案号】（2021）最高法知民辖终187号

【裁判要旨】涉及同一合同的合同之诉和垄断协议之诉，分别涉及合同法律关系和反垄断法律关系，诉讼标的不同，即便所涉当事人相同或者后诉的诉讼请求实质否定前诉裁判结果，其亦不构成重复诉讼，但原则上应当由一个法院合并审理为宜。

八、技术类知识产权合同案件

53.合同订立是否存在虚假意思表示的认定

【案号】（2021）最高法知民终809号

【裁判要旨】关于当事人是否以虚假意思表示订立合同的判断，一般可以按照如下步骤认定：一是审查合同主给付义务是否具备特定类型合同项下主给付义务的基本特征；如不具备，则可以初步认定订立合同时存在虚假意思表示。二是根据当事人订立合同前后的情况和实际履约行为等事实，进一步认定订立合同时所隐藏的真实意图。三是综合全案案情，如果上述两个方面的认定可以相互吻合并能够排除合理怀疑，则可以最终认定当事人以虚假意思表示订立合同。

54.管辖争议中履行地点无约定或约定不明时合同履行地的认定

【案号】（2021）最高法知民辖终73号

【裁判要旨】民事诉讼法司法解释第十八条第二款关于“合同对履行地点没有约定或者约定不明确，争议标的为给付货币的，接收货币一方所在地为合同履行地”之规定所称“争议标的”，是指当事人诉讼请求所指向的具体合同义务。诉讼请求为给付金钱的，不应简单地以诉讼请求指向金钱给付义务而认定争议标的即为给付货币，而应当根据合同具体内容明确其所指向的合同义务。

55.劳务派遣合同与技术开发合同的区分认定

【案号】（2021）最高法知民辖终73号

【裁判要旨】合同主要条款为派遣人员要求、派遣工作期间、人员级别评估、人员费用结算，且人员费用结算的主要依据为人员级别评估而非技术开发成果，合同亦未明确约定技术开发有关具体权利义务的，一般可以认定该合同属于劳务派遣合同而非技术开发合同。

责任编辑：知识产权法

官方微信

地址：北京市丰台区汽车博物馆东路2号院3号楼 邮政编码：100160 诉服电话：12368
电子邮箱：ipc@court.gov.cn

京ICP备05023036号 中华人民共和国最高人民法院 版权所有
请使用IE10以上浏览器获得更高的体验