# Cohen Supplemental Ex. 14

UNIVERSITY OF PITTSBURGH LAW REVIEW

Vol. 84 ● Summer 2023

# ARTICLES

## REBALANCING THE BURDEN OF PROOF FOR TRADE SECRETS CASES IN CHINA: A DETAILED SCRUTINY AND COMPARATIVE ANALYSIS OF ARTICLE 32

Yang Chen

ISSN 0041-9915 (print) 1942-8405 (online) ● DOI 10.5195/lawreview.2023.956
http://lawreview.law.pitt.edu

This work is licensed under a Creative Commons Attribution-Noncommercial-No Derivative Works 3.0 United States License.

This journal is published by Pitt Open Library Publishing.

# ARTICLES

## REBALANCING THE BURDEN OF PROOF FOR TRADE SECRETS CASES IN CHINA: A DETAILED SCRUTINY AND COMPARATIVE ANALYSIS OF ARTICLE 32

Yang Chen*

### ABSTRACT

One of the most significant legal changes to the trade secrets system in China during the past three years has been the addition of Article 32 of the 2019 Anti-Unfair Competition Law (AUCL). Article 32, which seeks to reduce plaintiffs' burden of proof, was promulgated against the backdrop of the U.S.-China trade war and its language largely follows that of the U.S.-China Phase One Agreement. Article 32 alleviates plaintiffs' burden by allowing the burden of proof for the trade secrets status elements (secrecy and commercial value) and for the existence of misappropriation conduct to be shifted to defendants. It is, however, full of problems. First, its language is ambiguous as to whether it creates presumptions to facilitate shifting the burden of production during litigation or whether it functions as a statutory exception to reallocate the burden of persuasion at the outset. Second, it is questionable whether plaintiffs are justified in enjoying the reduced burden provided by Article 32. In light of these doubts, this Article reexamines Article 32 of the current Chinese trade secrets law by attempting to clarify its ambiguity and introduce

* Assistant Professor, School of Law, City University of Hong Kong. New York State Licensed Attorney. SJD, University of Pennsylvania; LLM, University of Pennsylvania; LLM, London School of Economics and Political Science; LLB, China University of Political Science and Law. Special thanks to my SJD supervisor Professor Gideon Parchomovsky and my dissertation committee members Professor Jennifer E. Rothman and Professor Andrea (Yanbai) Wang. Sincere thanks also to Professor Victoria Cundiff. All errors are my own.

ISSN 0041-9915 (print) 1942-8405 (online) ● DOI 10.5195/lawreview.2023.956
http://lawreview.law.pitt.edu

a suitable interpretation. It reevaluates Article 32 and explores whether any justifications exist to warrant the shifted burdens imposed on defendants. This Article also compares the current Article 32 with U.S. laws to highlight Article 32's problems. Finally, it suggests amendments to Article 32 in an effort to rebalance the burden on both sides.

ISSN 0041-9915 (print) 1942-8405 (online) ● DOI 10.5195/lawreview.2023.956
http://lawreview.law.pitt.edu

Case 7:24-cv-00232-DC Document 214-34 Filed 09/04/26 Page 5 of 48



Table of Contents

Introduction ..... 830

I. Burden of Persuasion, Burden of Production, and Presumptions ..... 832

A. Burden of Persuasion ..... 833

B. Burden of Production ..... 834

C. Presumptions ..... 837

II. Burden of Proving Trade Secrets Cases in China ..... 839

A. A Brief History ..... 839

B. Current Law and Theoretical Debate ..... 843

C. Shifting Burden of Production or Reallocating Burden of Persuasion? ..... 847

III. Detailed Scrutiny of Article 32 ..... 849

A. Unreasonable Presumption and Ambiguity of Section One ..... 849

1. Unsupported and Unreasonable Presumption ..... 849

2. Unpredictability in Practice ..... 858

B. Section Two's Questionable One-Size-Fits-All Approach ..... 860

IV. Normative Suggestions and Responses to Potential Criticisms ..... 865

A. Normative Proposal ..... 865

1. Section One of Article 32 ..... 865

2. Section Two of Article 32 ..... 866

B. Potential Criticism to China's Discovery System ..... 869

Conclusion ..... 872

ISSN 0041-9915 (print) 1942-8405 (online) ● DOI 10.5195/lawreview.2023.956
http://lawreview.law.pitt.edu

## INTRODUCTION

One of the most significant legal changes to the trade secrets system in China during the past three years has been the addition of Article 32 of the 2019 Anti-Unfair Competition Law (AUCL).[1] Article 32, which seeks to reduce plaintiffs' burden of proof, was promulgated against the backdrop of the U.S.-China trade war and its language largely follows that of the U.S.-China Phase One Agreement.[2] Article 32 alleviates plaintiffs' burden by allowing the burden of proof for the trade secrets status elements (secrecy and commercial value) and for the existence of misappropriation conduct to be shifted to defendants.[3] The extension of greater protection for trade secrets holders in China is welcome.[4] Article 32, however, is full of problems that greatly undermine its benefits. It suffers from serious uncertainty issues. For example, on what type of "burden of proof" does the article focus? Article 32's language is ambiguous as to whether it creates presumptions to facilitate shifting the burden of production during litigation or functions as a statutory exception to reallocate the burden of persuasion at the outset.[5] This ambiguity has given rise to

---

[1] *See* Yang Chen, *Development of China's Trade Secrets Law in the US' Shadow: Negative Consequences for China and Suggestions*, 17 U. PA. ASIAN L. REV. 138, 161–68 (2022).

[2] *See id.*; Cui Guobin (崔国斌), Shanye Mimi Qinquan Susong de Juzheng Zeren Fenpei (商业秘密侵权诉讼的举证责任分配) [Allocating Burden of Proof in Trade Secrets Infringement Cases], JIAODA FAXE (交大法学) [SJTU L. REV.], no. 4, 2020, at 9, 10.

[3] Fan Buzhengdang Jingzheng Fa (反不正当竞争法) [Anti-Unfair Competition Law] (promulgated by Standing Comm. Nat'l People's Cong., Sept. 2, 1993, effective Dec. 1, 1993; revised by Standing Comm. Nat'l People's Cong., Nov. 4, 2017; revised by Standing Comm. Nat'l People's Cong., Apr. 23, 2019), CLI.1.331488(EN) (Lawinfochina) [hereinafter 2019 AUCL]; *see also* Cui, *supra* note 2, at 10.

[4] *See generally* Shen Shijuan (沈世娟) & Huang Peiyao (黄佩瑶), Shangye Mimi "Mimi Xing" Zhengming Zhong Tuiding Guize De Shiyong—Jianyi Fanbu Zhengdang Jingzheng Fa Di Sanshi Er Tiao (商业秘密 "秘密性"证明中推定规则的适用—兼议 《反不正当竞争法》第三十二条) [The Application of Presumptions on Proving Secrecy in Trade Secrets Cases-An Analysis on the Article 32 of the AUCL], 22 J. CHANGZHOU U. (SOC. SCI. EDITION), no. 5, 2021; Haifeng Huang & Randy Kay, *Recent Changes to China's Trade Secret Protection Laws Ease the Challenge of Bringing Such Cases*, JONES DAY (Oct. 2020), https://www.jonesday.com/en/insights/2020/10/recent-changes-to-chinas-trade-secret-protection-laws.

[5] *See, e.g.*, Cui, *supra* note 2; Tao Guandong (陶冠东), Shangye Mimi Qinquan Jiufen Zhong Juzheng Zeren de Zai Renshi (商业秘密侵权纠纷中举证责任的再认识——写在《反不正当竞争法》第三十二条增加之际) [Re-Conceptualization of the Burden of Proof in Trade Secrets Infringement Disputes—Written on the Occasion of the Addition of Article 32 of the Anti-Unfair Competition Law], ZHONGGUO YU ZHUANLI (中国专利与商标) [CHINA PATENTS & TRADEMARKS], no. 3, 2019, at 66, 70; Yu Zhiqiang (喻志强) & Ge Guangying (戈光应), Shangye Mimi Qinquan Susong Juzheng Xinguize de Shiyong (商业秘密侵权诉讼举证新规则的适用) [The Application of the New Evidence Rule of Trade Secrets Misappropriation Litigations], RENMIN SIFA (人民司法) [THE PEOPLE'S JUDICATURE], no. 19, 2020, at 11; Song Jian (宋健), 2019 AUCL Di Sanshier Tiao Dui Qinhai Shangye Mimi Anjian Shenli Silu de

ISSN 0041-9915 (print) 1942-8405 (online) ● DOI 10.5195/lawreview.2023.956
http://lawreview.law.pitt.edu

intense debate among scholars and practitioners, with many criticizing the defective wording and offering conflicting interpretations to resolve the uncertainties.[6]

Meanwhile, it is questionable whether plaintiffs are justified in enjoying the reduced burden provided by Article 32. Also, it is not that easy for defendants to defend themselves against trade secrets liability without incurring significant costs.[7] The justifications for adding Article 32 seem very weak. It can be argued that Article 32 may have become an overly favorable mechanism for plaintiffs at the expense of defendants. Accordingly, doubts arise about whether Article 32 maintains an acceptable balance between plaintiffs and defendants and whether it can sustain well-grounded scrutiny.

In light of these doubts, this Article reexamines Article 32 of the current Chinese trade secrets law by attempting to clarify Article 32's ambiguity and introduce a suitable interpretation. It evaluates Article 32 and explores whether any justifications exist to warrant the shifted burdens imposed on defendants. This Article also compares the current Article 32 with U.S. laws on burden of proof for trade secrets highlighting Article 32's problems. This Article suggests amendments to Article 32 in an effort to rebalance the burden on both sides. To be more specific, this analysis begins with a brief introduction to burdens of proof by examining the differences and associations between the burden of persuasion, burden of production, and presumptions. Then it examines the reading of the two sections of Article 32 and strives to interpret them appropriately in the Chinese context. Arguments against these two sections of Article 32 are then presented by attacking their justifications and scrutinizing whether Article 32 maintains a sound balance between the burdens of plaintiffs and defendants, partly based on comparisons with U.S. laws. Building on these foundations, this Article then presents normative suggestions for amending Article 32.

---

Yingxiang (2019 年反不正当竞争法第三十二条对侵害商业秘密案件审理思路的影响) [Impact of Article 32 of the 2019 Anti-Unfair Competition Law on the Trial Rationale for Trade Secret Infringement Cases], ZHONGGUO YU ZHUANLI (中国专利与商标) [CHINA PATENTS & TRADEMARKS], no. 4, 2020, at 22, 28–29; April 26 Shijie Zhishichanquan Ri Xilie Huodong—Jiangzuo Shilu: Qinfan Shangye Mimi Anjian Shenli Zhong de Yinan Wenti ("4.26" 世界知识产权日系列活动|讲座实录：侵犯商业秘密案件审理中的疑难问题) ["4.26" World Intellectual Property Day Series Events Lecture Transcript: Difficult Issues in the Trial of Trade Secret Infringement Cases], SJTU IP & COMPETITION RSCH. INST. (Apr. 24, 2022, 8:30 PM), https://mp.weixin.qq.com/s/t9GPFmXowKFWUrE6evYiuQ [hereinafter SJTU Trade Secrets Lecture Transcript].

[6] *See* sources cited *supra* note 5.

[7] *See infra* Part III.

ISSN 0041-9915 (print) 1942-8405 (online) ● DOI 10.5195/lawreview.2023.956
http://lawreview.law.pitt.edu

## I. BURDEN OF PERSUASION, BURDEN OF PRODUCTION, AND PRESUMPTIONS

The concept of "burden of proof" normally encompasses two subcategories: burden of persuasion and burden of production.[8] Both have distinct functions and together, they guide the operation of the burden of proof throughout litigation.[9] In theory, some Chinese scholars classify the burden of proof into four types, including two akin to the burden of persuasion and burden of production (hereinafter "Chinese versions of the burden of persuasion and production").[10] This classification itself is subject to intense debate[11] and Chinese courts in practice have recognized only two of them—the Chinese versions of the burden of persuasion and production.[12] This Article declines to join the debate among Chinese scholars on how to theoretically classify the burden of proof and focuses, instead, on the Chinese versions of the burden of persuasion and production because they are the burdens that function in Chinese courts. The Chinese versions differ from the U.S. versions—although, admittedly, there are substantial similarities between the two.[13] It is important,

---

[8] *See, e.g.*, John T. McNaughton, *Burden of Production of Evidence: A Function of a Burden of Persuasion*, 68 HARV. L. REV. 1382, 1382–85 (1955); Fleming James Jr., *Burdens of Proof*, 47 VA. L. REV. 51, 51 (1961); Ronald J. Allen, *Burdens of Proof*, 13 L., PROBABILITY & RISK 195, 198–99 (2014); Paul F. Rothstein, *Demystifying Burdens of Proof and the Effect of Rebuttable Evidentiary Presumptions in Civil and Criminal Trials* 4 (Oct. 4, 2017), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3050687; Lydia Pallas Loren & Anthony Reese, *Proving Infringement: Burdens of Proof in Copyright Infringement Litigation*, 23 LEWIS & CLARK L. REV. 621, 625–26 (2019).

[9] For discussions on burden of persuasion and burden of production, see *infra* Part I, Sections 1–2.

[10] For example, some scholars argue that burden of proof should include a subjective burden in an abstract level, a subjective burden in a concrete level, an objective burden in an abstract level, and an objective burden in a concrete level. *See, e.g.*, Zhou Hongbo (周洪波), Zhuguan—Keguan Zhengming Zeren Tixi Jiegou (客观—主观证明责任体系解构) [Interpretation of the Objective-Subjective Structure of Burden of Proof], THE JURIST, no. 1, 2021, at 111–14 (discussing the scholars' views on four types of burden of proof).

[11] *See, e.g.*, WANG YAXING (王亚新) ET AL., ZHONGGUO MINSHI SUSONG ZHONGDIAN JIANGYI (中国民事诉讼法重点讲义) [CRITICAL OUTLINES ON PRC CIVIL PROCEDURE LAW] 137–38 (2d ed. 2021) (holding that burden of proof only comprises burden of proof in a behavioral sense and burden of proof in the sense of final outcomes); *see also* Zhou, *supra* note 10, at 114–18 (criticizing the classification).

[12] *See* Li Hao (李浩), Zhengming Zeren de Gainian—Shiwu Yu Lilun de Beili (证明责任的概念—实务与理论的背离) [The Definitions of Burden of Proof-The Deviations between Practice and Theories], DANGDAI FAXUE (当代法学) [CONTEMP. LEGAL THEORIES], no. 5, 2017 (arguing that Chinese courts were more willing to apply burden of proof in a behavioral sense than burden of proof in the sense of final outcomes in practice); *see also* Zhou, *supra* note 10, at 114–18 (stating that the Judicial Interpretation of PRC Civil Procedure Law only mentions two types of burden of proof rather than four).

[13] For discussions on burden of persuasion and burden of production, see *infra* Part I, secs. 1–2.

however, to understand China's burden of proof rules through the lens of U.S. perspectives because Article 32 originated from U.S. "recommendations" based on its local practice.[14] The forthcoming discussion will introduce the Chinese versions of burden of proof by comparison to U.S. versions in order to better understand Article 32 of the Chinese trade secrets law.

### A. *Burden of Persuasion*

The burden of persuasion functions to identify which party bears the burden of convincing the trier of fact that the evidence presented satisfies the standard of proof (some predetermined degree of probability).[15] In the United States, parties in civil cases generally must satisfy the burden of persuasion by a preponderance of evidence.[16] The party who is allocated the burden of persuasion bears the risk of non-persuasion.[17] In other words, when a material issue of fact is in dispute and "the trier's mind is in equipoise," the party bearing the burden will lose.[18] Indeed, the burden of persuasion functions only in cases where "the trier of fact is actually in doubt."[19] In these contested situations, the trier of fact can rely on the allocation of the burden of persuasion to avoid not reaching a decision at all.[20] Further, no matter what evidence is provided by the parties, the burden of persuasion normally remains on one side rather than shifting from its original allocation during litigation.[21]

China has an identical version of burden of persuasion, typically known as "burden of proof in the sense of outcomes" or "objective burden of proof" (hereinafter "Chinese version of the burden of persuasion").[22] Although perhaps it is

---

[14] *See* Chen, *supra* note 1, at 161–68.

[15] *See* Loren & Reese, *supra* note 8, at 625; McNaughton, *supra* note 8, at 1382–83.

[16] Allen, *supra* note 8, at 213.

[17] McNaughton, *supra* note 8, at 1382–83.

[18] *See* James, *supra* note 8, at 51–52.

[19] ROBERT P. MOSTELLER ET AL., MCCORMICK ON EVIDENCE § 336, at 764 (Hornbook Series, 8th ed. 2020) [hereinafter MCCORMICK ON EVIDENCE].

[20] *See id.*

[21] *See id.*; *see also* James, *supra* note 8, at 62.

[22] Zuigao Renmin Fayuan Guanyu Shiyong <Zhonghua Renmin Gongheguo Minshi Susong Fa> de Sifa Jieshi, Fashi [2015] Wu Hao (最高人民法院关于适用《中华人民共和国民事诉讼法》的解释, 法释【2015】5号) [Interpretation of the Supreme People's Court on PRC Civil Procedure Law, Judicial Interpretation No. 5 [2015]] (promulgated by Sup. People's Ct., Dec. 18, 2014, effective Feb. 4, 2015) Sup. People's Ct. Gaz., Jan. 30, 2015, art. 90, http://gongbao.court.gov.cn/Details/

ISSN 0041-9915 (print) 1942-8405 (online) ● DOI 10.5195/lawreview.2023.956
http://lawreview.law.pitt.edu

called by different names in Chinese, the Chinese version of the burden of persuasion shares prominent features with the U.S. version. In a similar vein, it is essentially a judicial mechanism used by Chinese judges to render decisions in borderline cases against parties who bear the burden.[23] The burden of persuasion in China is statutorily allocated at the outset—before litigation begins—and never shifts to the other side during litigation, in contrast with the burden of production, which can shift between two parties throughout the trial.[24] Judges in China do not have the authority to reallocate the burden of persuasion as they wish during litigation; rather, they must obey the statutory allocation.[25] The statutory allocation follows a general rule—allocating the burden of persuasion to plaintiffs, except in a limited number of exceptions prescribed in statutory provisions.[26] Therefore, under Chinese law, the "shifting" of the burden of persuasion actually means that the statutes carve out some exceptions, allocating the burden of persuasion to defendants instead of plaintiffs (replacing the normal allocation) at the outset. To distinguish it from the shifting of the burden of production discussed below, this Article uses the phrase "statutory reallocation of the burden of persuasion" or "reallocation of the burden of persuasion" to refer to these statutory exceptions throughout the remainder of this Article.

### *B. Burden of Production*

The burden of production, also known as the "burden of going forward with the evidence," requires one party to produce evidence for the contested issues.[27] If the party with the burden of production fails to produce sufficient evidence on the issue, that party risks adverse outcomes—it will lose on that issue.[28] In the United States, an adverse outcome usually means that the issue would be decided against that party

---

63ff48da6a9792f8ad1cb65a8b99d1.html [hereinafter 2015 Judicial Interpretation on Civil Procedure Law]; *see* WANG ET AL., *supra* note 11.

[23] *See* Hu Xuejun (胡学军), Zhongguo Shi Juzheng Zeren Zhidu de Neizai Luoji—Yi Zuigao Renmin Fayuan Zhidao Anli Wei Zhongxin de Fenxi (中国式举证责任制度的内在逻辑———以最高人民法院指导案例为中心的分析) [The Internal Logic of Chinese Burden of Proof System—Analysis From the SPC Guiding Cases], THE JURIST, no. 5, 2018, at 91, 97–99 (discussing burden of proof judication methods and how Chinese courts erroneously applied it in real-world cases).

[24] *See id.* at 94–95; *see also* WANG ET AL., *supra* note 11, at 137.

[25] *See* sources cited *supra* note 24.

[26] *See id.*

[27] Allen, *supra* note 8, at 198.

[28] *Id.*

ISSN 0041-9915 (print) 1942-8405 (online) ● DOI 10.5195/lawreview.2023.956
http://lawreview.law.pitt.edu

by the judge as a matter of law.[29] A judge would make a peremptory ruling (such as a motion for summary judgment), resolving the issue against that party.[30] To avoid being subject to a ruling as a matter of law, that party must put forward additional evidence to meet the production burden.[31] The standard for satisfying the burden of production is whether there is a "reasonable disagreement about which party should prevail" that merits further litigation.[32] The disagreement would concern whether the rule of decision—the burden of persuasion—has been satisfied.[33] Therefore, some scholars consider the burden of production as a function of the burden of persuasion.[34] While failure to provide additional evidence exposes a party to the risk of an adverse result, satisfying the burden of production does not necessarily lead to a victory.[35] Simply put, as to the disputed issue, the party meeting the burden can continue to litigate the issue and have the fact finder determine whether the burden of persuasion has been fulfilled.[36] For example, in U.S. jury cases, the satisfaction of the burden of production means that juries will have the chance to decide on the issue.[37] Meanwhile, although the burden of production initially lies with the party bearing the burden of persuasion, the burden of production shifts between parties "during the course of trial as more and more evidence is progressively introduced," while the burden of persuasion remains static.[38] A shifting of the burden of production would occur if the party bearing that burden has presented evidence not merely sufficient to satisfy the burden but also strong enough that "a rational finder of fact must find for him or her."[39] Under such circumstances, the opposing party bears the shifted burden of production to present additional, rebutting evidence to

---

[29] Rothstein, *supra* note 8, at 5.

[30] *Id.*; *see also* Loren & Reese, *supra* note 8, at 626.

[31] *See* Rothstein, *supra* note 8, at 5; MCCORMICK ON EVIDENCE, *supra* note 19.

[32] Allen, *supra* note 8, at 199.

[33] *Id.* at 199–200.

[34] *See id.*; *see also* McNaughton, *supra* note 8.

[35] *See* Loren & Reese, *supra* note 8, at 625–26; Rothstein, *supra* note 8, at 5.

[36] *See* sources cited *supra* note 35.

[37] *See* Rothstein, *supra* note 8, at 5; Allen, *supra* note 8, at 199; MCCORMICK ON EVIDENCE, *supra* note 19, at 768.

[38] Rothstein, *supra* note 8, at 5; *see also* MCCORMICK ON EVIDENCE, *supra* note 19, at 764–65; Loren & Reese, *supra* note 8, at 625–26.

[39] Loren & Reese, *supra* note 8, at 626.

ISSN 0041-9915 (print) 1942-8405 (online) ● DOI 10.5195/lawreview.2023.956
http://lawreview.law.pitt.edu

demonstrate the existence of a reasonable dispute on the issue.[40] If the opposing party provides additional evidence to tip the balance back against the original party, the burden of production would again shift back to the latter.[41] Hence, it is, in essence, a mechanism to guide parties to move forward and produce additional evidence on disputed issues.

China has its own version of the burden of production, known as the "burden of proof in the sense of behaviors" or "subjective burden of proof" in Chinese (hereinafter "Chinese version of the burden of production").[42] It is called a burden in the sense of behaviors because it primarily concerns the parties' behaviors of actively presenting evidence to the judges.[43] It is considered subjective in nature because the burden does not remain objectively with one party but shifts along with changes in parties' beliefs on the necessity of providing additional evidence.[44] From this perspective, the Chinese version of the burden of production is congruous with the U.S. version. However, the Chinese burden of production has some distinct functions compared to the U.S. version. To reiterate, the U.S. burden of production would result in issues being resolved either by the judge as a matter of law (peremptory ruling) or by the trier of fact (such as a jury) based on the burden of persuasion. In sharp contrast, there is no jury system in China, and Chinese judges do not have the authority to issue any peremptory rulings on substantive issues.[45] The Chinese version of the burden of production does not have the effect of resolving an issue or case at an early stage through peremptory rulings. It cannot determine whether the issue or the case should continue to be resolved by the fact finder.[46] Its impact on the case is more straightforward: if plaintiffs fail to provide sufficient evidence to fulfill the initial burden of production, Chinese judges render a final decision against them since they failed to satisfy even the basic standard of proof.[47] When an issue has been

[40] *Id.*; Allen, *supra* note 8, at 201 (illustrating this in the case (3) scenario).

[41] *See* Rothstein, *supra* note 8, at 7.

[42] *See* sources cited *supra* note 22.

[43] *See* WANG ET AL., *supra* note 11, at 137.

[44] *See id.*

[45] No peremptory rulings to resolve the whole case exist in the Chinese civil procedure system. *See generally* Zhou, *supra* note 10; WANG ET AL., *supra* note 11.

[46] Indeed, the role of Chinese judges is mixed in deciding on facts and laws simultaneously. *See* WANG ET AL., *supra* note 11. Thus, when parties present evidence to courts, Chinese judges have already been exercising their roles as fact-finders. *Id.*

[47] *See* Li, *supra* note 12, at 7.

ISSN 0041-9915 (print) 1942-8405 (online) ● DOI 10.5195/lawreview.2023.956
http://lawreview.law.pitt.edu

proven to the level of the required standard of proof, the burden of production shifts to the opposing party to present any rebutting evidence to weaken the judges' beliefs on the issue; otherwise, Chinese courts would determine that the plaintiffs had satisfied their burden of proof, and they would rule in their favor.[48] Similarly, if the opposing party's evidence has raised reasonable doubt concerning an issue (lowering the evidence below the standard of proof), the burden of production shifts back to the original party to produce more evidence; otherwise, the original party who also bears the burden of persuasion would risk an adverse decision if they cannot present additional evidence to satisfy the burden of proof.[49]

### *C. Presumptions*

A corollary to the burden of production and the burden of persuasion is the presumption, which is particularly relevant here as the majority of Chinese scholars argue that both sections of Article 32 create rebuttable presumptions that promote shifting the burden of production during litigation.[50] A "presumption is a standardized practice, under which certain facts are held to call for uniform treatment with respect to their effect as proof of other facts."[51] It presumes a legal conclusion or the existence of a fact by introducing the proof of another fact: the former is inferred from the latter.[52] For instance, a certification of registration made before or within five years after the first publication of the work can presume the validity of the copyright and the existence of the facts stated in the certificate.[53] Most presumptions are not conclusive, but rebuttable: the opposing party has the opportunity to produce additional evidence to rebut the legal conclusion or the existence of the ultimate fact.[54] Although there are conclusive presumptions, many scholars refuse to view them as presumptions at all,[55] but rather view them as "irrebuttable dictates that actually change the substantive law";[56] they are clearly not the focus of this Article. Indeed, most presumptions trigger the shifting of the burden

---

[48] *See id.*

[49] *See id.*

[50] *See* discussion *infra* Part II.

[51] MCCORMICK ON EVIDENCE, *supra* note 19, at 774.

[52] *Id.* at 774–75.

[53] 17 U.S.C. § 410(c); Loren & Reese, *supra* note 8, at 629.

[54] *See* Loren & Reese, *supra* note 8, at 630; Rothstein, *supra* note 8, at 16.

[55] *See, e.g.*, MCCORMICK ON EVIDENCE, *supra* note 19, at 775.

[56] Rothstein, *supra* note 8, at 16.

ISSN 0041-9915 (print) 1942-8405 (online) ● DOI 10.5195/lawreview.2023.956
http://lawreview.law.pitt.edu

of production to the other side to present rebuttable evidence.[57] A presumption should not be created arbitrarily but according to justifiable grounds; otherwise, it disrupts fair treatment by prejudicing one side.[58]

The most pivotal consideration in imposing a presumption is probability.[59] Many presumptions are created because the inference between the proof of a fact and a legal conclusion or the existence of another fact is so probable that it is more efficient to assume the truth of the latter until the adversary disproves it.[60] Some presumptions exist to remedy one party's excessive difficulty in proving a fact or to correct another "party's superior access to the proof."[61] Certain social policies also underlie the creation of presumptions.[62] For example, the presumption of ownership from possession arguably ensures the stability of the property system.[63] Of course, many presumptions are not based solely on one ground "but have been created for a combination of reasons."[64] For instance, in Chinese medical malpractice cases, when a plaintiff proves that a hospital's conduct violated pertinent regulations, the hospital's fault is presumed.[65] Such a presumption is justified by the hospital's superior access to evidence regarding its fault and by high probabilities of negligence when it does not obey regulations or laws.[66] It is fair to argue that a presumption should at least satisfy one of these justifications to withstand scrutiny.

---

[57] Loren & Reese, *supra* note 8, at 630; MCCORMICK ON EVIDENCE, *supra* note 19, at 775. There are, however, different views and practices on presumptions' effect on burden of proof. Though most frequently they shift burden of production, in some cases within the United States, presumptions can even shift burden of persuasion. *See, e.g.*, Ronald J. Allen, *Presumptions in Civil Actions Reconsidered*, 66 IOWA L. REV. 843, 845–62 (1981) (discussing four types of uses of presumptions in practice in the United States). Under Chinese law, there is no way presumptions can shift burden of persuasion because it is fixed on one party by statutes, regardless of how trials proceed. *See* Shen & Huang, *supra* note 4, at 4; WANG ET AL., *supra* note 11, at 144.

[58] *See* MCCORMICK ON EVIDENCE, *supra* note 19, at 776.

[59] *Id.* at 777; *see also* Shen & Huang, *supra* note 4, at 6–7.

[60] *Id.*

[61] *Id.* at 776–77.

[62] *Id.*

[63] *Id.* at 777.

[64] *Id.*

[65] *See* WANG ET AL., *supra* note 11, at 144.

[66] *See* Wang Bin (王彬), Shishi Tuiding Zhong de Houguo Kaoliang (事实推定中的后果考量) [Considerations on Outcomes of Evidentiary Presumptions], 2021 FALV KEXUE (XIBEI ZHENGFA DAXUE

# II. BURDEN OF PROVING TRADE SECRETS CASES IN CHINA

## A. *A Brief History*

The basics of the burden of proof facilitate an understanding of the history of the burden of proving trade secrets cases in China both before and after the promulgation of Article 32. A brief history and a literal introduction to Article 32, in turn, can help readers understand the current scholarly debates on the interpretations of the Article.

Consider first the rules for allocation or reallocation of the burden of persuasion. The 1993 AUCL, wherein trade secrets protection was first introduced into the Chinese legal system, did not specify the allocation of the burden of persuasion in trade secrets cases.[67] It was suggested that the general burden of persuasion allocation rules in the PRC Civil Procedure Law (CPL) should apply to trade secrets cases as well.[68] The then-effective 1991 CPL required plaintiffs to present evidence to prove every claim they raised (thus, it allocated the burden of persuasion to plaintiffs), and its 1992 Judicial Interpretation provided only six exceptions that reallocated the burden of persuasion to defendants, none of which included trade secrets cases.[69] Therefore, at the very beginning and according to the law in the books, plaintiffs in trade secrets cases bore the burden of persuasion on every trade secrets element; no statutory reallocation existed.[70] In practice, however, some of the Chinese courts' policies showed a tendency to reallocate the burden of persuasion to defendants in trade secrets cases.[71] In a 1998 judicial policy document, the Supreme People's Court (SPC) noted that in some cases wherein the opposing party had such superior access to evidence that the other party could not obtain evidence through legitimate means, the burden of persuasion should be reallocated

XUEBAO) (法律科学（西北政法大学学报)) [2021 LEGAL SCI. (J. NW. UNI. POL. SCI. & L.)], no. 6, at 87, 96; CHENG XIAO (程啸), QINQUAN ZEREN FA (侵权责任法) 565–66 (2d ed. 2015).

[67] *See* Yu & Ge, *supra* note 5, at 11.

[68] *See, e.g.*, Hu Liangrong (胡良荣), Lun Shangye Mimi Susong Zhong Zhengming Zeren Zhi Fenpei (论商业秘密侵权诉讼中证明责任之分配) [Discussions on Allocating Burden of Proof in Trade Secrets Infringement Litigation], 2008 J. JIANGSU UNI. (SOC. SCI. ED.), no. 5, at 30; *see also* Yu & Ge, *supra* note 5, at 11.

[69] Yu & Ge, *supra* note 5, at 11; *see also* Hu, *supra* note 68, at 30.

[70] *See* Yu & Ge, *supra* note 5, at 11.

[71] *See id.* at 12; Cui, *supra* note 2, at 12.

ISSN 0041-9915 (print) 1942-8405 (online) ● DOI 10.5195/lawreview.2023.956
http://lawreview.law.pitt.edu

to defendants at the start.[72] Technical trade secrets cases constituted one such "difficult" type of case; the burden of persuasion for proving misappropriation could be reallocated to defendants to present evidence of their conduct based on this judicial document.[73] One may be surprised by this, as the previous discussion on reallocation of the burden of persuasion clarifies that only the legislature can make such reallocations, not courts.[74] But the Chinese legal system is unique in that it essentially gives statute-like deference to binding judicial interpretations or other codified judicial documents issued by the SPC.[75] It is common for the SPC to promulgate judicial documents that, in essence, modify current statutory provisions or add new rules to statutes.[76] For example, it was the aforementioned 1992 Judicial Interpretation that created six statutory exceptions wherein the burden of persuasion was reallocated to defendants.[77] Thus, it is not surprising that the SPC could use this 1998 judicial policy document to create another exception to standard burden of persuasion allocation rules that, strictly speaking, should have been enacted statutorily.

What is even odder is that the SPC itself did not follow this "statutory" exception when ruling on an influential trade secrets case in 2002 but rather adhered to the general rules that allocated the burden of persuasion to plaintiffs. In *Chengdu Jialing Inverter Manufacturing Co. Ltd. v. Chengdu Hope Electronic Research*

---

[72] Zuigao Renmin Fayuan Guanyu Quanguo Bufen Fayuan Zhishichanquan Shenpan Gongzuo Zuotanhui Jiyao (最高人民法院关于全国部分法院知识产权审判工作座谈会纪要, 法【1998】65号) [Minutes of the Supreme People's Court Symposium on Intellectual Property Judicial Work in Some National Courts, Judicial Document No. 65 [1998]], promulgated by Sup. People's Ct., July 20, 1998, effective July 20, 1998.

[73] It is uncertain whether the burden shifting mentioned here refers to a shifting burden of persuasion or a shifting burden of production. *See id.*

[74] *See supra* note 26 and accompanying text.

[75] *See* Guodong Du, *Knowing Judicial Interpretation in China—China Legal Research Guide*, CHINA JUST. OBSERVER (Mar. 19, 2020), https://www.chinajusticeobserver.com/a/knowing-judicial-interpretation-in-china (a short overview of how judicial interpretations work in China); *see also* Susan Finder, *Update on Judicial Interpretations*, SUP. PEOPLE'S CT. MONITOR (July 22, 2021), https://supremepeoplescourtmonitor.com/2021/07/22/update-on-judicial-interpretations.

[76] *See* Jianlong Liu, *Judicial Interpretation in China*, *in* THE INDIAN YEARBOOK OF COMPARATIVE LAW 2018, at 213, 224–26 (Mahendra Pal Singh & Niraj Kumar eds., 2018) (the functions of judicial interpretations include filling gaps of current laws); Vai Lo Lo, *Towards the Rule of Law: Judicial Lawmaking in China*, 28 BOND L.R. 149, 149 (2016) ("In issuing these interpretations, the Supreme People's Court may create new legal norms beyond the mere application of law in adjudicating disputes.").

[77] Yu & Ge, *supra* note 5, at 11.

ISSN 0041-9915 (print) 1942-8405 (online) ● DOI 10.5195/lawreview.2023.956
http://lawreview.law.pitt.edu

*Institute*, the SPC required the plaintiffs to prove every element of trade secrets misappropriation rather than reallocate any burden of persuasion to the defendants based on the prior judicial policy document.[78] Moreover, the 2007 Judicial Interpretation of the AUCL, a more formal judicial document issued by the SPC, explicitly rejected reallocation in trade secrets cases.[79] That Judicial Interpretation stated that plaintiffs should prove (1) that the trade secrets satisfy all legal requirements (e.g., secrecy and commercial value); (2) the existence of substantial similarity between defendants' information and claimed trade secrets; and (3) that the defendants engaged in improper conduct.[80] Defendants bore no burden of persuasion according to this formal judicial interpretation.[81] Subsequently, although some alleviations of the standard of proof were mentioned in either the SPC's policy documents[82] or the local courts' internal policies,[83] the law before the 2019 amendments (and arguably even after the 2019 amendments) adhered to the standard burden of persuasion allocation rules in that plaintiffs carried the burden of

[78] Chendu Jialing Dianqi Zhizao Youxian Gongsi su Chengdu Xiwang Dianzi Yanjiu Suo Deng Qinfan Shangye Mimi Jiufen An (成都佳灵电气制造有限公司诉成都希望电子研究所等侵犯商业秘密纠纷案) [Chengdu Jialing Inverter Manufacturing Co. v. Chengdu Hope Electronic Research Institute], CLI.C.3202(EN) (Lawinfochina) (Sup. People's Ct. Dec. 9, 2002); *see* Cui, *supra* note 2, at 25.

[79] Zuigao Renmin Fayuan Guanyu Shenli Buzhengdang Jingzheng Minshi Anjian Yingyong Falv Ruogan Wenti de Jieshi, Fashi [2007] Er Hao (最高人民法院关于审理不正当竞争民事案件应用法律若干问题的解释, 法释 [2007] 2号) [Interpretation of the Supreme People's Court on Some Issues Concerning the Application of Law in the Trial of Civil Cases Involving Unfair Competition, Judicial Interpretation No. 2 [2007]] (promulgated by Sup. People's Ct., Jan. 12, 2007, effective Feb. 1, 2007), art. 14, CLI.3.83311(EN) (Lawinfochina) [hereinafter *2007 Judicial Interpretation*].

[80] *See id.*

[81] *See* Cui, *supra* note 2, at 12; Hu, *supra* note 68, at 31.

[82] Zuigao Renmin Fayuan Guanyu Chongfen Fahui Zhishichanquan Shenpan Zhineng Zuoyong Tuidong Shehui ZhuyiWenhua Da Fazhan Ruogan Wenti de Yijian, Fashi [2007] Er Hao (最高人民法院关于充分发挥知识产权审判职能作用推动社会主义文化大发展大繁荣和促进经济自主协调发展若干问题的意见,法 [2011] 18号) [Notice of the Supreme People's Court on Issuing the Opinions on Issues Concerning Maximizing the Role of Intellectual Property Right Trials in Boosting the Great Development and Great Prosperity of Socialist Culture and Promoting the Independent and Coordinated Development of Economy, Judicial Document No. 18 [2011]] (promulgated by Sup. People's Ct., Jan. 12, 2007, effective Feb. 1, 2007), art. 25, http://gongbao.court.gov.cn/Details/90857967e518c766c368851b1b705a.html (providing for a reduced standard of proving misappropriation from high degree of probability to preponderance of evidence); *see* Cui, *supra* note 2, at 13.

[83] Jiangsu High People's Court, Jiangsu Gaoji Renmin Fayuan Qinfan Shangye Mimi Jiufen Anjian Shenli Zhinan [江苏省高级人民法院侵犯商业秘密纠纷案件审理指南] (Case Trial Guides for Trade Secrets Infringement Cases in Jiangsu Province), Nov. 2011, art. 2.8.2, http://www.txldls.com/ShowArticle.shtml?ID=2018511425936798.htm.

ISSN 0041-9915 (print) 1942-8405 (online) ● DOI 10.5195/lawreview.2023.956
http://lawreview.law.pitt.edu

persuasion to prove all elements of a trade secret misappropriation claim throughout the litigation.[84]

In contrast to the frequent mentions of the burden of persuasion allocation/reallocation, production shifting and presumptions facilitating such shifting have relatively limited appearances in the history of Chinese trade secrets law. Before Article 32 was promulgated, only some internal judicial documents issued by local courts had ever mentioned the shifting of the burden of production in trade secrets cases via the creation of presumptions.[85] For example, in 2001, the Beijing High People's Court issued an internal judicial document requiring defendants to undertake the shifted burden of producing evidence on the legitimacy of their conduct when plaintiffs raise misappropriation claims in technical trade secrets cases.[86] In addition, Article 32 of the Trade Secrets Trial Guides issued by the Jiangsu High People's Court presumed the existence of misappropriation conduct from defendants' access to the trade secrets and substantial similarity between the secrets and alleged infringing information, which would shift the burden of production to defendants to rebut the misappropriation.[87] Accordingly, before the 2019 amendments, no statutory provisions or judicial interpretations that had national effect mentioned presumptions on any trade secrets misappropriation elements that could promote shifting the burden of production in trade secrets cases. Without presumptions, the burden of production on each trade secrets misappropriation element shifts to the defendants only after plaintiffs satisfy their initial burden of production by providing evidence on this element.[88]

---

[84] *See* Cui, *supra* note 2, at 13.

[85] *See infra* notes 88–89 and accompanying text.

[86] Beijing High People's Court, [北京市高级人民法院关于办理各类案件有关证据问题的规定(试行)] [Beijing High People's Court's Rules on the Handling of Various Types of Cases Related to the Provisions of Evidence (for Trial Implementation)], promulgated Sept. 12, 2001, effective Oct. 1, 2001, http://www.bjac.org.cn/news/view?id=93.

[87] Jiangsu High People's Court, Jiangsu Gaoji Renmin Fayuan Qinfan Shangye Mimi Jiufen Anjian Shenli Zhinan [江苏省高级人民法院侵犯商业秘密纠纷案件审理指南] (Case Trial Guides for Trade Secrets Infringement Cases in Jiangsu Province), Nov. 2011, art. 3.2, http://www.txldls.com/ShowArticle.shtml?ID=2018511425936798.htm.

[88] *See supra* Part I.

ISSN 0041-9915 (print) 1942-8405 (online) ● DOI 10.5195/lawreview.2023.956
http://lawreview.law.pitt.edu

### B. *Current Law and Theoretical Debate*

Article 32, which was added to the AUCL in 2019, changed the allocation of the burden of proof in trade secrets cases.[89] Section One of Article 32 addresses the burden of proving the legal requirements for establishing the existence of a trade secret, which include commercial value, reasonable secrecy measures, and secrecy of the information (hereinafter "trade secret" elements).[90] Pursuant to Section One of Article 32, as long as a plaintiff reasonably shows the infringement of a trade secret (hereinafter "the reasonable showing of misappropriation requirement") and provides *prima facie* evidence to prove that there were reasonable measures in place to keep the claimed information secret, a defendant must prove that the information does not satisfy any of the trade secrets status elements.[91] In other words, the defendant should prove one or more of the following: that the information does not have commercial value, the information is not secret (it is readily ascertainable or publicly available), or that the plaintiff did not take reasonable measures to keep the information secret.[92] The defendant may also prove that there is no misappropriation being reasonably shown by the plaintiff to prevent Section One from being applied.[93] Note that the exact level of burden of proof plaintiffs must meet to satisfy the reasonable showing of misappropriation requirement is unclear as no statute or judicial interpretation provides any guidance.[94] However, applying civil law theories to evidence law, we can know that this burden is lower than either the preponderance of evidence or the high probability standards.[95] Plaintiffs can satisfy this requirement by providing evidence sufficient to make judges have reasonable doubts on the legitimacy of defendants' conduct.[96] The reason for setting such a low threshold for showing misappropriation at Section One is that the effect of the requirement is merely to trigger the section's presumption rather than to satisfy the plaintiff's burden of proof on the existence of misappropriation conduct; the latter is what

[89] *See* 2019 AUCL, *supra* note 3, art. 32.

[90] *See id.*; Yu & Ge, *supra* note 5, at 13.

[91] *See* 2019 AUCL, *supra* note 3, art. 32.

[92] *Id.*

[93] *See id.*

[94] Article 32 does not provide any guidance. The 2020 Judicial Interpretation on Trade Secrets Law does not provide any interpretation either.

[95] *See* Yu & Ge, *supra* note 5, at 13.

[96] *See id.*

ISSN 0041-9915 (print) 1942-8405 (online) ● DOI 10.5195/lawreview.2023.956
http://lawreview.law.pitt.edu

Section Two of Article 32 addresses.[97] Considering that the threshold for satisfying the reasonable showing of misappropriation requirement is so low, we can fairly say that Section One predominantly deals with the burden of proving the existence of a trade secret, leaving the question of the existence of misappropriation conduct primarily to Section Two.[98] Section Two requires defendants to prove the nonexistence of misappropriation conduct after plaintiffs present *prima facie* evidence reasonably showing their secrets being infringed, such as evidence of the defendants' access to a secret and the substantial similarity between a secret and the information used by the defendants (hereinafter "substantial similarity and access").[99] The wording of Article 32 is ambiguous and has generated intense debate among scholars and practitioners about its meaning, especially regarding whether it functions as a statutory exception to the standard allocation of the burden of persuasion or whether it merely shifts the burden of production.[100]

The majority view holds that the two sections of Article 32 create rebuttable presumptions that facilitate shifting the burden of production, rather than functioning as statutory exceptions to reallocate the burden of persuasion.[101] To qualify as statutory exceptions to the standard burden of persuasion allocation rules and to reallocate the burden to defendants at the outset, the statutory provisions should be explicit about creating exceptions and prescribe no prerequisites before defendants bear the burden of persuasion.[102] This is because the burden of persuasion cannot be shifted during the litigation process but can only be reallocated by statutes at the outset of litigation in China.[103] Setting prerequisites means that there would be a shift of the burden *during* litigation when plaintiffs satisfy the initial burden of proof (namely, prerequisites), which runs afoul of the nature of the burden of persuasion.

---

[97] *See id.*; *see also* Shen & Huang, *supra* note 4, at 9; SJTU Trade Secrets Lecture Transcript, *supra* note 5 (though judges there question the necessity and reasonableness of requiring plaintiffs to show misappropriation to satisfy the Section One presumption as it is the second two that mainly targets at proving misappropriation conducts).

[98] *See* sources cited *supra* note 97.

[99] *See* sources cited *supra* note 97.

[100] *See, e.g.*, Yu & Ge, *supra* note 5; Cui, *supra* note 2; Tao, *supra* note 5; Song, *supra* note 5; SJTU Trade Secrets Lecture Transcript, *supra* note 5; Shen & Huang, *supra* note 4.

[101] *See, e.g.*, SJTU Trade Secrets Lecture Transcript, *supra* note 5; Shen & Huang, *supra* note 4, at 2–3; Cui, *supra* note 2, at 10–11.

[102] *See* sources cited *supra* note 101.

[103] *See infra* Part I.

ISSN 0041-9915 (print) 1942-8405 (online) ● DOI 10.5195/lawreview.2023.956
http://lawreview.law.pitt.edu

Examples of true statutory exceptions that reallocate the burden of persuasion include Article 1230 of the PRC Civil Code, which requires defendants to prove the nonexistence of causation in environmental torts cases even if plaintiffs do not present any evidence of causation in the first place.[104] According to the majority view, the sections of Article 32 set prerequisites before defendants must present evidence to prove relevant facts, deviating sharply from true statutory reallocation rules.[105] To be more precise, Section One of Article 32 requires plaintiffs to present *prima facie* evidence on reasonable secrecy measures first before defendants bear the burden of providing rebuttable evidence on the trade secrets status elements.[106] Also, per Section Two of Article 32, defendants would not undertake any burden of proof as to misappropriation before plaintiffs provide *prima facie* evidence of substantial similarity and access.[107] Therefore, the majority view holds that since both sections of Article 32 explicitly prescribe prerequisites, they are, by no means, statutory exceptions to the standard rule regarding the burden of persuasion, but rather they shift the burden of production.[108]

Specifically, the majority view construes both sections of Article 32 as creating presumptions which facilitate shifting the burden of production.[109] Section Two of Article 32 is interpreted to presume the existence of misappropriation from evidence on substantial similarity and access.[110] Section One presumes all trade secrets status elements from plaintiffs' reasonable secrecy measures and reasonable evidence indicating infringement.[111] Defendants bear the burden of production, which is shifted by aforementioned presumptions, to rebut all trade secrets status elements and the existence of misappropriation conduct.[112] However, the burden of persuasion

---

[104] *See* Minfa Dian (民法典) [Civil Code] (promulgated by the Standing Comm. Nat'l People's Cong., May 28, 2020, effective Jan. 1, 2021), art. 1230, CLI.1.342411 (Lawinfochina).

[105] *See id.*; SJTU Trade Secrets Lecture Transcript, *supra* note 5.

[106] *See* SJTU Trade Secrets Lecture Transcript, *supra* note 5; Shen & Huang, *supra* note 4, at 4; Song, *supra* note 5, at 28.

[107] *See* sources cited *supra* note 106.

[108] *See* sources cited *supra* note 106.

[109] *See* Shen & Huang, *supra* note 4, at 6–11; SJTU Trade Secrets Lecture Transcript, *supra* note 5; Song, *supra* note 5; *see* Cui, *supra* note 2, at 11.

[110] *See* sources cited *supra* note 109.

[111] *See* sources cited *supra* note 109.

[112] *See* sources cited *supra* note 109.

ISSN 0041-9915 (print) 1942-8405 (online) ● DOI 10.5195/lawreview.2023.956
http://lawreview.law.pitt.edu

is not reallocated by Article 32 and remains with the plaintiff.[113] Indeed, a judge in the Shanghai High People's Court has endorsed this interpretative approach at an academic conference.[114]

Yet, two judges in the Chongqing High People's Court have advanced a different interpretation of Section One of Article 32.[115] In an article, Yu and Ge argue that the Section is a statutory exception that reallocates the burden of persuasion to defendants at the outset to disprove the commercial value and the secrecy of the information.[116] Per their interpretation, although the Section requires plaintiffs to provide initial evidence on reasonable secrecy measures, they do not need to produce any initial evidence of the commercial value or secrecy of claimed trade secrets.[117] In other words, they posit that no prerequisites for proving these two elements are imposed on plaintiffs by the section. Therefore, with these two trade secrets status elements, one element reallocates the burden of persuasion to defendants from the very beginning.[118] Regarding Section Two of Article 32, the minority view agrees with the majority view that it only creates a presumption concerning misappropriation rather than creating a reallocation exception. Some practitioners and one judge from the Shanghai Intellectual Property Court have adopted this interpretation on Section One.[119]

---

[113] *See* sources cited *supra* note 109.

[114] *See* SJTU Trade Secrets Lecture Transcript, *supra* note 5.

[115] *See* Yu & Ge, *supra* note 5.

[116] *See id.* at 13, 28.

[117] *Id.*

[118] *See id.*

[119] *See* Li Zhanke (李占科) & Zhang Yanbing (张艳冰), Buke Buzhi de Shangye Mimi—Fanfa 2019 Nian Xiuding Jiedu (不可不知的"商业秘密"——反法2019年修订解读) [Trade Secrets That We Should Know—Interpretations on Amendments to 2019 AUCL], LVSHANG GUANDIAN (律商观点) [L. COM. OPS.] (May 16, 2019), https://mp.weixin.qq.com/s?__biz=MjM5NTkyNjM0Mw==&mid=2651245513&idx=1&sn=5797f8bd6ea9b2ecdb6d784be3b1f0a1&scene=21#wechat_redirect; Tao, *supra* note 5 (viewing Article 32 as shifting burden of persuasion rather than burden of production); *see also* Dong Binghe (董炳和), Meizhou Pinglun: Lengjing Kandai Xinfanfa Di 32 Tiao (每周评论：冷静看待新反法第32条) [Weekly Comments: A Calm Look at Article 32 of AUCL], BINGSHU JIANG ZHICHAN (炳叔讲知产) (Jan. 3, 2020), https://mp.weixin.qq.com/s/a08DoFjB2QZ4QYGhVTSTiQ (recognizing that Article 32 shifts burden of production while simultaneously arguing that, in essence, Article 32 puts too much of a burden on defendants, making its effect similar to shifting of burden of production).

ISSN 0041-9915 (print) 1942-8405 (online) ● DOI 10.5195/lawreview.2023.956
http://lawreview.law.pitt.edu

### C. *Shifting Burden of Production or Reallocating Burden of Persuasion?*

First, consider Section Two of Article 32. Both the majority and minority viewpoints construe the Section as creating a presumption as to the existence of misappropriation conduct, which facilitates shifting the burden of production rather than functioning as a statutory burden of persuasion reallocation rule. Per this understanding, Section Two of Article 32 presumes the existence of misappropriation conduct from the evidence of *substantial similarity and access*. To defeat the Section Two presumption, defendants should provide evidence to prove either that there is no substantial similarity or no access. Defendants can also prove they did not misappropriate the trade secret by raising and proving that they independently developed or reverse engineered the process or good claimed by the plaintiff as a trade secret.[120] This Article conforms with this unquestionable understanding of the section.

Section One of Article 32, as mentioned, remains controversial. The controversy originates from the inherent ambiguity of the Article, which does not explicitly state whether it aims to reallocate the burden of persuasion of proving the commercial value and secrecy elements or to simply create a presumption on the validity of trade secrets (satisfying all trade secrets status elements) based on reasonable secrecy measures being proven.

This Article tends to agree with the majority approach. The majority view holds that Section One presumes the facts that the alleged information is secret and has a commercial value, based on reasonable secrecy measures taken by holders and reasonable evidence indicating infringement.[121] To defeat the presumption in Section One, defendants must provide evidence that proves that the alleged information is not secret (i.e., that it is publicly available or readily ascertainable), does not have commercial value, or is not subject to reasonable secrecy measures.[122] Though defendants also have an option to challenge a reasonable showing of

[120] *See* 2019 AUCL, *supra* note 3, art. 32; Beijing Intellectual Property Court, Reference for Proof in Civil Cases of Infringements of Trade Secrets (Oct. 29, 2021), arts. 20–22, https://www.lawinfochina.com/display.aspx?id=36728&lib=law&SearchKeyword=&SearchCKeyword=%b1%b1%be%a9%d6%aa%ca%b6%b2%fa%c8%a8%b7%a8%d4%ba; Jiangsu High Court, Trial Guide for Civil Cases on Trade Secrets Infringement (2021), art. 3.6, https://mp.weixin.qq.com/s/vYYfwIdHSK06W2WIS9991w.

[121] *See* Shen & Huang, *supra* note 4, at 6–11.

[122] *See* 2019 AUCL, *supra* note 3, art. 32. I disregard the option to rebut the reasonable showing of misappropriation because, as aforementioned, it is not the focus of Section One.

ISSN 0041-9915 (print) 1942-8405 (online) ● DOI 10.5195/lawreview.2023.956
http://lawreview.law.pitt.edu

misappropriation, they rarely do so as it is not the focus of Section One.[123] The majority view is more consistent with Article 1.5 of the Phase One Agreement between the United States and China, from which Article 32 originates. Article 1.5.3 of the Phase One Agreement affirms that U.S. law provides uniform treatment of the burden of proof in trade secrets cases as China's added Article 32 in the AUCL.[124] Under the U.S. Uniform Trade Secrets Act (UTSA), the burden of production may shift to defendants after plaintiffs provide *prima facie* evidence to prove the required elements to state trade secrets claims (e.g., misappropriation conduct, damage).[125] Also, case law in some states—though not all—recognizes the presumption based on substantial similarity and access, which facilitates shifting the burden of production.[126] No U.S. law reallocates the burden of persuasion on any trade secrets status element and misappropriation conduct.[127] Since the Phase One Agreement only requires China to provide treatment equal to the U.S. law regarding the burden of proof, it is more appropriate to interpret Article 32 as creating presumptions on trade secrets status elements (Section One) and misappropriation conduct (Section Two) to shift the burden of production rather than as reallocating the burden of persuasion.

While this Article agrees more with the majority view, the majority view does not represent this Article's endorsement of Article 32. As is later discussed, Article 32 is so ambiguous that the minority view can also stand by interpreting Section One as a statutory exception. Thus, further amendments are urgently needed to clarify its meaning and ensure that legal predictability is maintained. Moreover, Section One creates the presumption on trade secrets status elements without reasonable justifications, while Section Two adopts a clumsy, one-size-fits-all approach toward

---

[123] *See supra* notes 95–100 and accompanying text.

[124] *See* Economic and Trade Agreement Between the Government of the United States of America and the Government of the People's Republic of China, sec. B, art. 1.5.3, China-U.S., Jan. 15, 2020, OFF. USTR, https://ustr.gov/countries-regions/china-mongolia-taiwan/peoples-republic-china/phase-one-trade-agreement/text [hereinafter Phase One Agreement].

[125] *See, e.g.*, Frantz v. Johnson, 116 Nev. 455, 467 (2000); *see also* Cui, *supra* note 2, at 31.

[126] *See, e.g.*, Sargent Fletcher, Inc. v. Able Corp., 110 Cal. App. 4th 1658, 1666–68 (2003) (referring to burden of persuasion as burden of proof and burden of production as burden of persuasion; but what in essence shifts is the burden of production, although called burden of persuasion here); *see also* JAMES POOLEY, TRADE SECRETS § 12.04[3] (L.J. Press, 2019); Cui, *supra* note 2, at 31 (arguing that only some courts in some states recognize shifting of burden of production when proving substantial similarity and access).

[127] *See* Cui, *supra* note 2, at 31; POOLEY, *supra* note 126, at § 12.04[2] ("[T]he plaintiffs always have the burden of proof with respect to essential elements.").

imposing the presumption on misappropriation conduct, resulting in unnecessary side effects. Indeed, the majority interpretation has even exceeded the current level of protections afforded by U.S. law. Accordingly, Article 32 should be redesigned to provide a better balance between trade secrets holders and those alleged to have misappropriated that information.

## III. DETAILED SCRUTINY OF ARTICLE 32

### *A. Unreasonable Presumption and Ambiguity of Section One*

#### 1. Unsupported and Unreasonable Presumption

Consider the presumption on trade secrets status elements as prescribed in Section One of Article 32 (hereinafter "Section One presumption"). Recall our previous discussion of the possible justifications supporting the imposition of presumptions: Legislatures and judges should not arbitrarily create evidentiary presumptions as this would distort the originally calibrated balance between plaintiffs and defendants regarding their burdens of proof.[128] This Article strongly criticizes the soundness of the Section One presumption, as none of the typical justifications for imposing presumptions can plausibly support it.

The Section One presumption fails the probability justification, which is "the most important consideration in the creation of presumptions."[129] A presumption can be reasonable if reaching the legal conclusion or the existence of presumed facts is highly probable given the presentation of basic facts.[130] Under Section One, the presumed fact is that the claimed information has commercial value and is not publicly available or readily ascertainable.[131] The basic facts are that information has been subject to reasonable secrecy measures (proven by *prima facie* evidence) and that there has been a reasonable showing of "infringement" of the claimed information (the reasonable showing of misappropriation).[132] The question becomes whether we can reasonably infer the existence of valid and protectable trade secrets based solely on these basic facts. Two Chinese scholars have argued that the Section One presumption is sound.[133] From a subjective perspective, they opine that the

---

[128] *See supra* notes 60–68 and accompanying text.

[129] MCCORMICK ON EVIDENCE, *supra* note 19, at 777.

[130] *See id.*

[131] 2019 AUCL, *supra* note 3, art. 32.

[132] *Id.*

[133] *See* Shen & Huang, *supra* note 4, at 9.

ISSN 0041-9915 (print) 1942-8405 (online) ● DOI 10.5195/lawreview.2023.956
http://lawreview.law.pitt.edu

existence of reasonable secrecy measures signifies that information holders have a subjective intention to protect the information and that they have devoted a certain level of resources to developing it.[134] These showings can circumstantially demonstrate that the information is a valid and protectable trade secret, at least under the holders' subjective beliefs.[135] From an objective perspective, facts on "infringement" of claimed information (reasonable showing of misappropriation in Section One) can demonstrate that the information is objectively viewed as a trade secret by non-holders working in the same field.[136] When combining the subjective and objective perspectives, said scholars hold that there is a high probability that an inference can be made between the basic facts (reasonable measures in place plus "infringement" conduct) and the presumed facts (the information is secret and has commercial value).[137] This is the best summary this Article can provide for their arguments, as they only allocated a single, brief paragraph to setting forth these complicated propositions.[138]

Those arguments lack cohesion and cannot withstand deeper examination. First, it is neither appropriate nor reasonable to infer the validity of a trade secret from the fact that reasonable measures have been imposed to keep the information secret. On its face, it seems intuitive that plaintiffs would not incur costs to maintain the secrecy of information that either lacks commercial value or is publicly available.[139] Consider that the most frequently imposed and pivotal measures taken by plaintiffs are confidentiality agreements, as demonstrated by empirical data in both China and the United States.[140] In many cases, plaintiffs can satisfy the

---

[134] *Id.*

[135] *Id.*

[136] *Id.*

[137] *Id.*

[138] *See id.*

[139] *See, e.g.*, Rockwell Graphic Sys., Inc. v. DEV Indus., Inc., 925 F.2d 174, 179 (7th Cir. 1991) ("[I]information . . . cannot have been worth much if [the plaintiff] did not think it worthwhile to make serious efforts to keep the information secret."); Edmund W. Kitch, *The Law and Economics of Rights in Valuable Information*, 9 J. LEGAL STUD. 683, 698 (1980) ("Perhaps what the courts require in trade secret cases is that the firm have made sufficient expenditure so that there is a reasonable probability that the secrets are in fact secret."); Deepa Varadarajan, *Trade Secret Precautions, Possession, and Notice*, 68 HASTINGS L.J. 357, 375–76 (2017).

[140] For China's data, see Yang Chen, *Demystifying China's Trade Secrets Law in Action—A Statistical Analysis*, 13 QUEEN MARY J. INTELL. PROP. 198, 219–20 (2023) (articulating that a majority of successful trade secrets claims in China are under the protection of confidentiality agreements as secrecy measures). For U.S. data, see David S. Almeling et al., *A Statistical Analysis of Trade Secret Litigation in State*

ISSN 0041-9915 (print) 1942-8405 (online) ● DOI 10.5195/lawreview.2023.956
http://lawreview.law.pitt.edu

reasonable-measures requirement by proving there is a confidentiality agreement in place.[141] Being a party to a confidentiality agreement, a defendant cannot easily prove that there is no reasonable secrecy measure to defeat the Section One presumption unless the confidentiality clause is too abstract.[142] In practice, however, "companies regularly label as secret lots of things that clearly are not secret."[143] As noted by Professor Orly Lobel, "[c]ontractually, it has become standard to include broad and open-ended lists of confidential information that goes beyond the statutory definition of trade secrets."[144] For example, in employment contracts, Google has treated all confidential information used or generated by employees in connection with their employment as Google's belongings, regardless of whether the information satisfied trade secrets requirements.[145] Likewise, in employment contracts, Tencent, a leading technology company in China, requires its employees to undertake a duty of confidentiality for trade secrets and *other confidential information* and promise never to disclose them.[146] Simply put, information holders are likely to utilize measures, especially confidentiality agreements or clauses, to maintain the secrecy of many "secrets," including "confidential information" that fails one or several trade secrets status elements. Accordingly, mere *prima facie* proof of having taken reasonable secrecy measures (such as demonstrating the existence of a non-disclosure agreement) cannot generate a reasonable inference that covered information is highly probable to satisfy trade secrets status elements.

---

*Courts*, 46 GONZ. L. REV. 57, 80–81 (2010) (discussed in the section, "Confidentiality Agreements with Employees and Third Parties Are the Most Important Reasonable Measures").

[141] *See* Chen, *supra* note 140, at 219–20 (arguing that although not decisive, confidentiality agreements play a very significant function in establishing the reasonable-measures requirement). The U.S. position is similar. *See* POOLEY, *supra* note 126, at § 8.02 ("While not many courts will say that the use of nondisclosure agreements is alone sufficient to meet the reasonable efforts requirement, many will see it as a necessary condition.").

[142] *See* Chen, *supra* note 140, at 219–20.

[143] Mark A. Lemley, *The Surprising Virtues of Treating Trade Secrets as IP Rights*, 61 STAN. L. REV. 311, 349 (2008); *see also* ORLY LOBEL, TALENT WANTS TO BE FREE: WHY WE SHOULD LEARN TO LOVE LEAKS, RAIDS, AND FREE RIDING 29, 114 (2013) ("[I]ncremental broadening of control over company information through the expansion of what is deemed a trade secret, through the use of confidentiality agreements that extend beyond trade secret definitions.").

[144] Orly Lobel, *The New Cognitive Property: Human Capital Law and the Reach of Intellectual Property*, 93 TEX. L. REV. 789, 810 (2015); *see* Varadarajan, *supra* note 139, at 365.

[145] *See* Lobel, *supra* note 144, at 810.

[146] Short-term Employment Contract of Tencent (on file with author) (*emphasis added*).

ISSN 0041-9915 (print) 1942-8405 (online) ● DOI 10.5195/lawreview.2023.956
http://lawreview.law.pitt.edu

Second, it is unsound to deduce the existence of a valid trade secret from the showing that a defendant "infringed" the claimed trade secret. As mentioned, the reasonable showing of the misappropriation requirement in Section One means that to trigger the presumption, a plaintiff only needs to prove, to a low level of reasonableness, that the defendant acquired, disclosed, or used the claimed information either through improper means or in breach of a confidentiality duty.[147] Consider the fact that a majority of Chinese cases are concerned with defendants that owe confidentiality duties to information owners;[148] therefore, to fulfill the reasonable showing of misappropriation requirement in Section One, most plaintiffs can simply demonstrate that the defendants disclosed or used the claimed information in breach of a confidentiality clause. Again, it is intuitively appealing that "misappropriation" by defendants can indicate the validity of claimed trade secrets; otherwise, defendants would not risk adverse legal outcomes to "misappropriate" it. It is incongruous to assert, however, that defendants misappropriate anything before the claimed information is held as a valid trade secret by courts. Having not established the validity of a trade secret, the culpability of a defendant's disclosure or use of the claimed information should not be presupposed.[149] If the claimed information fails one or more trade secrets status elements, defendants can freely disclose or use it even if such conduct, on its face, is "in breach of" the confidentiality agreement that labels this information "confidential."[150] Accordingly, providing the mere reasonable proof of "misappropriation" conduct *before* deciding the issue of whether there is any genuine trade secret to misappropriate does not carry a high probability of inferring that the information is a genuine trade secret. After all, defendants—typically former employees—are quite likely to use nonsecret information or general skills they developed during the previous job at their new position, which may still facially breach the broad and catch-all confidentiality clauses and fall into the scope of the

[147] *See supra* notes 93–100 and accompanying text.

[148] *See* Chen, *supra* note 140, at 209–12 (noting that during 2013–2021, most trade secrets decisions involved either former employees or partners).

[149] *See* POOLEY, *supra* note 126, at § 1.02[7].

[150] In the United States, the majority approach does not protect confidential information that does not amount to trade secrets even if it is included in the contractual agreements. *See* POOLEY, *supra* note 126, at § 1.02[8][d]. In China, courts also follow the logic that trade secrets status should be established before deciding on the misappropriation conduct. *See* Chen, *supra* note 140.

ISSN 0041-9915 (print) 1942-8405 (online) ● DOI 10.5195/lawreview.2023.956
http://lawreview.law.pitt.edu

Section One misappropriation.[151] Inferring the existence of valid trade secrets from defendants' information acquisition or use conducts when the issue of whether there is any genuine trade secret remains undecided is unsound and illogical. As a result, the Section One presumption cannot be justified by the high probability of a connection between presumed facts and basic facts; their logical links are extremely weak.

In addition to showing high probability, demonstrating imbalance resulting from one party's superior access to proof can serve as the underpinning for some presumptions.[152] For instance, when the costs to plaintiffs in proving the facts are *significantly* higher than the costs to defendants to disprove them in order to defeat the presumption, it can be desirable to use presumptions to require defendants to produce evidence at much lower costs.[153] This does not, however, mean that any inequality of cost between the two sides necessarily warrants invoking a presumption as a remedy. The degree of that disparity should be significant enough to merit special treatment.[154] The question in the present case is whether the disparity in costs of proving the commercial value and secrecy of trade secrets is so considerable that the Section One presumption is justified in remedying the unequal proving hurdles to reduce the associated costs.

Consider first the commercial value requirement. In China, it is well recognized that the commercial value requirement is very easy to satisfy by plaintiffs; no evident proving hurdles exist. Over the years, scholars in China have repeatedly emphasized the ease with which plaintiffs could prove the commercial value of their secrets.[155] In practice, it is hard to reject the commercial value of information that is not publicly available or readily ascertainable in China.[156] The empirical evidence on China's trade secrets litigation supports this assertion; only 3.1% of trade secrets litigated between 2013 and 2021 were rejected because of the commercial value

---

[151] *See, e.g.*, Lobel, *supra* note 144, at 810–12 (criticizing many attempts to broaden the reach of trade secrets misappropriation on normal conduct of employees); LOBEL, *supra* note 143, at 114.

[152] *See* MCCORMICK ON EVIDENCE, *supra* note 19, at 776; Cui, *supra* note 2, at 15–16; Rothstein, *supra* note 8, at 18; Paul R. Rice & Slade S. Cutter, *Problems with Presumptions: A Case Study of the Structural Presumption of Anticompetitiveness*, 47 ANTITRUST BULL. 557, 560 (2002).

[153] *See* Cui, *supra* note 2, at 15–16; MCCORMICK ON EVIDENCE, *supra* note 19, at 776–78.

[154] *See* Cui, *supra* note 2, at 15.

[155] *See, e.g.*, Hu, *supra* note 68, at 30; Song, *supra* note 5, at 22 (so far, no trade secrets case has been rejected because of lack of commercial value).

[156] Yu & Ge, *supra* note 5, at 13.

ISSN 0041-9915 (print) 1942-8405 (online) ● DOI 10.5195/lawreview.2023.956
http://lawreview.law.pitt.edu

requirement.[157] That is probably the reason why many scholars mainly construed Section One of Article 32 to create a presumption about the secrecy of trade secrets and spent little or no attention on its impact on the commercial value requirement.[158] The low bar set by the commercial value requirement means that defendants cannot easily rebut the commercial value of secrets to defeat the Section One presumption. As such, the disparity of proving costs between plaintiffs and defendants concerning the commercial value requirement is limited, which cannot justify a presumption.

The secrecy requirement merits a more detailed discussion when assessing the cost discrepancy. Advocates in favor of shifting the burden of production for the secrecy element in China consistently interpret "proving secrecy" as proving a negative.[159] They often argue that plaintiffs would face significant difficulties in proving negative facts.[160] For example, it seems overly burdensome to require plaintiffs to prove that their secrets are not publicly available and not readily ascertainable because they would have to present evidence about the nonexistence of their secrets in public channels and the difficulties of independent development or reverse engineering by other industry members.[161] By contrast, to rebut secrecy to defeat the Section One presumption, it seems that defendants need only identify one public channel where secrets are available or provide some examples of reverse engineering or independent development.[162] According to this logic, there exists a significant discrepancy in the hurdles and costs of proof between plaintiffs and defendants that merits a presumption to remedy that gap and reduce the overall costs.[163]

---

[157] *See* Chen, *supra* note 140, at 215–16.

[158] *See* Shen & Huang, *supra* note 4; Song, *supra* note 5; Cui, *supra* note 2, at 15; Yu & Ge, *supra* note 5.

[159] *See, e.g.*, Hu, *supra* note 68, at 32–33; Yu Haiyan (于海燕), Shangye Mimi Qinquan Susong de Juzheng Zeren Fenpei (商业秘密侵权诉讼的举证责任分配) [The Burden Allocation in Trade Secrets Litigation], FALV SHIYONG (法律适用) [L. APPL.], no. 8, 2007, at 73–74; Cui, *supra* note 2, at 16; Yu & Ge, *supra* note 5, at 28.

[160] *See* Chen Xiangui (陈贤贵), Lun Xiaoji Shishi de Juzheng Zhengming Zeren—Yi <Minsufa Jieshi> Di Jiushi Yi Tiao Wei Zhongxin (论消极事实的举证证明责任—以《民诉法解释》第91条为中心) [Discussions on the Burden of Proof for Negative Facts], DANGDAI FAXUE (当代法学) [CONTEMP. L. STD.], no. 5, 2017, at 35 (Some scholars consider that plaintiffs should not be required to prove negative facts because it would be too burdensome and prohibitive. The author, however, disagrees.).

[161] Cui, *supra* note 2, at 16.

[162] *Id.*

[163] *See, e.g.*, *id.* (citing some scholarships that adopt this logic and proposition).

ISSN 0041-9915 (print) 1942-8405 (online) ● DOI 10.5195/lawreview.2023.956
http://lawreview.law.pitt.edu

However, this argument contains several defects. There is no clear line between negative facts and positive facts because a negative term can be reframed and expressed in a positive way.[164] For example, being not publicly available or readily ascertainable can be expressed instead as being secret from public channels or being difficult to reverse engineer and independently develop. Merely construing the secrecy requirement in a negative way without more deeply exploring whether plaintiffs truly experience unequal hurdles in proving it cannot justify creating a presumption.[165] Indeed, the reason why these advocates display such sympathy for plaintiffs is that they implicitly adopt an absolute secrecy approach rather than a relative one.[166] They argue that to prove this negative fact, plaintiffs have to provide evidence of the nonexistence of the secrets in the majority of searchable databases, in the most current literature available, and in all industry practices known to professionals.[167] They hypothesize that plaintiffs must demonstrate the unsuccessfulness of nearly every possible independent development or reverse engineering method.[168] This is clearly not the well-accepted, current view of the secrecy requirement.[169] To satisfy the initial burden of production for the secrecy requirement, plaintiffs need only present evidence of the secret's nonpresence in databases that are frequently used by industry members and in the industry practices familiar to professionals, rather than all possible databases and practices.[170] Likewise, plaintiffs only need to reasonably demonstrate the difficulties of independently developing or reverse engineering the secrets rather than providing evidence of the failure of most independent means of acquisition.[171] Meanwhile, circumstantial evidence, such as evidence about plaintiffs' process of developing the secrets, can assist in satisfying the burden of proving the secrecy requirement.[172] The relative approach to secrecy does not demand a high initial burden of production; the fact that *some* industry members know the information does not necessarily destroy

---

[164] *Id.* at 15.

[165] *See id.*

[166] *See id.* at 16.

[167] *Id.*

[168] *Id.*

[169] *See, e.g.*, POOLEY, *supra* note 126, at § 4.04[2][a] (noting that relative secrecy is the correct rule).

[170] *See* Cui, *supra* note 2, at 16–17.

[171] *See id.* at 17.

[172] *See id.* at 22.

ISSN 0041-9915 (print) 1942-8405 (online) ● DOI 10.5195/lawreview.2023.956
http://lawreview.law.pitt.edu

its secret status as long as it remains not publicly available to *most* industry members.[173] Thus, the plaintiffs' costs in satisfying the initial burden of production on the secrecy requirement are not as high as those advocates claim.

Likewise, for defendants, rebutting the secrecy of the information to defeat the Section One presumption is not as simple as the advocates assert. These advocates appear to assume that defendants can simply point to a public channel where secrets are available or provide plausible independent development or reverse engineering methods to destroy the "secret" status.[174] However, such flawed cases would be limited in number because, if claimed, trade secrets are so indisputably publicly available or readily ascertainable that defendants can extend such limited efforts in rebuttal, plaintiffs would realize the evident weakness of their cases and refrain from incurring costs to litigate at the outset.[175] Even if such meritless claims do exist, they clearly fall into the domain of "trade secrets trolls," which should be deterred rather than encouraged.[176] For these futile claims, further alleviating the plaintiffs' burden of proof would exacerbate the risk of trade secrets trolls in sharp disadvantage to defendants—an unacceptable result. Indeed, real-world cases demonstrate defendants' difficulty in rebutting the existence of secrecy. For example, in one Chinese criminal case, three expert reports provided by the defendants indicating the public nature of the trade secrets were rejected by the court of first instance and the defendants waited until the appeal proceeding to finally persuade the appellate court of the public nature of the secrets.[177] Accordingly, because the discrepancy between plaintiffs' and defendants' costs of proving the secrecy is not significantly large, there is no pressing demand to create the Section One presumption on it. The empirical evidence supports this proposition: Plaintiffs in more than 55% of trade secrets claims in China from 2013-2021 successfully proved the secrecy requirement.[178] After investigating the reasons plaintiffs failed in the remaining

---

[173] *See, e.g.*, POOLEY, *supra* note 126, at § 4.04[2][a] ("[A]s more and more members of a particular industry discover and protect the secret, until some undefined point at which such a large proportion of the trade knows about it that it has entered the realm of general knowledge.").

[174] *See* Cui, *supra* note 2, at 16, 18 (mentioning the advocates' view).

[175] *Id.* at 18.

[176] *See generally* David S. Levine & Sharon K. Sandeen, *Here Come the Trade Secret Trolls*, 71 WASH. & LEE L. REV. ONLINE 230, 234 (2014) (discussing trade secrets trolls).

[177] *See* Jiang and Wu vs Dashan Corp. Trade Secrets Misappropriation Crime Case [蒋某、武某侵犯大山公司商业秘密案] (2017) 苏０２刑终３８号刑事判决书]; *see* Cui, *supra* note 2, at 18–19 (citing the criminal case).

[178] Chen, *supra* note 140, at 216–19.

ISSN 0041-9915 (print) 1942-8405 (online) ● DOI 10.5195/lawreview.2023.956
http://lawreview.law.pitt.edu

portion of the cases, it is evident that plaintiffs are very likely to pass the secrecy standard so long as they identify their secrets and provide at least some evidence on secrecy. These requirements impose few hardships on plaintiffs.[179]

Apart from the high probability or imbalance in the costs of proving burdens, a designated social policy may independently justify adopting a presumption about secrecy.[180] Some scholars have praised the presumption in Section One because it provides better protection for plaintiffs, which is consistent with the social policies of promoting incentives to create and maintain trade secrets.[181] Admittedly, these social policy considerations support stricter protection for trade secrets, including, when necessary, imposing presumptions to alleviate secret holders' costs of protecting their rights. But countervailing policies tip the balance toward looser protection ensuring employee mobility and facilitating cumulative innovation.[182] Appealing to the former policies but ignoring countervailing ones cannot support the Section One presumption in a satisfactory way. Recalling our previous discussion of plaintiffs' difficulty in proving secrecy and commercial value, no extreme proving hurdles exist to merit a presumption.[183] Also, it is not straightforward for defendants to rebut secrecy and commercial value to defeat the presumption.[184] Therefore, it is unclear why the legislation, in designing the rules on the burden of proving secrecy, should favor the social policy of incentivizing, creating, and maintaining trade secrets over the policies of preserving employee mobility and cumulative innovation, which are at least equally important. Thus, social policies in this scenario also cannot justify the Section One presumption.

In sum, none of the typical justifications for imposing presumptions satisfactorily support the Section One presumption. Meanwhile, the burdens imposed on defendants to disprove the reasonable secrecy measure, the secrecy, and the commercial value of the alleged information to defeat the Section One presumption are not light; therefore, this presumption unjustly favors plaintiffs. Interestingly, although the United States emphasized in the Phase One Agreement that it provides

---

[179] *See id.* at 20.

[180] *See* MCCORMICK ON EVIDENCE, *supra* note 19, at 776.

[181] *See* Shen & Huang, *supra* note 4, at 10.

[182] *See* Chen, *supra* note 1, at 171–73.

[183] *See supra* notes 155–73 and accompanying text.

[184] *See supra* notes 174–77, 155–58 and accompanying text.

ISSN 0041-9915 (print) 1942-8405 (online) ● DOI 10.5195/lawreview.2023.956
http://lawreview.law.pitt.edu

uniform treatments as Section One of Article 32,[185] no such presumption of secrecy or commercial value exists in U.S. law, at least according to the UTSA.[186] The UTSA requires plaintiffs to provide *prima facie* evidence on every trade secret status element before the burden of production can shift to the other side.[187] Merely proving that reasonable secrecy measures were in place will not dispense plaintiffs' burden of producing evidence on the secrecy and commercial value elements.[188] Courts may consider reasonable secrecy measures as circumstantial evidence for proving the value and secrecy of the information in dispute.[189] But treating it as circumstantial evidence is entirely different from imposing a mandatory presumption on the value and secrecy based on it. The former requires plaintiffs to produce additional circumstantial evidence, together with evidence of the reasonable measures, to satisfy and shift the burden of production.[190] The latter, by contrast, can directly shift the burden of production without other supporting evidence.[191] Thus, even U.S. courts do not confer such weight to reasonable secrecy measures. All told, the Section One presumption lacks justification, unfairly burdens defendants, and even exceeds the U.S. protection level, making China's trade secrets law unreasonably favorable to plaintiffs at the expense of defendants.

### 2. Unpredictability in Practice

The downside of the weak justifications for the Section One presumption is that different courts, or even different tribunals within the same court, may interpret this section as they deem fit, resulting in uncertainty and unpredictability. Some courts have realized the unreasonableness of relieving plaintiffs of the initial burden of providing evidence of commercial value and secrecy and, thus, have adopted an

---

[185] *See* Phase One Agreement, *supra* note 124, art. 1.5.3.

[186] *See supra* note 125 and accompanying text.

[187] *See supra* note 125 and accompanying text; *see also* Cui, *supra* note 2, at 31.

[188] *See, e.g.*, CPI Card Grp., Inc. v. Dwyer, 294 F. Supp. 3d 791, 809 (D. Minn. 2018); *see* Cui, *supra* note 2, at 31.

[189] *See, e.g.*, Rockwell Graphic Sys., Inc. v. DEV Indus., Inc., 925 F.2d 174, 179 (7th Cir. 1991) ("[I]nformation . . . cannot have been worth much if [the plaintiff] did not think it worthwhile to make serious efforts to keep the information secret.").

[190] See previous discussions on presumptions and burden of production *supra* Part I.

[191] That is how presumptions work. See previous discussions on presumptions and burden of production *supra* Part I.

ISSN 0041-9915 (print) 1942-8405 (online) ● DOI 10.5195/lawreview.2023.956
http://lawreview.law.pitt.edu

"interpretive" approach that wholly deviates from the essence of Article 32.[192] For example, the Beijing Intellectual Property Court, in its 2021 Reference for Proof in Civil Cases of Infringements of Trade Secrets, requires plaintiffs to provide initial evidence to prove every trade secret status element.[193] It does not mention the Section One presumption but, by comparison, includes the Section Two presumption as a separate provision.[194] In the 2021 Trial Guide for Civil Cases on Trade Secrets Infringement, the Jiangsu High Court appears to still require plaintiffs to bear the initial burden of producing evidence on every trade secret element,[195] although it mentions the Section One presumption in the document.[196] Meanwhile, in a case affirmed by the SPC, the Guangzhou Intellectual Property Court (the court of first instance) explicitly stated that the AUCL still places the initial burden of producing *prima facie* evidence for *all* trade secret elements on plaintiffs before the Section One presumption can apply.[197] However, in another case decided soon after this one, an SPC tribunal adopted a strict application of Article 32 rather than deviating from it.[198] That SPC tribunal held that, according to Section One of Article 32, plaintiffs do not need to provide any evidence on the secrecy of trade secrets; instead, defendants must prove non-secrecy.[199] It is predicted that some local courts, such as

---

[192] *See* Beijing Intellectual Property Court, Reference for Proof in Civil Cases of Infringements of Trade Secrets (Oct. 29, 2021), arts. 3–8, https://www.lawinfochina.com/display.aspx?id=36728&lib=law&SearchKeyword=&SearchCKeyword=%b1%b1%be%a9%d6%aa%ca%b6%b2%fa%c8%a8%b7%a8%d4%ba.

[193] *Id.*

[194] *Id.* art. 18.

[195] *See* Jiangsu High People's Court, Trial Guide for Civil Cases on Trade Secrets Infringement (2021), art. 2.8.1, https://mp.weixin.qq.com/s/vYYfwIdHSK06W2WIS9991w; *cf.* Tang Maoren (汤茂仁), 《江苏省高级人民法院侵犯商业秘密民事纠纷案件审理指南》亮点解读 [Highlights on 2021 Trial Guide for Civil Cases on Trade Secrets Infringement], ZHICHAN CAJING (知产财经) [INTELL. PROP. FIN.] (June 21, 2021), https://www.ipeconomy.cn/index.php/mobile/news/magazine_details/id/3140.html (arguing that the guidance conforms with the Section One presumption).

[196] *See id.*

[197] *See* Guangzhou Tianci High-Tech New Materials Co. v. Hua Man (广州天赐高新材料股份有限公司、九江天赐高新材料有限公司侵害技术秘密纠纷二审民事判决书) (2019) 最高法知民终562号, *aff'd*, Nov. 24, 2020, https://ipc.court.gov.cn/zh-cn/news/view-1663.html.

[198] *See* Jinan Sike Test Tech. Co. v. Jinan Languang Jidian Tech. Co. (济南思克测试技术有限公司、济南兰光机电技术有限公司二审民事判决书) (2020) 最高法知民终538号, *aff'd*, Dec. 14, 2020, https://ipc.court.gov.cn/zh-cn/news/view-1731.html.

[199] *See id.*

ISSN 0041-9915 (print) 1942-8405 (online) ● DOI 10.5195/lawreview.2023.956
http://lawreview.law.pitt.edu

courts from the Chongqing province, will adopt a similarly strict interpretation.[200] Therefore, how different courts will interpret the Section One presumption and apply it in practice is a mystery. Even the SPC itself is divided on this issue, and no clear, let alone uniform, guidance exists to resolve the uncertainty. Predictability, thus, is significantly harmed. Also, although the "loose interpretation" approach remedies the aforementioned unreasonableness of the Section One presumption and maintains a better balance between plaintiffs' and defendants' burdens of proving the required elements,[201] it runs afoul of the statutory language and can be fairly criticized as completely ignoring Section One of Article 32. That being said, Section One of Article 32 urgently needs to be reformed due to its lack of reasonable foundations and its negative effect on judicial certainty.

### *B. Section Two's Questionable One-Size-Fits-All Approach*

The Section Two presumption seems to have been supported by more reasonable considerations and is subject to less criticism.[202] Recall from the previous discussion that Section Two presumes the existence of misappropriation conduct (presumed facts) from the facts of substantial similarities and access to trade secrets (basic facts).[203] Arguably, the probability of misappropriation sharply increases when plaintiffs show substantial similarity and access.[204] After all, even conceding that different entities may independently develop and possess similar secrets simultaneously, the chance of two parties holding similar information without copying or substantially deriving that information from one another is low when defendants have had previous interactions with plaintiffs' secrets.[205] Therefore, the high-probability justification may support the Section Two presumption. In addition, the superior access to misappropriated facts enjoyed by defendants justifies the Section Two presumption. It is well understood that plaintiffs do not generally have

---

[200] *See* Yu & Ge, *supra* note 5 (two judges from Chongqing High Court adopt the strict application approach of the Section One presumption).

[201] *See, e.g.*, Zhang Hao (张好) & Yang Yufang (杨玉芳), Shangye Mimi Sifa Baohu Zhengce Zouxiang Yu Juzheng Guize Jiedu (商业秘密司法保护政策走向与举证规则解读) [Policy Changes of Judicial Interpretation on Trade Secrets and Interpretations on Burden of Proof Rules], TIANTONG LITIG. (Nov. 4, 2021), https://mp.weixin.qq.com/s/rec9LM1gHzMUUbTvnQmGWg.

[202] In China, current literature on Article 32 centers more on the Section One presumption than that of Section Two. *See, e.g.*, Shen & Huang, *supra* note 4.

[203] *See supra* notes 109, 110 and accompanying text.

[204] *See, e.g.*, Hu, *supra* note 68, at 34–35.

[205] *See id.*

ISSN 0041-9915 (print) 1942-8405 (online) ● DOI 10.5195/lawreview.2023.956
http://lawreview.law.pitt.edu

direct evidence of defendants' conduct, including whether they obtained information from plaintiffs and whether they reverse engineered or independently developed the secrets.[206] It seems costly and inequitable to require plaintiffs to produce evidence of misappropriation conduct which defendants undertake in secrecy.[207] To reduce the overall cost of proof and remedy the imbalance of access to evidence between plaintiffs and defendants, the Section Two presumption seems warranted. Indeed, before the promulgation of Article 32, some Chinese courts already applied the rule of "substantial similarity + access" akin to Section Two.[208] Thus, for some, Section Two of Article 32 did not create anything new but merely affirmed previous legal practice.[209]

However, Section Two, although seemingly reasonable on its face, adopts a one-size-fits-all approach to create a presumption about the existence of misappropriation conduct, leaving no room for courts to adjust based on the facts of each case. In practice, this means that in every trade secrets case, the court must impose such a presumption as long as the defendant shows substantial similarity and previous access—even if, in some cases, these mere showings cannot guarantee the high probability of the existence of misappropriation.[210] Also, there is no evidence that proving cost discrepancy merit a presumption as a remedy.[211] In those cases, it is not easy for defendants to defeat the Section Two presumption, and plaintiffs do not face particularly formidable hurdles in producing additional evidence on the

---

[206] *See* Pioneer Hi-Bred v. Holden Found. Seeds, Inc., 35 F.3d 1226, 1239–40 (8th Cir. 1994).

[207] E-mail from Victoria Cundiff, Partner, Paul Hastings New York, to author (Feb. 1, 2021, 12:14 EST) (on file with author); *see also* Cui, *supra* note 2, at 22–23 (mentioning some scholars' arguments on the imbalance of proving the misappropriation which they consider as unfair).

[208] *See* Jiangsu Sheng Gaoji Renmin Fayuan Minsan Ting (江苏省高级人民法院民三庭) [The Third Civil Tribunal of Jiangsu High People's Court], Shangye Mimi Zhishi Chanquan Anjian Ruogan Wenti Yanjiu (商业秘密知识产权案件若干问题研究) [Research on Several Issues About Trade Secrets IP Cases], FALV SHIYONG (法律适用) [L. APP.], no. 2/3, 2010, at 161; Cui, *supra* note 2, at 22.

[209] *See* SJTU Trade Secrets Lecture Transcript, *supra* note 5.

[210] Chinese courts should obey the provisions in statutes, as they have limited authority to deviate from what statutes say. *See, e.g.*, Margaret Y.K. Woo, *Law and Discretion in the Contemporary Chinese Courts*, 8 PAC. RIM. L. & POL'Y J. 581, 582 (1999) ("Chinese courts have operated primarily as 'law-applying' institutions that resolve private disputes and maintain social order by discretionary adaptation of the law to particular circumstances and individual cases. Where adjudication is not viewed as a forum for making law, Chinese courts have served less as 'law-making' institutions."). Though, in recent years, Chinese courts' have expanded their role in law-making. *See, e.g.*, Note, *Chinese Common Law: Guiding Cases and Judicial Reform*, 129 HARV. L. REV. 2213 (2016).

[211] *See infra* notes 217–23 and accompanying text.

ISSN 0041-9915 (print) 1942-8405 (online) ● DOI 10.5195/lawreview.2023.956
http://lawreview.law.pitt.edu

misappropriation conduct apart from the evidence on "substantial similarity + access."[212]

The substantial similarity plus access rule is not suitable in cases where independent development of trade secrets is quite likely.[213] Suppose in an industry where companies compete within a particular location, it is possible that competitors may develop client lists consisting of many overlapping clients, either current or potential, based on the same clients' information and preferences.[214] Considering the fact that job-hopping between competitors in the same industry can be common[215]—proving access to trade secrets in dispute can be straightforward when a competitor hires a departing employee away from another company. In this type of case, a plaintiff can simply show that a defendant hired its previous employees away and reaches out to the same group of clients—thereby triggering the Section Two presumption and dispensing all of its initial burden of production.[216] It is difficult in these situations for defendants to disprove the substantial similarity and access to defeat the presumption. Defendants, then, should prove that they independently developed the client list in dispute. These cases are not merely hypothetical because corporations are often charged with emotion in litigation against prior employees and competitors, regardless of the merits of their claims.[217] It is, however, not that cheap and easy for defendants to prove independent development in these cases to defeat the presumption.[218] The proving process can be cheap only when defendants, *ex ante*, consistently maintain record-keeping for their secrets' development process.[219] Nonetheless, it is doubtful whether companies would keep records of the development of client lists which generally have relatively limited commercial value

---

[212] *See* Research on Several Issues About Trade Secrets IP Cases, *supra* note 208.

[213] *See* Cui, *supra* note 2, at 23–24.

[214] *See id.* (arguing that the personalized features existing in client lists are limited and that different creators are limited in scope of choices when creating the lists, especially compared with copyrightable works where authors have ample room to make personalized choices).

[215] Silicon Valley again represents a typical example where job-hopping is very frequent between companies within the territory and within or across industries. *See generally* Lobel, *supra* note 144.

[216] The burden for proving substantial similarity and access to trigger the Section Two presumption is low; prima facie evidence is sufficient. *See* Yu & Ge, *supra* note 5, at 12; 2019 AUCL, *supra* note 3, art. 32, § 2.

[217] *See* POOLEY, *supra* note 126, at § 10.01[1].

[218] *See* Cui, *supra* note 2, at 27.

[219] *See id.* at 26–27.

ISSN 0041-9915 (print) 1942-8405 (online) ● DOI 10.5195/lawreview.2023.956
http://lawreview.law.pitt.edu

compared with technical secrets. After all, requiring every employee in the corporation to record how they reach out to clients and collect clients' information can consume a significant amount of extra working time in the aggregate[220] and companies may not consider it valuable enough to incur these costs, given the uncertainty of a potential future lawsuit and the limited commercial value of these lists.[221] The empirical evidence in China further confirms the difficulty of making independent development defenses in litigation because defendants have succeeded in pleading independent development in only eleven decisions.[222] Meanwhile, in these cases, plaintiffs would not incur unacceptable costs in producing additional circumstantial evidence, such as evidence showing that employees truly copied or downloaded relevant documents and took them away when leaving the company (*e.g.*, outgoing emails from prior employees' work accounts).[223] Thus, in these cases, the discrepancy between plaintiffs' cost of proving the existence of misappropriation conduct and defendants' cost of disproving it seems small. Defendants cannot easily rebut "substantial similarity + access" or plead the independent development defense to defeat the presumption. Without apparently proving cost difference, imposing a presumption in these cases is clearly unfair to defendants and can encourage strategic use of trade secrets litigation to deter or "punish" job-hopping.

Another relatively uncommon but still not hypothetical type of case where the "substantial similarity + access" rule does not make sense further limits the applicability of a one-size-fits-all presumption.[224] In *On-Line Tech. v. Bodenseewerk*

---

[220] *See id.*

[221] *See id.* (outlining the current situation in China in that many companies still do not plan to sue others such that the risks of being sued in the future are uncertain and arguing that the reduced costs from strengthening defenses in litigation may not outweigh the incurred management costs in record-keeping since the likelihood of being sued in the future is not that high). The cognitive bias favoring short-term gains against long-term gains may also explain these companies' choices. *See generally* Russell B. Korobkin & Thomas S. Ulen, *Law and Behavioral Science: Removing the Rationality Assumption from Law and Economics*, 88 CALIF. L. REV. 1051 (2000).

[222] *See* Chen, *supra* note 140 (data collected for conducting the same empirical study but not directly used within).

[223] Digital forensics is common and easy for current companies. For example, it is not difficult for companies to retrieve the records of employees' work emails to check whether there are any suspicious outgoing emails that contain confidential information. *See, e.g.*, Maria Kreiter, Maggie Cook & Rebeca Lopez, *How Can Digital Forensics Prevent the Misappropriation of Trade Secret and Confidential Information?*, A.B.A. (Jan. 12, 2021), https://www.americanbar.org/groups/litigation/committees/business-torts-unfair-competition/articles/2021/e-foresic-evidence-misappropriation-of-trade-secret-and-confidential-information/; *see* Cui, *supra* note 2, at 26–28.

[224] *See* On-Line Tech. v. Bodenseewerk Perkin-Elmer GmbH, 386 F.3d 1133 (Fed. Cir. 2004).

ISSN 0041-9915 (print) 1942-8405 (online) ● DOI 10.5195/lawreview.2023.956
http://lawreview.law.pitt.edu

*Perkin-Elmer*, the defendant, who had access to the plaintiff's confidential information through business negotiations, incorporated substantially similar secret features into its own products.[225] However, when the defendant began selling its product, the plaintiff had already disclosed the secret features through patent applications.[226] In light of this, when deciding on trade secrets claims, the court required the plaintiff to produce additional evidence to prove that the defendant had used the secrets *prior to* the patent disclosure—in addition to the substantial similarity and access evidence.[227] The fact that the "secrets" had been disclosed in a patent application made the probability link between "substantial similarity + access" and the existence of misappropriation weak because there was the possibility that defendants used the information disclosed in the patent application rather than the plaintiff's trade secrets.[228] That is why, in this case, the court did not apply the rule.[229] As a side note, the court remanded the case for further proceedings regarding the plaintiff's patent infringement claims, as it considered the district court's claim construction as too restrictive.[230]

Indeed, U.S. law, which is said to provide the same treatment as Article 32 in all dimensions, does not adopt a one-size-fits-all "substantial similarity + access" rule. Under state laws allowing an inference of misappropriation from substantial similarity and access, courts *may*—rather than *must*—presume misappropriation.[231] The Restatement (Third) of Unfair Competition Law recognizes the "substantial similarity + access" rule in Comment c but uses the phrase "may justify an inference" rather than "should" or "must."[232] Further, the UTSA and the Defend Trade Secrets

---

[225] *Id.* at 1141–42.

[226] *Id.* at 1141.

[227] *Id.* at 1142.

[228] *Id.* at 1141.

[229] *Id.*

[230] *Id.* at 1140.

[231] *See, e.g.*, Sokol Crystal Prods., Inc. v. DSC Commc'ns Corp., 15 F.3d 1427, 1432 (7th Cir. 1994) (a jury *can* reasonably infer the misappropriation from access and similarity); USA Power, LLC v. PacifiCorp, 235 P.3d 749, 761 (Utah 2010) ("We suggested, however, that had the plaintiff presented testimony that the formulas were similar, combined with evidence that the plaintiff's former employee had disclosed the formulas to defendant, a preliminary injunction *may have been appropriate*.") (emphasis added); Stratienko v. Cordis Corp., 429 F.3d 592, 600 (6th Cir. 2005) (acknowledging that sufficient circumstantial evidence of misappropriation must include similarity and access but not saying that they alone can always suffice in proving misappropriation).

[232] *See* RESTATEMENT (THIRD) OF UNFAIR COMPETITION, § 40 cmt. c (AM. L. INST. 1995).

ISSN 0041-9915 (print) 1942-8405 (online) ● DOI 10.5195/lawreview.2023.956
http://lawreview.law.pitt.edu

Act do not explicitly recognize the rule. Thus, in the United States, both federal and state courts have significant leeway in deciding whether to infer misappropriation from substantial similarity and access depending on the particular facts of a case. This sharply contrasts with the statutory language of Section Two of Article 32, in which defendants *shall* prove the nonexistence of misappropriation so long as plaintiffs provide evidence of substantial similarity and access.[233]

To summarize, there are some cases where the presumption by "substantial similarity + access" is not necessary nor justified. Even admitting plaintiffs' difficulties in proving misappropriation in some cases, as direct proof is always absent,[234] the one-size-fits-all approach does not differentiate between cases that merit a presumption and those that do not. Accordingly, the one-size-fits-all approach taken by the current Section Two of Article 32, is questionable and calls for reform.

## IV. NORMATIVE SUGGESTIONS AND RESPONSES TO POTENTIAL CRITICISMS

### A. *Normative Proposal*

#### 1. Section One of Article 32

This Article proposes that Section One of Article 32 should be deleted to eliminate the unjustified presumption. The removal of Section One implies that plaintiffs would bear the initial burden of production on all trade secrets status elements. Shifting the burden of production would reinstate the general rule that the burden shifts to defendants only after plaintiffs satisfy their initial burden of production by providing *prima facie* evidence of the use of reasonable secrecy measures, as well as *the secrecy and commercial value* of claimed trade secrets.[235] These general rules regarding the shifting of the burden of production are much more well-developed in Chinese law and practice and would result in less uncertainty and unpredictability relative to the current state of affairs.[236] Meanwhile, deleting Section One would lift the current reasonable showing of misappropriation requirement in

[233] *See* 2019 AUCL, *supra* note 3, art. 32.

[234] *See, e.g.*, *Sokol Crystal Prods*., 15 F.3d at 1432 ("[A]ny plaintiff would be hard pressed to present direct proof of the flow of information inside the defendant's company.").

[235] *See supra* Part I.

[236] See *supra* Part II (discussing burden of production); *supra* Part III (discussing problems of the current Section One).

Section One. The existence of the reasonable showing of misappropriation requirement blurs the relationship between Section One and Section Two because it should be the latter rather than the former that addresses the burden of proving the existence of misappropriation conduct.[237] The current reasonable showing of misappropriation requirement in Section One requires proving the existence of misappropriation conduct when the pertinent question instead is the existence of valid trade secrets, which is counterintuitive. Deciding whether there are valid trade secrets does not rely on proving the existence of infringement conduct.[238] Accordingly, requiring a reasonable showing of misappropriation is unwarranted. That is also the reason why several judges and scholars interpret Section One as primarily addressing trade secret status elements.[239] For example, a Shanghai High Court judge criticized the necessity of adding the reasonable showing of infringement requirement when proving trade secrets status elements and provided an interpretative approach that effectively deleted the requirement from Section One.[240] Removing Section One of Article 32 as proposed here deals with the problems of the reasonable-showing requirement and leaves the question of whether there is misappropriation conduct wholly to Section Two.

#### 2. Section Two of Article 32

After removing Section One, Article 32 would only contain one section, the original Section Two, which should also be reformed. As this Article rejects a one-size-fits-all approach with the "substantial similarity + access" rule, it is proposed that Section Two of Article 32 be revised to be more lenient regarding the presumptive effect of the evidence on substantial similarity and previous access. Specifically, this proposal aims to recognize the strong indication of substantial similarity and previous access to the existence of misappropriation conduct. However, it will not allow courts to presume from the mere proof of "substantial similarity and previous access" misappropriation in every case. Instead, it will treat the substantial similarity and access elements as two prominent pieces of circumstantial evidence that courts should take into serious consideration when judging whether plaintiffs satisfy their initial burden of production on misappropriation. It allows courts to require plaintiffs to provide other relevant

---

[237] *See supra* Part II.

[238] *See* SJTU Trade Secrets Lecture Transcript, *supra* note 5.

[239] *See supra* note 93 and accompanying text; Cui, *supra* note 2, at 16–21 (focusing mainly on the secrecy requirement when discussing Section One).

[240] *See* Cui, *supra* note 2, at 16–21.

ISSN 0041-9915 (print) 1942-8405 (online) ● DOI 10.5195/lawreview.2023.956
http://lawreview.law.pitt.edu

Case 7:24-cv-00232-DC Document 214-34 Filed 09/04/26 Page 43 of 48



evidence on misappropriation in addition to those two elements, depending on the unique facts of each case.

Article 32 in its current form states:

> In trade secrets misappropriation trial proceedings, if trade secrets holders provides *prima facie* evidence demonstrating that they have taken reasonable secrecy measures, the alleged infringer shall prove that the claimed secrets are not "trade secrets" as defined in this law.[241]
> If trade secrets holders produce *one* of the following *prima facie* evidence reasonably showing that their trade secrets are infringed, the alleged infringers must prove the nonexistence of infringing conduct.
> (1) evidence showing the alleged infringers had channels or opportunities to access the secrets, and the used information is substantially similar to the trade secret;
> (2) evidence showing that trade secrets have been disclosed and used or are at risk of being disclosed and used by the alleged infringers;
> (3) any other evidence showing that trade secrets have been misappropriated by the alleged infringers.[242]

I propose that Article 32 be revised to read as follows:

> If trade secrets holders produce *prima facie* evidence to prove that their secrets have been infringed, the alleged infringers must prove the nonexistence of infringing conduct. Courts should consider the following evidence in deciding whether secrets holders have provided *prima facie* evidence:
> (1) evidence showing the alleged infringers had channels or opportunities to access the secrets and the used information is substantially similar to the trade secret;

---

[241] The Chinese version: "侵犯商业秘密的民事审判程序中，商业秘密权利人提供初步证据，证明其已经对所主张的商业秘密采取保密措施，涉嫌侵权人应当证明权利人所主张的商业秘密不属于本法规定的商业秘密."

[242] The Chinese version: "商业秘密权利人提供初步证据合理表明商业秘密被侵犯，且提供以下证据之一的，涉嫌侵权人应当证明其不存在侵犯商业秘密的行为：

（一）有证据表明涉嫌侵权人有渠道或者机会获取商业秘密，且其使用的信息与该商业秘密实质上相同；
（二）有证据表明商业秘密已经被涉嫌侵权人披露、使用或者有被披露、使用的风险；

（三）有其他证据表明商业秘密被涉嫌侵权人侵犯"

ISSN 0041-9915 (print) 1942-8405 (online) ● DOI 10.5195/lawreview.2023.956
http://lawreview.law.pitt.edu

> (2) evidence showing that trade secrets have been disclosed and used or are at risk of being disclosed and used by the alleged infringers;
> (3) any other evidence, either direct or circumstantial, showing that trade secrets have been misappropriated by the alleged infringers.[243]

One point merits further elaboration. The revised version that I propose includes the phrase "direct or circumstantial" in the section's list of evidentiary examples. It adds this emphasis here to remind Chinese courts of the significance of circumstantial evidence in proving misappropriation. Circumstantial evidence is paramount in trade secrets cases, as plaintiffs face challenges in directly proving defendants' conduct.[244] In most situations, "plaintiffs must construct a web of perhaps ambiguous circumstantial evidence from which the trier of fact may draw inferences which convince him that it is more probable than not that what plaintiffs allege happened did in fact take place."[245] Some Chinese judges, however, strongly prefer direct evidence to circumstantial evidence to ensure the accuracy of fact finding for their judgments.[246] Accordingly, the inclusion of "circumstantial evidence" in this section can facilitate future courts' awareness of this type of

---

[243] The Chinese version: "商业秘密权利人提供初步证据证明商业秘密被侵犯，涉嫌侵权人应当证明其不存在侵犯商业秘密的行为。法院应当综合考虑以下证据来判断商业秘密权利人是否提供了足够的初步证据：

> （一）表明涉嫌侵权人有渠道或者机会获取商业秘密，且其使用的信息与该商业秘密实质上相同的证据；
> （二）表明商业秘密已经被涉嫌侵权人披露、使用或者有被披露、使用的风险的证据；
> （三）其他直接或间接表明商业秘密被涉嫌侵权人侵犯的证据。"

[244] *See, e.g.*, Sokol Crystal Prods., Inc. v. DSC Commc'ns Corp., 15 F.3d 1427, 1432 (7th Cir. 1994) ("[A]ny plaintiff would be hard pressed to present direct proof of the flow of information inside the defendant's company.").

[245] POOLEY, *supra* note 126, at § 7.02[2][c].

[246] They are relatively more conservative about the evidence whose strength of proof is weak (e.g., circumstantial evidence) and demand detailed statutory rules to guide their judgments towards the strength of proof issues on different types of evidence. *See, e.g.*, Li Xunhu (李训虎), Zhengming Li Guize Jiantao (证明力规则检讨) [Review of Probative Rules], FAXUE YANJIU (法学研究) [LEGAL STUDS.], no. 2, 2010, at 159, 164–67 (discussing the emphasis of the strength of proof issues from local judges and mentioning that these judges are quite conservative in fact-finding for fear of future liability if they find wrongful facts). Also, due to the over-emphasis on the comparison between direct evidence's superior strengthen of proof and circumstantial evidence's relatively weaker one, the legal practice has bias towards the application of circumstantial evidence. *See* Huang Fengqing (黄冯青) & Chen Xiangui (陈贤贵), Lun Minshi Susong Jianjie Zhengming (论民事诉讼间接证明) [On Indirect Proof in Civil Action], J. HEILONGJIANG ADMIN. CADRE COLL. POL. & L., no. 4, 2019, at 8.

ISSN 0041-9915 (print) 1942-8405 (online) ● DOI 10.5195/lawreview.2023.956
http://lawreview.law.pitt.edu

evidence in trade secrets cases and enable them to more confidently consider circumstantial evidence.

### *B. Potential Criticism to China's Discovery System*

It is well understood that the United States has the most unique pre-trial discovery system in the world, which, from an outside perspective, facilitates information flowing between parties to a surprisingly broad extent.[247] The United States' discovery system affords parties' comprehensive tools for obtaining evidence from either the other side or non-parties, including depositions, interrogations, production of documents and items, requests for admission, physical and mental examinations, and motions to compel production.[248] With the assistance of these tools, the scope of discovery is very broad; it covers what the opposing party plans to introduce at trial or specific identified documents requested for production and "open-ended investigation into categories of information that opposing party may have no wish to reveal."[249] Such a discovery system is generally unavailable in civil law jurisdictions including China and "is typically regarded as horror."[250]

In light of this difference, an argument can be made that Article 32 can function as a proxy for discovery that would be mandatory in the United States and thereby augment the (much) weaker discovery system in China.[251] Trade secrets holders, per this view, can have a lesser burden of proof through Article 32 to a degree closer to what they may have under a U.S.-type discovery system.[252] The quote below perfectly reflects this line of argument:

> In countries in which a party cannot be compelled to produce evidence, as it can be in the US, a formal burden shifting regime such as that being advocated/implemented for China is basically a substitute for discovery and has the effect of letting defendant make the choice—come forward with evidence that

---

[247] *See* GEOFFREY C. HAZARD, JR. ET AL., PLEADINGS AND PROCEDURE CASES AND MATERIALS 783 (12th ed. 2020); Yanbai Andrea Wang, *Exporting American Discovery*, 87 U. CHI. L. REV. 2089, 2127 (2020).

[248] *See* HAZARD ET AL., *supra* note 247, at 781–87.

[249] *See id.* at 783.

[250] *See id.* at 808–09; *see* Cui, *supra* note 2, at 29 (noting that China has other fragmental tools available for plaintiffs to obtain evidence but no discovery system similar to the U.S. system exists).

[251] E-mail from Victoria Cundiff, Partner, Paul Hastings New York, to author (Feb. 1, 2021, 12:14 EST) (on file with author). Thanks to Professor Victoria Cundiff for raising this point.

[252] *Id.*

> you control or the court will conclude that you do not have favorable evidence. It makes the production of evidence "elective"—you don't have to produce the evidence, but if you don't the court can draw certain conclusions.[253]

But the fact that U.S. law has an expansive discovery system does not justify the impulse to force China to adopt a proxy with similar effects. Viewed from a global perspective, the U.S. discovery system is an outlier; even many of its sister common-law countries do not have similarly strong discovery methods (much less so civil law countries that host a sharply different legal culture).[254] The relatively weaker discovery system available to trade secrets holders in China does not necessarily result in a high burden of proving the elements. Rigorous evidence is demanded to make this causal inference. As mentioned previously, the empirical evidence, however, points in another direction: In practice, plaintiffs in China from 2013 to 2021 have had high success rates in proving the secrecy and commercial value elements and misappropriation.[255] It seems unsuitable to adopt the U.S. rules as the golden standard and question China's system when the Chinese standards have not caused unacceptable hardships for plaintiffs in trade secrets cases.

Even assuming, arguendo, that China's discovery system needs to be improved to better promote access to evidence, it is illogical not to target the discovery rules themselves, instead of significantly reducing plaintiffs' burden of proof in a particular type of cases. The latter would dramatically change the entire landscape of that particular category of cases with the question of whether the benefits gained from better access to evidence truly offset the resulting cost. Put differently, not all plaintiffs would face similar hardships in proving trade secrets cases to merit such a dramatic relieving of the burden; it is hard to quantify the harm caused by indifferently applying Article 32 in those cases.[256] Indeed, China's recent efforts to directly add discovery tools to the general civil procedure regime are on the right track toward improving its discovery system. Those efforts further negate the necessity for reducing the burden of proof for trade secrets holders as much as the current Article 32 does. The most prominent discovery tool relevant here is the

---

[253] *Id.* For a similar proposition, see Allen, *supra* note 8, at 202–03.

[254] *See, e.g.*, Geoffrey C. Hazard Jr., *Discovery and the Role of the Judge in Civil Law Jurisdictions*, 73 NOTRE DAME L. REV. 1017, 1018–20 (1998); Stephen N. Subrin, *Discovery in Global Perspective: Are We Nuts?*, 52 DEPAUL L. REV. 299, 301–07 (2002).

[255] *See* Chen, *supra* note 140, at 212–25.

[256] *See* Cui, *supra* note 2, at 30.

ISSN 0041-9915 (print) 1942-8405 (online) ● DOI 10.5195/lawreview.2023.956
http://lawreview.law.pitt.edu

document production order, introduced to civil procedure regime in 2015.[257] It allows parties to compel the production of documents controlled by the other side through court order.[258] The 2019 Judicial Interpretation on Evidence in Civil Cases even extended the scope of the compelled production order to include audio and visual evidence as well as electronic evidence.[259] If the party receiving the court-issued production order refuses to provide evidence without justifiable reasons, the court would presume the contents within the requested scope of evidence are true.[260] Courts would even impose sanctions or directly consider the facts proven by the evidence as true if the party in control of the evidence destroys it or prevents it from being used in bad faith.[261] Moreover, Chinese judges are more actively involved in fact finding in that they have some authority to directly collect evidence.[262] For example, the 2020 Judicial Interpretation on Evidence in Intellectual Property Cases allows judges, even without the parties' request, to appoint experts to offer opinions on professional issues in IP cases, including, among other matters, whether the alleged trade secrets are public information and whether they are substantially similar to the alleged infringing information.[263] Chinese judges can also, *ex officio*, appoint technical investigators to assist in evidence collection and fact finding in IP cases that are technically focused, such as technical trade secrets cases.[264] Several other

---

[257] *See* 2015 Judicial Interpretation on Civil Procedure Law, *supra* note 22, art. 112.

[258] *See id.*

[259] Zuigao Renmin Fayuan Guanyu Minshi Susong Zhengju de Ruogan Guiding (最高人民法院关于民事诉讼证据的若干规定) [Several Provisions of the Supreme People's Court Concerning Evidence in Civil Procedures], ZHONGHUA RENMIN GONGHEGUO ZUIGAO RENMIN Fayuan (中华人民共和国最高人民法院) [THE SUPREME PEOPLE'S COURT OF THE PEOPLE'S REPUBLIC OF CHINA], art. 99 (Dec. 26, 2019, 11:42 AM), https://www.court.gov.cn/zixun-xiangqing-212721.html [hereinafter 2019 Judicial Interpretation on Evidence].

[260] *See* 2015 Judicial Interpretation on Civil Procedure Law, *supra* note 22, art. 112.

[261] *See id.* art. 113; 2019 Judicial Interpretation on Evidence, *supra* note 259, art. 48.

[262] *See* Zuigao Renmin Fayuan Guanyu Zhishi Chanquan Minshi Susong Zhengju de Ruogan Guiding (最高人民法院关于知识产权民事诉讼证据的若干规定) [Several Provisions of the Supreme People's Court on Evidence in Civil Litigation of Intellectual Property Rights], ZHONGHUA RENMIN GONGHEGUO ZUIGAO RENMIN Fayuan (中华人民共和国最高人民法院) [THE SUPREME PEOPLE'S COURT OF THE PEOPLE'S REPUBLIC OF CHINA], art. 19 (Nov. 16, 2020, 10:33 PM), https://www.court.gov.cn/zixun-xiangqing-272241.html.

[263] *Id.*

[264] Zuigao Renmin Fayuan Guanyu Jishu Diaocha Guan Canyu Zhishi Chanquan Anjian Susong Huodong de Ruogan Guiding (最高人民法院关于技术调查官参与知识产权案件诉讼活动的若干规定) [Several Provisions of the Supreme People's Court on the Participation of Technical Investigators in Litigation Activities of Intellectual Property Cases], ZHONGGUO SHENPAN LIUCHENG XINXI GONGKAI

ISSN 0041-9915 (print) 1942-8405 (online) ● DOI 10.5195/lawreview.2023.956
http://lawreview.law.pitt.edu

rules alleviating parties' burden of proof are beyond the scope of this Article[265] but the point is clear: With these general burden-alleviating rules, plaintiffs in trade secrets cases would not face significant proving difficulties, as perceived by U.S. legal professionals who are unfamiliar with the particulars of the Chinese civil procedure system. Even if they do, the right path should be in directly reforming the discovery system rather than unjustifiably distorting the burden of proof for trade secrets cases.

## CONCLUSION

This Article dives into the history of burden of proof in China's trade secrets cases and provides a short brief on the current burden-shifting rules—Article 32 of the AUCL. It questions this Article 32 from two dimensions. First, Section One creates unreasonable and unsupported presumptions on the secrecy of trade secrets. It has incited contradicting interpretations from different courts, harming the legal predictability. Secondly, Section Two adopts a one-size-fits-all presumption on the existence of misappropriation, leaving courts limited discretion to infer misappropriation based on other evidence. At least certain types of cases do not merit such a presumption of misappropriation. In those cases, defendants are unfairly disfavored, which suspiciously harms cumulative innovation and employee mobility. Accordingly, this Article proposed reforms for both sections of Article 32 to restore the balance of burden of proof imposed on both parties. Though it is admitted that China has a weaker discovery system than the United States, other tools available in Chinese civil procedure law can directly remedy potential evidence collection difficulties. It seems unnecessary and irrational to adopt such an indirect method—using burden-shifting clauses as a proxy.

---

WANG (中国审判流程信息公开网) [CHINA JUDICIAL PROCESS INFORMATION ONLINE], arts. 1, 6 (Aug. 27, 2019), https://splcgk.court.gov.cn/gzfwww/sfjs/details?id=ff8080816c22fc85016cd0ca1d4f0da2.

[265] For example, a civil investigation order. *See* Cui, *supra* note 2, at 29.

ISSN 0041-9915 (print) 1942-8405 (online) ● DOI 10.5195/lawreview.2023.956
http://lawreview.law.pitt.edu