[redacted]

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| COBBLESTONE WIRELESS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Case No. 7:24-cv-00232-DC<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF**
**ITS MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1)**
**FOR LACK OF SUBJECT-MATTER JURISDICTION**

[redacted]

# TABLE OF CONTENTS

**Page**


I. COBBLESTONE'S RESPONSE FAILS TO ESTABLISH STANDING ..........1

A. Cobblestone's Legal Arguments Are Flawed ..........1

1. Cobblestone Has the Burden to Establish Standing ..........1

2. Cobblestone's Argument That Only U.S. Federal Law Controls Patent Ownership Is Wrong ..........2

B. The '347 Patent Arose Out of Professor Yin's Tongji University Employment ..........3

1. The '347 Patent Was Accomplished in Professor Yin's University Duties and/or By Using Tongji University's Materials and Means ..........3

2. Chinese Caselaw Further Establishes That This Is a Service Invention ..........4

C. Cobblestone Cannot Show Compliance with Export Control Restrictions Which Independently Merits Dismissal ..........6

D. Cobblestone's Chinese Law Bona Fide Purchaser Argument is Meritless ..........6

II. THE EMPIRE PRODUCTION IS WAIVED AND ONLY FURTHER UNDERMINES COBBLESTONE'S STANDING CLAIM ..........7

A. The Court Should Not Consider the Empire Documents ..........7

B. The Empire Documents Create Further Problems With Cobblestone's Claim to Ownership Through [redacted] ..........10

C. If the Case Proceeds, the Empire Documents Require Additional Discovery ..........10

[redacted]

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Akazawa v. Link New Tech. Int'l, Inc.*,
520 F.3d 1354 (Fed. Cir. 2008)....2, 3

*Condit Chem. & Grain Co. v. Helena Chem. Corp.*,
789 F.2d 1101 (5th Cir. 1986) ....1

*Coury v. Prot*,
85 F.3d 244 (5th Cir. 1996) ....1

*Ctr. for Biological Diversity v. United States Env't Prot. Agency*,
937 F.3d 533 (5th Cir. 2019) ....8

*E.T. v. Paxton*,
41 F.4th 709 (5th Cir. 2022) ....8

*Jim Arnold Corp. v. Hydrotech Sys., Inc.*,
109 F.3d 1567 (Fed. Cir. 1997)....2

*Ramming v. United States*,
281 F.3d 158 (5th Cir. 2001) ....1

*Rasmussen Instruments, LLC v. DePuy Synthes Prods., Inc.*,
No. 2023-1855, 2025 WL 2828185 (Fed. Cir. Oct. 6, 2025)....7

*Rhone Poulenc Agro, S.A. v. DeKalb Genetics Corp.*,
284 F.3d 1323 (Fed. Cir. 2002)....7

## Other Authorities

Restatement (Second) of Conflict of Laws § 133 (1971) ....2

[redacted]

**TABLE OF EXHIBITS**

| Exhibit | Description |
|---|---|
| 14 | EMPIRE_00000470 [redacted] |
| 15 | EMPIRE_00000429 [redacted] |
| 16 | EMPIRE_00000461 [redacted] |
| 17 | COBB_APPLE_019841 [redacted] |
| 18 | Defendant's Notice of Subpoenas to Empire Technology Development LLC dated December 31, 2025 |
| 19 | Email from Russ August & Kabat (counsel to Empire and Cobblestone) to counsel for Apple dated February 23, 2026 |
| 20 | Letter from Russ August & Kabat (counsel to Empire and Cobblestone) to counsel for Apple dated September 10, 2026 |

[redacted]

Cobblestone's Response (Dkt. 206, "Response") demonstrates that it "cannot prove any set of facts" that support constitutional standing and this case should be dismissed. Response 4 (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)). Cobblestone ignores Apple's evidence demonstrating that the invention leading to the '347 patent was developed in the course of Professor Yin's duties and with the support of Tongji University, such that it is a service invention belonging to the university. Dkt. 175 at 10-12. Further, Cobblestone offers no evidence of compliance with export control restrictions that independently void the recorded assignment chain. *Id.* at 12-15. Instead, Cobblestone's Response focuses on new, untimely documents produced by third-party Empire (the former recorded assignee of the '347 patent), which do not contradict Apple's evidence but which raise additional questions about a new, unrecorded party within the chain of title. Cobblestone's belated reliance on these documents is waived, but even if the Court considers them, Cobblestone still cannot establish subject-matter jurisdiction.

# I. COBBLESTONE'S RESPONSE FAILS TO ESTABLISH STANDING

## A. Cobblestone's Legal Arguments Are Flawed

### 1. Cobblestone Has the Burden to Establish Standing

Cobblestone improperly attempts to shift the burden to Apple to establish Cobblestone's lack of standing (Response §§ II.B.I, IV.A.4). However, "the plaintiff ***constantly bears the burden of proof*** that jurisdiction does in fact exist." *Ramming*, 281 F.3d at 161 (emphasis added). "[T]here is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court." *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996).

Cobblestone's burden-shifting argument rests on a misapplication and misinterpretation of Chinese civil procedure law. First, Chinese procedural rules do not apply in a U.S. court, and cannot relieve Cobblestone of its constitutional obligation to establish standing. *See Condit Chem. & Grain Co. v. Helena Chem. Corp.*, 789 F.2d 1101, 1102 (5th Cir. 1986) ("substantive law

[redacted]

applicable is established by the usual principles of conflict of laws, but procedural rules are the rules of the forum"); *see also* Restatement (Second) of Conflict of Laws § 133 (1971) ("Burden of Proof"). Moreover, even if Chinese law did apply, Chinese civil procedure imposes a concept akin to a "burden of production" that "does not remain objectively with one party but shifts" as the case develops. Dkt. 215-2 ("Supp. Cohen Decl.") ¶¶ 26-28; Dkt. 215-1 ("Supp. Yang Decl.") pp. 12-13 § 1.4. Under this standard, Chinese courts consider whether "the existence of the fact to be proved is highly probable," meaning more likely than not. Supp. Yang Decl. pp. 12-13 § 1.4; Supp. Cohen Decl. ¶ 28. As discussed in Section I.B, Apple's evidence more than meets any such burden.

### 2. Cobblestone's Argument That Only U.S. Federal Law Controls Patent Ownership Is Wrong

Cobblestone's argument that federal law trumps the effect of foreign law to determine the substantive issue of patent ownership (Response §§ II.A, IV.A.3) is baseless. The case Cobblestone relies on, *Akazawa v. Link New Tech. Int'l, Inc.*, found that "interpreting Japanese intestacy law, not United States patent law, is the first step in determining . . . standing." 520 F.3d 1354, 1357 (Fed. Cir. 2008). Specifically, *Akazawa* held that "[o]ur case law is clear that state law, ***not federal law***, typically governs patent ownership," and that this principle applied to foreign law: "[a]pplying this principle to the present case would require ***looking to foreign law***, as opposed to state law, to determine ownership." *Id.*; *Jim Arnold Corp. v. Hydrotech Sys., Inc.*, 109 F.3d 1567, 1572 (Fed. Cir. 1997) ("It may seem strange at first blush that the question of whether a patent is valid and infringed ordinarily is one for federal courts, while the question of who owns the patent rights and on what terms typically is a question exclusively for state courts. Yet that long has been the law."). Just as Japanese law applied in *Akazawa*, Chinese law applies here.[1]

[1] Cobblestone's additional argument that Apple has "already lost" its standing arguments (Response §§ I, II.A.2, IV.A.1) ignores the Court's Order that "Denied-in-part" Cobblestone's summary judgment motion on this issue. Dkt. 166.

[redacted]

### B. The '347 Patent Arose Out of Professor Yin's Tongji University Employment

#### 1. The '347 Patent Was Accomplished in Professor Yin's University Duties and/or By Using Tongji University's Materials and Means

There is no dispute that Chinese Patent Law Article 6 vests ownership of a service invention in the employer. Response § II.B.2-4. The only question is whether the '347 patent meets Article 6's requirement that it was "accomplished in the course of performing the duties of an employee, or mainly by using the material and technical conditions of an employer." Dkt. 156-4 ("Chinese Patent Law") at Article 6. Apple's evidence shows that the '347 patent was a service invention that was "made: (1) in the course of performing his own duty" (*see* Dkt. 156-6, Article 12(1) of the Patent Law Implementing Regulations, providing guidance as to service inventions under Patent Law Article 6) and that was [redacted]

Cobblestone has not refuted Apple's evidence that confirms that the '347 patent is a service invention (Dkt. 175 at 10-12). Professor Yin was the Deputy Head of Tongji University's Department of Electronic Science and Technology at the time of invention, and lists the '347 patent on his university biography. Supp. Cohen Decl. ¶ 22; Supp. Yang Decl. p. 7 § 1.1.4.1; Dkt. 214-29. In his university role, [redacted] both before and after the '347 application. Supp. Cohen Decl. ¶ 23; Supp. Yang Decl. pp. 7-8 § 1.1.4.2; Dkt. 214-2 ("Research on Multi-Antenna Technology Suitable for High-Speed Railway Communications"); *see also* Dkt. 175 at 5 (citing Professor Yin's research papers). [redacted] Supp. Cohen Decl. ¶ 23; Supp. Yang Decl. pp. 7-8 § 1.1.4.2. Even Cobblestone's own expert acknowledges the "substantial technical overlap between Professor Yin's Tongji work and the '347 subject matter." Dkt. 200 ¶ 19. Because of his university research, other closely related patents that name Professor Yin as an inventor were

[redacted]

granted to Tongji University, rather than Yin. Supp. Cohen Decl. ¶ 24; Dkt. 214-30, 31. Apple's evidence establishes that the '347 patent was [redacted] a service invention under Article 6. Supp. Yang Decl. pp. 7-8 § 1.1.4; Supp. Cohen Decl. ¶¶ 22-25.

Cobblestone does not directly challenge any of this evidence but instead relies on the untimely Empire production to theorize without support that Professor Yin created the '347 patent for his shell company, [redacted] and that this somehow means it was not a service invention owned by Tongji. Response § IV.2. First, [redacted] Supp. Yang Decl. pp. 8-10 § 1.2. That Yin [redacted] does not give him ownership of an invention arising from his university employment. Second, even if Yin was [redacted] that has no bearing on whether the '347 patent was a service invention for Tongji. Supp. Yang Decl. p. 12 § 1.3. Third, [redacted] Supp. Yang Decl. pp. 8-12 §§ 1.2-1.3.

### 2. Chinese Caselaw Further Establishes That This Is a Service Invention

Cobblestone relies heavily (and exclusively) on Reference Case 1848 (Response § II.B.5), but that case involved different facts and a different statutory provision, namely Article 12(2) of the Patent Law Implementing Regulations rather than Article 12(1). In Case 1848, a maintenance employee responsible for "plant safety, sanitation, and cleaning"—not research—created an invention. Supp. Yang Decl. pp. 2-5 §§ 1.1.1-1.1.2; Supp. Cohen Decl. ¶ 18; Dkt. 197-20. The

[2] As discussed in greater detail in Section II.A below, [redacted]

[redacted]

parties ***agreed*** the invention did not occur "in the course of performing [an employee's] own duty" under Article 12(1), which is at issue here. Rather, Case 1848 centered on the separate Article 12(2) prong: whether the invention arose from "the execution of any task, ***other than his own duty***, which was entrusted to him by the entity to which he belongs." Supp. Yang Decl. pp. 2-5 §§ 1.1.1-1.1.2; Supp. Cohen Decl. ¶ 16; Dkt. 197-20. Because the employee was not tasked with creating his invention, the court held it was not a service invention. *Id.* Those facts have no relevance here, where Yin was directly responsible for research as a university department head, and the dispute concerns whether the '347 patent arose from his regular university duties under Article 12(1) and from Tongji's support. Supp. Yang Decl. pp. 1-8 § 1.1; Supp. Cohen Decl. ¶¶ 22-28.

Apple's experts identify far more analogous Chinese caselaw confirming the '347 patent is a service invention. Mr. Cohen relies on Reference Case 403 (a companion to Case 1848 that Cobblestone's experts failed to address) which, unlike Case 1848, involved the same issues and statutory provisions present here. Supp. Cohen Decl. ¶¶ 15-16. In Case 403, the court concluded from the inventor's research responsibilities, access to employer resources, and the invention's relationship to his work, that the invention was a service invention. Supp. Cohen Decl. ¶ 19, Dkt. 214-27. Similarly, Ms. Yang relies on Case 2454, which, like this case, involved a professor employed simultaneously by a university and another company. Based on the scope of employments, the sequence of employment relationships (university employment coming first), the magnitude of the parties' respective contributions, and the company's knowledge of the university relationship, the court held the invention was a service invention owned by the university. Supp. Yang Decl. pp. 10-12 § 1.3; Dkt. 214-7. The same is true here—this Court should credit Apple's substantial evidence of Professor Yin's university employment and its connection to the '347 invention, and conclude the patent was a service invention owned by Tongji.

[redacted]

### C. Cobblestone Cannot Show Compliance with Export Control Restrictions Which Independently Merits Dismissal

Under the "Catalogue of Technologies Prohibited or Restricted from Export" in effect at the time of invention, the export of "wireless communication technologies," including four key control points, was restricted. Dkt. 156-17. Apple's technical expert confirmed that the '347 patent is restricted under these control points: the '347 technology falls under "Broadband antenna arrays exceeding one octave [center frequency ≥ 100%]" and may also satisfy "Fast acquisition technology for CDMA burst signals with C/No below 46 dB.Hz." Supp. Yang Decl. pp. 19-20 § 3. The '347 patent is therefore restricted technology that SAGE needed a license to export. Even if the '347 patent was not restricted, registration was still required to export the technology and Cobblestone has not provided any evidence of such registration. Supp. Yang Decl. pp. 20-21 § 4.

Cobblestone argues (Response § IV.B) that [redacted], but even if true, Cobblestone provides no evidence that any export restriction was actually observed.[3] Contrary to Cobblestone's argument, Chinese government sources publicly publish technology export licenses, but there is no such license from SAGE here. Supp. Yang Decl. pp. 16-17 § 1.1. Cobblestone acknowledges the "absence from the public record" of an export control license or application. Response 20. A Chinese court would infer from this that no license was issued and export controls were not observed. Supp. Yang Decl. pp. 17-18 § 1.2. Cobblestone's speculation that export controls were observed merely because [redacted] is baseless and Cobblestone lacks ownership and standing for this independent reason.

### D. Cobblestone's Chinese Law Bona Fide Purchaser Argument is Meritless

3 [redacted]

[redacted]

Cobblestone's bona fide purchaser argument under Chinese law (Response §§ II.B.7, IV.A.5) fails because Cobblestone cannot establish that any party in the assignment chain obtained title. SAGE cannot be a bona fide purchaser because SAGE is Yin's alter ego and had knowledge of Yin's university employment and obligations. Supp. Yang Decl. pp. 13-14 § 2.1. In fact, [redacted] Similarly, [redacted] is not a bona fide purchaser because [redacted] Supp. Yang Decl. pp. 13-15 § 2.2. Because neither SAGE nor [redacted] was a bona fide purchaser, neither gained title.

As to Cobblestone's purchase from Empire, that transaction was between two U.S. entities and is governed by New York law. Ex. 17 at 9.6. Cobblestone does not argue it is a bona fide purchaser under U.S. law. Nor could it, because U.S. bona fide purchaser law "is by its terms limited to situations in which the patent owner makes inconsistent assignments, grants, or conveyances to two entities." *Rhone Poulenc Agro, S.A. v. DeKalb Genetics Corp.*, 284 F.3d 1323, 1327 (Fed. Cir. 2002). Here, there were not inconsistent assignments from a patent owner, but rather an attempted transfer by a party with no rights in the patent in the first place, which has no effect. *See Rasmussen Instruments, LLC v. DePuy Synthes Prods., Inc.*, No. 2023-1855, 2025 WL 2828185, at *4 (Fed. Cir. Oct. 6, 2025) ("It is undisputed that Dr. Rasmussen attempted to convey his rights in the Asserted Patents to Rasmussen Instruments in 2020. However, for that transfer to have had any effect, Dr. Rasmussen must have owned the patents at that time.").

## II. THE EMPIRE PRODUCTION IS WAIVED AND ONLY FURTHER UNDERMINES COBBLESTONE'S STANDING CLAIM

### A. The Court Should Not Consider the Empire Documents

[redacted]

As described above, Cobblestone's Response fails to establish standing even based on the newly produced Empire documents which cannot change that the '347 patent is a service invention for Tongji. The Court need not even consider these arguments, however, because while a ***defendant*** cannot waive a defense of lack of standing, a ***plaintiff*** can waive arguments in favor of standing, just as Cobblestone has done here. *E.T. v. Paxton*, 41 F.4th 709, 718 n.2 (5th Cir. 2022) ("arguments in favor of standing, like all arguments in favor of jurisdiction, can be forfeited or waived. But the same cannot be said for arguments against jurisdiction . . . ." (citations omitted)); *see also Ctr. for Biological Diversity v. United States Env't Prot. Agency*, 937 F.3d 533, 542 (5th Cir. 2019) (holding the same and collecting cases).

Here, Russ August & Kabat ("RAK")—simultaneously representing both Empire and Cobblestone—produced documents relevant to standing (and to damages and non-infringement) more than eight months after Apple's subpoena to Empire, five months after fact discovery closed, and a month after Apple and its experts submitted filings on Chinese law and standing. Apple's December 2025 subpoena to Empire specifically requested any "right, title, chain-of-title, lien, ownership, interest, or license in or Relating to the '347 patent and agreements Relating to the transfer, sale, or assignment of such interest," and "analyses or reports regarding the '347 patent." Ex. 18 Requests 7, 10. RAK admits that the new Empire production is responsive to the alleged "full and complete ***chain of title***," yet curiously argues that "it is unreasonable" for Empire to have known that Apple's subpoena (that specifically asked about the chain of title) encompassed these documents.[4] Ex. 20 at 1. Moreover, RAK argues that these documents were identified late because "Empire's search was conducted responsive to Apple's false allegations and baseless

[4] Further, RAK admits that [redacted]

**FILED UNDER SEAL**

Chinese-law theories," (*id.* at Q.5) but this explanation ignores that Empire's production includes [redacted] which are clearly responsive to issues outside of Chinese law, including [redacted]

- [redacted]
- [redacted]
- [redacted]

That third-party Empire, rather than Cobblestone, produced these documents does not save Cobblestone. Cobblestone and Empire are closely aligned entities that share the same counsel and are coordinating in this matter. For example, early in this case RAK produced Empire documents bearing Cobblestone Bates numbers. Ex. 19. Moreover, Cobblestone was able to solicit Empire to search for and identify documents in response to Apple's Rule 12(b)(1) motion (Ex. 20 at Q.7), and appears to have gained knowledge of these documents before Empire's production to Apple.[5]

Given the timing and circumstances of Empire's production, Cobblestone's reliance on these documents is waived. Without these, Cobblestone's only argument for standing rests on the recorded chain of title, which Apple's opening brief shows is fatally flawed for the independent reasons that Yin lacked initial ownership and for lack of export control compliance.

[5] Cobblestone's Aug. 17 filing (Dkt. 191) stated "Shanghai SAGE was tasked by Empire's predecessor entity to contribute an inventive solution" which appears to be a reference to [redacted] Dkt. 191 at 11. Empire did not produce the documents identifying [redacted] to Apple until Aug. 19.

[redacted]

### B. The Empire Documents Create Further Problems With Cobblestone's Claim to Ownership Through [redacted]

Empire's untimely production reveals for the first time that [redacted] was involved in the chain of title, but [redacted] The recorded '347 assignment chain goes from Yin to SAGE to Empire to Cobblestone, and Cobblestone previously argued ownership based on this "unbroken chain of publicly recorded assignments." Dkt. 119 at 1. But the Empire documents show that [redacted] Ex. 14. Cobblestone has not explained how the technology went from [redacted] Empire or Cobblestone, or how Cobblestone obtained ownership from this newly identified party. The new documents thus establish that Empire did not own the '347 patent or have the ability to transfer it to Cobblestone, providing an independent problem with Cobblestone's standing claim.

### C. If the Case Proceeds, the Empire Documents Require Additional Discovery

This case should be dismissed because Cobblestone cannot establish standing, whether or not the Empire documents are considered. If, however, the Court does not dismiss this case, the new fact issues raised by this untimely production require additional discovery to allow for investigation of at least the following:

- Documents and deposition subpoenas of [redacted] to investigate the sequence of events that occurred affecting ownership, including documents relating to [redacted]
- A new deposition of Empire's corporate representative as to its belated discovery of responsive documents and the substance of these documents. *See* Ex. 20.
- Discovery into the Chinese parties (Professor Yin, [redacted]) to investigate relevant events including Professor Yin's Tongji employment, any agreements between Yin and SAGE, [redacted], and any export control provisions taken by SAGE and/or [redacted].
- New expert discovery to allow Apple's experts to fully consider and opine on the new production, [redacted]

[redacted]

DATED: September 11, 2026

Respectfully submitted,

*/s/ Kevin J. Post*

Brandi Young
Texas Bar No. 24045988
**KEITH & LORFING**
312 E Illinois Ave Ste 4
Midland, TX 79701
Telephone: (325)-480-8100
brandi@lorfinglaw.com

Steven J. Wingard
Texas Bar No. 00788694
swingard@scottdoug.com
Stephen L. Burbank
Texas Bar No. 24109672
sburbank@scottdoug.com
Robert ("Robby") P. Earle
Texas Bar No. 24124566
rearle@scottdoug.com
**SCOTT DOUGLASS & MCCONNICO LLP**
303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512) 495-6300
Facsimile: (512) 495-6399

Ruffin B. Cordell
**FISH & RICHARDSON, P.C.**
1000 Maine Avenue, SW, Suite 1000
Washington, DC 20024
Telephone: 202-626-6449
Fax: 202-783-2331
cordell@fr.com

Roger Allen Denning
**FISH & RICHARDSON, P.C.**
12860 El Camino Real, Suite 400
San Diego, CA 92130-2081
Telephone: (858) 678-5070
Fax: 858-678-5099
denning@fr.com

Steven Pepe
(NY Bar No. 2810430)
Kevin J. Post
(NY Bar No. 4382214)
Alexander E. Middleton
(NY Bar No. 4797114)
Lance W. Shapiro
(NY Bar No. 5397955)
Brian P. Lebow
(NY Bar No. 5992573)
John J. Healy Jr.
(NY Bar No. 6172662)
**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
30 Rockefeller Plaza
New York, NY 10112-0015
Telephone: (212) 653-8700
Facsimile: (212) 653-8701
spepe@sheppard.com
kpost@sheppard.com
amiddleton@sheppard.com
lshapiro@sheppard.com
blebow@sheppard.com
jhealy@sheppard.com

Ryan C. Brunner
(DC Bar No. 241467)
**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
2099 Pennsylvania Avenue, N.W., Suite 100
Washington, DC 20006-6801
Telephone: (202) 747-1900
Facsimile: (202) 747-1901
rbrunner@sheppard.com

*Attorneys for Defendant Apple Inc.*

[redacted]

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on September 11, 2026, all counsel of record who have appeared in this case are being served with a copy of the foregoing via email.

*/s/ Robby Earle*
Robert P. Earle