[redacted]

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| COBBLESTONE WIRELESS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Case No. 7:24-cv-00232-DC<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT APPLE INC.'S *DAUBERT* MOTION TO EXCLUDE OPINIONS OF STEPHEN E. DELL IN HIS JULY 24, 2026 SUPPLEMENTAL EXPERT REPORT RELATING TO DAMAGES**

[redacted]

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ..... 1

II. BACKGROUND ..... 2

III. LEGAL STANDARD ..... 4

A. Admissibility of Expert Opinions ..... 4

B. Apportionment to the Value of the Claimed Features ..... 5

IV. ARGUMENT ..... 5

A. Mr. Dell's Failure to Apportion Unclaimed and Unaccused 4G/LTE, 3G, and 2G Functionality Warrants Exclusion ..... 6

B. Mr. Dell's Unjustified 100% Award to Cobblestone Warrants Exclusion ..... 7

C. Mr. Dell's Sliding Scale to Inflate Damages Violates the Law ..... 8

D. Mr. Dell Continues to Rely Improperly on the Profit Margin for the Entire iPhone/iPad Device, Contrary to the Court's Order ..... 9

V. CONCLUSION ..... 10

[redacted]

# TABLE OF AUTHORITIES

Page(s)

Cases

*Aro Mfg. Co. v. Convertible Top Replacement Co.*
377 U.S. 476 (1964)....8

*CloudofChange, LLC v. NCR Corp.*
No. 6:19-CV-00513-ADA, 2021 WL 11549625 (W.D. Tex. Nov. 1, 2021)....5

*Commonwealth Sci. & Indus. Rsch. Organisation v. Cisco Sys., Inc.*
809 F.3d 1295 (Fed. Cir. 2015)....5

*Contour IP Holding, LLC v. GoPro, Inc.*
No. 3:17-CV-04738-WHO, 2020 WL 5106845 (N.D. Cal. Aug. 31, 2020)....8

*Dig. Reg of Tex., LLC v. Adobe Sys., Inc.*
No. 4:12-cv-01971 CW, 2014 WL 4090550 (N.D. Cal. Aug. 19, 2014)....9

*Ericsson, Inc. v. D-Link Sys., Inc.*
773 F.3d 1201 (Fed. Cir. 2014)....5

*Garretson v. Clark*
111 U.S. 120 (1884)....5

*Georgia-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc.*
446 F.2d 295 (2d Cir. 1971)....8

*Hughes Tool Co. v. Dresser Indus., Inc.*
816 F.2d 1549 (Fed. Cir. 1987)....8

*Knight v. Kirby Inland Marine Inc.*
482 F.3d 347 (5th Cir. 2007)....5

*Lucent Techs., Inc. v. Gateway, Inc.*
580 F.3d 1301 (Fed. Cir. 2009)....1, 8, 9

*Moore v. Ashland Chem. Inc.*
151 F.3d 269 (5th Cir. 1998)....5

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*
904 F.3d 965 (Fed. Cir. 2018)....5

*Uniloc USA, Inc. v. Microsoft Corp.*
632 F.3d 1292 (Fed. Cir. 2011)....8

*VirnetX, Inc. v. Cisco Sys., Inc.*
767 F.3d 1308 (Fed. Cir. 2014)....8

[redacted]

Other Authorities

Fed. R. Evid. 702 ....................................................................................................................4

[redacted]

# TABLE OF EXHIBITS

| Exhibit | Description |
|---|---|
| A | Supplemental Expert Report of Stephen E. Dell, CVA Relating to Damages (July 24, 2026) |
| B | Excerpt of the Expert Report of Stephen E. Dell, CVA Relating to Damages (March 27, 2026) |
| C | Excerpt of the Julia R. Rowe Supplemental Expert Report Regarding Damages (September 11, 2026) |
| D | Excerpt of the Deposition Transcript of Stephen E. Dell, CVA (September 17, 2026) |
| E | Excerpt of the Deposition Transcript of Stephen E. Dell (April 29, 2026) |
| F | Excerpt of the Julia R. Rowe Rebuttal Expert Report Regarding Damages (April 17, 2026) |
| G | Excerpt of the SDX80M Data Sheet (APL-COBLESTN_00303845) |
| H | Excerpt of Cobblestone's First Supplemental Infringement Contentions (September 19, 2025) |
| I | Excerpt of DELL_009689, Mobile Connections Share (2G-3G-4G-5G) North America 2015-2025 |
| J | Excerpt of COBB_APPLE_022069, Time-to-Content - Great User Experience on 5G Mid-Band |

*All emphasis added unless otherwise noted.

[redacted]

# I. INTRODUCTION

Defendant Apple Inc. ("Apple") respectfully moves to exclude the entirety of Mr. Stephen Dell's opinions in his July 24, 2026 supplemental damages report ("Dell Supplement") because it suffers from the same fundamental errors that led the Court to strike Mr. Dell's original March 27, 2026 damages report ("Original Report").

The unreliability of Mr. Dell's analysis is demonstrated by his new damages figure: despite now starting his analysis with a smallest salable patent-practicing unit ("SSPPU") that is [redacted] times less than the one in his original struck opinion (i.e., the $25 baseband chipset rather than the [redacted] iPhone/iPad), the Dell Supplement improperly ***inflates his final damages figure to an amount higher than the one in his original report***. Ex. B ¶ 21 [redacted]; Ex. A ¶ 11 [redacted]. Inflating the royalty rate to compensate for a smaller base "cannot be an acceptable way to conduct an analysis of what the parties would have agreed to in the hypothetical licensing context." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1338 (Fed. Cir. 2009).

Mr. Dell reached this flawed conclusion by entirely omitting apportionment steps from his new analysis that he thought were required in his original analysis. Then, Mr. Dell compounded that error by improperly applying the profit margin for the entire iPhone/iPad to the baseband chipset. Both of these errors make the Dell Supplement unreliable and warrant exclusion.

**Failure to Apportion**: Mr. Dell's failure to apportion the accused 5G beamforming functionality Cobblestone says infringes the '347 patent from the numerous functions in the chipset is a significant error warranting exclusion. There is no dispute that the accused cellular baseband chipsets support multiple communication standards: 5G ***and*** 4G/LTE, 3G, and 2G. It is also undisputed that 4G/LTE, 3G, and 2G are not accused of infringement. *E.g.*, Ex. B ¶¶ 3, 41; Dkt. 141 at 4. Indeed, Mr. Dell previously admitted that other cellular standards must be apportioned out and purported to do so in his Original Report. *E.g.*, Ex. B ¶ 399 ("[F]urther apportionment

[redacted]

would be required to isolate the incremental value of 5G beyond that of the other cellular standards, such as 4G and LTE [sic].”). The Dell Supplement fails to apportion to isolate 5G, which inflated his damages by including unaccused standards, and he then awards Cobblestone 100% of the profit he attributes to the invention. Had Mr. Dell included his Original Report’s “5G apportionment factor” to isolate profit attributable to 5G demand, his damages figure would be [redacted], consistent with Apple’s expert’s opinion of no more than [redacted]. Ex. C ¶ 10; Ex. A ¶ 2.

Mr. Dell mischaracterized his omission as being “at the direction of the court.” Ex. D at 45:21-23 (“[T]here was a slight adjustment upward because that starting value of 5G was increased at the direction of the court.”). But there was no such instruction. The Court confirmed that Mr. Dell’s original analysis started with the wrong SSPPU—the entire iPhone/iPad—and found that “the SSPPU is the baseband chipset.” Dkt. 169 (“Order”) at 9. Mr. Dell’s new analysis sidesteps the Order and skip the 5G apportionment step to increase his damages figure.

**Unsupported Profit Margin**. Mr. Dell’s use of an unsupported profit margin in his analysis is an additional basis for exclusion. This Court struck that Mr. Dell’s opinions relying on the entire iPhone/iPad. The Dell Supplement reintroduces this error by applying the [redacted] profit margin of the entire device rather than the profit associated with the cellular baseband chipset, but identifies no evidence that the profit margin of the entire device should be applied to the baseband chipset, despite evidence that the baseband chipset profit margin is actually only 20%. Ex. A ¶ 5.

Apple respectfully requests that the Court exclude the entirety of the Dell Supplement.

## II. BACKGROUND

**The Original Dell Report**. Mr. Dell’s Original Report included two damages analyses, both of which started with the average sales price of the accused iPhones/iPads. In his first analysis, Mr. Dell multiplied the [redacted] ASP of the accused iPhone/iPad products by his own “***5G Apportionment Factor***” of [redacted] (representing alleged consumer demand for 5G) to determine

[redacted]

the purported value of 5G in the accused products [redacted]. Ex. B ¶ 421. Mr. Dell then applied his opinion of Apple's "standard profit margin" of [redacted]—also based on entire products—to determine the "Profit Attributed to ***Apportioned 5G Value***." *Id.* ¶ 423. Finally, Mr. Dell applied three factors to allegedly separate the benefit of the '347 patent from the value of 5G as a whole, concluding with his so-called "Fully Apportioned Benefit of '347 Patent." *Id.* ¶ 498.

In the second analysis, Mr. Dell opined that "the inclusion of 5G technology" creates a "price premium" of [redacted] in the accused products as a whole. *Id.* ¶¶ 412, 424. Mr. Dell then applied a 20% reduction factor for "***the value of the 5G standard within a multimode device***," to value 5G technology within the entire iPhone/iPad device "in the range of [redacted]." *Id.* ¶ 485. Applying Mr. Dell's claimed profit margin resulted in an alleged [redacted] 5G profit per unit, far exceeding the entire $5 profit margin on the baseband chipset. *Id.* ¶ 424. Mr. Dell then applied his three patent apportionment factors to that inflated margin. *Id.*

**Apple's Initial *Daubert* Motion and the Court's Order**. Apple timely moved to exclude the analysis in Mr. Dell's Original Report invoking the entire market value rule through his opinion that the SSPPU is "the Accused Product itself (i.e., iPhone and iPad)," despite failing to show (or even allege) that "the patented feature drives the demand for an entire multi-component product." Dkt. 89 at 7-8 (citation omitted); Ex. B ¶¶ 74-77. Indeed, Mr. Dell's analysis concluded that only "[redacted] of consumer demand was focused on the 5G technology." *Id.* ¶ 523. And, Mr. Dell confirmed at his first deposition that [redacted] of consumer demand is value that consumers apply to features ***other than 5G***. Ex. E at 83:18-87:8.[1]

The Court granted Apple's *Daubert* motion, finding that Mr. Dell improperly invoked the

[1] Mr. Dell also determined that 5G consumer demand would decrease after the initial excitement of 5G functionality waned, such that [redacted] is likely higher than reality. Ex. B, Att. 7.

[redacted]

entire market value rule and instead should have relied on the baseband chipset as the SSPPU rather than on Dr. Williams's "legally erroneous" opinion that the SSPPU was the entire device. *See* Dkt. 169 at 4-10. After the Court's Order, the parties agreed to strike certain portions of the Original Report, but disputes remained. *See generally* Dkt. 213; *id.*, Exs. A-B.[2]

**The Dell Supplement**. Cobblestone served the Dell Supplement on July 24, 2026, but that report fails to resolve the issues from the Original Report and employs a new, flawed methodology that no longer attempts to apportion the value of 5G from other features. The Dell Supplement begins with the cost of the baseband chipset and an inflated calculated profit on that chipset.[3] In contrast to his Original Report, Mr. Dell then moves directly to what he says is Cobblestone's share of that ***entire chipset profit*** without ever apportioning out the non-5G portions of the chipset, including all functionality for the 4G/LTE, 3G, and 2G standards. Ex. A ¶ 7. The Dell Supplement is plagued by apportionment failures and should be struck. *See* Dkt. 205 at 3-5, 7-9.

## III. LEGAL STANDARD

### A. Admissibility of Expert Opinions

Expert opinion is admissible only if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. The proponent bears the

[2] Despite agreeing to strike certain arguments relating to the value of the accused products as a whole (Attachments 4.1-4.5 of the Original Report), Cobblestone refused to strike Attachment 4.6 (Mr. Dell's calculation of Apple's alleged standard profit margin on the entire accused products based on the preceding attachments). *See* Dkt. 213 at 1, 12-15; Ex. A at 201-218 (Att. 4.1-4.6).

[3] Mr. Dell provides two calculations with two different profit margins, 20% and [redacted]. The latter inflates profit by using the entire-accused-product-based profit margin of [redacted] rather than any assessed profit margin for the SSPPU chipset (i.e., 20%).

[redacted]

burden of proving an expert's reliability by "a preponderance of the evidence." *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). A court considers "whether the theory or technique the expert employs is generally accepted; whether the theory has been subjected to peer review and publication; whether the theory can and has been tested; whether the known or potential rate of error is acceptable; and whether there are standards controlling the technique's operation." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007). This "applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion[.]" *Id.* at 355 (quotation omitted).

### B. Apportionment to the Value of the Claimed Features

"A patentee is only entitled to a reasonable royalty attributable to the infringing features." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 977 (Fed. Cir. 2018). The patentee must "give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features." *Garretson v. Clark*, 111 U.S. 120, 121 (1884); *see also Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226-27 (Fed. Cir. 2014) (royalties must be apportioned between infringing and non-infringing features); *CloudofChange, LLC v. NCR Corp.*, No. 6:19-CV-00513-ADA, 2021 WL 11549625, at *2 (W.D. Tex. Nov. 1, 2021). "[T]o be admissible, all expert damages opinions must separate the value of the allegedly infringing features from the value of all other features." *Commonwealth Sci. & Indus. Rsch. Organisation v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015).

## IV. ARGUMENT

The Dell Supplement should be excluded because Mr. Dell's analysis does not even attempt to apportion value to only the accused 5G beamforming functionality. Mr. Dell's failure is surprising given that his Original Report did attempt to separate claimed 5G technology value from unaccused 4G/LTE, 3G, and 2G technology. Making his failure to apportion worse, Mr. Dell

[redacted]

then inexplicably hands all of the profit he associated with the invention to Cobblestone, leaving no incentive for Apple to ever adopt the technology. Moreover, established law forbids Mr. Dell's effort to simply adjust his calculation to maintain damages when forced to confront the correct SSPPU. Finally, the Dell Supplement's unreliability—and likelihood to confuse the jury—is compounded by Mr. Dell applying his calculated profit margin ***of the entire iPhone/iPad device*** as the "Profit Margin on ***Baseband chipset***." Ex. A ¶ 7 (applying a [redacted] profit rate as the "Profit Margin on Baseband chipset"). For at least these reasons, the Dell Supplement should be excluded.

### A. Mr. Dell's Failure to Apportion Unclaimed and Unaccused 4G/LTE, 3G, and 2G Functionality Warrants Exclusion

Mr. Dell is indisputably required to apportion down to only claimed features/functionality, which Cobblestone admits relates exclusively to 5G functionality. Dkt. 141 at 4 (identifying only products that support 5G NR functionality as the accused products). Indeed, Mr. Dell acknowledged in his Original Report that his price premium theory "relates to the inclusion of ***cellular technology generally, not isolated only to the incremental contribution or value of just 5G technology*** over prior standards of cellular technology." Ex. B ¶ 399. As such, "further apportionment would be required to isolate ***the incremental value of 5G beyond that of the other cellular standards***." *Id.* ¶¶ 399, 419 ("[T]he portion of value attributed to 5G, apart from the value of 4G multimode cellular standards, would be approximately 20%."); Ex. D, 17:22-19:21. Similarly, in his Original Report relying improperly on the entire iPhone/iPad average sales price, Mr. Dell applied a "5G Apportionment Factor" of [redacted] to reach the portion of the accused product profit purportedly "Apportioned to 5G Technology." Ex. B ¶ 421. Although based on a flawed SSPPU, Mr. Dell's original analysis went from (1) the (improper) alleged profit on the Apple devices as a whole to (2) the portion of that profit allegedly attributable to 5G to (3) the purported value of the '347 patent to the accused 5G "beamforming" functionality.

[redacted]

In stark contrast—and in a transparent attempt to maintain Cobblestone's inflated damages demand—the Dell Supplement now goes from (1) the profit on the baseband chipset ***directly to*** (3) the purported value of the '347 patent, skipping (2) the "5G Apportionment Factor" [redacted] altogether and ignoring that the baseband chipset includes substantial technologies outside of 5G.[4] *See* Ex. D at 43:8-44:17. Mr. Dell's omission thus improperly assumes that 100% of the baseband chipset profit is attributable to 5G, ignoring that the chipsets also include 4G/LTE, 3G, and 2G.

This oversight is not trivial: cited in Mr. Dell's own Original Report are studies confirming that 4G/LTE, 3G, and 2G communications are still used most of the time by U.S. consumers. *See, e.g.*, Ex. B ¶ 63 n.106; Ex. I at 2. Indeed, Mr. Dell arrives at his 57.4% "Extent of Use of Infringing Features" factor by relying on an Ericsson report that confirms that "***total 5G activity represented 47% of total user activity***," meaning that the remaining ***majority*** represented 4G/LTE, 3G, or 2G use. Ex. B ¶ 495; Ex. C ¶ 12; Ex. D, 37:6-38:16; Ex. J.[5] In fact, as of the hypothetical negotiation in October 2020, that same report shows ***only 4% use of 5G***. Ex. B ¶ 495; Ex. J. None of the remaining "apportionment factors" (Ex. A ¶ 7) apportion 5G relative to any other cellular standard, at best dividing up value within 5G. Ex. C ¶ 12; *see generally* Ex. D at 32:6-40:10.

### B. Mr. Dell's Unjustified 100% Award to Cobblestone Warrants Exclusion

Mr. Dell's failure to apportion is compounded when his opinion gives Cobblestone ***100%*** of the profit allegedly attributable to the '347 patent without basis or justification. Courts have consistently rejected this approach, because no hypothetical product maker would agree to bear all

---

[4] The baseband chipset is responsible for "all cellular connectivity—not just 5G, but also 4G, 3G, and 2G." Ex. F ¶ 299; Ex. G at 1 [redacted]; Ex. H at 1-2 (Cobblestone's infringement contentions identifying a 15 specification showing support for 5G ("NR"), 4G ("LTE"), 3G ("UMTS"), and 2G ("GSM")).

[5] In both Original Report and Dell Supplement, this calculated 57.4% figure (Ex. B ¶¶ 495-496, 498; Ex. A ¶ 7) is the relative proportion of 5G midband (27%) of the total use of 5G (47%), ***not*** an apportionment of the relative proportion of 5G to 4G/LTE, 3G, or 2G.

[redacted]

the risks of implementing a technology and then hand over all the resultant profits to the patentee.[6] The law is clear: "a reasonable royalty must be fixed so as to leave the infringer a reasonable profit." *Hughes Tool Co. v. Dresser Indus., Inc.*, 816 F.2d 1549, 1558 (Fed. Cir. 1987); *see also Georgia-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295, 299 (2d Cir. 1971) (reversing royalty that "gobble[d] up all of GP's expected profit"). "[I]t would be unreasonable and unreliable for [the damages expert] to conclude that 100% of profits associated with the infringing technology would go to [the patentee]." *Contour IP Holding, LLC v. GoPro, Inc.*, No. 3:17-CV-04738-WHO, 2020 WL 5106845, at *14 (N.D. Cal. Aug. 31, 2020). Mr. Dell "disgorges" 100% of the profit associated with the patented technology—a remedy that Congress long ago eliminated. *See Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 505 (1964) (holding § 284 "eliminate[d] the recovery of [the infringer's] profits . . . and allow[s] recovery of damages only"). Mr. Dell's 100% allocation to Cobblestone should not stand.

### C. Mr. Dell's Sliding Scale to Inflate Damages Violates the Law

Deprived of his entire iPhone/iPad royalty base, Mr. Dell simply adjusted his apportionment analysis to maintain (and actually increase) his damages opinion in direct violation of law. Mr. Dell concludes that Cobblestone is entitled to [redacted], ***$10.5 million more*** than his original damages figure. The Federal Circuit rejected this approach in *Lucent*, explaining:

> What Lucent's licensing expert proposed here does not comport with the purpose of damages law or the entire market value rule. Lucent's expert tried to reach the damages number he would have obtained had he used the price of the entire computer as a royalty base. Being precluded from using the computer as the royalty base, he used the price of the software, but inflated the royalty rate accordingly. This cannot be an acceptable way to conduct an analysis of what the parties would have agreed to in the hypothetical licensing context.

[6] This 100%-of-profit theory is indistinguishable from rejected "rules of thumb." *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1314-15 (Fed. Cir. 2011) (rejecting 25% rule of thumb); *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1333-34 (Fed. Cir. 2014) (rejecting 50% profit split starting point).

[redacted]

*Lucent*, 580 F. 3d at 1338; *see also Dig. Reg of Tex., LLC v. Adobe Sys., Inc.*, No. 4:12-cv-01971 CW, 2014 WL 4090550, at *4 (N.D. Cal. Aug. 19, 2014) (excluding an alternative calculation that "increased the rate proportionally to arrive at the same ultimate damages figure"). Had the Dell Supplement applied the consumer demand "5G apportionment factor" in his Original Report to isolate value attributable to 5G in the baseband chipset, Mr. Dell's damages range would be [redacted], matching Ms. Rowe's opinion of no more than [redacted]. Ex. A ¶ 10; Ex. C ¶ 2.

Mr. Dell attempts to excuse his new damages theory by claiming that "Apple's own damages expert, Julia Rowe, performed the identical calculation in her rebuttal report." Ex. A ¶ 8. Not so. The full exhibit that Mr. Dell cites reveals that Cobblestone is pointing to Ms. Rowe's ***criticism*** of Mr. Dell's now-abandoned "Price Premium" theory, where she highlighted that Mr. Dell was seeking damages exceeding the entire baseband chipset profit. Ex. F, Exhibit 3.1, cols. 5-6. Ms. Rowe conducted this analysis "[f]or purposes of illustration" and explained that this reduction still "do[es] not fully correct Mr. Dell's work." *See* Ex. F ¶¶ 139-140; Ex. C ¶ 8 ("At no point did I claim to fully correct Mr. Dell's work; a calculation was provided merely to illustrate the magnitude of errors in Mr. Dell's approach."). Moreover, columns 1-4 show Ms. Rowe's adjustments to Mr. Dell's "Apportionment of Value to the Benefit Attributed to the '347 Patent" (which is the only theory that the Dell Supplement claims to apply), and every one of these columns properly applies the [redacted] 5G Apportionment Factor that Mr. Dell has now abandoned. Ex. F, Exhibit 3.1, cols. 1-4. Mr. Dell's cherry-picked reliance on Ms. Rowe's Exhibit 3.1 is misleading, irrelevant, and does not justify presenting a fundamentally broken damages theory.

### D. Mr. Dell Continues to Rely Improperly on the Profit Margin for the Entire iPhone/iPad Device, Contrary to the Court's Order

Contrary to the Court's Order finding that the Original Report improperly relied on the entire iPhone/iPad device, the Dell Supplement still applies the profit margin Mr. Dell calculated

[redacted]

for the ***entire iPhone/iPad*** [redacted], despite evidence in the record establishing the profit margin for the cellular chipset is 20%. *Compare* Ex. A ¶ 7 (applying a [redacted] profit rate as the "Profit Margin on Baseband chipset"), *and* Ex. B, ¶ 364 ("Apple has achieved a standard margin of [redacted] on sales of the Accused Products . . . ."), ¶ 423 (same), *with* Ex. A ¶ 5 (acknowledging evidence of a 20% profit margin for the baseband chipset), *and* Ex. B ¶ 130 (same). While Mr. Dell contends "there is evidence that Apple's profit margin on the $25 5G baseband chipset is greater than 20%, including the evidence that Apple's standard profit margin ***on the sales of the accused products*** . . . was approximately [redacted]," he cites no such evidence. Ex. A ¶ 5; Ex. D at 30:12-31:1 ("Attachment 4.6 . . . is the calculation of Apple's produced data for the accused products."). Mr. Dell admitted at deposition that he was unaware of any evidence to support applying the profit margin for the entire device to an individual component, particularly where the [redacted] profit margin is more than twice the 20% baseband chipset profit margin. *See* Ex. D at 31:11-23.[7]

Mr. Dell's calculated per-device profit margin improperly inflates his damages opinions. Mr. Dell compounds his error by calling this entire accused iPhone/iPad profit margin the "Profit Margin on ***Baseband chipset***," without explanation or justification. Ex. A ¶ 7. There is a substantial risk that Mr. Dell's opinions will mislead the jury into believing that the wrong profit margin applies to the baseband chipset. The Court should strike Mr. Dell's opinions with respect to the alternative calculation applying his [redacted] profit margin calculation (which he indisputably calculated for the entire iPhone/iPad), rather than the actual, lower baseband chipset profit margin.

## V. CONCLUSION

Apple respectfully requests that the Court strike the Dell Supplement in its entirety.

[7] Cobblestone takes inconsistent positions regarding the portions of the Original Report that are struck, agreeing with Apple that Attachments 4.1-4.5 are struck because they rely on calculations relating to the entire iPhone/iPad, but contending that the [redacted] profit margin that relies on those same calculations should ***not*** be struck. *See* Dkt. 213 at 1; *id.*, Ex. A at 201-218 (Att. 4.1-4.6).

[redacted]

DATED: October 2, 2026

Respectfully submitted,

*/s/ Kevin J. Post*

Brandi Young
Texas Bar No. 24045988
**KEITH & LORFING**
312 E Illinois Ave Ste 4
Midland, TX 79701
Telephone: (325)-480-8100
brandi@lorfinglaw.com

Steven J. Wingard
Texas Bar No. 00788694
swingard@scottdoug.com
Stephen L. Burbank
Texas Bar No. 24109672
sburbank@scottdoug.com
Robert ("Robby") P. Earle
Texas Bar No. 24124566
rearle@scottdoug.com
**SCOTT DOUGLASS & MCCONNICO LLP**
303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512) 495-6300
Facsimile: (512) 495-6399

Ruffin B. Cordell
Michael J. McKeon
**FISH & RICHARDSON, P.C.**
1000 Maine Avenue, SW, Suite 1000
Washington, DC 20024
Telephone: 202-626-6449
Fax: 202-783-2331
cordell@fr.com
mckeon@fr.com

Roger Allen Denning
**FISH & RICHARDSON, P.C.**
12860 El Camino Real, Suite 400
San Diego, CA 92130-2081
Telephone: (858) 678-5070
Fax: 858-678-5099
denning@fr.com

Steven Pepe
(NY Bar No. 2810430)
Kevin J. Post
(NY Bar No. 4382214)
Alexander E. Middleton
(NY Bar No. 4797114)
Lance W. Shapiro
(NY Bar No. 5397955)
Brian P. Lebow
(NY Bar No. 5992573)
John J. Healy Jr.
(NY Bar No. 6172662)
**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
30 Rockefeller Plaza
New York, NY 10112-0015
Telephone: (212) 653-8700
Facsimile: (212) 653-8701
spepe@sheppard.com
kpost@sheppard.com
amiddleton@sheppard.com
lshapiro@sheppard.com
blebow@sheppard.com
jhealy@sheppard.com

Ryan C. Brunner
(DC Bar No. 241467)
**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
2099 Pennsylvania Avenue, N.W., Suite 100
Washington, DC 20006-6801
Telephone: (202) 747-1900
Facsimile: (202) 747-1901
rbrunner@sheppard.com

***Attorneys for Defendant Apple Inc.***

[redacted]

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on October 2, 2026, all counsel of record who have appeared in this case are being served with a copy of the foregoing via email.

*/s/ Kevin J. Post*
Kevin J. Post