[redacted]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| COBBLESTONE WIRELESS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Case No. 7:24-cv-00232-DC |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| APPLE INC., | § | |
| | § | **FILED UNDER SEAL** |
| Defendant. | § | |

**PLAINTIFF COBBLESTONE WIRELESS, LLC'S OPPOSITION TO DEFENDANT APPLE INC.'S DAUBERT MOTION TO EXCLUDE OPINIONS OF STEPHEN E. DELL IN HIS JULY 24, 2026 SUPPLEMENTAL EXPERT REPORT RELATING TO DAMAGES (DKT. [224])**

[redacted]

## TABLE OF CONTENTS


I. INTRODUCTION .... 1

II. BACKGROUND .... 2

III. LEGAL STANDARD .... 3

IV. ARGUMENT .... 4

A. Mr. Dell Reliably Apportions the Chipset Value to the '347 Patent .... 4

1. Mr. Dell's [redacted] Factor Is a Device-Level Demand Metric That If Applied to the SSPPU Would Apportion Out the Same Value Twice .... 4

2. Mr. Dell's Apportionment Factors Exclude 4G and Earlier Legacy Standards .... 5

3. In any Event, Apple's $5 5G Baseband Chipset Profit is Attributable to 5G, Not 4G .... 7

B. Apple's "100% of the Profit" Argument is Factually and Legally Baseless .... 8

C. Mr. Dell Did Not "Inflate" His Rate to Reach a Predetermined Number .... 9

D. The [redacted] Margin Provides No Basis to Exclude the Supplement .... 9

V. CONCLUSION .... 10

[redacted]

# TABLE OF AUTHORITIES

## Cases

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) .................... 3

*Digital Reg of Texas, LLC v. Adobe Systems, Inc.*,
No. 4:12-cv-01971 CW, 2014 WL 4090550 (N.D. Cal. Aug. 19, 2014) .................... 9

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
717 F.3d 1336 (Fed. Cir. 2013) .................... 9

Eco*Factor, Inc. v. Google LLC*,
137 F.4th 1333 (Fed. Cir. 2025) (en banc) .................... 3

*Georgia-Pacific Corp. v. U.S. Plywood-Champion Papers, Inc.*,
446 F.2d 295 (2d Cir. 1971) .................... 3, 9

*Golight, Inc. v. Wal-Mart Stores, Inc.*,
355 F.3d 1327 (Fed. Cir. 2004) .................... 9

*Hughes Tool Co. v. Dresser Indus., Inc.*,
816 F.2d 1549 (Fed. Cir. 1987) .................... 9

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009) .................... 9, 10

*Summit 6, LLC v. Samsung Elecs. Co.*,
802 F.3d 1283 (Fed. Cir. 2015) .................... 9

*VirnetX, Inc. v. Cisco Sys., Inc.*,
767 F.3d 1308 (Fed. Cir. 2014) .................... 3

*Willis Elec. Co. v. Polygroup Ltd.*,
*166 F.4th 1363, 1374 (Fed. Cir. 2026)* .................... 3, 8, 10

[redacted]

## TABLE OF EXHIBITS

| Exhibit | Description |
| --- | --- |
| 1 | Excerpts of the Expert Report of Stephen E. Dell, CVA Relating to Damages (Mar. 27, 2026) ("Dell Rpt.") |
| 2 | Excerpts of the Deposition of Stephen E. Dell, CVA (Sept. 17, 2026) ("Dell Supp. Tr.") |
| 3 | Excerpts of the Deposition of Julia R. Rowe, Vol. II (Sept. 24, 2026) ("Rowe Supp. Tr.") |
| 4 | Excerpts of Julia R. Rowe's Rebuttal Expert Report Regarding Damages (Apr. 17, 2026), including Exhibits 3.0–3.1 ("Rowe Rpt.") |
| 5 | Apple Inc.'s documents bearing Bates numbers APL-COBLESTN_00278223 |
| 6 | Excerpts of Tim A. Williams, Ph.D., Opening Expert Report (Mar. 27, 2026) |
| 7 | Excerpts from the Deposition Transcript of Stephen E. Dell, CVA, (Apr. 29, 2026) |
| 8 | Excerpts from the Deposition of Catherine Spevak 30(b)(6) (Feb. 13, 2026) |

"Mot." refers to Apple's Daubert Motion (Dkt. 224). "Mot. Ex." refers to the exhibits to the Declaration of Ryan C. Brunner filed with Apple's Motion. All emphasis added unless otherwise noted.

[redacted]

## I. INTRODUCTION

The Court's *Daubert* Order held that the smallest salable patent-practicing unit ("SSPPU") is the 5G baseband chipset and observed that "there is no reason Cobblestone could not have used [the $25 chipset] price as the starting point for an income-based analysis." Dkt. 169 at 9–10. Mr. Dell did exactly that. The Court did not rule that Mr. Dell's damages were not apportioned, were too high, and/or did not split the benefit enough with Apple. To the contrary, the Court held it "does not pass judgment on the thoroughness of Mr. Dell's apportionment analysis, but rather on the starting point of his analysis…" Dkt. 169 at 9.

Mr. Dell's Supplement accordingly starts with the 5G baseband chipset component and apportions the profits to the value of cellular "speed" and the incremental speed gain enabled by the '347 patent using the same three apportionment steps from his opening report. Apple still does not challenge these steps. Mot. Ex. A ¶¶ 4–7. The result, [redacted] per unit, is not "inflated" but is the same per-unit figure Apple's own expert calculated when she substituted the $25 chipset into Mr. Dell's patent-apportionment framework. *Id.* ¶ 8; Ex. 4, Rowe Rpt. Ex. 3.1.

Apple's motion asserts that, in addition to starting with the 5G baseband chipset SSPPU, Mr. Dell must still impose his ***entire device*** apportionment steps on the component. But Mr. Dell used the [redacted] figure in his opening report to isolate the proportion of buyers who [redacted]. Ex. 1 at ¶ 378, Figure 7. It removed those buyers that [redacted]. The 5G baseband chip SSPPU ***already excludes*** the camera, display, processor, and every other device feature from the analysis. Applying the [redacted] entire device apportionment figure to the chipset would erroneously apportion the same value twice and unduly erase [redacted] of the value of the accused 5G functionality. This results in a value of 5G, which

[redacted]

Apple touted as "the beginning of a new era for iPhone" of an absurdly low [redacted] out of [redacted]. Ex. 3 at 217:8-218:7; Ex. 5 at APL-COBLESTN_00278223.

Apple's Motion similarly mis-states Mr. Dell's analysis in relation to older cellular standards, such as 4G. Mr. Dell's apportionment factors already exclude 4G and other legacy standards in multiple ways. His 20% factor, obtained from Dr. Williams, represents the '347 patent's share of cellular speed improvement beyond all non-accused features, including 4G LTE and even other 5G features. His 57.4% factor confines the royalty to the 5G phones' use of the infringing 5G mid-band mode. Mr. Dell's 72.4% factor apportions out importance of cellular features beyond "5G speed." It makes no sense to ***again*** apportion out 4G LTE connectivity in the 5G phones, as Apple proposes.

Apple's remaining arguments fail. Apple's "100% of the profit" argument is wrong factually and legally and is not properly addressed in this supplemental *Daubert* motion. Mr. Dell's opening report already explained that the hypothetical negotiation would include incremental profit datapoints as high as [redacted] and that settling on the lower/middle portion splits the incremental benefit. Apple's arguments about profit margins are similarly baseless. Apple does not directly measure profits from components like the 5G baseband SSPPU. It was proper legally and factually for Mr. Dell to consider multiple measures of profit at the hypothetical negotiation, including Apple's "standard" margin that Apple's own finance witness admits relates to "standard costs" of the cellular components.

Apple's motion should be denied in its entirety.

## II. BACKGROUND

The Court excluded Mr. Dell's reliance on the average sales price of the accused iPhones and iPads as the "starting point" for his income approach, rather than what the Court ordered is the SSPPU, the 5G baseband chip. Dkt. 169 at 9. The Court granted Cobblestone leave to supplement and limited this motion "to the scope of the supplemental report." Dkt. 211 at 1–2.

[redacted]

Mr. Dell's Supplement starts with Apple's $25 5G chipset cost and considers two profit metrics. Mot. Ex. A ¶¶ 4–5. To isolate the value of the '347 patent, Mr. Dell then applies his unchallenged apportionment factors for the '347 patent's incremental speed boost over 4G and all other technologies (20%), the importance of 5G speed beyond other cellular features (72.4%), and the extent of use of the infringing mode (57.4%), yielding a range of [redacted] per unit. *Id.* ¶¶ 6–7. Mr. Dell credits "Apple's contributions and business risks that would provide downward pressure on this apportioned profit range, as well as the parties consideration of the market benchmarks discussed in *Georgia-Pacific* Factor 12 in [his] Opening Report … [resulting] in the parties negotiating toward the lower end of the apportioned profit range…" *Id.* ¶10.

## III. LEGAL STANDARD

"Disputes that concern only the weight or credibility of otherwise reliable testimony remain matters for cross-examination." Dkt. 169 at 2 (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993)) "The distinction is particularly important in the context of patent damages because estimating a reasonable royalty 'necessarily involves an element of approximation and uncertainty.'" *Willis Elec. Co. v. Polygroup Ltd.* (Macao Com. Offshore), 166 F.4th 1363, 1374 (Fed. Cir. 2026) citing *EcoFactor, Inc. v. Google LLC*, 137 F.4th 1333, 1340 (Fed. Cir. 2025) (en banc). "[T]he [hypothetical] negotiation necessarily makes assumptions about market conditions, technological value, and bargaining positions that cannot be proven with mathematical certainty." *Willis Elec. Co.*, 166 F.4th at 1374. The Federal Circuit has recognized apportionment, in particular "may involve some degree of approximation and uncertainty," and the Federal Circuit has "never required absolute precision in this task." *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1328 (Fed. Cir. 2014).

[redacted]

## IV. ARGUMENT

### A. Mr. Dell Reliably Apportions the Chipset Value to the '347 Patent.

#### 1. Mr. Dell's [redacted] Factor Is a Device-Level Demand Metric That If Applied to the SSPPU Would Apportion Out the Same Value Twice.

Apple's motion asserts that Mr. Dell's opening report [redacted] entire device apportionment factor should have been applied to the baseband chip SSPPU in his supplemental report. Mot. at 1–2, 6–7. This does not make economic sense. Mr. Dell derived that figure from Apple's buyer surveys to demonstrate the proportion of iPhone buyers that [redacted]. Ex. 1, Dell Rpt. ¶¶ 376-379, Fig. 7, Attach. 7.1. Mr. Dell applied this to the overall ASP of the iPhone device to apportion out all value from ***entire device*** features such as the camera, display, processor, storage, and design. *Id.* ¶ 421. The 5G baseband chip SSPPU already does not include these non-cellular features. Mr. Dell explained applying this factor to a 5G chip SSPPU as Apple demands would be "inaccurate," be an "error" and "misalign economic data." Ex. 2, Dell Supp. Tr. 44:9–45:3.

Apple's attempt to impose an additional [redacted] cut from the 5G baseband chip profits yields irrational results. When Apple launched 5G with the iPhone 12, it touted 5G technology as, *inter alia*, "a new era for iPhone" that will bring "a new level of performance," is the "most exciting step yet," that the entire iPhone 12 was designed "with 5G in mind" and that Apple "analyzed [the] entire software stack from applications down to firmware to take advantage of 5G speeds." Ex. 5 at APL-COBLESTN_00278223, -224, -232, -237–38; *see also* Ex. 1 ¶ 367. Apple's own surveys show that, [redacted]. Ex. 1 ¶¶ 383, 415. Applying the [redacted] reduction to 5G value as Apple proposes yields a total "Apportioned Value of 5G Technology" of only [redacted] of the [redacted] ASP, and 5G profits much lower than that, and a minute portion of Apple's stated $5 5G baseband chip profit metric. Ex. 4, Rowe Rpt. Ex. 3.1 ("Apportioned Value of 5G Technology").

[redacted]

Mr. Dell's refusal to adopt an adjustment that is economically misaligned, yields irrational results, and is contradicted by Apple's own evidence. It is not a methodological failure and not one warranting exclusion under *Daubert*.

### 2. Mr. Dell's Apportionment Factors Exclude 4G and Earlier Legacy Standards.

Apple's argument that Mr. Dell does not remove value of older, fallback 4G technology in the 5G phones similarly fails. Mr. Dell's analysis zeroes in on the value of the (unchallenged) 20% incremental speed boost provided by the '347 patent beyond all alternatives, including 4G LTE.[1] Together, Mr. Dell's apportionment factors exclude 91.7% of the chipset profit. Mot. Ex. A ¶ 7. They do this by, *inter alia*, specifically removing the value of 4G and earlier standards.

First, Mr. Dell's 20% incremental benefit factor excludes speed benefits of all noninfringing cellular technologies, including 4G. Dr. Williams compared "a baseline 4G LTE product such as an iPhone 11" to "an infringing 5G NR product such as an iPhone 12," found a <u>6x to 10x</u> speed improvement, and attributed 16.67% to 50% of that *increment* to the "incremental benefit from the narrow beam propagation path approach of the '347 patent with the remainder of the speed boost attributable to unclaimed features," such as unclaimed 5G features. Mot. Ex. A ¶ 7 & n.15; Ex. 1, Dell Rpt. ¶¶ 491–92, *see also* ¶ 449 (the '347 patent "provide[s] for significant improvement over … the 4G cellular standard, boosting speeds by at least 20%"); fn 1, *supra*. Because the factor credits the '347 patent with only a fraction of the improvement *over 4G*, the value of 4G-level connectivity (along with all other unclaimed cellular features) is excluded. *See* Ex. 2, Dell Supp. Tr. 20:22–21:6.

Apple's reliance on Mr. Dell's prior statement that "further apportionment would be required" to isolate 5G relates to only a subset of Mr. Dell's price-premium analysis where he deducted 80%

---

[1] While Apple does not challenge Dr. Williams' 20% figure incremental speed boost figure, it is important to note that it also apportions out not only the speed of 4G LTE, but also unclaimed 5G NR features. *See* Ex. 6, Williams Rpt. ¶¶ 145-153.

[redacted]

from a price premium, comparing an iPad with no cellular functionality at all to a 5G iPad model. Mot. at 6 (citing Mot. Ex. B ¶¶ 399, 419); Ex. 1, Dell Rpt. ¶¶ 399, 419–20; Ex. 2, Dell Supp. Tr. 18:14–19:1. When Apple's damages expert, Ms. Rowe, purported to correct Mr. Dell's SSPPU analysis, even she did not apply that 80% reduction step to the 5G baseband chip SSPPU. Ex. 4, Rowe Rpt. ¶ 139 & Exs. 3.0–3.1. And as explained above, devoting 80% of 5G chipset profits to older, slower 4G, which is used in only limited circumstances, and not the "new era of iPhone" that was 5G, which [redacted] does not make economic sense.

Second, the 57.4% factor further confines the royalty to use of the infringing 5G mid-band (massive MIMO) mode, which also excludes 4G. Mr. Dell explained that the underlying Ericsson data compares 5G mid-band to 5G low-band and to 4G, and thus "isolate[s] out the extent of use relative to not only 5G relative to 4G, but further isolates and apportions specifically to the part of 5G to which the '347 patent relates to directly." Ex. 2, Dell Supp. Tr. 36:8–37:4. Apple faults him for using mid-band's share of 5G traffic (57.4%) rather than its share of *all* traffic (27%). Mot. at 7 & n.5. But the accused products are 5G phones and the Ericsson study measured all traffic on a commercial network, including "***network traffic from older mobile devices***"—unaccused 4G-only phones that could never use 5G. Using 4G as the denominator would mean the accused 5G products' actual use "would be understated." Ex. 1, Dell Rpt. ¶ 497. The Statista data Apple cites (Mot. at 7; Mot. Ex. I) suffers from the same flaw. Mr. Dell considers instead that carriers' 5G networks covered 81.9% to 87.7% of the U.S. population, making 57.4% a conservative measure. Ex. 1, Dell Rpt. ¶¶ 493–94.

*Third*, Mr. Dell's 72.4% apportionment factor eliminates an additional 27.6% of value not related to "5G speed," such as having a "reliable connection." Ex. 1, Dell Rpt. ¶¶ 388, 488–89; Mot. Ex. A ¶ 7. As explained above, 4G is much slower than 5G and there is no evidence there is any 4G speed benefit to further apportion from this metric, Ex. 3, Rowe Supp. Tr. 241:17–242:2. Furthermore, Apple's own statements make clear that, even though the 5G iPhone can in limited

[redacted]

instances connect to 4G networks and be backwards compatible, "the instant 5G speeds do matter, iPhone starts using it." Ex. 5 at APL-COBLESTN_00278239. There is no reason for Mr. Dell to further apportion his "speed" benefit figures for purported 4G connectivity, which if anything, relates to the "reliable connection" factor Mr. Dell already apportions out in this step.

As for 3G and earlier, Mr. Dell's apportionment steps similarly remove any value from those much older standards and the major U.S. carriers shut down their 3G networks by 2022. Ex. 1 ¶ 56.

Each of Mr. Dell's three apportionment factors directly and/or indirectly removes value that may be attributable to the fact that the accused products, which have 5G baseband chips, can in certain limited circumstances connect to 4G networks.

### 3. In any Event, Apple's $5 5G Baseband Chipset Profit is Attributable to 5G, Not 4G.

Apple's arguments are also based on the premise, which Apple fails to support, that some portion of the stated $5 ***profit*** for Apple's 5G baseband chipset is attributed to superseded, older, slower 4G LTE backwards compatibility. But the facts suggest otherwise. As set forth above, when Apple launched its 5G chipsets in the accused products, it touted that 5G was an entirely "new era" for iPhone and that the 5G chipset, and indeed Apple's entire software stack, was specifically designed for 5G. Ex. 5 at APL-COBLESTN_00278223, -224, -232, -237–38. Mr. Dell's Price Premium analysis[2] concludes there is a [redacted] per-unit premium for 5G over 4G in the accused products. Ex. 1, Dell Rpt. ¶¶ 418–20, 485. This is much more than Ms. Rowe's $5-$15 cost premium for the 5G chipset over 4G. Ex. 4, Rowe Rpt. ¶ 136. Mr. Dell similarly cites industry data showing that 4G phones sell for hundreds less than 5G phones. *Id.* ¶ 400. Moving to 4G would result in large relative ***losses*** for Apple. Ms. Rowe admitted she does not opine 4G is an acceptable alternative in this case and, unlike

[2] Apple describes Mr. Dell's Price Premium methodology as "abandoned" but cites nothing for that assertion, which is untrue. It remains a disputed issue in the case whether the Price Premium model, which does not begin with ASP, is still in the case. Dkt. 213 at 8–12.

[redacted]

Mr. Dell, she never analyzed whether Apple's revenue would decline if it replaced its 5G chipsets with 4G chipsets. Ex. 3, Rowe Supp. Tr. 236:23–237:6, 238:16–24, 246:22–248:12. Apple's threshold claim that some portion of its claimed $5 profit on the 5G baseband chipset stems from 4G is, at best, a dubious factual dispute about Mr. Dell's inputs, not a methodological error warranting exclusion.

**B. Apple's "100% of the Profit" Argument is Factually and Legally Baseless.**

Apple's "100% of the profit" argument is outside the permitted scope of this motion, which is "limited to the scope of the supplemental report." Dkt. 211 at 2. While Mr. Dell's Supplement introduced two datapoints based on the SSPPU ruling, Mr. Dell's negotiation framework that gave Apple financial credit for its contributions, is "unchanged" from the opening report. Mot. Ex. A ¶ 9. Apple could have, but did not challenge that aspect of Mr. Dell's opinion in its original *Daubert* motion.

In any event, Mr. Dell's opinion does not simply hand over to Cobblestone 100% of Apple's profits from infringement. Mr. Dell's original opinion derived "Fully Apportioned Benefit" datapoints ranging from [redacted], then a narrowed range of [redacted], then negotiated toward the low end to credit Apple's contributions. Ex. 1 ¶¶ 516–32. Mr. Dell's supplemental opinion simply adds [redacted] datapoints, and in an "unchanged" manner, negotiated to the lower portion of the datapoints. Mot. Ex. A ¶¶ 9-10. The methodology is the same, should have been challenged before, and explicitly devotes a share of financial credit and profit to Apple. *Id.*; Ex. 1, Dell Rpt. ¶¶ 526, 531.

Even if Mr. Dell did not share any incremental profit with Apple (and he explicitly did), that would be legally permissible. The Federal Circuit recently affirmed a damages model almost the same as Mr. Dell's, where measures of incremental profits formed the "reasonable royalty range" and the expert selected a figure within that range (i.e., higher than one of the profit measures). *Willis Elec. Co.*, 166 F.4th at 1377, 1385. *See also Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338–40 (Fed. Cir. 2004) (affirming a $31.80 per-unit royalty over the infringer's argument that any royalty "should be capped at $8.00 per unit, which was Wal-Mart's profit forecast for the product"); *Douglas Dynamics,*

[redacted]

*LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1346 (Fed. Cir. 2013) ("[T]he district court clearly erred by limiting the ongoing royalty rate based on Buyers's profit margins."). The language Apple quotes from *Hughes Tool* describes what the district court in *Georgia-Pacific* "accepted," not a holding of the Federal Circuit or a rule limiting damages to lower bound profit measures. *Hughes Tool Co. v. Dresser Indus., Inc.*, 816 F.2d 1549, 1558 (Fed. Cir. 1987).

### C. Mr. Dell Did Not "Inflate" His Rate to Reach a Predetermined Number.

*Lucent* is inapposite and does not support exclusion. There, the expert "inflated the royalty rate." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1338 (Fed. Cir. 2009). Mr. Dell "inflated" no rate. *Digital Reg of Texas, LLC v. Adobe Systems, Inc.*, No. 4:12-cv-01971 CW, 2014 WL 4090550, at *4 (N.D. Cal. Aug. 19, 2014) is inapposite for the same reason. Every apportionment factor was fixed in Mr. Dell's March report and carried forward unchanged. Mot. Ex. A ¶¶ 6–7. Apple's "[redacted] times" rhetoric compares the $25 chipset to the [redacted] device price. But the apples-to-apples comparison Apple's $5 5G baseband profit to Mr. Dell's opening report's 5G profit of [redacted] per unit. Ex. 1, Dell Rpt. ¶¶ 523–24. Apple's $5.00 5G chipset profit falls within that range, so it is not surprising the result is similar: [redacted] versus an original range of [redacted]. *Id.* ¶ 530; Ex. 2, Dell Supp. Tr. 45:15–46:21. Apple's own expert ran the same substitution and reached the ***same*** [redacted]. *Id.* ¶ 8; Ex. 4, Rowe Rpt. ¶¶ 139–40 & Ex. 3.1. As set forth above, the Court never ruled Mr. Dell's final damages figure was too high or that he needed more apportionment, the Court excluded his starting point.

### D. The [redacted] Margin Provides No Basis to Exclude the Supplement.

Mr. Dell's consideration of Apple's [redacted] "standard margin" figure calculated from Apple's financial data is reasonable and reliable. Ex. 1, Dell Rpt. ¶ 364 & Att. 4.6. *See Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1297–98 (Fed. Cir. 2015) (permitting use of "annual reports to estimate its profit margins" to value infringing camera component). Apple does not report revenue or profit by component, and Mr. Dell explained that, from a cost-accounting perspective, standard margin is

[redacted]

appropriate to use. Ex. 2, Dell Supp. Tr. 31:4–23; *see also* Mot. Ex. A ¶ 4 n.9 (citing Dell Dep. 88:14–90:3 (Apr. 29, 2026)); *see* Ex. 7, Dell Dep. 88:12–89:13 (Apr. 29, 2026) (standard margin is "the level of margin that you would use for this type of analysis…"). Apple's own corporate designee describes that the cellular components are [redacted] Ex. 8 at 41:15–19, 71:9–72:1, 116:21–117:2.

Apple's Motion fails to point to any evidence showing that the device standard margin would be irrelevant to the 5G baseband chipset. Apple's touting of 5G as being a "new era" for the iPhone that dictated the design of the entire software, firmware and hardware stack confirms the reasonableness of the measure, as does its corporate testimony.

Ms. Rowe agreed there is no "standard methodology" for attributing profit to particular components. Ex. 3 251:10–14. The 20% figure is one "derived from the chipset manufacturers" and there is no evidence it is used by the product or financial teams at Apple. *Id.* 228:10–229:17. The analytical approach "focuses on the infringer's projections of profit ***for the infringing product***." *Lucent*, 580 F.3d at 1324 (emphasis added). Which margin better reflects the hypothetical negotiators' view is a factual question for the jury.[3] *Willis Elec. Co.*, 166 F.4th at 1380 (whether expert correctly estimated profit margin "is a fact question for the jury, not a ground for exclusion.")

Apple's argument also does not support excluding the "entirety" of Mr. Dell's Supplement. Mot. at 10. Mr. Dell's royalty conclusion of [redacted] per unit centers on Apple's claimed 20% chipset margin, not the [redacted] figure derived with Apple's [redacted] "standard margin." Mot. Ex. A ¶¶ 10–11.

## V. CONCLUSION

Cobblestone respectfully requests that the Court deny Apple's *Daubert* motion.

---

[3] The parties' dispute over whether the Court's Order struck Attachment 4.6 and the [redacted] figure in Mr. Dell's opening report is already before the Court in the parties' joint statement. Dkt. 213 at 12–15. Apple's motion duplicates that dispute.

[redacted]

Dated: October 9, 2026

Respectfully submitted,

*/s/ Reza Mirzaie*

Marc Fenster
CA State Bar No. 181067
Email: mfenster@raklaw.com
Reza Mirzaie
CA State Bar No. 246953
Email: rmirzaie@raklaw.com
Benjamin T. Wang
CA State Bar No. 228712
Email: bwang@raklaw.com
Brian Ledahl
CA State Bar No. 186579
Email: bledahl@raklaw.com
Dale Chang
CA State Bar No. 248657
Email: dchang@raklaw.com
Neil A. Rubin
CA State Bar No. 250761
Email: nrubin@raklaw.com
Jacob Buczko
CA State Bar No. 269408
Email: jbuczko@raklaw.com
James N. Pickens
CA State Bar No. 307474
Email: jpickens@raklaw.com
Minna Jay
CA State Bar No. 305941
Email: mjay@raklaw.com
Jonathan Ma
CA State Bar No. 312773
Email: jma@raklaw.com
Christian W. Conkle
CA State Bar No. 306374
Email: cconkle@raklaw.com
Joshua Scheufler
TX State Bar No. 24123406
Email: jscheufler@raklaw.com
Mackenzie Paladino
NY State Bar No: 6039366
Email: mpaladino@raklaw.com
Matthew Aichele
VA State Bar No. 77821
Email: maichele@raklaw.com
RUSS AUGUST & KABAT
12424 Wilshire Blvd. 12th Floor

[redacted]

Los Angeles, CA 90025
Telephone: 310-826-7474

Qi (Peter) Tong
TX Bar No. 24119042
RUSS AUGUST & KABAT
8080 N. Central Expy., Suite 1503
Dallas, TX 75206
Telephone: 310-826-7474
Email: ptong@raklaw.com

ATTORNEYS FOR PLAINTIFF
COBBLESTONE WIRELESS, LLC

[redacted]

**CERTIFICATE OF SERVICE**

I hereby certify that on October 9, 2026, a true and correct copy of the foregoing document, including all exhibits, was served on all counsel of record via electronic mail.

*/s/ Reza Mirzaie*
Reza Mirzaie