[redacted]

REDACTED PUBLIC VERSION

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| COBBLESTONE WIRELESS, LLC, | |
| Plaintiff, | Case No. 7:24-cv-00232-DC |
| v. | **JURY TRIAL DEMANDED** |
| APPLE INC., | |
| Defendant. | |

**DEFENDANT APPLE INC.'S OPPOSITION TO COBBLESTONE'S OMNIBUS MOTION TO STRIKE APPLE'S SUPPLEMENTAL RULE 44.1 DECLARATIONS**

[redacted]

# TABLE OF CONTENTS

Page


I. INTRODUCTION ....... 1

II. CHRONOLOGICAL BACKGROUND OF EVENTS ....... 2

A. Apple Provided Its Initial Rule 44.1 Notice and Expert Declarations of Chinese Law, Concluding That Cobblestone Does Not Own the ’347 Patent ....... 2

B. Empire Belatedly Produced Documents That Became the Basis for Cobblestone’s Rule 44.1 Submission ....... 4

C. Apple Submitted Its Court-Authorized Response to Cobblestone’s Rule 44.1 Submission ....... 5

D. Cobblestone’s Motion to Strike Apple’s Authorized Responsive Submission ....... 6

III. ARGUMENT ....... 6

A. Cobblestone’s Arguments Are Contrary to Law ....... 6

B. Cobblestone’s Arguments Are Contrary to Fact ....... 9

1. Ms. Yang Did Not Make [redacted] ....... 9

2. Ms. Yang Properly Identified That the [redacted] 10

3. Apple’s Experts Did Not Provide Technical Opinions ....... 12

4. Apple’s Experts Properly Cited Responsive Chinese Caselaw ....... 14

a. Mr. Cohen Invoked Reference Case 403 in Response to Ms. Wu’s Reliance on Its Companion Case, Reference Case 1848 ....... 14

b. Ms. Yang Invoked Case 2454 in Response to Ms. Wu’s Reference Case 1848 ....... 15

c. Apple’s Experts Properly Responded to Ms. Wu’s Faulty Description of the Burden of Proof Under Chinese Law ....... 15

C. Cobblestone’s Request for Sanctions Is Unsupported and Improper ....... 16

IV. CONCLUSION ....... 17

[redacted]

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................7

*Benchmark Elecs., Inc. v. J.M. Huber Corp.*,
343 F.3d 719 (5th Cir. 2003)....................7

*Canales Martinez v. Dow Chem. Co.*,
219 F. Supp. 2d 719 (E.D. La. 2002)....................8, 12

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991)....................7

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
No. CV MDL 2047, 2018 WL 6335781 (E.D. La. Dec. 5, 2018)....................8

*Excel Fortress Ltd. v. Wilhelm*,
No. 2:17-cv-04297-PHX-DWL, 2019 WL 163252 (D. Ariz. Jan. 9, 2019)....................12

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
575 F.3d 1312 (Fed. Cir. 2009)....................7

*Gillaspy v. Dallas Indep. Sch. Dist.*,
278 F. App'x 307 (5th Cir. 2008)....................7

*Jones v. Cain*,
600 F.3d 527 (5th Cir. 2010)....................7

*Magill v. Appalachia Intermediate Unit 08*,
646 F. Supp. 339 (W.D. Pa. 1986)....................7

*Murray v. Sevier*,
156 F.R.D. 235 (D. Kan. 1994)....................7

*Pigford v. Veneman*,
215 F.R.D. 2 (D.D.C. 2003)....................7

*Ready Transp., Inc. v. AAR Mfg., Inc.*,
627 F.3d 402 (9th Cir. 2010)....................7

*Springs Indus., Inc. v. Am. Motorists Ins. Co.*,
137 F.R.D. 238 (N.D. Tex. 1991)....................8

*Stirista, LLC v. Skydeo Inc.*,
No. 1:23-CV-00856-CFC, 2025 WL 825288 (D. Del. Mar. 14, 2025)....................8

[redacted]

*Therasense, Inc. v. Becton, Dickinson & Co.*,
649 F.3d 1276 (Fed. Cir. 2011)....................7

**Other Authorities**

Federal Rule of Civil Procedure 12 ....................1, 3, 6, 7, 11

Federal Rule of Civil Procedure 44.1 .................... *passim*

Federal Rule of Evidence 702....................1, 8, 12

Federal Rule of Evidence 803....................12

[redacted]

# TABLE OF EXHIBITS

| Exhibit | Description |
|---|---|
| 1 | Email from Cobblestone's Counsel to Apple's Counsel Regarding Empire's New Production (August 19, 2026) |
| 2 | Email Correspondence Between Cobblestone's Counsel and Apple's Counsel Regarding Cobblestone's Position on Apple's Rule 44.1 Submissions (September 10, 2026 – September 15, 2026) |
| 3 | Email Correspondence Between Cobblestone's Counsel and Apple's Counsel Regarding Cobblestone's Position on Mr. Dell's Reply Supplemental Report and Apple's Rule 44.1 Submissions (September 11, 2026 – September 15, 2026) |

[redacted]

# I. INTRODUCTION

Federal Rule of Civil Procedure 44.1 provides no legal basis to strike Apple's Court-authorized supplemental declarations regarding foreign law. Cobblestone invites the Court to consider irrelevant procedural standards to support its motion (Mot. at 3), mischaracterizes the record to meet its new proposed standard, and then requests baseless, unspecified sanctions. The Court should decline Cobblestone's invitation. No legal basis exists to strike Apple's responses, and Cobblestone's factual characterizations are unfounded.

**Cobblestone's motion lacks any legal basis to strike.** Federal Rule of Civil Procedure 44.1 states that the Court "may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence" in determining foreign law. Fed. R. Civ. P. 44.1. Nonetheless, Cobblestone incorrectly bases its motion on other federal rules and principles that do not apply to Rule 44.1 submissions, including Federal Rule of Civil Procedure 12(f) (which applies to pleadings), the rule against new arguments in a reply brief (which applies to briefing), and Federal Rule of Evidence 702/*Daubert* (even though Rule 44.1 submissions are not governed by the Federal Rules of Evidence).

**Cobblestone's motion is also wrong on the facts.** Cobblestone mischaracterizes the record by claiming that Apple: (1) accused [redacted] Dkt. 220 at 1, 9-10, 17); (2) attacked the character of a third-party entity in an irrelevant and scandalous manner (*id.* at 1, 11); (3) provided improper technical opinions (*id.* at 12-14); and (4) exceeded the scope of the Court's authorized response (*id.* at 14-16). Each is untrue. ***First***, Apple and its experts [redacted] Mot. at 8. What Apple's expert actually opined was that [redacted] ***Second***, Apple never made any improper

[redacted]

"attack on the character" (Mot. at 11) [redacted], whom Cobblestone relies on to supplement missing facts under its export control theory. Apple's expert merely noted that the Chinese government had labeled [redacted] ***Third***, Apple's Chinese law experts never opined on any technical matters. The scope of Professor Yin's employment is not an "unqualified expert technical opinion[]" (Mot. at 1); it is a relevant fact that must be considered to opine on the Chinese law at issue in this case. ***Fourth***, Apple's experts did not exceed the scope of Cobblestone's Rule 44.1 declarations. They provided proper responsive analyses regarding ownership of the '347 patent and Chinese export controls, including through Chinese caselaw that rebutted the opinions of Cobblestone's experts, pursuant to the Court's scheduling order.

**Cobblestone's request for sanctions is baseless.** Cobblestone uses these legal and factual mischaracterizations to argue that Apple engaged in "improper," "bad faith," sanctionable behavior when submitting its "untimely" response. Mot. at 1-2, 10, 16-17, Proposed Order. The Court's July 27, 2026 Order authorized Apple to respond to Cobblestone's Rule 44.1 submission within fourteen days of Cobblestone's filing. Dkt. 176. Cobblestone filed its Rule 44.1 submissions on August 21, 2026, and Apple filed its response on September 4, 2026—fourteen days later. Dkts. 199, 200, 214, 215. Apple, therefore, timely responded to Cobblestone's Rule 44.1 submissions in good faith, without injecting any "immaterial," "scandalous," or "politically dangerous" arguments. Mot. at 1-3, 8-9, 11, 16.

## II. CHRONOLOGICAL BACKGROUND OF EVENTS

### A. Apple Provided Its Initial Rule 44.1 Notice and Expert Declarations of Chinese Law, Concluding That Cobblestone Does Not Own the '347 Patent

On July 8, 2026, Apple submitted its Rule 44.1 notice of foreign law with declarations from Chinese law experts explaining and applying Chinese law and concluding that Cobblestone

[redacted]

does not own the ’347 patent. Dkt. 156. Apple’s experts identified specific provisions of Chinese law that invalidated the publicly recorded assignment chain for the ’347 patent.[1] First, Chinese patent law vested initial ownership of the ’347 patent in Tongji University, Professor Yin’s employer. Thus, ownership of the ’347 patent never vested in Professor Yin and any assignments subsequent to Professor Yin’s purported assignment to Shanghai SAGE are invalid. Dkt. 156-1 at 2-6 (§ III), Dkt. 156-26. Second, Chinese Export Control Law restricted exports of the wireless communication technology claimed in the ’347 patent without a license (and no proof of a license has ever been provided). As a result, any assignment subsequent to the purported Shanghai SAGE (China)–Empire (U.S.) assignment is invalid. Dkt. 156-1 at 6-9 (§ IV). Either or both of these deficiencies defeats Cobblestone’s ownership claim for the ’347 patent, which in turn eliminates Cobblestone’s standing to sue.

On July 27, 2026, after Apple filed its Rule 12(b)(1) motion to dismiss for Cobblestone’s lack of standing, the Court issued its Order vacating the trial setting on the basis that Apple’s Rule 12(b)(1) motion “raises questions concerning Plaintiff Cobblestone Wireless, LLC’s Article III standing,” concluding that “trial should not proceed before the jurisdictional issues are resolved.” Dkt. 176. This Order specifically authorized Cobblestone to file its own Rule 44.1 submission, *id.* at 2 (“On or before August 21, 2026, Cobblestone shall file its Rule 44.1 submission and accompanying expert declaration”), and further authorized Apple to provide its response to Cobblestone’s filing. *Id.* (“Any response from Apple to that submission must come within 14 days”).

[1] The publicly recorded assignment chain begins with the inventor, Professor Yin, who recorded an assignment to his shell company, Shanghai SAGE, which recorded an assignment to a U.S. company, Empire, which recorded a final assignment to Cobblestone. Dkt. 191-6.

[redacted]

### B. Empire Belatedly Produced Documents That Became the Basis for Cobblestone's Rule 44.1 Submission

On the evening of August 19, 2026, Cobblestone and Empire's shared counsel, Russ August & Kabat ("RAK"), served on Apple a production of highly relevant and responsive "additional documents only recently identified by Empire." Ex. 1. Specifically, RAK produced [redacted] Dkt. 200-5 ("Wu Ex. 5").

Apple had requested [redacted] during fact discovery, but RAK failed to timely produce them. *See* Dkt. 190 at 5-9.

Two days later, on August 21, 2026, Cobblestone filed its Rule 44.1 submission, relying heavily on the new Empire production to defend its ownership claim to the '347 patent. Dkts. 199, 200. Cobblestone's export control expert, Yuan Ma, relied on the [redacted] to opine that [redacted] and that "the most likely account of facts to be inferred from the evidence is that a

---

[2] [redacted] Thus, the Empire documents show yet another dispositive deficiency in the '347 patent assignment chain that defeats Cobblestone's claim to ownership.

[redacted]

professional business, [redacted] applied for an export license, but no export license was needed." Dkt. 199 ¶¶ 48, 52. Cobblestone's patent law expert, Eunice Wu, relied on the Empire documents to opine that the '347 patent was not a service invention for Tongji because it was invented for Shanghai SAGE instead. Dkt. 200 ¶ 18 ("[T]hese contemporaneous documents affirmatively identify an external request for inventive problem-solving and a documented submission path for the particular '347 proposal through [redacted], rather than through Tongji."); *see also* ¶¶ 99, 105-116.

### C. Apple Submitted Its Court-Authorized Response to Cobblestone's Rule 44.1 Submission

The Court's Order (Dkt. 176) provided Apple fourteen days to file a response to Cobblestone's Rule 44.1 submission. Apple timely submitted its Supplemental Notice of Foreign Law with the supplemental declarations of Ms. Yang and Mr. Cohen on September 4, 2026. Dkt. 214, 215. Apple's experts responded to Cobblestone's Rule 44.1 declarations by, for example, addressing the newly produced Empire documents that RAK had not produced at the time of Ms. Yang's and Mr. Cohen's initial Rule 44.1 submissions. Ms. Yang responded to Ms. Ma's opinion that the [redacted] meant that Chinese export controls had been followed, and opined that export controls were not observed because (1) an exhaustive search of public records confirmed that no export license was acquired, and (2) [redacted] participation was undermined by the fact that its alter ego (with the same management) was designated by the Chinese government as a "seriously untrustworthy entity in the field of customs supervision of imports and exports." Dkt. 215-1 at 16-19 (§ 1-2). Ms. Yang also responded to Ms. Wu's opinion that the '347 patent's invention had been created for [redacted], rather than Tongji University, and opined that a Chinese court would reject this in part because Tongji University's material and technical support was predominant over [redacted] minimal capitalization.

[redacted]

*Id.* at 9-10 (§ 1.2.2). Both Ms. Yang and Mr. Cohen also considered and responded directly to Cobblestone's experts' Chinese caselaw opinions, including by identifying Chinese caselaw that responded to and rebutted the opinions of Cobblestone's experts. Dkt. 215-1 at 1-8 (§ 1.1); Dkt. 215-2 ¶¶ 2-28.

### D. Cobblestone's Motion to Strike Apple's Authorized Responsive Submission

On September 10, 2026, RAK emailed Apple previewing a motion to strike on the basis that Apple's filing was "filed without leave of Court and improperly raise new evidence, arguments, and expert opinions," despite that Apple's submission had been authorized by the Court. Ex. 2 at 2-3. When the parties met and conferred, RAK claimed that the Court had somehow authorized Apple to file only a Rule 12(b)(1) reply brief and not a response to Cobblestone's Rule 44.1 declarations. Ex. 2 at 1-3; Post Decl. ¶ 6. Specifically, RAK claimed that the Court's instruction that "[a]ny response from Apple to that submission must come within 14 days" in a section titled "Cobblestone's Rule 44.1 Submission" did not authorize a responsive Rule 44.1 submission. Order at 2; Ex. 2 at 1-3; Post Decl. ¶ 6. RAK then abandoned this argument in its motion to strike,[3] instead relying on new arguments not presented to Apple during the meet and confer.

## III. ARGUMENT

### A. Cobblestone's Arguments Are Contrary to Law

Cobblestone's arguments to strike fail because they attempt to apply rules or caselaw that do not apply to Rule 44.1 submissions.

---

[3] Before Cobblestone dropped this argument from its motion to strike, it imposed timeliness/no leave objections (that it did not ultimately assert) to try to get Apple to agree that Cobblestone could serve an untimely and unauthorized damages reply report in this case. Ex. 3 at 1.

[redacted]

***First***, Cobblestone argues that Apple's submission should be struck under Federal Rule of Civil Procedure 12(f), which states that "[t]he court may strike ***from a pleading*** an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Apple's Rule 44.1 submission, however, is not a pleading, so Rule 12 does not apply. *See* Fed. R. Civ. P. 12(f). Cobblestone cites no authority applying Rule 12 to strike Rule 44.1 submissions. Dkt. 220 at 2-4.[4] And none of Cobblestone's cited caselaw involves foreign law at all, much less striking "relevant material" that the Court is explicitly allowed to consider under Rule 44.1. The categories of relevant material under Rule 44.1 broadly include "***any relevant material or source***, including testimony, whether or not submitted by a party ***or admissible under the Federal Rules of Evidence***." Fed. R. Civ. P. 44.1.

***Second***, Cobblestone tries to apply the general rule that new arguments cannot be made in a reply brief, but Apple's Rule 44.1 submission is not a reply brief. Dkt. 220 at 4. Cobblestone again relies on inapplicable caselaw that does not involve issues of foreign law and does not apply to Rule 44.1 submissions. *See Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010) (writ of habeas corpus); *Gillaspy v. Dallas Indep. Sch. Dist.*, 278 F. App'x 307, 315 (5th Cir. 2008) (Title VII

[4] Cobblestone instead cites three categories of caselaw that have nothing to do with Apple's experts' submissions: (1) cases that applied Rule 12(f) to statements made in the pleadings, as is proper under that Rule (*Magill v. Appalachia Intermediate Unit 08*, 646 F. Supp. 339, 343 (W.D. Pa. 1986); *Murray v. Sevier*, 156 F.R.D. 235, 258 (D. Kan. 1994)); (2) cases that granted sanctions under the Court's inherent authority for inapposite situations (*Chambers v. NASCO, Inc.*, 501 U.S. 32, 41 (1991) (imposing sanctions for defendant's fraudulent conduct in attempting to transfer away property that was the subject of litigation); *Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 403 (9th Cir. 2010) (holding that a district court could strike an improperly filed confidential document); *Pigford v. Veneman*, 215 F.R.D. 2, 4 (D.D.C. 2003) (striking plaintiff's accusation that defendant's attorney was racist)); and (3) cases that concern the standard to plead fraud, which Apple does not do here (*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003); *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1318, 1326-29 (Fed. Cir. 2009); *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1287, 1290 (Fed. Cir. 2011)).

[redacted]

gender discrimination); *Springs Indus., Inc. v. Am. Motorists Ins. Co.*, 137 F.R.D. 238, 239-40 (N.D. Tex. 1991) (motion to stay discovery). Cobblestone's one case that did involve an issue of foreign law, *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, No. CV MDL 2047, 2018 WL 6335781 (E.D. La. Dec. 5, 2018), explains that this rule does not apply to Rule 44.1 submissions. There, the defendant attached a declaration of foreign law to a reply brief, and the court ruled that though the "declaration should have been provided in Defendants' opening brief . . . Federal Rule of Civil Procedure 44.1 allows the Court to consider the filing regardless of whether it is admissible under the Federal Rules of Evidence."[5] *Id.* at *9. That holding is even more apt here, where Apple did not submit Rule 44.1 declarations with a reply brief, but instead filed a Court-authorized response to Cobblestone's submission.

***Third***, Cobblestone resorts to Federal Rule of Evidence 702 (Dkt. 220 at 5), which does not apply to Rule 44.1 submissions. *See* Fed. R. Civ. P. 44.1 ("[T]he court may consider any relevant material . . . whether or not . . . admissible under the Federal Rules of Evidence."); *see also Canales Martinez v. Dow Chem. Co.*, 219 F. Supp. 2d 719, 723-24 (E.D. La. 2002) (holding that a motion to strike a Rule 44.1 declaration of foreign law under *Daubert* and Rule 702 was "legally unfounded" because "under applicable law, the Court may consider evidence not technically admissible under the Federal Rules of Evidence, so long as it is relevant"). Even if the Court were to find that the Federal Rules of Evidence apply to Rule 44.1 declarations, *Daubert* arguments apply only to testimony—not expert reports—and Apple's foreign law experts will not testify at trial. *See Stirista, LLC v. Skydeo Inc.*, No. 1:23-CV-00856-CFC, 2025 WL 825288, at *1 (D. Del. Mar. 14, 2025) ("Expert reports are not testimony and do not implicate Rule 702.").

[5] The court did not ultimately consider the foreign law declaration, but that was only because, unlike here, the court had already ruled that foreign law did not apply. *Id.* at *7-8.

[redacted]

### B. Cobblestone's Arguments Are Contrary to Fact

Cobblestone's arguments are premised on a misrepresentation of the facts.

#### 1. Ms. Yang Did Not Make [redacted]

Cobblestone's first argument (Dkt. 220 at 8-10), seeking to strike "Apple's new criminal allegations," grossly misrepresents Ms. Yang's declaration. Ms. Yang makes no such [redacted] The paragraph of Ms. Yang's declaration that Cobblestone quotes (*id.* at 8 (quoting Dkt. 215-1 at 9-10 (§ 1.2.2))) does not allege [redacted] or anything similar, but merely explains that Tongji University provided significantly more financial support to Professor Yin [redacted] This is a fact that Cobblestone does not dispute. *See* Dkt. 220 at 8-9 (admitting that "Dr. Yin received more research funds than [redacted]

The reason that Ms. Yang identifies the [redacted] is because the Court must decide whether Professor Yin's work was a service invention for Tongji University, which would vest title to the '347 patent to Tongji (and not Professor Yin) under Chinese law. Article 6 of the Chinese Patent Law explains that "[a]n invention-creation that is accomplished in the course of performing the duties of an employee, ***or*** mainly by using the material and technical conditions of an employer shall be deemed an employment invention-creation." Dkt. 156-4 (Yang Ex. 3) at 4. In analyzing the second criterion of this provision, Ms. Yang considered Chinese Reference Case 1848 (the case Cobblestone's expert Ms. Wu cited), which instructs that the Court should look to "the entity's material and technical means . . . ***as compared with material and technical means from other sources*** used by the inventor." Dkt. 215-1 at 9 (citing Reference Case 1848, Dkt. 197-20). Ms. Yang compared the material support that Professor Yin received from Tongji University (including support from the Chinese National Natural Science Fund, which Ms. Wu explained provided

[redacted]

"approximately RMB 347,000 for each General Program project, RMB 2.21 million for each Key Program project, and RMB 10 million for each Major Program project") [redacted]." *Id.* at 10. Based on Article 6 and Reference Case 1848, Ms. Yang ultimately concluded that "Tongji University's material and technical means were predominant in importance and sufficient to outweigh material and technical means from other sources, thereby establishing that ownership of the disputed patent should belong to Tongji University." *Id.*

Cobblestone somehow misreads Ms. Yang's opinion on how a Chinese court would apply Article 6 on these facts as an attempt to [redacted] Mot. at 9, 10. But that is not what Ms. Yang did. Rather, Ms. Yang performed the analysis required under Cobblestone's own caselaw, identified undisputed facts regarding the relative contribution provided by Tongji University as opposed to [redacted] concluded that Tongji's significant material support made the '347 patent a service invention that vested in Tongji, rather than in Professor Yin or Shanghai SAGE. Neither Apple nor Ms. Yang has ever made any [redacted] Dkt. 220 at 10. Cobblestone cannot provide any legal or factual basis under which the Court should strike Ms. Yang's opinion, and this argument should be rejected.

**2. Ms. Yang Properly Identified That the Chinese Government Found Fuhaihua's Alter Ego to Be a "Seriously Untrustworthy Entity"**

Cobblestone's next argument, seeking to strike the fact that the Chinese government designated [redacted] as a "Seriously Untrustworthy Entity" (Dkt. 220 at 10-11), lacks any legal basis. Ms. Yang's initial declaration found that the '347 patent was subject to an export restriction that required a license, but no license had been issued. *Id.* In response to Ms. Yang's declaration, RAK untimely produced the

[redacted]

[redacted][6] to Apple, identifying for the first time that [redacted] Wu Ex. 5 at 58. Cobblestone's expert, Ms. Ma, then relied on that document in opining in a conclusory manner that the "most likely account of facts to be inferred" was that, because an exporter was used, proper export procedures must have been followed—despite citing no supporting evidence. Dkt. 199 ¶¶ 48-49, 52.

In response to Ms. Ma's opinion, Ms. Yang reaffirmed her opinion that the required export license had not been granted. Technology export licenses are public information, but "an exhaustive search for publicly disclosed information showing that a license was obtained for the technical solution corresponding to the patent at issue [] found none." Dkt. 215-1 at 16-17 (§ 1.1). Ms. Yang then responded to Ms. Ma's unsupported inference that [redacted] observed export control restrictions and found Ms. Ma's conjecture unfounded in light of [redacted] history. *Id.* at 18-19 (§ 2). Specifically, Ms. Yang pointed to evidence that [redacted] (with the same registered address, chairman, and management team), was designated by the Chinese General Administration of Customs as a "seriously untrustworthy entity in the field of customs supervision of imports and exports." *Id.* [redacted] faulty reputation regarding imports and exports undermines Ms. Ma's inference that export controls were observed and is therefore directly relevant to this case.

It is unclear what legal justification Cobblestone asserts to strike Ms. Yang's responsive identification of [redacted] designation. If Cobblestone says this fact is "scandalous" under Rule

[6] This document was nominally produced by RAK on behalf of Empire with Empire Bates numbers. However, RAK (wearing its Cobblestone hat) now says that "***Cobblestone*** provided [redacted] Dkt. 220 at 11. Regardless of who produced the document, it was not provided until more than a month after Ms. Yang's original declaration was filed.

[redacted]

12(f) (Dkt. 220 at 11), Ms. Yang's Rule 44.1 declaration is not a pleading. Regardless, Ms. Yang simply identifies that the Chinese government has designated [redacted] alter ego as "seriously untrustworthy"—she did not offer an opinion on that matter. To the extent Cobblestone argues that the designation is "hearsay" (*id.*), the Federal Rules of Evidence do not apply to Rule 44.1 submissions, and even if they did, Federal Rule of Evidence 803(8) includes a hearsay exception for government records. To the extent Cobblestone relies on the legal disclaimer included in the document identifying the designation (*id.*), that disclaimer is not a reason for exclusion, given that the Court may consider "any relevant material or source" in reaching its decision on foreign law. Fed. R. Civ. P. 44.1. Ms. Yang's identification of facts relevant to the [redacted] and responsive to Ms. Ma's opinions about that document should not be excluded.

### 3. Apple's Experts Did Not Provide Technical Opinions

Cobblestone presents no justifiable reason to strike Mr. Cohen's and Ms. Yang's analysis that the '347 patent was invented within the scope of Professor Yin's university employment. Instead, the only excuse Cobblestone provides in this section (Dkt. 220 at 12-14) is that Apple's experts' opinions "should be excluded under *Daubert*." But as Cobblestone acknowledges, *Daubert* is an application of Federal Rule of Evidence 702, which does not apply to Rule 44.1 submissions. *See* Fed. R. Civ. P. 44.1; *see also Canales Martinez*, 219 F. Supp. 2d at 723; *Excel Fortress Ltd. v. Wilhelm*, No. 2:17-cv-04297-PHX-DWL, 2019 WL 163252, at *3 (D. Ariz. Jan. 9, 2019) ("a different set of rules and standards apply when foreign law is at issue").

Cobblestone tries to evade the law by arguing that Apple's experts' opinions do not concern foreign law, but that is false. One of the prongs of Section 12 of the Chinese Patent Law Implementing Regulations is that a service invention includes "any invention-creation made: (1) in the course of performing his own duty." Dkt. 156-6 (Yang Ex. 5) at 4; Dkt. 156-32 (Cohen Ex. 6) at 4. To determine what Professor Yin's duties at Tongji University entailed at the time of the

[redacted]

invention, Apple's experts properly considered the relevant evidence, including Professor Yin's role on the Tongji University faculty, his duties listed on his official university profile, his research papers published around the time of the invention, his listed research projects, and other Tongji University patents listing him as an inventor. *See* Dkt. 215-2 ¶ 23; Dkt. 215-1 at 3-5 (§ 1.1.2). The technical nature of Professor Yin's employment does not mean that Apple's experts were forbidden from considering that evidence, and it is unclear how they could offer an opinion on Chinese law without doing so.

Cobblestone's remaining arguments in this section are pure attorney conjecture. Cobblestone's argument that one of Professor Yin's research papers is allegedly different from the '347 patent because "predistorting a signal for a recipient in Yankee Stadium presents a very different technological challenge from targeting a recipient moving at 360 km/h," has nothing to do with Ms. Yang's opinion.[7] Dkt. 220 at 12. The research paper in question is relevant because, as Ms. Yang explains, it "establishes that his regular duties included research and development in his technical field" and was funded by Chinese government grants. Dkt. 215-1 at 4; *see also* Dkt. 214-2 at 8 (highlighting that Professor Yin's "main research interests include signal processing in wireless communications and channel modeling technologies"). The '347 patent, in turn, is titled "User Focusing Technique for Wireless Communication Systems," and its Abstract describes "receiving the first signal at the receiver, [and] performing a channel estimation of the first signal . . . ." Dkt. 1-1 at 1. That Professor Yin was researching wireless communication technology involving signal processing and channel modeling in his Tongji University

[7] In making this argument, Cobblestone ignores that the '347 patent does involve scenarios in which a user device is moving quickly. The specification discusses channel equalization for "an instance where the receiver 150 is moving at the speed of 350 km/h" (Dkt. 1-1 at 11:20-35), which is very similar to the research paper's example of an individual on "a train traveling at 360 km/h." Dkt. 214-2.

[redacted]

employment confirms that his invention of wireless communication technology that processes signals and models channels was created within the scope of his university employment.

#### 4. Apple's Experts Properly Cited Responsive Chinese Caselaw

Cobblestone's argument that Apple's experts expanded the scope of their responsive declarations beyond Cobblestone's is wrong. The Court's Order (Dkt. 176) authorized Apple to respond to Cobblestone's Rule 44.1 submission. That is what Apple's experts did in their responsive submissions.

##### a. Mr. Cohen Invoked Reference Case 403 in Response to Ms. Wu's Reliance on Its Companion Case, Reference Case 1848

Cobblestone's expert, Ms. Wu, invoked Reference Case 1848 regarding whether the '347 patent was a service invention, but she failed to consider the companion Reference Case 403, which is more applicable to the issue at hand. Dkt. 200 ¶¶ 55-88. In response to Ms. Wu's analysis, Apple's expert Mr. Cohen responded with a section titled "The Missing Companion Case to Reference Case 1848," explaining that, as is its regular practice, the Chinese Supreme Judicial Court recognized two complementary reference cases as to service inventions—Reference Cases 1848 and 403—and that Ms. Wu's declaration failed to consider Case 403. Dkt. 214-20 ¶ 15. Mr. Cohen further explained that Ms. Wu's Case 1848 considered the situation in which an employee was tasked with an assignment outside of the normal course of his duties, but that Reference Case 403 was more applicable to the facts at hand because it considered tasks that arose in the course of an employee's regular duties, such as Professor Yin's invention of the '347 patent while employed as a professor researching wireless technology at Tongji. *Id.* ¶ 16. As such, Mr. Cohen's reliance on Reference Case 403 properly responded to Cobblestone's Rule 44.1 declaration.

[redacted]

**b. Ms. Yang Invoked Case 2454 in Response to Ms. Wu's Reference Case 1848**

Ms. Yang similarly responded to Ms. Wu's reliance on Case 1848 by identifying different, more analogous caselaw. Specifically, Ms. Yang explained that Ms. Wu's reliance on Case 1848 was inapposite because "[t]he facts of that case differ substantially from those here, and its disposition provides no guidance here." Dkt. 215-1 at 10 (§ 1.3). Ms. Yang then explained that "I offer a decision whose facts are more closely analogous to those here than the decision in Case No. 1848" and provided Case 2454. *Id.* Like Mr. Cohen, Ms. Yang's reliance on this caselaw was in direct response to Ms. Wu.

**c. Apple's Experts Properly Responded to Ms. Wu's Faulty Description of the Burden of Proof Under Chinese Law**

Ms. Wu's declaration attempted to shift Cobblestone's burden to prove standing onto Apple by incorrectly arguing that Chinese law shifted to Apple the burden to show that the '347 patent was a service invention. *E.g.*, Dkt. 200 ¶ 117. In response, Mr. Cohen explained that "Chinese civil litigation practice generally focuses on a concept that is similar to a burden of production" and that "[t]his burden 'does not remain objectively with one party but shifts' as the evidentiary record develops." Dkt. 215-2 ¶ 28 (citing Yang Chen, *Rebalancing the Burden of Proof for Trade Secrets Cases in China: A Detailed Scrutiny and Comparative Analysis of Article 32*, 84 Univ. of Pitt. L. Rev. 827 (2023)). Similarly, Ms. Yang explained with caselaw support that "the standard in civil litigation is a 'high degree of probability,' meaning, according to ordinary experience, which of two conflicting factual propositions is more likely," and that "the burden of proof should therefore shift to YIN or Cobblestone" based on the substantial record evidence of Professor Yin's employment. Dkt. 215-1 at 12 (§ 1.4) (citing Dkt. 214-3 ((2021) Zui Gao Fa Min Shen No. 273). As both Mr. Cohen's and Ms. Yang's declarations responded to Ms. Wu, they were authorized by the Court's Order.

[redacted]

### C. Cobblestone's Request for Sanctions Is Unsupported and Improper

Cobblestone repeatedly uses inflammatory rhetoric to attack Apple and its experts. *See* Dkt. 220 at 1 ("Apple continues to do all of this in bad faith."), 10 ("The Court should consider sanctions against Yang for her frivolous, baseless, and unprofessional theories."), 14 ("Apple attempts to flagrantly abuse the Court's procedure"), 15 ("Apple's Motion to Dismiss was brought in bad faith to delay trial"). Cobblestone closes by arguing that Apple's "new and non-responsive arguments are untimely and in bad faith" (*id.* at 16), despite admitting the Court authorized Apple to respond to Cobblestone's Rule 44.1 submission. Cobblestone includes a proposed order with four lines inviting the Court to fill in the blanks with sanctions against Apple. *See* Proposed Order to Dkt. 220.

Cobblestone's request for sanctions has no basis. Cobblestone's bad-faith section says that the arguments in Apple's responsive filing "continue to be untimely raised by Apple in bad faith under Apple's belief that standing can't be waived." Dkt. 220 at 16. But Apple's Rule 44.1 submission was not untimely, and it is the law that a defendant cannot waive a defense of lack of standing. *See* Dkt. 166 ("To the extent Apple's Tongji University service invention and Chinese export control theories assert that Cobblestone never acquired any exclusionary right in the asserted patent, they implicate Article III standing and cannot be waived or forfeited"). And Cobblestone does not provide any other argument for sanctions except to "re-urge[]" that Apple's original Rule 44.1 declarations be struck and to argue that Apple's standing arguments be rejected. Notably absent from Cobblestone's request is any specific identification of conduct that it thinks should be sanctioned, any legal authority for those sanctions, or what the proposed sanction should be. Apple respectfully submits that its authorized response to Cobblestone's Rule 44.1 submission was proper legal advocacy and is not sanctionable conduct.

[redacted]

## IV. CONCLUSION

Apple respectfully requests that Cobblestone's motion be denied.

[redacted]

DATED: October 9, 2026

Respectfully submitted,

*/s/ Kevin J. Post*

Steven Pepe
(NY Bar No. 2810430)
Kevin J. Post
(NY Bar No. 4382214)
Alexander E. Middleton
(NY Bar No. 4797114)
Lance W. Shapiro
(NY Bar No. 5397955)
Brian P. Lebow
(NY Bar No. 5992573)
John J. Healy Jr.
(NY Bar No. 6172662)
**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
30 Rockefeller Plaza
New York, NY 10112-0015
Telephone: (212) 653-8700
Facsimile: (212) 653-8701
spepe@sheppard.com
kpost@sheppard.com
amiddleton@sheppard.com
lshapiro@sheppard.com
blebow@sheppard.com
jhealy@sheppard.com

Ryan C. Brunner
(DC Bar No. 241467)
**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
2099 Pennsylvania Avenue, N.W., Suite 100
Washington, DC 20006-6801
Telephone: (202) 747-1900
Facsimile: (202) 747-1901
rbrunner@sheppard.com

Brandi Young
Texas Bar No. 24045988
**KEITH & LORFING**
312 E Illinois Ave Ste 4
Midland, TX 79701
Telephone: (325)-480-8100
brandi@lorfinglaw.com

Steven J. Wingard
Texas Bar No. 00788694
swingard@scottdoug.com
Stephen L. Burbank
Texas Bar No. 24109672
sburbank@scottdoug.com
Robert ("Robby") P. Earle
Texas Bar No. 24124566
rearle@scottdoug.com
**SCOTT DOUGLASS & MCCONNICO LLP**
303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512) 495-6300
Facsimile: (512) 495-6399

Ruffin B. Cordell
**FISH & RICHARDSON, P.C.**
1000 Maine Avenue, SW, Suite 1000
Washington, DC 20024
Telephone: 202-626-6449
Fax: 202-783-2331
cordell@fr.com

Roger Allen Denning
**FISH & RICHARDSON, P.C.**
12860 El Camino Real, Suite 400
San Diego, CA 92130-2081
Telephone: (858) 678-5070
Fax: 858-678-5099
denning@fr.com

*Attorneys for Defendant Apple Inc.*

[redacted]

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on October 9, 2026, all counsel of record who have appeared in this case are being served with a copy of the foregoing via email.

*/s/ Steven J. Wingard*
Steven J. Wingard