[redacted]

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| COBBLESTONE WIRELESS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Case No. 7:24-cv-00232-DC<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF ITS *DAUBERT* MOTION TO EXCLUDE OPINIONS OF STEPHEN E. DELL IN HIS JULY 24, 2026 SUPPLEMENTAL EXPERT REPORT RELATING TO DAMAGES**

[redacted]

## TABLE OF CONTENTS

**Page**

I. MR. DELL'S "APPORTIONMENT STEPS" FAIL TO APPORTION 5G FUNCTIONALITY ....... 1

II. MR. DELL NOW IGNORES THE ORIGINAL REPORT'S 5G APPORTIONMENT ....... 4

III. MR. DELL IMPROPERLY AWARDS 100% OF PROFITS TO COBBLESTONE ....... 5

IV. MR. DELL'S [redacted] MARGIN IS UNRELATED TO THE SSPPU ....... 5

[redacted]

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
717 F.3d 1336 (Fed. Cir. 2013)....5

*Golight, Inc. v. Wal-Mart Stores, Inc.*,
355 F.3d 1327 (Fed. Cir. 2004)....5

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009)....1

*Summit 6, LLC v. Samsung Elecs. Co.*,
802 F.3d 1283 (Fed. Cir. 2015)....5

*Willis Elec. Co. v. Polygroup Ltd. (Macao Com. Offshore)*,
166 F.4th 1363 (Fed. Cir. 2026)....5

[redacted]

## TABLE OF EXHIBITS

| Exhibit | Description |
|---|---|
| K | Supplemental Excerpt of the Expert Report of Stephen E. Dell, CVA Relating to Damages (March 27, 2026) |
| L | Supplemental Excerpt of the Deposition Transcript of Stephen E. Dell, CVA (September 17, 2026) |
| M | DELL_009592, 2G and 3G: Closing Time for Legacy Networks |

*All emphasis added unless otherwise noted.

[redacted]

The Dell Supplement should be struck as unreliable and prejudicial for failing to apportion the accused 5G functionality from the unaccused functionality in Apple's baseband chipsets. The Original Report applied four apportionment factors, including Mr. Dell's 5G Apportionment Factor that expressly attempted to isolate value of 5G functionality from other functionality (e.g., 4G/LTE, 3G, and 2G). Dkt. 232 ("Opp.") Ex. 1 ¶ 421, Fig. 9 ([redacted]). The Dell Supplement abandons that critical factor. And Cobblestone now claims the three "Non-5G Apportionment Factors"[1] isolated 5G's value all along. Opp. at 2, 5-7. But Mr. Dell confirmed that none of these three factors isolates 5G's value, and if they did, there would have been no need for the separate 5G Apportionment Factor in his Original Report. Once applied, Mr. Dell's damages opinion would drop to [redacted], consistent with Apple's expert, Ms. Rowe. Ex. C ¶ 10; Ex. A ¶ 2.[2]

The remainder of Cobblestone's justifications for Mr. Dell's supplemental opinions similarly fail. Cobblestone argues now that its new—even higher—damages figure is justified through comparisons to the ASP of the entire accused iPhone/iPad devices (e.g., ASP, price premium of an entire iPhone/iPad), or calculations derived therefrom. But these opinions have already been struck by the Court and should not be credited here. Dkt. 169.

## I. MR. DELL'S "APPORTIONMENT STEPS" FAIL TO APPORTION 5G FUNCTIONALITY

None of the three Non-5G Apportionment Factors applied in both of Mr. Dell's reports separates the value of 5G functionality from the unaccused 4G/LTE, 3G, and 2G functionality that are indisputably supported by Apple's baseband chipsets. Instead, Cobblestone mischaracterizes Mr. Dell's Non-5G Apportionment Factors (which are unchanged from his Original Report) to

[1] This Apple-defined coined term means (1) the 72.4% "Importance of 5G Speed to Consumers" factor; (2) the 57.4% "Extent of Use of Infringing Features" factor; and (3) the "Incremental Speed Boost Attributable to '347 Patent" factor. *See* Opp. Ex. 1 ¶ 498, Fig. 12.

[2] *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1338 (Fed. Cir. 2009) (finding royalty rate inflation improper).

[redacted]

wrongly contend that these factors sufficiently apportion 5G in Mr. Dell's Supplemental Report. But Mr. Dell's Original Report included a separate, critical fourth step ([redacted] 5G Apportionment Factor) he now omits. Had the three Non-5G Apportionment Factors fully apportioned 5G on their own—as Cobblestone now argues—Mr. Dell never would have needed to include this fourth apportionment in his Original Report.[3]

***First***, Mr. Dell's 72.4% "speed" factor (the first Non-5G Factor) does not distinguish 5G from 4G/LTE, 3G, 2G because it shows the percentage ***of "5G benefits"*** that were the subject of online discussions about only 5G, not 5G compared to any specific alternatives (e.g., 4G/LTE) or any other time period (e.g., comparing speed mentions during the release of 5G relative to the release of 4G/LTE). Opp. Ex. 1 ¶ 387 ("5G Benefit topic descriptions: Speed: Comments discussing speed generally along with upload and download times."); Ex. A ¶ 7 (Dell conceding 72.4% "restricts the chipset value to the ***speed-related benefit of 5G*** . . . and ***excludes the portion of 5G value*** associated with other non-speed related benefits"); Ex. L at 32:20-33:3, 35:10-15.

Mr. Dell's own evidence confirms that 4G/LTE, 3G, 2G were important and used the majority of time as of the 2020 hypothetical negotiation, negating Cobblestone's attempts to minimize unaccused functionality (Opp. at 7). *E.g.*, Ex. B ¶ 63; Ex. I (showing Apple's devices spent, at most, less than half their time on 5G networks as of the 2020 hypothetical negotiation). And Cobblestone's contention regarding 2G/3G shutdowns is unsupported. Opp. at 7 (citing Opp. Ex. 1 ¶ 56); Ex. M (showing shutdowns only outside the 50 United States).

***Second***, Mr. Dell's 57.4% factor ***expressly*** ignores any 4G/LTE, 3G, or 2G apportionment,

---

[3] Cobblestone's argument that the Non-5G Factors together "exclude 91.7% of the chipset profit" does not resolve this. Opp. at 5. If true, the '347 patent by itself would account for 8.3% of the entirety of 5G value, with the remaining over 21,000 5G-related patent families collectively accounting for the remainder. Opp. Ex. 1 ¶ 456; Opp. at 5, 7-8 ("Apple's $5 5G Baseband Chipset Profit is Attributable to 5G"); Ex. L at 39:10-40:10. There is no support for such a conclusion.

[redacted]

creating a conditional percentage isolated to only 5G mid-band use within just 5G use. Ex. B ¶ 495 ("5G midband represented 27% ***of that total 5G activity***, or ***57.4% of total 5G*** user activity"); Ex. A ¶ 7 ("share of 5G user activity that occurs on 5G mid-band spectrum"); Ex. L at 36:8-38:16. Cobblestone's argument that the accused products are "5G" phones is irrelevant, particularly where Mr. Dell's evidence expressly states that 5G is used only 47% of the time. Ex. B ¶ 495. Cobblestone's additional argument that the Ericsson study measured "traffic from older mobile devices" undermines Mr. Dell's reliance on the study, further demonstrating the unreliability of his analysis. Opp. at 6. Lastly, 5G coverage of the U.S. population—showing capability to use 5G—is contradicted by Mr. Dell's evidence showing 5G was not used the majority of time as of the 2020 hypothetical negotiation. Opp. at 6.

***Third***, Mr. Dell's 20% incremental speed boost attributable to the '347 patent factor again relates to "the ***5G NR features attributable to the '347 patent***," not an apportionment of claimed 5G functionality from unclaimed 4G/LTE, 3G, and 2G functionality. Ex. K ¶ 438; Ex. A ¶ 7 n.15 (describing speed boost as ***the '347 patent's share*** of the "speed improvement of 5G," not 5G's improvement over prior standards); Ex. L at 38:25-39:8 ("[T]his 20 percent is attributable solely to the '347 patent and not any other patents"). Cobblestone cannot rectify its contradiction with Mr. Dell's Original Report opinions that "further apportionment would be required" to isolate 5G and "the value of the 5G standard within a multimode device [i.e., supporting 5G and prior cellular standards] would be approximately 20%" (Ex. B ¶¶ 399, 485), instead now arguing it is improper to "devot[e] 80% of 5G chipset profits to older, slower 4G." Opp. at 6.[4] Without justification, Cobblestone instead focuses on Apple's statements about the release of 5G functionality and a

[4] Cobblestone's Opposition again misapprehends Ms. Rowe's exemplary calculation that she explained only partially corrects Mr. Dell's improper analysis. Contrary to Cobblestone's assertion, Ms. Rowe never fully "purported to correct Mr. Dell's SSPPU analysis." Opp. at 6, 9.

[redacted]

single datapoint ([redacted]) on which Mr. Dell chose not to rely for his damages calculation. Opp. at 6.

## II. MR. DELL NOW IGNORES THE ORIGINAL REPORT'S 5G APPORTIONMENT

Cobblestone's characterization of the [redacted] 5G Apportionment Factor as a "device-level demand metric" fares no better. Opp. at 4. Even if Cobblestone were correct that applying that particular 5G Apportionment Factor is somehow improper because Mr. Dell changed his SSPPU starting point, this does not obviate the requirement that Mr. Dell apply ***some*** apportionment to separate 5G from 4G/LTE, 3G, 2G. Opp. at 4. Cobblestone's purported justifications for ignoring Mr. Dell's 5G Apportionment Factor step fail.

***First***, that Apple described 5G as leading to "a new era for iPhone" does not at all suggest that unaccused 4G/LTE, 3G, and 2G cellular technology is automatically apportioned out.

***Second***, Cobblestone's reliance on the excluded [redacted] ASP to show "irrational results" again ignores the Court's guidance that relying on the entire device is improper. *Id.*; Dkt. 169.

***Finally***, Cobblestone offers no evidence that Apple's $5 baseband chipset profit is attributable to only 5G, instead suggesting that Apple moving to 4G/LTE would result in "large relative losses for Apple" solely because some evidence suggests a lower ASP of 4G compared to 5G smartphones. Opp. at 7-8. Cobblestone ignores the evidence showing that the relative price premium for 5G iPads is consistent with the relative price premium of 4G iPads over those without cellular functionality—demonstrating, at most, an even split between 5G and 4G.[5] Opp. Ex. 4 ¶ 138. It remains undisputed that the SSPPU chipsets support 4G/LTE, 3G, and 2G functionality still in use as of the hypothetical negotiation. The Court should reject Cobblestone's argument

---

[5] Mr. Dell admitted that the Dell Supplement does not use the price premium analysis. *See* Ex. L at 15:12-17. Moreover, Cobblestone agreed that portions of Mr. Dell's Original Report discussing Mr. Dell's price premium should be struck. Dkt. 213 at 8-9 (citing examples).

[redacted]

that ***no*** value of the chipset is attributable to those prior standards.

## III. MR. DELL IMPROPERLY AWARDS 100% OF PROFITS TO COBBLESTONE

Cobblestone is wrong that Mr. Dell's 100%-of-profit theory is "unchanged" from the Original Report. Mr. Dell's original analysis calculated a *range* of purported profits (based improperly on ASP), and then attempted a *Georgia-Pacific* analysis to select a royalty rate within that range. Opp. Ex. 1 ¶¶ 524-32. The Dell Supplement includes no such range—instead merely asserting two *individual* profit figures based on two separate profit margins (20% and [redacted]), and then claiming the parties would agree to assign 100% of the profit based on the lower profit margin (the only margin associated with the SSPPU chipset) to Cobblestone. Ex. A ¶¶ 7-10. For the same reason, the *range* of profit margins in *Willis Elec. Co. v. Polygroup Ltd. (Macao Com. Offshore)*, 166 F.4th 1363, 1376-77, 1385 (Fed. Cir. 2026) renders it inapposite. Cobblestone's remaining cases are also inapposite: unlike *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338-40 (Fed. Cir. 2004) and *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1346 (Fed. Cir. 2013), Apple does not argue for a royalty cap, but challenges Mr. Dell's methodology as indistinguishable from 25%/50% rules of thumb that the Federal Circuit rejected. Mot. at 8 n.6.

## IV. MR. DELL'S [redacted] MARGIN IS UNRELATED TO THE SSPPU

Cobblestone cites no authority supporting its application of a "standard margin" based on the sales price of an entire accused product where, as here, there is evidence of the profit margin attributable to the SSPPU component. Both of the cases Cobblestone cites—*Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1297-98 (Fed. Cir. 2015) and *Willis*, 166 F.4th at 1380—include only passing reference to profit margins, with no indication of a SSPPU-specific profit margin. The record-supported 20% profit margin for the SSPPU chipset is undisputed—Mr. Dell relies on that margin for one of two calculations. *See* Mot. at 9-10. That is the only profit margin supported in the record for the actual SSPPU at issue here, and thus must be applied.

[redacted]

DATED: October 16, 2026

Respectfully submitted,

Steven Pepe
(NY Bar No. 2810430)
Kevin J. Post
(NY Bar No. 4382214)
Alexander E. Middleton
(NY Bar No. 4797114)
Lance W. Shapiro
(NY Bar No. 5397955)
Brian P. Lebow
(NY Bar No. 5992573)
John J. Healy Jr.
(NY Bar No. 6172662)
**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
30 Rockefeller Plaza
New York, NY 10112-0015
Telephone: (212) 653-8700
Facsimile: (212) 653-8701
spepe@sheppard.com
kpost@sheppard.com
amiddleton@sheppard.com
lshapiro@sheppard.com
blebow@sheppard.com
jhealy@sheppard.com

Ryan C. Brunner
(DC Bar No. 241467)
**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
2099 Pennsylvania Avenue, N.W., Suite 100
Washington, DC 20006-6801
Telephone: (202) 747-1900
Facsimile: (202) 747-1901
rbrunner@sheppard.com

*/s/ Kevin J. Post*
Brandi Young
Texas Bar No. 24045988
**KEITH & LORFING**
312 E Illinois Ave Ste 4
Midland, TX 79701
Telephone: (325)-480-8100
brandi@lorfinglaw.com

Steven J. Wingard
Texas Bar No. 00788694
swingard@scottdoug.com
Stephen L. Burbank
Texas Bar No. 24109672
sburbank@scottdoug.com
Robert ("Robby") P. Earle
Texas Bar No. 24124566
rearle@scottdoug.com
**SCOTT DOUGLASS & MCCONNICO LLP**
303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512) 495-6300
Facsimile: (512) 495-6399

Ruffin B. Cordell
Michael J. McKeon
**FISH & RICHARDSON, P.C.**
1000 Maine Avenue, SW, Suite 1000
Washington, DC 20024
Telephone: 202-626-6449
Fax: 202-783-2331
cordell@fr.com
mckeon@fr.com

Roger Allen Denning
**FISH & RICHARDSON, P.C.**
12860 El Camino Real, Suite 400
San Diego, CA 92130-2081
Telephone: (858) 678-5070
Fax: 858-678-5099
denning@fr.com

***Attorneys for Defendant Apple Inc.***

[redacted]

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on October 16, 2026, all counsel of record who have appeared in this case are being served with a copy of the foregoing via email.

*/s/ Kevin J. Post*
Kevin J. Post