FILED UNDER SEAL

PUBLIC REDACTED VERSION

**UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF TEXAS**

**MIDLAND-ODESSA DIVISION**

COBBLESTONE WIRELESS, LLC,

Plaintiff,

v.

APPLE INC.,

Defendant.

Case No. 7:24-cv-00232-DC

JURY TRIAL DEMANDED

**COBBLESTONE'S REPLY IN SUPPORT OF ITS OMNIBUS MOTION TO STRIKE APPLE'S SUPPLEMENTAL RULE 44.1 DECLARATIONS**

FILED UNDER SEAL

PUBLIC REDACTED VERSION

**TABLE OF CONTENTS**

I. Rule 44.1 is not for backdooring new facts, new evidence, or technical opinions..... 1

II. Argument ..................................................................................................... 2

A. Apple's new [redacted] should be stricken ...... 2

1. Apple's [redacted] Should Be Stricken ........................... 3

2. The Remaining Theory is Immaterial, Unsupported, and Irrelevant................. 5

B. Apple's exporter dishonesty allegations should be stricken................................. 6

C. Technology comparisons should be excluded under *Daubert*............................... 7

D. New Foreign Cases on Reply Should Be Excluded............................................... 9

E. New Burden of Proof Analysis Should be Excluded........................................... 10

III. Conclusion ......................................................................................... 10

FILED UNDER SEAL

PUBLIC REDACTED VERSION

# TABLE OF AUTHORITIES

## Cases

*Canales Martinez v. Dow Chemical Co.*,
219 F. Supp. 2d 719 (E.D. La. 2002) ........ 1

*Excel Fortress Ltd. v. Wilhelm*,
No. 2:17-cv-04297-PHX-DWL, 2019 WL 163252 (D. Ariz. Jan. 9, 2019) ........ 1

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
No. CV MDL 2047, 2018 WL 6335781 (E.D. La. Dec. 5, 2018) ........ 1

*Ready Transp., Inc. v. AAR Mfg., Inc.*,
627 F.3d 402 (9th Cir. 2010) ........ 2

*Stirista, LLC v. Skydeo Inc.*,
No. 1:23-CV-00856-CFC, 2025 WL 825288 (D. Del. Mar. 14, 2025) ........ 2

*UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres,*
949 F.3d 825 (3d Cir. 2020) ........ 2

## Rules

Fed. R. Civ. P. 12(f) ........ 2, 5, 6

Fed. R. Civ. P. 44.1 ........ *passim*

Fed. R. Evid. 602 ........ 6

Fed. R. Evid. 802 ........ 6

Fed. R. Evid. 803(8) ........ 6

Fed. R. Evid. 901 ........ 6

Apple's Opposition (Dkt. 231) brazenly continues to advance Apple's argument that it can use Rule 44.1 declarations to supply new arguments, new evidence, new non-expert technical opinions, and new facts at any time—even those that are not about what foreign laws actually are. The Court should not allow Apple to abuse Rule 44.1 in this way.

## I. Rule 44.1 is not for backdooring new facts, new evidence, or technical opinions

At best, Apple's cited cases merely reiterate the rule that Cobblestone argued: that the Court is permitted to consider otherwise inadmissible evidence in determining *what foreign laws actually are*. None of Apple's cases allow Rule 44.1 to be used as a backdoor for evidence, non-expert technical reports, new facts, or new theories.

*Canales Martinez v. Dow Chemical Co.*, 219 F. Supp. 2d 719, 723–24 (E.D. La. 2002) addressed Alejandro Garro's expert opinion on the legal question of "whether Costa Rica and Honduras will deprive plaintiffs of all remedies or treat them unfairly" and how foreign courts would apply "standards" of "meaningfulness" and "adequate." It did not rule that Garro was allowed to offer otherwise improper facts (aside from what foreign laws were) or that Garro could offer non-expert opinions on technical matter. *Id.*

*Excel Fortress Ltd. v. Wilhelm*, No. 2:17-cv-04297-PHX-DWL, 2019 WL 163252, at *3 (D. Ariz. Jan. 9, 2019) shows the same limits. There, a the foreign-law expert offered legal opinions on contract interpretation under Chinese law. *Id.* He reached conclusions "assuming Plaintiffs' theory of the case is true," not by adding new evidence and new facts. *Id.* Nothing in the case suggests that the foreign-law expert provided non-expert technical testimony. *Id.*

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, No. CV MDL 2047, 2018 WL 6335781, at *5, *7 (E.D. La. Dec. 5, 2018) concerned an opinion by Professor Clarke on the applicability of Chinese agency law. Again, nothing in the case suggests the Court allowed him to offer new facts, new evidence, or non-expert technical testimony. *Id.*

Experts do not need to be qualified under Federal Rule of Evidence 702 to opine on *what foreign laws are*, but none of these cases allow declarants to opine on *technical matters* where they would have been otherwise excluded under Rule 702. Otherwise, future technical experts can simply call themselves “Rule 44.1 foreign law experts” and circumvent *Daubert* and Rule 702.

Courts strike improper Rule 44.1 declarations for failure to comply with laws, rules, and procedural fairness, even if they are not testimony. *In re Chinese*, 2018 WL 6335781 at *9 (“Motion to Strike, R. Doc. 21820, be and hereby is **GRANTED**”). *Stirista, LLC v. Skydeo Inc.*, No. 1:23-CV-00856-CFC, 2025 WL 825288, at *1 (D. Del. Mar. 14, 2025) is inapplicable because Apple’s foreign law declarations are presented to the Court as sworn testimony. Dkt. 177 Ex. 6, Ex. 7; Dkt. 215-1, Yang Decl. at 21; Dkt. 215-2, Cohen Decl. at 15. *See also UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres,* 949 F.3d 825, 832 (3d Cir. 2020) (“Rule 702 applies whether the trier of fact is a judge or a jury”). The Court may strike filings under both Fed. R. Civ. P. 12(f) and under its inherent authority to manage its docket. *Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010) (“We conclude that the District Court had jurisdiction to grant the motion to strike pursuant to its inherent powers.”)

## II. Argument

### A. Apple’s new [redacted] be stricken

Apple has disavowed any theory that Dr. Yin [redacted]. *Compare* Dkt. 231 at 1 (“Apple and its experts never accused Professo[redacted] *with* Dkt. 215-1, Yang Decl. at 14 (“[redacted]). Although Apple attempts to clarify this to the Court, such allegations should not be allowed to stand on the docket because they can be interpreted (and in fact, were interpreted this way by Cobblestone) as alleging t[redacted]. What remains of Apple’s theory is irrelevant under Chinese law.

FILED UNDER SEAL
PUBLIC REDACTED VERSION

The undisputed facts are that Dr. Yin was working at Tongji University, where he worked in the College of Electronic and Information Engineering.

Recent evidence filed by Cobblestone further shows that Dr. Yin [redacted]

**1. Apple's [redacted] Allegations Should Be Stricken**

Apple's foreign law expert, Ms. Yang, declares, [redacted]

*Id.* (citing Dkt. 214-15, Yang Supp. Ex. 14).

Yang Supp. Ex. 14 does not state that Dr. Yin received any of these [redacted] and this document only provides total amounts funded for various categories of projects. Nor does Yang Supp. Ex. 14 state the purpose of any of Dr. Yin's research assignments, so it cannot serve as evidence that Dr. Yin's research assignment, duty, or task was to invent the patented technology

[1] Citations to PDF page numbers of Wu Ex. 5. A cover sheet was added before filing on the docket, so citations in Wu's declaration may differ by one page.

at issue. Nonetheless, Ms. Yang continues to declare, "Tongji University's material and technical means were predominant in importance." Dkt. 215-1 at 10. To the contrary, Apple's other evidence shows that any research funding from the National Natural Science Fund was for "Research on Multiple-Antenna Technology Suitable for High-Speed Railway Communications." Dkt. 215-1, Yang Decl. at 7 (citing Dkt. 214-2, Yang Supp. Ex. 1). The abstract describes the research as studying "in high-speed railway scenarios" and it "proposes a multi-antenna configuration that maximizes the channel capacity," for example, for a train traveling at 360 km/h. Dkt. 214-2, Yang Supp. Ex. 1 at 40. It is not about predistortion techniques, like the patented technology at issue. *See id.*[2]

Despite this (perhaps due to her lack of technological expertise), Ms. Yang opines that [redacted] Dkt. 215-1, Yang Decl. at 9. In other words, Ms. Yang baselessly alleges that [redacted] Dkt. 215-1, Yang Decl. at 14.

To unbiased observers and to Cobblestone, Ms. Yang appears to allege that [redacted]

[2] Dkt. 231 at 13, n.7 points to another superficial similarity about the speed while ignoring the major difference that a *multi-antenna design* for high speed rail in the paper is very different from the predistortion technique in the asserted patent, as explained in Section II(C) below.

FILED UNDER SEAL
PUBLIC REDACTED VERSION

[redacted]

Apple does not deny that a theory of [redacted] would be scandalous. Apple merely denies that its allegations should be interpreted in this manner. *See* Dkt. 231 at 1, 9. But as explained above, it appears scandalous to an unbiased reader, and it should be struck.

**2. The Remaining Theory is Immaterial, Unsupported, and Irrelevant**

After Apple has clarified that it is not [redacted], Cobblestone cannot discern what else remains of Apple's theory that is supported by any evidence. Whatever it is, it is immaterial under Rule 12(f) and still appears scandalous.

As best understood, if Apple is arguing that Ms. Yang is simply declaring that "Tongji University provided significantly more [general research][3] financial support to Professor Yin than Shanghai SAGE did," this is immaterial. *See* Dkt. 231 at 9. What matters is how much money each entity contributed for the specific duty or task of developing the patented technology, as opposed to money for other research in the general field. Dkt. 200, Wu Decl. at 13 ¶ 32 ("general professional-field relatedness is relevant context but does not itself answer the statutory inquiry"); *see also id.* at ¶¶ 59, 70, 75, 92, 94(a), 94(b), 94(f), 75, 92. At best, Apple's evidence shows that Dr. Yin received research money for other projects, like "Research on Multiple-Antenna Technology Suitable for High-Speed Railway Communications." Dkt. 215-1, Yang Decl. at 7 (citing Dkt. 214-2, Yang Supp. Ex. 1).

Instead, if Apple is arguing that "Tongji University provided significantly more financial support [for the specific duty/task of developing the patented invention] to Professor Yin than Shanghai SAGE did," then there is simply no evidence of this specific assignment of a duty/task

[3] Cobblestone had believed that Apple abandoned this theory after Wu's declaration explaining the irrelevance of general research funding, resulting in Apple's pivot to a financial crime theory.

as required under Chinese law. *See* Dkt. 231 at 9. Again, Apple's evidence (Dkt. 214-2, Yang Supp. Ex. 1) shows that any research money was for an entirely different project. The other relied-upon document is silent about what any funding was tasked or assigned for. (Dkt. 215-1, Yang Decl. at 10 (citing Dkt. 214-15, Yang Supp. Ex. 14)).

Either way, Apple still has no theory or evidence of what any research money could have been possibly spent on. Apple's allegations are immaterial or [redacted]

**B. Apple's exporter dishonesty allegations should be stricken**

Apple's attacks on third-party [redacted] based on disavowed hearsay is similarly scandalous and immaterial. Such character attacks on third parties do not allow the Court to determine what the foreign laws are under Rule 44.1 and do not qualify for Rule 44.1's admissibility exception. So, such attacks should be excluded under Rule 12(f), the Court's inherent authority, Fed. R. Evid. 802 (hearsay), Fed. R. Evid. 901 (authenticity), and 602 (personal knowledge), and for raising new factual allegations about a new third-party identified for the first time on reply.

Apple does not argue that its new allegation about the trustworthiness of [redacted] is a determination of what a foreign law is. It does not qualify for Rule 44.1's admissibility exception.

Apple's only rebuttal to the hearsay challenge is that it is a government record admissible under Fed. R. Evid. 803(8). Not even this is true. *See* Dkt. 214-10 at ECF page 3 (purporting to be from "Qichacha," not from a branch of the People's Republic of China). Even if it were true, Fed. R. Evid. 803(8) only provides an exception to hearsay. It is not an exception to Rules 901 (authenticity) and 602 (personal knowledge) when the evidence itself says, "Our company does not identify or verify the completeness, accuracy, or truthfulness of this report." Dkt. 214-10 at 3.

Apple's argument that this argument is "responsive" does not change the fact that it is new.

Apple raised factual attacks on the character of a third-party for the first time in a reply to which Cobblestone is not entitled to file a sur-reply, well after the close of discovery. It should be stricken.

[redacted] was not in Yang's opening declaration, so attacks on this third-party are not "responsive." As explained by Ms. Ma, Yang had (whether intentionally or through incompetence) overlooked that export controls apply only to "key control points," and not the broader category all "wireless communication technology." Dkt. 199, Ma Decl. ¶¶ 14, 37. Ms. Ma explained in her declaration how the evidence, including a contract [redacted] to file for an export license was inconsistent with Yang's theory that no export license existed just because Ms. Yang could not find it via a public search. Dkt. 199, Ma Decl. ¶¶ 40–47. Some, but not all, export licenses are made public. *Id.* They may be kept private if they include "information concerning the underlying commercial transaction," for example, if it had included the transaction details involving Dr. Yin, Intellectual Ventures, and/or IDMC *Id.* at 46–47.

Apple's pivot to attacking the character of a third-party are distractions that do not change these fundamental failures of Apple and Ms. Yang. Attacks on the reputation of [redacted] are scandalous and completely immaterial, especially when U.S. Patents are not an "export" of China subject to Chinese laws in the first place.

### C. Technology comparisons should be excluded under *Daubert*

The technical analysis by Mr. Cohen and Ms. Yang should be excluded. They argued that antenna designs to send signals to high-speed railways (Dkt. 214-2) are similar to the patented invention, which *Apple*'s own counsel described as pre-distorting a signal for a person in a stadium. Dkt. 220-1. These technical comparisons are not determinations of foreign law.

The paper "Research on Multi-Antenna Technology Suitable for High-Speed Railway Communications" is about how to design and position multiple antenna elements to improve

communications with a fast-moving train. Dkt. 214-2 at 40–42.




Figure 1 High-Speed Railway Broadband Wireless Access System Architecture




Figure 2 Top View of the Antenna Configuration of the High-Speed Railway Broadband Access System

*Id.* at 41–42. It makes assumptions about speed (e.g., train traveling at 360 km/h) and concerns the spacing of Remote Antenna Units (RAUs). *Id.* at 40–41. It uses a model where "no channel state information is available at the transmitter side." *Id.* at 41. It then calculates some antenna angles, spacings, and does a performance analysis. *Id.* at 42–44. It makes a conclusion about determining "optimized antenna spacing." *Id.* at 44. It says nothing about how to perform predistortion, feedback, equalization, or the like.

Unlike the paper on the design of multiple antennas for a railway, the patented technology is about a "technique for wireless communication systems." Dkt. 1-1, title. The claimed technique involves "transmitting a first signal… performing a channel estimation based on the first signal… sending the channel estimation..." and "predistorting a second signal … according to the channel estimation." *Id.* at 16:40–61. This is the technology that the 19-page patent describes. The '347 Patent is not about how to space multiple antennas along railways.

The ’347 Patent describes many different use cases. Figure 1 shows a commonly applicable with obstacles (e.g., buildings in a city) between a transmitter and receiver. Dkt. 1-1 at 3:20–37. The ’347 Patent describes many other scenarios. It is no surprise that one paragraph of the ’347 Patent discusses cases involving “350 km/h” or cases where a receiver “is normally only able to support the communication when the speed is up to 200 km/h.” *Id.* at 11:20–26. But a brief mention of “350 km/h” does not change the fact that engineering for high-speed railways by changing the spacing or directions of antennas is a very different challenge from algorithms for predistortion. These are very different technologies. This is why Mr. Cohen and Ms. Yang are not qualified to offer opinions about how closely they are related. They lack the technological understanding and qualifications, and they have no reliable method for determining how closely these technologies are related to each other.

Apple does not attempt to argue that Mr. Cohen or Ms. Yang qualify as technology experts. Apple merely argues that the Rule 44.1 admissibility exception applies. But as Cobblestone explained, this exception only applies to the part of their opinion that helps the Court determine what a foreign law is. Fed. R. Civ. P. 44.1. An analysis comparing a technology in a journal paper to the ’347 Patent is not a determination of what a Chinese law is.

**D. New Foreign Cases on Reply Should Be Excluded**

Apple’s Opposition admits that Cobblestone’s expert, Ms. Wu did not mention Reference Case 403 or Reference Case 2454. These cases are unfairly raised for the first time by Apple on Reply. It is unfair that Cobblestone’s experts have no ability to respond to Apple’s mischaracterizations of these cases. Furthermore, U.S. Courts less trained to analyze foreign cases in comparison to analyzing U.S. cases, especially without adversarial analysis. All such new cases by Apple should be stricken when raised on reply.

### E. New Burden of Proof Analysis Should be Excluded

For the same reasons, Apple's new allegations about burdens of proof raised for the first time on reply are all waived and should be stricken. All such theories should have been raised in Apple's opening declarations, and Apple waived that opportunity. Mr. Cohen and Ms. Yang grossly misapply the burden, and it is unfair that Cobblestone's experts cannot respond. [redacted] Nothing Apple provided makes it "highly probable" that Tongji University instead funded and assigned this task or duty to respond to the RFI under Apple's proposed burden of proof. Because Apple failed to meet its burden of proving that its allegations are "highly probable," no further burden-shifting can occur. Apple's burden-shifting theory is completely new and non-responsive; neither Ms. Wu nor Ms. Ma mentioned burden-shifting. Even if burden-shifting could occur, Cobblestone would need an opportunity to rebut Apple's allegations of how it applies when Tongji University would be the party assumed to have the most evidence of what it assigned. Apple's burden-shifting theories are waived and should be struck.

## III. Conclusion

Denying Cobblestone's motion will result in precedent that permits parties to use reply 44.1 declarations to advance, after the close of discovery, new foreign laws and cases, new facts and new evidence unrelated to what foreign laws actually state, unqualified technical testimony that has nothing to do with foreign laws, and add new theories into the case when the other party is not able to respond. Apple cannot be acting in good faith in advancing such positions. Such gamesmanship should be shut down with prejudice. The Court should grant Cobblestone's motion.

Dated: October 16, 2026

Respectfully submitted,

/s/ *Reza Mirzaie*
Marc Fenster
Reza Mirzaie
Benjamin T. Wang
Brian Ledahl
Dale Chang
Neil A. Rubin
Jacob Buczko
James N. Pickens
Minna Jay
Jonathan Ma
Christian W. Conkle
Joshua Scheufler
Mackenzie Paladino
Matthew Aichele
RUSS AUGUST & KABAT
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Telephone: 310-826-7474

Qi (Peter) Tong
RUSS AUGUST & KABAT
8080 N. Central Expy., Suite 1503
Dallas, TX 75206

Attorneys for Plaintiff
Cobblestone Wireless, LLC

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document was filed via the Court's sealing procedures and served on all counsel of record via email on October 16, 2026.

*/s/ Reza Mirzaie*